# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re<br><br>WASHINGTON MUTUAL, INC., et al.,[1]<br><br>Debtors | Chapter 11<br><br>Case No. 08-12229 (MFW)<br><br>Jointly Administered |
| Black Horse Capital LP, et al.,<br><br>Plaintiffs<br>v.<br><br>JPMorgan Chase Bank, N.A., et al,<br><br>Defendants. | Adversary Proceeding<br>No. 10-51387 (MFW)<br><br>Re: Docket No. 30 |

## DEFENDANT WASHINGTON MUTUAL, INC.'S STATEMENT REGARDING PROPOSED SCHEDULING ORDER

Washington Mutual, Inc., as debtor, debtor in possession, and defendant in the above-captioned adversary proceeding ("WMI") submits this Statement with respect to the Proposed Scheduling Order attached to Plaintiffs' Second Statement Regarding the Proposed Order (D.I. 30) as Exhibit A (the "Proposed Order").

### Preliminary Statement

1. WMI has attempted in good faith to resolve disagreements over the proposed Scheduling Order with the Plaintiffs and with Co-Defendants. Through these efforts, disagreements have been reduced to only three issues. The Proposed Scheduling Order sets forth the Plaintiffs' and Defendants' respective positions about each of this issues. For the reasons

---

[1] The Debtors in these chapter 11 cases along with the last four digits of each Debtor's federal tax identification number are: (i) Washington Mutual, Inc. (3725); and (ii) WMI Investment Corp. (5395). The Debtors' principal offices are located at 925 Fourth Avenue, Seattle, Washington 98104.

explained in this Statement, the Defendants' positions on each of these open issues are reasonable and consistent with the guidance provided by the Court at the August 10, 2010 hearing. WMI requests entry of the Defendants' proposed language.

## Counts and Issues to Be Tried

2. The parties are in agreement that Counts VII, VIII and IX of the Adversary Complaint are not pertinent to confirmation and should be stayed until after entry of a confirmation order.

3. As to Counts I, II and III, the parties likewise are in agreement that these counts should move forward in their entirety because they seek declaratory relief regarding ownership of the Trust Preferred Securities, an issue pertinent to confirmation, and are based on allegations of fact that relate to the Trust Preferred Securities.

4. The parties' only area of difference is with respect to Counts IV, V and VI of the Adversary Complaint, and even here the disagreement is limited.[2] All parties agree that Counts IV, V and VI should proceed. The Defendants' proposal, however, is that these three counts go forward now only insofar as they are based on allegations that are specifically related to the Trust Preferred Securities, as opposed to the general allegations of "fraud," "mismanagement," and "reckless business practices" in connection with mortgage lending practices that litter the Adversary Complaint.

5. Although Plaintiffs contend that all of Counts I-VI address the ownership of the Trust Preferred Securities, in reality only Counts I-III seek a declaration that Plaintiffs are the titled owners of the Trust Preferred Securities. (Adversary Comp. ¶¶ 210, 218, 228). Counts IV-

---

[2] Paragraph 8 of Plaintiffs' Second Statement Regarding Proposed Scheduling Order incorrectly states and misquotes Defendants' position on this point. Defendants' proposal is not an "amorphous description of issues to be left until after confirmation." Defendants have proposed very concretely that Counts IV, V and VI should proceed "insofar as they are based on allegations relating specifically to the Trust Preferred Securities." Proposed Order ¶ 2.b.
2

VI, although styled as "Declaratory Judgment" counts, are actually as much "fraud" counts as are Count VII-IX, which Plaintiffs concede should be tried later. Count IV requests the Court to "declare" that the federal Office of Thrift Supervision ("OTS"), which is <u>not</u> named as a defendant, participated in a fraud, and to rule that, because of this purported fraud, the OTS directive ordering the Conditional Exchange of the Trust Preferred Securities is null and void. (Adv. Comp. ¶ 243). Specifically, in Count IV, Plaintiffs allege that "the OTS aided and abetted the commission of a fraud by WMI" through entering into "secret Side Letters [detailing WMI's] . . . secret intention to transfer the Trust Preferred Securities to WMB following a purported Conditional Exchange." (Adv. Comp. ¶¶ 233, 238). Count V asks the Court to "declare" that because WMI participated in a purported fraud "by approving the creation, issuance and offering of the Trust Preferred Securities and entering into the secret side arrangement with the OTS," it is not entitled to equitable relief from this Court. (Adv. Comp. ¶¶ 245, 246, 249). Similarly, Count VI asks the Court to declare that Co-Defendant J.P. Morgan Chase had "knowledge of and/or direct or indirect participation in the fraud involved in the formulation and sale of the Trust Preferred Securities" and given such knowledge, therefore does not have the status of a bona fide good faith purchaser of the Trust Preferred Securities. (Adv. Comp. ¶¶ 257-258).

6. In support of Counts IV-VI, as well as Counts VII-IX, Plaintiffs have plead over 35 pages of allegations about the mortgage lending and appraisal practices of Washington Mutual Bank and its affiliates. (Adv. Comp. ¶¶ 100-195).[3] As many as 82 paragraphs in the Adversary Complaint ask WMI to admit or deny statements about the bank's lending practices made by the Senate Permanent Subcommittee on Investigations, the New York Attorney General

---

[3] For example, Plaintiffs dedicate three pages of the Adversary Complaint to enumerate "the misrepresentations made in WMI's public filings by repeatedly misrepresenting the quality of Washington Mutual's loan portfolio . . . and covering up the loosening of Washington Mutual's underwriting standards . . . ." with no mention of even a remote connection to the Trust Preferred Securities. Adv. Comp. ¶ 108, at pp. 36-39.

3

or other similar sources. (Adv. Comp. ¶¶ 101-182).[4] These allegations are in no way specific to the Trust Preferred Securities or to these Plaintiffs. Moreover, if the Plaintiffs are truly seeking to have a trial about the propriety of Washington Mutual Bank's general lending and appraisal practices, there is no way that such a trial could occur on any reasonable timeframe before confirmation. These are highly complex matters that have been the subject of litigation for years in the Multi-District Securities Litigation and other similar matters, and likely will continue for many more years.

7. Instead, consistent with guidance from the Court at the last hearing, Defendants have proposed that Counts IV-VI should only be considered at this time to the extent that the issues raised are specifically related to the Trust Preferred Securities. For example, Plaintiffs' contention that communications between the Office of Thrift Supervision and WMI about the Trust Preferred Securities – the so-called "Secret Side Letters" – perpetrated a fraud on them is an allegation that should be addressed now. But the Court should not consider at this time general allegations about the bank's lending and appraisal practices – allegations which the Plaintiffs have parroted (often out of context) from congressional reports, regulators and other claimants.

### The Trial Should Occur in Conjunction with Confirmation

8. Plaintiffs and Defendants both agree that certain issues in the Plaintiffs' Adversary Complaint should be resolved before the Debtors' proposed plan of reorganization (the "Plan") is confirmed. But in paragraph 14 of the Proposed Order, Plaintiffs and Defendants disagree over whether those issues should be resolved in a separate trial or in conjunction with the confirmation hearing itself.

---

[4] *See, e.g.*, Adv. Comp. ¶ 110, relying on findings of fact from the Senate Permanent Subcommittee on Investigations for the allegation that "[i]ncreasingly risky and shoddy lending practices resulted in a business model that was not only unsafe and unsound, but also rife with fraud."

4

9. If not resolved sooner on a dispositive motion, the allegations of the Adversary Complaint that are relevant to confirmation, including the issue of ownership of the Trust Preferred Securities, should be adjudicated at the confirmation hearing itself, rather than in a separate proceeding. There is nothing so remarkable about the Trust Preferred Securities, or the allegations of the Adversary Complaint, that makes litigation of these issues separate from the confirmation hearing necessary or advisable.

10. Plaintiffs argue that Bankruptcy Rule 7001 requires their declaratory judgment action to be heard as an adversary proceeding rather than as a contested matter. All Plaintiffs have done, however, is recast their objections to the Plan in the form of a declaratory judgment action. For example, in Count V Plaintiffs seek a declaration that "WMI is ineligible for equitable relief necessary to consummate the purported Conditional Exchange" and thus consummate the Plan. Adv. Comp. ¶ 249. Rule 7001(7) makes clear that, where a chapter 11 plan provides for equitable relief, the matter does not need to be styled as an adversary proceeding. Although cloaked in the form of a separate lawsuit, the Adversary Complaint is no different in substance than an objection to the Global Settlement Agreement and to confirmation of the Plan. Furthermore, if the Court is being asked to evaluate whether WMI is deserving of equitable relief, it should do so on the full record of the confirmation hearing where it will have the benefit of all the facts and circumstances relating to, among things, whether the Plan has been proposed in good faith. 11 U.S.C. § 1129(a)(3).

## Avoid Duplication in the Depositions of Witnesses

11. In paragraph 10 of the Proposed Order, Plaintiffs and Defendants disagree over whether witnesses with testimony relevant both to the Trust Preferred Securities and other confirmation issues may be deposed multiple times. When this issue was raised at the August

5

10, 2010 hearing, the Court stated that it "agree[d] with the debtors that any depositions should be done in a coordinated fashion with depositions noticed by other confirmation objectors." (Tr. 88:14-17). One of the principal objectives of such coordination is to prevent the same witness from having to sit for multiple depositions in connection with confirmation.

12. The Defendants have proposed language that would preclude multiple depositions, and have offered to move forward on depositions regardless of the timing of disclosure statement approval, but Plaintiffs refused any compromise on this issue. WMI's position is that all depositions necessary for those portion of the Adversary Complaint that are not stayed, should go forward promptly, subject to appropriate coordination and the general rule that witnesses will be deposed only once.

## Conclusion

13. For the foregoing reasons, WMI respectfully requests that the Court accept the Defendants' position as to each of the disputed issues in the proposed Scheduling Order.

Dated: August 24, 2010
       Wilmington, Delaware

Respectfully submitted,

/s/ Mark D. Collins

Mark D. Collins (No. 2981)
Chun I. Jang (No. 4790)
Julie A. Finocchiaro (No. 5303)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

– and –

Marcia L. Goldstein, Esq.
Brian S. Rosen, Esq.
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for the Debtors and Debtors in Possession*