and one or more United States persons have authority to control all substantial decisions of the trust.

In the case where the Company, the Property Trustee and the Delaware Trustee wish to enter into one or more agreements supplemental to the Trust Agreement, they may do so without the consent of the holders of the Trust Securities for the following purposes: (i) to evidence the succession of another entity to the Company and the assumption by any such successor of the covenants of the Company contained in the Trust Agreement; (ii) to add to the covenants of the Company for the benefit of the holders of the Trust Securities, or to surrender any right or power conferred upon the Company; (iii) (A) to correct or supplement any provision of the Trust Agreement which may be defective or inconsistent with any other provision therein or (B) to make any other provisions with respect to matters or questions arising under the Trust Agreement, *provided* that any such action taken under this clause (iii) shall not materially adversely affect the interests of the holders of the Trust Securities; or (iv) to cure any ambiguity or correct any manifest error. Any other amendment or agreement supplemental to the Trust Agreement must be in writing and approved by a majority of the holders (by aggregate liquidation preference) of the Trust Securities then outstanding, *provided* that, for the purpose of such approval, any Fixed-to-Floating Rate Company Preferred Securities that are directly or indirectly held or beneficially owned by any member of the WMI Group will be treated as if they were not outstanding.

## Conditional Exchange

Each Trust Security will be exchanged automatically for a like amount of newly issued Fixed-to-Floating Rate Depositary Shares, each representing a 1/1000th interest in one share of Fixed-to-Floating Rate WMI Preferred Stock, if the OTS so directs in writing upon or after the occurrence of an Exchange Event. An *"Exchange Event"* will occur when:

- WMB becomes "undercapitalized" under the OTS' "prompt corrective action" regulations;

- WMB is placed into conservatorship or receivership; or

- the OTS, in its sole discretion, anticipates WMB becoming "undercapitalized" in the near term or takes a supervisory action that limits the payment of dividends by WMB and in connection therewith, directs an exchange.

For purposes of this offering circular, this exchange is referred to as the *"Conditional Exchange"*.

If the OTS so directs following the occurrence of an Exchange Event, each holder of Trust Securities will be unconditionally obligated to surrender to WMI or its agent any certificates representing the Trust Securities owned by such holder, and WMI will be unconditionally obligated to issue to such holder, in exchange for each such Trust Security, a depositary receipt representing a like amount of Fixed-to-Floating Rate Depositary Shares. Any Trust Securities purchased or redeemed by WMI or any of its affiliates prior to the time of exchange will not be deemed outstanding and will not be subject to the Conditional Exchange.

The Conditional Exchange will occur as of 8:00 A.M. New York time, on the date for such exchange set forth in the applicable OTS directive, or, if such date is not set forth in the directive, as of 8:00 A.M., New York time, on the earliest possible date such exchange could occur consistent with the directive, as evidenced by the issuance by WMI of a press release prior to such time. As of the time of exchange, all of the Trust Securities will be transferred to WMI without any further action by WaMu Delaware, all rights of the holders of Trust Securities as holders of beneficial interests in WaMu Delaware will cease, and such persons will be, for all purposes, the holders of Fixed-to-Floating Rate Depositary Shares.

WMI will mail notice of the issuance of an OTS directive after the occurrence of an Exchange Event to each holder of Trust Securities within 30 days, and WMI will deliver (or cause to be delivered) to each such holder depositary receipts for Fixed-to-Floating Rate Depositary Shares upon surrender of the Trust Securities. Until such depositary receipts are delivered or in the event such depositary receipts are not delivered, any certificates previously representing Trust Securities will be deemed for all purposes to represent Fixed-to-Floating Rate Depositary Shares. All corporate authorization necessary for WMI to issue the Fixed-to-Floating Rate Depositary Shares and the Fixed-to-Floating Rate WMI Preferred Stock as of the time of exchange will be completed prior to or upon completion of this Offering. Accordingly, once the OTS directs a Conditional Exchange after the occurrence of an Exchange Event, no action will be required to be taken by holders of Trust Securities, by WMI, by WMB (other than to inform the OTS), by the Company or by WaMu Delaware in order to effect the automatic exchange as of the time of exchange. After the occurrence of the Conditional Exchange, the Trust Securities will be owned by WMI.

Holders of Trust Securities, by purchasing such securities, whether in this Offering or in the secondary market after this Offering, will be deemed to have agreed to be bound by the unconditional obligation to exchange such Trust Securities for Fixed-to-Floating Rate Depositary Shares if the OTS so directs following the occurrence of an Exchange Event. The Trust Agreement provides that the holders of Trust Securities will be unconditionally obligated to surrender such Trust Securities. Prior to issuance of the Trust Securities, WMI will enter into an Exchange Agreement (the "Exchange Agreement") among WMI, WaMu Delaware, WaMu Cayman and Mellon Investor Services LLC, as depositary (the "Depositary"), to implement the Conditional Exchange.

Holders of Trust Securities cannot exchange their Trust Securities for Fixed-to-Floating Rate Depositary Shares voluntarily. Absent an OTS directive after the occurrence of an Exchange Event, no exchange of the Trust Securities for Fixed-to-Floating Rate Depositary Shares will occur. Upon the issuance of an OTS directive on or following the occurrence of an Exchange Event, the Fixed-to-Floating Rate WMI Preferred Stock and the related Fixed-to-Floating Rate Depositary Shares to be issued in the Conditional Exchange will constitute a newly issued series of preferred stock of WMI and will have substantially similar terms and provisions with respect to dividends, liquidation, and redemption as the Fixed-to-Floating Rate Company Preferred Securities, except that the Fixed-to-Floating Rate Depositary Shares:

- will not have the benefit of the covenants, including with respect to any additional taxes, described under "Description of Fixed-to-Floating Rate Company Preferred Securities — Voting Rights and Covenants;"

- will be redeemable prior to the Dividend Payment Date occurring in March 2011 only upon the occurrence of a Regulatory Capital Event; and

- Additional Amounts will not be payable with respect to the Fixed-to-Floating Rate WMI Preferred Stock.

In addition, if WMI fails to pay, or declare and set aside for payment, full dividends on the Fixed-to-Floating Rate WMI Preferred Stock for six Dividend Periods, the authorized number of WMI's directors will increase by two, and the holders of Fixed-to-Floating Rate WMI Preferred Stock, voting together with the holders of any other Voting Parity Stock, including the Fixed Rate WMI Preferred Stock, will have the right to elect two directors in addition to the directors then in office at the next annual meeting of shareholders.

WMI will covenant in the Exchange Agreement in favor of the holders of the Trust Securities and the WaMu Cayman Preferred Securities that, prior to the issuance of the Fixed-to-Floating Rate WMI Preferred Stock upon a Conditional Exchange, WMI will not issue any preferred stock that would rank senior to the Fixed-to-Floating Rate WMI Preferred Stock upon its issuance.

Each share of Fixed-to-Floating Rate WMI Preferred Stock will upon issuance rank at least *pari passu* with the most senior preferred stock of WMI, if any, then outstanding. The Initial Purchasers are under no obligation to and do not intend to make a market in the Fixed-to-Floating Rate Depositary Shares. Absent the occurrence of a Conditional Exchange, holders of Trust Securities will have no dividend, liquidation preference, redemption or other rights with respect to any security of WMI, WMB or University Street.

**Form, Transfer and Book-Entry Procedures**

The Trust Securities will be issued only in book-entry form. See "Book-Entry Issuance."

**Payments and Paying Agent**

Payments in respect of the Trust Securities in the form of Global Securities will be made to the address of the holder entitled thereto as such address will appear on the register. The DTC nominee (the *"Nominee"*) will be the registered holder of the Trust Securities in the form of Global Securities. Payments made to the order of the Nominee will be made by wire transfer to DTC and DTC will credit the relevant accounts of the DTC Participants. In the event that the circumstances described under "Book-Entry Issuance — Form, Denomination, Transfer and Book-Entry Procedures — Special Situations When the Global Security Will Be Terminated" apply and the Trust Securities are not in the form of Global Securities, payments in respect of the Trust Securities will be made by wire transfer, direct deposit or check mailed to the address of the holder entitled thereto as such address will appear on the securities register. The paying agent (the *"Paying Agent"*) for the Trust Securities initially will be Wilmington Trust Company (in its individual capacity, *"WTC"*) and any co-paying agent will be appointed by WaMu Delaware. The Paying Agent and any co-paying agent (collectively, the *"Paying Agents"*) will be permitted to resign as Paying Agents upon 30 days' written notice to the Company. In the event that WTC will no longer be the Paying Agent, the Company will appoint a successor to act as Paying Agent.

**Registrar and Transfer Agent**

WTC will act as Registrar (the *"Registrar"*) and Transfer Agent (the *"Transfer Agent"*) for the Trust Securities.

Registration of transfers of Trust Securities will be effected without charge by or on behalf of WaMu Delaware, but the Property Trustee or the Registrar and Transfer Agent will require, prior to registration, payment (or the giving of such indemnity as the Registrar and Transfer Agent may require) of a sum sufficient to cover any tax or other governmental charges that may be imposed in connection with any transfer of definitive Trust Securities. WaMu Delaware will not be required to register or cause to be registered the transfer of definitive Trust Securities during the period of 15 days before the day of selection for redemption of such Trust Securities and ending at the close of business on the day of mailing of the notice of redemption for the Trust Securities that have been called for redemption.

**Expenses of the Paying Agent, Transfer Agent and Registrar**

If the Paying Agent, Transfer Agent or Registrar incurs fees, charges or expenses, for which it is not otherwise liable under the Agency Agreement, to be entered into on or before the closing date, among WTC, as Registrar,Transfer Agent and Paying Agent, and WaMu Delaware acting through the Property Trustee at the request of a holder of Trust Securities or other person, such holder or other person will be liable for such fees, charges or expenses.

**Notices**

Notices to the holders of the Trust Securities will be given by delivery of the relevant notice to DTC and any other relevant securities clearing system identified in writing by WaMu Delaware for communication by each of them to entitled participants.

**Listing**

The Trust Securities will not be listed on any securities exchange or automated dealer quotation system.

**Governing Law**

The Trust Agreement and the Trust Securities will be governed by and construed in accordance with the laws of the State of Delaware.

**Restrictions on Transfer**

For information regarding restrictions on ownership and transfer of the Trust Securities, see "Notice to Investors."

## DESCRIPTION OF THE FIXED-TO-FLOATING RATE COMPANY PREFERRED SECURITIES

*The following summary describes the material terms and provisions of the Fixed-to-Floating Rate Company Preferred Securities. This description is qualified in its entirety by reference to the terms and provisions of the LLC Agreement. A copy of the LLC Agreement may be obtained upon request to WMI.*

### General

The Fixed-to-Floating Rate Perpetual Non-cumulative Preferred Securities, liquidation preference $1,000 per security and $1,250,000,000 in the aggregate (the *"Fixed-to-Floating Rate Company Preferred Securities"*), are limited liability company interests in the Company, the terms of which are set forth in the LLC Agreement. When issued, the Fixed-to-Floating Rate Company Preferred Securities will be validly issued, and no additional payments will be required pursuant to the LLC Act for such securities to represent limited liability company interests in the Company. The holders of the Fixed-to-Floating Rate Company Preferred Securities will have no pre-emptive rights with respect to any limited liability company interests in the Company or any other securities of the Company convertible into or carrying rights or options to purchase any such securities. The Fixed-to-Floating Rate Company Preferred Securities are perpetual and will not be convertible into Company Common Securities or any other class or series of limited liability company interests in the Company and will not be subject to any sinking fund or other obligation of the Company for their repurchase or retirement.

The Fixed-to-Floating Rate Company Preferred Securities will be issued in certificated form only.

The Fixed-to-Floating Rate Company Preferred Securities are not obligations of, or guaranteed by, WMI, WMB, Marion, University Street or any of their respective affiliates or any other entity. The Fixed-to-Floating Rate Company Preferred Securities solely represent an interest in the Company and do not represent an interest in any of the foregoing entities.

The Fixed-to-Floating Rate Company Preferred Securities are not insured or guaranteed by the FDIC.

### Ranking

The Fixed-to-Floating Rate Company Preferred Securities will rank senior to the Company Common Securities and will rank *pari passu* with the Company's other preferred securities, including the Fixed Rate Company Preferred Securities, in terms of payment of dividends and on liquidation.

The Company's Board of Managers has the power to create and issue Junior Equity Securities and additional equity securities ranking *pari passu* with the Fixed-to-Floating Rate Company Preferred Securities in terms of payment of dividends or on liquidation or redemption (any such securities together with the Fixed Rate Company Preferred Securities, the *"Parity Equity Securities"*) without the consent of the holders of the Company Preferred Securities, *provided*, that (i) after giving effect to the issuance of any Parity Equity Securities, the *pro forma* net book value of the Company's assets (after giving effect to any assets acquired by the Company in connection with the issuance of such Parity Equity Securities *("New Assets")*) will equal or exceed 1.5 times the sum of the aggregate liquidation preference of the preferred securities of the Company then outstanding and any such Parity Equity Securities that the Company proposes to issue, (ii) after giving effect to such issuance, the Company's *pro forma* FFO for the four fiscal quarters beginning with the fiscal quarter in which such Parity Equity Securities are proposed to be issued (calculated (A) assuming that such proposed Parity Equity Securities are issued and that, if outstanding or proposed new Parity Equity Securities bear dividends based on a floating rate, the applicable dividend rate will not change during such four

67

fiscal quarters from the rate in effect on the applicable date of determination and (B) as adjusted to reflect any New Assets) equals or exceeds 150% of the amount that would be required to pay full annual dividends on all preferred securities of the Company then outstanding and any such Parity Equity Securities that the Company proposes to issue and (iii) the Company is not otherwise in breach of any of its covenants set forth in the LLC Agreement. Funds from operations, or *"FFO"*, means net income (computed in accordance with GAAP), excluding gains (or losses) from sales of property, *plus* depreciation and amortization, and after adjustments for unconsolidated partnerships and joint ventures. Adjustments for unconsolidated partnerships and joint ventures will be calculated to reflect funds from operations on the same basis.

The LLC Agreement provides that, so long as any Fixed-to-Floating Rate Company Preferred Securities remain outstanding, the Company may not, except with the consent of at least two-thirds of the Fixed Rate Company Preferred Securities and the Fixed-to-Floating Rate Company Preferred Securities, voting together as a single class, issue Senior Equity Securities.

## Dividends

For purposes of this offering circular, we refer to distributions payable by the Company on its securities as "dividends". Dividends on the Fixed-to-Floating Rate Company Preferred Securities will be payable if, when and as declared by the Company's Board of Managers out of its legally available funds, on a non-cumulative basis at an annual rate of 6.534% until March 15, 2011 and 3-month USD LIBOR plus 1.4825% for the Dividend Period starting in March 2011 and each Dividend Period thereafter, in each case, on the liquidation preference thereof, which is $1,000 per security.

Dividends on the Fixed-to-Floating Rate Company Preferred Securities, if, when and as declared by the Company's Board of Managers, will be payable quarterly in arrears on March 15, June 15, September 15 and December 15 of each year, commencing on June 15, 2006, or, if any such day is not a Business Day, the next Business Day (each such date, a *"Dividend Payment Date"*). Each period from and including a Dividend Payment Date (or the date of issuance of the Fixed-to-Floating Rate Company Preferred Securities) to but excluding the following Dividend Payment Date is referred to herein as a *"Dividend Period"*, except that the Dividend Period for the Dividend Payment Date in June 2011 shall commence on March 15, 2011. Dividends on the Fixed-to-Floating Rate Company Preferred Securities will accrue as follows: (i) from March 7, 2006 in the case of the Fixed-to-Floating Rate Company Preferred Securities offered hereby and (ii) if additional Fixed-to-Floating Rate Company Preferred Securities are issued at a future date, from (A) March 7, 2006 if such date is before June 15, 2006, (B) the date of issue if such date is a Dividend Payment Date, and (C) the immediately preceding Dividend Payment Date or the date of issue (as determined by the Company) if the date of issue is other than a Dividend Payment Date and is after June 15, 2006. The record date for the payment of dividends, if declared, will be the first day of the month in which the relevant dividend payment occurs or, if any such day is not a Business Day, the next day that is a Business Day. Dividends payable on the Fixed-to-Floating Rate Company Preferred Securities for any period greater or less than a full Dividend Period will be computed on the basis of (x) for any Dividend Period ending prior to the Dividend Payment Date in March 2011, twelve 30-day months, a 360-day year, and the actual number of days elapsed in the period, and (y) for any Dividend Period thereafter, the actual number of days in the relevant period divided by 360. No interest will be paid on any dividend payment of Fixed-to-Floating Rate Company Preferred Securities, Trust Securities or Fixed-to-Floating Rate Depositary Shares.

*"Business Day"* means any day other than a Saturday, Sunday or any other day on which banks in New York, New York, London, England, Seattle, Washington or Wilmington, Delaware are generally required or authorized by law to be closed.

"*3-Month USD LIBOR*" means, with respect to any Dividend Period, a rate determined on the basis of the offered rates for three-month U.S. dollar deposits of not less than a principal amount equal to that which is representative for a single transaction in such market at such time, commencing on the first day of such Dividend Period, which appears on US LIBOR Telerate Page 3750 as of approximately 11:00 a.m., London time, on the LIBOR Determination Date for such Dividend Period. If on any LIBOR Determination Date no rate appears on US LIBOR Telerate Page 3750 as of approximately 11:00 a.m., London time, the Company or another affiliate of WMI on behalf of the Company will on such LIBOR Determination Date request four major reference banks in the London interbank market selected by the Company to provide the Company with a quotation of the rate at which three-month deposits in U.S. dollars, commencing on the first day of such Dividend Period, are offered by them to prime banks in the London interbank market as of approximately 11:00 a.m., London time, on such LIBOR Determination Date and in a principal amount equal to that which is representative for a single transaction in such market at such time. If at least two such quotations are provided, 3-Month USD LIBOR for such Dividend Period will be the arithmetic mean (rounded upward if necessary to the nearest .00001 of 1%) of such quotations as calculated by the Company. If fewer than two quotations are provided, 3-Month USD LIBOR for such Dividend Period will be the arithmetic mean (rounded upward if necessary to the nearest .00001 of 1%) of the rates quoted as of approximately 11:00 a.m., New York time, on the first day of such Dividend Period by three major banks in New York, New York selected by the Company for loans in U.S. dollars to leading European banks, for a three-month period commencing on the first day of such Dividend Period and in a principal amount of not less than $1,000,000.

"*LIBOR Business Day*" means any day on which commercial banks are open for general business (including dealings in deposits in U.S. dollars) in London.

"*LIBOR Determination Date*" means, as to each Dividend Period, the date that is two LIBOR Business Days prior to the first day of such Dividend Period.

"*US LIBOR Telerate Page 3750*" means the display page of Moneyline's Telerate Service designated as 3750 (or such other page as may replace that page on that service, or such other service as may be nominated as the information vendor, for the purpose of displaying rates comparable to 3-month USD LIBOR).

Dividends on the Fixed-to-Floating Rate Company Preferred Securities are non-cumulative. If the Company's Board of Managers does not declare a dividend on the Fixed-to-Floating Rate Company Preferred Securities or declares less than a full dividend in respect of any Dividend Period, holders of the Fixed-to-Floating Rate Company Preferred Securities will have no right to receive any dividend or a full dividend, as the case may be, for that Dividend Period, and the Company will have no obligation to pay any dividends or full dividends on the Fixed-to-Floating Rate Company Preferred Securities for that Dividend Period, whether or not dividends are declared and paid for any future Dividend Period with respect to any of the Fixed-to-Floating Rate Company Preferred Securities, the Fixed Rate Company Preferred Securities, any other series of Parity Equity Securities, any Junior Equity Securities or the Company Common Securities.

**Restrictions on Dividends**

During a Dividend Period, no dividends will be declared or paid on any securities of the Company ranking junior to the Company Preferred Securities in respect of payments of dividends

or on liquidation *("Junior Equity Securities")*, other than dividends payable in Junior Equity Securities, and no Junior Equity Securities will be repurchased, redeemed or otherwise acquired for consideration, directly or indirectly (other than as a result of reclassification of Junior Equity Securities for or into other Junior Equity Securities, or the exchange or conversion of Junior Equity Securities for or into other Junior Equity Securities), unless dividends for such Dividend Period on all outstanding Company Preferred Securities have been declared and paid in full, or declared and set aside for payment, as the case may be.

When dividends are not paid in full on, or a sum sufficient for such full payment is not set apart for, the Fixed-to-Floating Rate Company Preferred Securities, the Fixed Rate Company Preferred Securities and any other Parity Equity Securities, if any, all dividends declared upon the Fixed-to-Floating Rate Company Preferred Securities, the Fixed Rate Company Preferred Securities and any other Parity Equity Securities, if any, will be declared *pro rata*. Thus, the amount of dividends declared per Fixed-to-Floating Rate Company Preferred Security, the Fixed Rate Company Preferred Securities and such other Parity Equity Securities, if any, will in all cases bear to each other the same ratio that (i) full dividends per Fixed-to-Floating Rate Company Preferred Security for the then-current Dividend Period, which will not include any accumulation in respect of unpaid dividends for prior Dividend Periods, and (ii) full dividends, which will not include any accumulation in respect of unpaid dividends for prior Dividend Periods, on such other capital securities, bear to each other.

Under certain circumstances, if the OTS determines that WMB is operating with an insufficient level of capital or is engaged in, or its relationship with the Company results in, an unsafe and unsound banking practice, the OTS could restrict the Company's ability to pay dividends, including dividends to the holders of the Fixed-to-Floating Rate Company Preferred Securities. See "The Company — Business of the Company."

### Restrictions on Dividends by WMI

WMI will covenant in the Exchange Agreement for the benefit of the holders of the Trust Securities and the WaMu Cayman Preferred Securities that if full dividends on (i) the Company Preferred Securities, (ii) the Trust Securities or (iii) the WaMu Cayman Preferred Securities for any Dividend Period have not been declared and paid, WMI will not declare or pay dividends with respect to, or redeem, purchase or acquire any of its equity capital securities during the next succeeding Dividend Period, except dividends in connection with a shareholders' rights plan, if any, or dividends in connection with benefits plans.

### Redemption

The Fixed-to-Floating Rate Company Preferred Securities will not be redeemable at the option of the holders thereof. Subject to a covenant in favor of certain of WMI's debtholders limiting WMI's and its subsidiaries' right to repurchase or redeem the Fixed-to-Floating Rate Company Preferred Securities or the Trust Securities (among others) as described under "Description of the Trust Securities — Restriction on Redemption or Repurchases", and subject to the Company having received the prior approval of the OTS for any proposed redemption of Fixed-to-Floating Rate Company Preferred Securities, the Company may, at its option redeem the Fixed-to-Floating Rate Company Preferred Securities:

- in whole but not in part, prior to the Dividend Payment Date in March, 2011, upon the occurrence of a Tax Event, an Investment Company Act Event or a Regulatory Capital Event, at a cash redemption price equal to the greater of:

  (i) $1,000 per Fixed-to-Floating Rate Company Preferred Security, or

  (ii) the sum of present values of $1,000 per Fixed-to-Floating Rate Company Preferred Security and all undeclared dividends for the Dividend Period from the redemption

date to and including the Dividend Payment Date in March 2011, discounted to the redemption date on a quarterly basis (assuming a 360-day year consisting of twelve 30-day months) at the Treasury Rate, as calculated by an Independent Investment Banker, *plus* 0.30%,

*plus* any declared but unpaid dividends to the redemption date; or

- in whole or in part, on or after the Dividend Payment Date in March 2011, at a cash redemption price of $1,000 per Fixed-to-Floating Rate Company Preferred Security, plus any declared and unpaid dividends to the redemption date, without accumulation of any undeclared dividends.

The Fixed Rate Company Preferred Securities will be separately redeemable on similar terms and conditions.

*"Comparable Treasury Issue"* means the United States Treasury security selected by the Independent Investment Banker as having a maturity comparable to the term remaining to the Dividend Payment Date in March 2011 that would be utilized, at the time of selection and in accordance with customary financial practice, in pricing new issues of perpetual preferred securities having similar terms as the Fixed-to-Floating Rate Company Preferred Securities with respect to the payment of dividends and distributions of assets upon liquidation, dissolution or winding up of the issuer of such preferred stock.

*"Comparable Treasury Price"* means with respect to any redemption date for the Fixed-to-Floating Rate Company Preferred Securities the average of the Reference Treasury Dealer Quotations for such redemption date, after excluding the highest and lowest of such Reference Treasury Dealer Quotations, or if the Independent Investment Banker obtains fewer than five such Reference Treasury Dealer Quotations, the average of all such quotations.

*"Independent Investment Banker"* means an independent investment banking institution of national standing appointed by the Company.

An *"Investment Company Act Event"* occurs when the Company determines, based upon receipt of an opinion of counsel, that there is a significant risk that the Company, the Asset Trust or any other Asset Subsidiary, WaMu Delaware or WaMu Cayman is or will be considered an "investment company" that is required to be registered under the Investment Company Act, as a result of a change in applicable laws, regulations or related interpretations.

*"Reference Treasury Dealer"* means each of three primary U.S. government securities dealers (each a *"Primary Treasury Dealer"*), as specified by the Company; provided that if any Primary Treasury Dealer as specified by the Company ceases to be a Primary Treasury Dealer, the Company will substitute for such Primary Treasury Dealer another Primary Treasury Dealer and if the Company fails to select a substitute within a reasonable period of time, then the substitute will be a Primary Treasury Dealer selected by the Independent Investment Banker after consultation with the Company.

*"Reference Treasury Dealer Quotations"* means, with respect to the Reference Treasury Dealer and any redemption date, the average, as determined by the Independent Investment Banker, of the bid and asked prices for the Comparable Treasury Issue (expressed, in each case, as a percentage of its principal amount) quoted in writing to the Independent Investment Banker by such Reference Treasury Dealer at 5:00 p.m., New York City time, on the third Business Day preceding such redemption date.

A *"Regulatory Capital Event"* occurs when the Company determines, based upon receipt of an opinion of counsel, that there is a significant risk that the Company Preferred Securities will no longer constitute core capital of WMB for purposes of the capital adequacy regulations issued by the OTS as a result of a change in applicable laws, regulations or related interpretations after issuance of the Fixed Rate Company Preferred Securities.

A *"Tax Event"* occurs when the Company determines, based upon receipt of an opinion of counsel, that there is a significant risk that (i) the Company will be required by a relevant jurisdiction to withhold amounts from payments to the holders of any Company Preferred Securities for taxes or any other governmental charges, (ii) WaMu Delaware will be required by a relevant jurisdiction to withhold amounts from payments to the holders of the Trust Securities for taxes or any other governmental charges, (iii) WaMu Cayman will be required by a relevant jurisdiction to withhold amounts from payments to the holders of the WaMu Cayman Preferred Securities for taxes or any other governmental charges, (iv) WaMu Cayman is or will be treated as engaged in a trade or business within the United States for United States Federal income tax purposes or (v) the Company is or will be treated as a publicly traded partnership taxable as a corporation or as an association taxable as a corporation for United States Federal income tax purposes.

*"Treasury Rate"* means the rate per year equal to the quarterly equivalent yield to maturity of the Comparable Treasury Issue, calculated using a price for the Comparable Treasury Issue (expressed as a percentage of its principal amount) equal to the Comparable Treasury Price for such redemption date. The Treasury Rate will be calculated on the third Business Day preceding the redemption date.

A notice of redemption of the Fixed-to-Floating Rate Company Preferred Securities will be mailed by first class mail, postage prepaid, addressed to the holders of record of the securities to be redeemed at their respective last addresses appearing on the books and records of the Company. Such mailing will be at least 35 days but not more than 65 days before the date fixed for redemption.

The Company's ability to redeem any Fixed-to-Floating Rate Company Preferred Security is subject to compliance with applicable regulatory requirements, including the prior approval of the OTS, relating to the redemption of capital instruments. Under current policies of the OTS, such approval would be granted only if the redemption were to be made out of the proceeds of the issuance of another capital instrument or if the OTS were to determine that the conditions and circumstances of WMB warrant the reduction of a source of permanent capital.

The Fixed Rate Company Preferred Securities are subject to their own redemption provisions and may be redeemed separately.

### Restrictions on Redemption or Repurchases

At or prior to issuance of the Fixed-to-Floating Rate Company Preferred Securities and the Trust Securities, WMI will enter into the Replacement Capital Covenant described under "Description of the Trust Securities — Restriction on Redemption or Repurchases," limiting WMI's and its subsidiaries, including the Company's, ability to redeem or repurchase certain securities, including the Fixed-to-Floating Rate Company Preferred Securities.

### Rights upon Liquidation

In the event the Company voluntarily or involuntarily dissolves and winds up, the holders of Fixed-to-Floating Rate Company Preferred Securities at the time outstanding will be entitled to receive liquidating dividends in the amount of $1,000 per security, *plus* any authorized, declared, but unpaid dividends to the date of liquidation, out of the Company's assets legally available for distribution, before any distribution of assets is made to holders of Junior Equity Securities and subject to the rights of general creditors.

After payment of the full amount of the liquidating distributions to which they are entitled, the holders of Fixed-to-Floating Rate Company Preferred Securities will have no right or claim to any of the Company's remaining assets. In the event that, upon any such voluntary or involuntary dissolution and winding up, the available assets are insufficient to pay the amount of the

72

liquidation distributions on all outstanding Fixed-to-Floating Rate Company Preferred Securities and the corresponding amounts payable on the Fixed Rate Company Preferred Securities and any other Parity Equity Securities, if any, then the holders of Fixed-to-Floating Rate Company Preferred Securities, the Fixed Rate Company Preferred Securities and any other Parity Equity Securities, if any, will share ratably in any such distribution of assets in proportion to the full liquidating distributions to which they would otherwise be respectively entitled.

For such purposes, the Company's consolidation or merger with or into any other entity, the consolidation or merger of any other entity with or into the Company, or the sale of all or substantially all of the Company's property or business, will not be deemed to constitute the Company's dissolution and winding up.

## Voting Rights and Covenants

Except as set forth below, holders of Fixed-to-Floating Rate Company Preferred Securities will not have voting rights. The LLC Agreement provides that, so long as any Fixed-to-Floating Rate Company Preferred Securities are outstanding, the Company will not, except with the consent or affirmative vote of the holders of at least two-thirds of the Fixed-to-Floating Rate Company Preferred Securities and the Fixed Rate Company Preferred Securities (provided that for the purpose of such approval, a like amount of Company Preferred Securities as any Trust Securities or WaMu Cayman Preferred Securities that are directly or indirectly held or beneficially owned by any member of WMI Group will be treated as if they were not outstanding), voting together as a single class:

- effect a consolidation, merger or share exchange with or into another entity other than an entity controlled by, or under common control with, WMI;

- issue any Senior Equity Securities;

- incur any indebtedness for borrowed money;

- pay dividends on the Company's Junior Equity Securities unless the Company's FFO for the four prior fiscal quarters, equals or exceeds 150% of the amount that would be required to pay full annual dividends on all outstanding Company Preferred Securities, as well as any other Parity Equity Securities;

- amend or otherwise change the requirement that the Company make investments and distributions with the proceeds of the Company's assets such that the Company's FFO over any period of four fiscal quarters will equal or exceed 150% of the amount that would be required to pay full annual dividends on all outstanding Company Preferred Securities, as well as any other Parity Equity Securities;

- issue any additional Company Common Securities to any person, other than University Street or another affiliate of WMI;

- amend or otherwise change the terms of any Asset Documentation in a manner which is materially adverse to WaMu Delaware, WaMu Cayman, or the holders of the Trust Securities or the WaMu Cayman Preferred Securities;

- remove or cause to be removed, as applicable, "Washington Mutual" from the Company's, WaMu Delaware's or WaMu Cayman's name unless the name of WMI changes and the Company makes a change to the Company's, WaMu Delaware's and WaMu Cayman's name to be consistent with the new group name;

- take or fail to take any action that would cause the Company to fail to be treated as a partnership (other than a publicly traded partnership taxable as a corporation) for United States Federal income tax purposes;

- amend or otherwise change the requirement that the Company not engage in a U.S. trade or business for United States Federal income tax purposes;

- amend or otherwise change the requirement that the Company hold only assets that qualify for the portfolio interest exemption under the Code and are exempt from United States Federal withholding taxes;

- amend or otherwise change the requirement that the Company manage its affairs such that its income does not constitute "unrelated business taxable income" for United States Federal income tax purposes; or

- amend its Certificate of Formation or LLC Agreement in a manner that materially and adversely affects the terms of the Company Preferred Securities, *provided, however*, that, if such amendment affects only one class of Company Preferred Securities, such amendment will require only the class vote of such class (voting separately and not as a single class with the other class) and, if such amendment affects both classes but affects them differently, then such amendment will require a class vote of each class of Company Preferred Securities, each voting separately.

In addition, the LLC Agreement provides that, except with the consent of all of the Company's managers, including its Independent Manager, the Company will not:

- terminate, amend or otherwise change any Asset Documentation; or

- effect a consolidation, merger or share exchange (excluding the Conditional Exchange) that is not tax-free to the holders of the Fixed-to-Floating Rate Company Preferred Securities, and the related Trust Securities, unless such transaction was approved by the consent or affirmative vote of the holders of at least two-thirds of the Fixed-to-Floating Rate Company Preferred Securities and Fixed Rate Company Preferred Securities, voting together as a single class.

In addition, the LLC Agreement will provide that if (i) the Company fails to pay full dividends on the Company Preferred Securities on any Dividend Payment Date, (ii) WaMu Delaware fails to pass through full dividends paid by the Company on the Fixed-to-Floating Rate Company Preferred Securities to the holders of the Trust Securities on any Dividend Payment Date or (iii) a Bankruptcy Event occurs, the holders of the Fixed-to-Floating Rate Company Preferred Securities and the Fixed Rate Company Preferred Securities, voting together as a single class, by majority vote, are entitled to remove the initial or any succeeding Independent Manager and to fill the vacancy created by such removal or any other vacancy existing in the office of the Independent Manager.

The LLC Agreement requires that, in assessing the benefits to the Company of any proposed action requiring his or her consent, the Company's Independent Manager take into account the interests of holders of both Company Common Securities and the Company Preferred Securities. The LLC Agreement provides that in considering the interests of the holders of the Company Preferred Securities, the Company's Independent Manager owes the same duties to such holders which the Independent Manager owes to the holders of Company Common Securities.

As a condition to effecting any consolidation, merger or share exchange described above, the Company will mail to the holders of record of the Fixed-to-Floating Rate Company Preferred Securities a notice of such consolidation, merger or share exchange. The notice will be mailed at least 15 days prior to such transaction becoming effective and will contain a description of such transaction together with a certificate of one of the Company's officers stating that such transaction complies with the requirements set forth in the LLC Agreement and that all conditions precedent provided therein relating to such transaction have been fulfilled.

As described under "Description of the Trust Securities — Voting Rights," each holder of Trust Securities will have the right to direct the manner in which Property Trustee on behalf of WaMu Delaware exercises its voting rights as to a like amount of Fixed-to-Floating Rate Company Preferred Securities held by WaMu Delaware with respect to any of the matters on which a holder of Fixed-to-Floating Rate Company Preferred Securities is entitled to vote.

WMI's articles of incorporation do not contain similar covenants regarding the Fixed-to-Floating Rate WMI Preferred Stock following an exchange of the Trust Securities. Therefore, following a Conditional Exchange, holders of the Fixed-to-Floating Rate Depositary Shares would no longer have any voting rights, except as provided by Washington law or in connection with the right to elect directors if dividends are skipped or not paid in full. See below under "Description of the Fixed-to-Floating Rate WMI Preferred Stock — Voting Rights."

## Additional Amounts

If the Company or WaMu Delaware is required to pay any Additional Taxes as a result of an Additional Tax Event, the Company will pay as additional amounts on the Fixed-to-Floating Rate Company Preferred Securities such amounts as will be required so that dividends on the Fixed-to-Floating Rate Company Preferred Securities or the Trust Securities, as applicable, will not be reduced as a result of any such Additional Taxes *("Additional Amounts")*.

*"Additional Taxes"* means the sum of any additional taxes, duties and other governmental charges to which a WaMu Delaware has become subject from time to time as a result of an Additional Tax Event.

An *"Additional Tax Event"* means the determination by the Company, based upon receipt of an opinion of counsel, rendered by a law firm experienced in such matters, in form and substance reasonably satisfactory to the Company and WMI, to the effect that, as a result of any amendment to, or change (including any announced proposed change) in, the laws (or any regulations thereunder) of the United States or of any political subdivision or taxing authority thereof or therein, or as a result of any official administrative pronouncement or judicial decision interpreting or applying such laws or regulations, which amendment or change is effective or which proposed change, pronouncement or decision is announced on or after the date of issuance of the Trust Securities, there is a significant risk that (i) the Company or WaMu Delaware is, or will be within 90 days of the date of such opinion of counsel, required by a relevant jurisdiction to withhold amounts from payments to the holders of the Fixed-to-Floating Rate Company Preferred Securities or Trust Securities, respectively, for any taxes, duties and other governmental charges, (ii) WaMu Delaware is, or will be within 90 days of the date of such opinion of counsel, subject to United States Federal income tax with respect to income received or accrued on the like amount of Fixed-to-Floating Rate Company Preferred Securities held by it or (iii) WaMu Delaware is, or will be within 90 days of the date of such opinion of counsel, subject to more than a *de minimis* amount of other taxes, duties or other governmental charges.

## Amendments and Termination of the LLC Agreement

University Street may, at any time and from time to time, without the consent of the holders of the Fixed-to-Floating Rate Company Preferred Securities, amend the LLC Agreement: (i) (A) to correct or supplement any provision in the LLC Agreement that may be defective or inconsistent with any other provision therein, or (B) to make any other provisions with respect to matters or questions arising under the LLC Agreement, *provided*, that any such action taken under this clause (x) will not materially adversely affect the interests of the holders of Fixed-to-Floating Rate Company Preferred Securities, as set forth in an officer's certificate; or (y) will cure any ambiguity or inconsistency or correct any manifest error. Any other amendment of the LLC Agreement must be approved by vote of holders of two-thirds (by aggregate liquidation preference) of the Fixed-to-Floating Rate Company Preferred Securities and Fixed Rate Company Preferred Securities, voting

together as a single class (see "— Voting Rights and Covenants"); *provided* that, for the purpose of such approval, a like amount of Company Preferred Securities as any Trust Securities or WaMu Cayman Preferred Securities that are directly or indirectly held or beneficially owned by any member of WMI Group will be treated as if they were not outstanding. The Company will notify the Paying Agents and the holders of the Trust Securities of any such amendment of the LLC Agreement within a reasonable period of time.

The LLC Agreement will terminate upon the termination of the Company under the LLC Act.

**Governing Law**

The LLC Agreement and the Fixed-to-Floating Rate Company Preferred Securities will be governed by, and construed in accordance with, the laws of the State of Delaware.

## DESCRIPTION OF OTHER COMPANY SECURITIES

*The following summary of the terms of the other Company securities does not purport to be complete and is subject in all respects to the applicable provisions of the LLC Act and the LLC Agreement. A copy of the LLC Agreement may be obtained upon request to WMI.*

### Common Securities

#### General

Upon consummation of this Offering, the Company will have outstanding 1,000 Company Common Securities, all of which will be held by University Street.

The Company Common Securities may be sold, assigned or otherwise transferred by University Street to another entity, subject to WMI maintaining direct or indirect ownership of 100% of the outstanding Company Common Securities and receipt by University Street of an opinion of counsel to the effect that as a result of any such sale, transfer or assignment the Company will not be taxable as a corporation for United States Federal income tax purposes.

Pursuant to the LLC Agreement, except with the consent or the affirmative vote of the holders of at least two-thirds of the Fixed-to-Floating Rate Company Preferred Securities and the Fixed Rate Company Preferred Securities, voting together as a single class, the Company will not issue any additional Company Common Securities to any person, other than University Street or another affiliate of WMI.

No additional payments will be required pursuant to the LLC Act for Company Common Securities to represent limited liability company interests in the Company upon issuance against full payment of the purchase price therefor.

#### Voting

Subject to the limited rights of the holders of the Fixed-to-Floating Rate Company Preferred Securities, as described under "Description of the Fixed-to-Floating Rate Company Preferred Securities — Voting Rights and Covenants," and corresponding rights of the holders of the Fixed Rate Company Preferred Securities and any voting rights granted to holders of Parity Equity Securities all voting rights of the Company's security holders are vested in the Company Common Securities.

#### Dividends

The Company Common Securities will rank junior to the Company Preferred Securities as to payment of dividends. No dividends will be declared or paid in any Dividend Period on the Company Common Securities, other than dividends payable in Company Common Securities, and no Company Common Securities will be repurchased, redeemed or otherwise acquired for consideration, directly or indirectly (other than as a result of reclassification of Company Common Securities for or into Company Common Securities, or the exchange or conversion of Company Common Securities for or into Company Common Securities), unless dividends in such Dividend Period on all outstanding Company Preferred Securities have been declared and paid in full, or set aside for payment, as the case may be. Pursuant to the LLC Agreement, except with the consent or the affirmative vote of the holders of at least two-thirds of the Fixed-to-Floating Rate Company Preferred Securities and the Fixed Rate Company Preferred Securities, voting together as a single class, the Company will not pay any dividends on the Company Common Securities unless the Company's FFO for the four prior fiscal quarters equals or exceeds 150% of the amount that would be required to pay full annual dividends on all outstanding Company Preferred Securities, as well as on all Parity Equity Securities, if any; *provided*, that, for the purpose of such approval, a like amount of Company Preferred Securities as any Trust Securities

or WaMu Cayman Preferred Securities that are directly or indirectly held or beneficially owned by any member of WMI Group will be treated as if they were not outstanding.

### Liquidation Rights

The Company Common Securities will rank junior to the Company Preferred Securities upon liquidation. In the event of any voluntary or involuntary dissolution of the Company, after all of the Company's debts and liabilities have been satisfied and there have been paid or set aside for the holders of the Company Preferred Securities the full preferential amounts to which such holders are entitled, the holders of Company Common Securities will be entitled to share equally and ratably in any assets remaining.

### Fixed Rate Company Preferred Securities

The Fixed Rate Company Preferred Securities rank *pari passu* with the Fixed-to-Floating Rate Company Preferred Securities offered hereby as to dividends and upon liquidation of the Company. The terms of the Fixed Rate Company Preferred Securities are substantially identical to the Fixed-to-Floating Rate Company Preferred Securities other than with respect to the rate applicable to dividends thereon. The Fixed Rate Company Preferred Securities will, if, when and as declared by the Company's Board of Managers, pay dividends at an annual rate of 7.25%. The Fixed Rate Company Preferred Securities will be held by WaMu Cayman, which will issue a like amount of WaMu Cayman Preferred Securities to investors in a separate offering contemporaneous to the Offering. The Fixed Rate Company Preferred Securities will not be listed on any securities exchange or automated dealer quotation system.

### Ability to Issue Additional Preferred Securities

Pursuant to the LLC Agreement, the Company may not issue any Senior Equity Securities or incur any indebtedness except with the consent or affirmative vote of holders of at least two-thirds of the Fixed-to-Floating Rate Company Preferred Securities and the Fixed Rate Company Preferred Securities, voting together as a single class, as described under ''Description of the Fixed-to-Floating Rate Company Preferred Securities — Voting Rights and Covenants''. The Company may issue additional Parity Equity Securities without the consent of the holders of Company Preferred Securities only if the tests described under ''Description of the Fixed-to-Floating Rate Company Preferred Securities — Ranking'' are satisfied.

## DESCRIPTION OF THE FIXED-TO-FLOATING RATE WMI PREFERRED STOCK

*The following summary describes the material terms and provisions of the Fixed-to-Floating Rate WMI Preferred Stock. The description is qualified in its entirety by reference to the terms and provisions of WMI's articles of incorporation and articles of amendment establishing the Fixed-to-Floating Rate WMI Preferred Stock. A copy of WMI's articles of incorporation and such articles of amendment can be obtained upon request to WMI.*

### General

WMI has authorized and reserved for issuance, upon a Conditional Exchange as described under "Description of the Trust Securities — Conditional Exchange," 1,250 shares of its Series I Perpetual Non-cumulative Fixed-to-Floating Rate Preferred Stock, no par value and liquidation preference $1,000,000 per share (the *"Fixed-to-Floating Rate WMI Preferred Stock"*). The shares of Fixed-to-Floating Rate WMI Preferred Stock, if and when issued upon a Conditional Exchange, will be represented by fixed-to-floating rate depositary shares of WMI (the *"Fixed-to-Floating Rate Depositary Shares"*), each representing 1/1000th of a share of Fixed-to-Floating Rate WMI Preferred Stock. The holders of the Fixed-to-Floating Rate WMI Preferred Stock will have no pre-emptive rights with respect to any shares of WMI's capital stock or any of its other securities convertible into or carrying rights or options to purchase any such capital stock. The Fixed-to-Floating Rate WMI Preferred Stock is perpetual and will not be convertible into shares of WMI common stock or any other class or series of its capital stock, and will not be subject to any sinking fund or other obligation for its repurchase or retirement.

The Fixed-to-Floating Rate WMI Preferred Stock, upon issuance, will have substantially equivalent terms as to dividends, redemption, liquidation preference and redemption preference as the Fixed-to-Floating Rate Company Preferred Securities and Trust Securities for which they may be exchanged, except that the Fixed-to-Floating Rate WMI Preferred Stock: (i) will not have the benefit of the covenants described under "Description of Fixed-to-Floating Rate Company Preferred Securities — Voting Rights and Covenants" or "— Additional Amounts" and (ii) will be redeemable prior to the Dividend Payment Date occurring in March 2011 only upon the occurrence of a Regulatory Capital Event. In addition, if WMI fails to pay, or declare and set aside for payment, full dividends on the Fixed-to-Floating Rate WMI Preferred Stock after its issuance for six Dividend Periods, the authorized number of WMI's directors will increase by two, and the holders of Fixed-to-Floating Rate WMI Preferred Stock, voting together with the holders of any other shares after its issuance of WMI ranking on a parity with the Fixed-to-Floating Rate WMI Preferred Stock as to dividends or upon liquidation, including the Fixed Rate WMI Preferred Stock *("WMI Parity Stock")*, will have the right to elect two directors in addition to the directors then in office at the next annual meeting of shareholders. Accordingly, the Dividend Payment Dates and related Dividend Periods for the Fixed-to-Floating Rate WMI Preferred Stock, once issued, will be the same as the Dividend Payment Dates and related Dividend Periods for the Trust Securities and the Fixed-to-Floating Rate Company Preferred Securities, and the terms *"Dividend Payment Date"* and *"Dividend Period"* have the same meanings as applied to the Fixed-to-Floating Rate WMI Preferred Stock as applied to each of those securities; it being understood that in the event that the Fixed-to-Floating Rate WMI Preferred Stock is not issued prior to March 15, 2011, a Dividend Payment Date shall be deemed to occur on such date with respect to the Fixed-to-Floating Rate WMI Preferred Stock for the purposes of determining the interest rate and the terms of redemption thereof. The term *"Business Day"*, when used with reference to the Fixed-to-Floating Rate WMI Preferred Stock, means any day other than a Saturday, Sunday or any other day on which banks in New York, New York or Seattle, Washington are generally required or authorized by law to be closed.

The Fixed-to-Floating Rate WMI Preferred Stock will be subject to the Replacement Capital Covenant described under "Description of the Trust Securities — Restriction on Redemption or Repurchases" above.

**Ranking**

WMI will covenant in the Exchange Agreement in favor of the holders of the Trust Securities and the WaMu Cayman Preferred Securities, as applicable, that, prior to the issuance of the Fixed-to-Floating Rate WMI Preferred Stock upon a Conditional Exchange, WMI will not issue any preferred stock that would rank senior to the Fixed-to-Floating Rate WMI Preferred Stock or the Fixed Rate WMI Preferred Stock upon its issuance.

The Fixed-to-Floating Rate WMI Preferred Stock will, upon issuance, rank senior to WMI's common stock and at least *pari passu* with the most senior preferred stock of WMI, if any, then outstanding, and to any other preferred stock that WMI may issue in the future. WMI may authorize and issue additional shares of preferred stock that may rank junior to or *pari passu* with the Fixed-to-Floating Rate WMI Preferred Stock as to dividends and upon liquidation, winding up, or dissolution without the consent of the holders of the Fixed-to-Floating Rate WMI Preferred Stock.

**Dividends**

Dividends on the Fixed-to-Floating Rate WMI Preferred Stock will be payable if, when and as declared by WMI's Board of Directors out of its legally available funds, on a non-cumulative basis at an annual rate of 6.534% to, but not including, March 15, 2011 (whether or not a Business Day) and 3-Month USD LIBOR plus 1.4825% thereafter on the liquidation preference thereof, which is $1,000,000 per share, from and including the Dividend Payment Date on or prior to their date of issuance. Dividends on the Fixed-to-Floating Rate WMI Preferred Stock, if, when and as declared by WMI's Board of Directors, will be payable quarterly in arrears on each Dividend Payment Date, commencing on the first such day after issuance of the Fixed-to-Floating Rate WMI Preferred Stock. The record date for the payment of dividends, if declared, will be the first day of the month in which the relevant Dividend Payment Date occurs or, if any such day is not a Business Day, the next day that is a Business Day. Dividends payable on the Fixed-to-Floating Rate WMI Preferred Stock for any period greater or less than a full Dividend Period will be computed on the basis of (i) for any Dividend Periods ending prior to or in March 2011, twelve 30-day months, a 360-day year, and the actual number of days elapsed in the period and (ii) for any Dividend Periods thereafter in the actual numbers elapsed in the relevant dividend period by 360. No interest will be paid on any dividend payment of Fixed-to-Floating Rate WMI Preferred Stock of or Fixed-to-Floating Rate Depositary Shares. Holders of Fixed-to-Floating Rate Depositary Shares will receive 1/1000th of any such dividend payment on the Fixed-to-Floating Rate WMI Preferred Stock.

Dividends on the Fixed-to-Floating Rate WMI Preferred Stock are non-cumulative. If WMI's Board of Directors does not declare a dividend on the Fixed Rate WMI Preferred Stock or declares less than a full dividend in respect of any Dividend Period, the holders of the Fixed-to-Floating Rate WMI Preferred Stock will have no right to receive any dividend or a full dividend, as the case may be, for the Dividend Period, and WMI will have no obligation to pay a dividend or to pay full dividends for that Dividend Period, whether or not dividends are declared and paid for any future Dividend Period with respect to the Fixed-to-Floating Rate WMI Preferred Stock, WMI's common stock or any other class or series of WMI's preferred stock.

**Redemption**

The Fixed-to-Floating Rate WMI Preferred Stock will not be redeemable at the option of the holders thereof. Subject to a covenant in favor of certain of WMI's debtholders limiting WMI's and its subsidiaries' right to repurchase or redeem the Fixed-to-Floating Rate WMI Preferred Stock (among others) as described under "Description of the Trust Securities — Restriction on

Redemption or Repurchases," WMI may, at its option redeem the Fixed-to-Floating Rate WMI Preferred Stock:

- in whole but not in part, prior to the Dividend Payment Date in March 2011, upon the occurrence of a Regulatory Capital Event at a cash redemption price equal to the greater of:

  (i) $1,000,000 per share of Fixed-to-Floating Rate WMI Preferred Stock or

  (ii) the sum of present values of $1,000,000 per share of Fixed-to-Floating Rate WMI Preferred Stock and all undeclared dividends for the Dividend Period from the redemption date to and including the Dividend Payment Date in March 2011, discounted to the redemption date on a quarterly basis (assuming a 360-day year consisting of twelve 30-day months) at the Treasury Rate, as calculated by an Independent Investment Banker, *plus* 0.30%,

  *plus* any declared but unpaid dividends to the redemption date; or

- in whole or in part, on or after the Dividend Payment Date in March 2011, at a cash redemption price of $1,000,000 per share of Fixed-to-Floating Rate WMI Preferred Stock, *plus* any declared and unpaid dividends to the redemption date, without accumulation of any undeclared dividends.

Dividends will cease to accrue on the Fixed-to-Floating Rate WMI Preferred Stock called for redemption on and as of the date fixed for redemption and such Fixed-to-Floating Rate WMI Preferred Stock will be deemed to cease to be outstanding; *provided*, that the redemption price, including any authorized and declared but unpaid dividends for the current Dividend Period, if any, to the date fixed for redemption, has been duly paid or provision has been made for such payment.

Notice of any redemption will be mailed at least 30 days, but not more than 60 days, prior to any redemption date to each holder of the Fixed-to-Floating Rate WMI Preferred Stock to be redeemed at such holder's registered address.

### Replacement

At or prior to issuance of the Fixed-to-Floating Fixed Rate Company Preferred Securities and the Trust Securities, WMI will enter into the Replacement Capital Covenant described under "Description of the Trust Securities — Restriction on Redemption or Repurchases," limiting WMI's ability to redeem or repurchase certain securities, including the Fixed Rate WMI Preferred Stock.

### Rights upon Liquidation

In the event WMI voluntarily or involuntarily liquidates, dissolves or winds up, the holders of Fixed-to-Floating Rate WMI Preferred Stock at the time outstanding will be entitled to receive liquidating distributions in the amount of $1,000,000 per share, or $1,000 per Fixed-to-Floating Rate Depositary Share representing a 1/1000th interest in the Fixed-to-Floating Rate WMI Preferred Stock, plus an amount equal to declared but unpaid dividends for the current Dividend Period to the date of liquidation, out of WMI's assets legally available for distribution to its shareholders, before any distribution of assets is made to holders of WMI's common stock or any securities ranking junior to the Fixed-to-Floating Rate WMI Preferred Stock and subject to the rights of the holders of any class or series of securities ranking on a parity upon liquidation with the Fixed-to-Floating Rate WMI Preferred Stock upon liquidation and the rights of its depositors and creditors.

After payment of the full amount of the liquidating distributions to which they are entitled, the holders of the Fixed-to-Floating Rate WMI Preferred Stock will have no right or claim to any

of WMI's remaining assets. In the event that, upon any such voluntary or involuntary liquidation, dissolution, or winding up, WMI's available assets are insufficient to pay the amount of the liquidation distributions on all outstanding Fixed-to-Floating Rate WMI Preferred Stock and the corresponding amounts payable on any other securities of equal ranking, then the holders of the Fixed-to-Floating Rate WMI Preferred Stock and any other securities of equal ranking will share ratably in any such distribution of assets in proportion to the full liquidating distributions to which they would otherwise be respectively entitled.

For such purposes, WMI's consolidation or merger with or into any other entity, the consolidation or merger of any other entity with or into it, or the sale of all or substantially all of WMI's property or business, will not be deemed to constitute its liquidation, dissolution, or winding up.

**Voting Rights**

Holders of Fixed-to-Floating Rate WMI Preferred Stock will not have any voting rights, including the right to elect any directors, except upon issuance as required by law, or as set forth below if WMI fails to pay, or declare and set aside for payment, full dividends on Fixed-to-Floating Rate WMI Preferred Stock for six Dividend Periods.

If WMI fails to pay, or declare and set aside for payment, full dividends on the Fixed-to-Floating Rate WMI Preferred Stock after issuance or any other class or series of WMI Parity Stock (including the Fixed Rate WMI Preferred Stock) having similar voting rights (*"Voting Parity Stock"*) for six Dividend Periods or their equivalent, the authorized number of WMI's directors will be increased by two. Subject to compliance with any requirement for regulatory approval of, or non-objection to, persons serving as directors, the holders of Fixed-to-Floating Rate WMI Preferred Stock, voting together as a single class with the holders of any Voting Parity Stock, will have the right to elect two directors in addition to the directors then in office at WMI's next annual meeting of shareholders. This right will continue at each subsequent annual meeting until WMI pays dividends on the Fixed-to-Floating Rate WMI Preferred Stock and any Voting Parity Stock for three consecutive Dividend Periods or its equivalent and pays or declares and sets aside for payment dividends for the fourth consecutive Dividend Period or its equivalent.

The term of such additional directors will terminate, and the total number of directors will be decreased by two, at the first annual meeting of shareholders after WMI pays dividends on the Fixed-to-Floating Rate WMI Preferred Stock and any Voting Parity Stock for three consecutive Dividend Periods or its equivalent and declares and pays or sets aside for payment dividends on the Fixed-to-Floating Rate WMI Preferred Stock and any Voting Parity Stock for the fourth consecutive Dividend Period or, if earlier, upon the redemption of all Fixed-to-Floating Rate WMI Preferred Stock. After the term of such additional directors terminates, the holders of the Fixed-to-Floating Rate WMI Preferred Stock will not be able to elect additional directors unless dividends on the Fixed-to-Floating Rate WMI Preferred Stock have again not been paid or declared and set aside for payment for six future Dividend Periods.

Any additional director elected by the holders of Fixed-to-Floating Rate WMI Preferred Stock and Voting Parity Stock may only be removed by the vote of the holders of record of the outstanding Fixed-to-Floating Rate WMI Preferred Stock and Voting Parity Stock, voting together as a single and separate class, at a meeting of WMI shareholders called for that purpose. As long as dividends on the Fixed-to-Floating Rate WMI Preferred Stock or any Voting Parity Stock have not been paid for six Dividend Periods or their equivalent, any vacancy created by the removal of any such director may be filled only by the vote of the holders of the outstanding Fixed-to-Floating Rate WMI Preferred Stock and any Voting Parity Stock, voting together as a single class, at the same meeting at which such removal is considered.

Washington law attaches mandatory voting rights to classes or series of shares that are affected by certain amendments to the articles of incorporation. The holders of the outstanding

shares of a class or series are entitled to vote as a separate voting group if shareholder voting is otherwise required by Washington law and if the amendment would:

- increase the aggregate number of authorized shares of the class or series;

- effect an exchange or reclassification of all or part of the issued and outstanding shares of the class or series into shares of another class or series, thereby adversely affecting the holders of the shares so exchanged or reclassified;

- change the rights, preferences, or limitations of all or part of the issued and outstanding shares of the class or series, thereby adversely affecting the holders of shares of the class or series;

- change all or part of the issued and outstanding shares of the class or series into a different number of shares of the same class or series, thereby adversely affecting the holders of shares of the class or series;

- create a new class or series of shares having rights or preferences with respect to dividends or other distributions or to dissolution that are, or upon designation by the board of directors may be, prior, superior, or substantially equal to the shares of the class or series;

- increase the rights or preferences with respect to distributions, or on liquidations or dissolution, or the number of authorized shares of any class or series that, after giving effect to the amendment, has rights or preferences with respect to distributions, or on liquidations or dissolution that are, or upon designation by the board of directors may be, prior, superior, or substantially equal to the shares of the class or series;

- limit or deny an existing pre-emptive right of all or part of the shares of the class or series;

- cancel or otherwise adversely affect rights to distributions that have accumulated but not yet been declared on all or part of the shares of the class or series; or

- effect a redemption or cancellation of all or part of the shares of the class or series in exchange for cash or any other form of consideration other than shares of the corporation.

WMI will covenant in the Exchange Agreement that in the event WMI, prior to the Conditional Exchange, effects, or is, the subject of a merger, consolidation, statutory share exchange, sale of all or substantially all of its assets or other form of business combination, (i) in which WMI is not the surviving, resulting or receiving corporation thereof or (ii) if WMI is the surviving or resulting corporation, shares representing a majority of WMI's total voting power are either converted or exchanged into securities of another person or into cash or other property (any such transaction in either (i) or (ii) being a *"Business Combination"*), then WMI (i) shall not enter into such Business Combination unless the Successor Entity agrees, effective upon the consummation of such Business Combination, to abide by all of WMI's obligations under the provisions of the Exchange Agreement restricting the payment of dividends by WMI in the event dividends are not paid with respect to the Company Preferred Securities and (ii) may, at the election of the Board of Directors of WMI prior to the effectiveness of such Business Combination, assign, effective upon the consummation of such Business Combination, all of its other obligations under the Exchange Agreement to a Successor Entity that has both Fixed Rate Substitute Preferred Stock and Fixed-to-Floating Rate Substitute Preferred Stock and, as a result of such assignment, all references to WMI, Fixed Rate WMI Preferred Stock, Fixed-to-Floating Rate WMI Preferred Stock, Fixed Rate Depositary Share and Fixed-to-Floating Rate Depositary Share shall become and be deemed to be references to such Successor Entity, to such Fixed Rate Substitute Preferred Stock, to such Fixed-to-Floating Rate Substitute Preferred Stock, to a Fixed Rate Successor Depositary Share and to a Fixed-to-Floating Rate Successor Depositary Share, respectively.

*"Successor Entity"* means a corporation designated by the Board of Directors of WMI (i) that is the surviving, resulting or receiving corporation, as applicable, in any Business Combination, (ii) the securities of which are received in a Business Combination by some or all holders of WMI voting shares or (iii) that the Board of Directors of WMI determines to be an acquiror of WMI in a Business Combination.

*"Fixed-to-Floating Rate Substitute Preferred Stock"* means a class or series of equity securities of a Successor Entity having the preferences, limitations and relative rights in its articles or certificate of incorporation or other constituent documents that are substantially similar to those set forth in the articles of amendment establishing the Fixed-to-Floating Rate WMI Preferred Stock.

*"Fixed Rate Substitute Preferred Stock"* means a class or series of equity securities of a Successor Entity having the preferences, limitations and relative rights in its articles or certificate of incorporation or other constituent documents that are substantially similar to those set forth in the articles of amendment establishing the Fixed Rate WMI Preferred Stock.

*"Fixed-to-Floating Rate Successor Depositary Share"* means a depositary share substantially similar to a Fixed-to-Floating Rate Depositary Share representing an interest in the Fixed-to-Floating Rate Substitute Preferred Stock.

*"Fixed Rate Successor Depositary Share"* means a depositary share substantially similar to a Fixed Rate Depositary Share representing an interest in the Fixed Rate Substitute Preferred Stock.

**Conditional Exchange**

For a description of how an exchange of the Trust Securities into Fixed-to-Floating Rate Depositary Shares may occur upon an Exchange Event, purchasers should read "Description of the Trust Securities — Conditional Exchange."

# DESCRIPTION OF THE FIXED-TO-FLOATING RATE DEPOSITARY SHARES

*The following summary describes the material terms and provisions of the Fixed-to-Floating Rate Depositary Shares. This description is qualified in its entirety by reference to the terms and provisions of the Deposit Agreement, the form of depositary receipts, which contain the terms and provisions of the Fixed-to-Floating Rate Depositary Shares, and WMI's articles of incorporation and articles of amendment. Copies of each of the foregoing documents may be obtained upon request to WMI.*

## General

Each depositary share will represent a 1/1000th interest in one share of Fixed-to-Floating Rate WMI Preferred Stock (the *"Fixed-to-Floating Rate Depositary Shares"*). The Fixed-to-Floating Rate Depositary Shares will be evidenced by depositary receipts. The shares of Fixed-to-Floating Rate WMI Preferred Stock underlying the Fixed-to-Floating Rate Depositary Shares will, upon an exchange as a result of an Exchange Event, be deposited with the, as Depositary, under a Deposit Agreement, to be entered into on or before the closing date (the *"Deposit Agreement"*), among WMI, the Depositary, the registrar appointed thereunder and all holders from time to time of depositary receipts issued by the Depositary thereunder. WMI does not intend to list or quote the Fixed-to-Floating Rate Depositary Shares or the Fixed-to-Floating Rate WMI Preferred Stock on any securities exchange or automated dealer quotation system. Accordingly, there will be no public trading market for the Fixed-to-Floating Rate Depositary Shares or the Fixed-to-Floating Rate WMI Preferred Stock. The Initial Purchasers are under no obligation to and do not intend to make a market in the Fixed-to-Floating Rate Depositary Shares.

Subject to the terms of the Deposit Agreement, each owner of a Fixed-to-Floating Rate Depositary Share will be entitled, through the Depositary, to all the rights, preferences and privileges of a share of Fixed-to-Floating Rate WMI Preferred Stock. Owners of a single Fixed-to-Floating Rate Depositary Share, representing a 1/1000th interest in one share of Fixed-to-Floating Rate WMI Preferred Stock, will be subject to all of the limitations of the fractional share represented thereby, which are summarized above under "Description of the Fixed-to-Floating Rate WMI Preferred Stock."

The Depositary will act as transfer agent and registrar and paying agent with respect to the Fixed-to-Floating Rate Depositary Shares.

The Depositary's office at which the depositary receipts will be administered is located at 480 Washington Blvd., Jersey City, NJ 07310.

Purchasers may hold Fixed-to-Floating Rate Depositary Shares either directly or indirectly through their broker or other financial institution. If purchasers hold Fixed-to-Floating Rate Depositary Shares directly, by having Fixed-to-Floating Rate Depositary Shares registered in their name on the books of the Depositary, the purchaser is a depositary receipt holder. If purchasers hold the Fixed-to-Floating Rate Depositary Shares through their broker or financial institution nominee, the purchasers must rely on the procedures of such broker or financial institution to assert the rights of a depositary receipt holder described in this section. Purchasers should consult with their broker or financial institution to find out what those procedures are.

## Issuance of Depositary Receipts

Automatically upon a Conditional Exchange, WMI will issue the shares of Fixed-to-Floating Rate WMI Preferred Stock, and WMI will deposit such shares of the Fixed-to-Floating Rate WMI Preferred Stock with the Depositary, which will then issue and deliver the depositary receipts to WMI. WMI will, in turn, deliver the depositary receipts to the holders of Trust Securities as of the date of a Conditional Exchange. Depositary receipts will be issued evidencing only whole

85

Fixed-to-Floating Rate Depositary Shares. Following the occurrence of a Conditional Exchange, each Trust Security will be exchanged for a like amount of depositary receipts. See "Description of the Trust Securities — Conditional Exchange."

## Dividends and Other Distributions

The Depositary will distribute all cash dividends, dividends paid in Fixed-to-Floating Rate Depositary Shares representing paid-up and non-assessable shares of Fixed-to-Floating Rate WMI Preferred Stock or other cash distributions received in respect of the Fixed-to-Floating Rate WMI Preferred Stock to the record holders of Fixed-to-Floating Rate Depositary Shares in proportion to the numbers of such Fixed-to-Floating Rate Depositary Shares owned by such holders on the relevant record date. In the event of a distribution other than in cash, the Depositary will distribute property received by it to the record holders of Fixed-to-Floating Rate Depositary Shares entitled thereto, unless the Depositary determines that it is not feasible to make such distribution, in which case the Depositary may, after consultation with WMI, sell such property and distribute the net proceeds from such sale to such holders.

## Redemption of Fixed-to-Floating Rate Depositary Shares

If the Fixed-to-Floating Rate WMI Preferred Stock underlying the Fixed-to-Floating Rate Depositary Shares are redeemed, the Fixed-to-Floating Rate Depositary Shares will be redeemed with the proceeds received by the Depositary resulting from the redemption, in whole or in part, of such Fixed-to-Floating Rate WMI Preferred Stock held by the Depositary. The redemption price per Fixed-to-Floating Rate Depositary Share will be equal to the applicable redemption price per share payable with respect to such Fixed-to-Floating Rate WMI Preferred Stock. If less than all the Fixed-to-Floating Rate Depositary Shares are to be redeemed, the Fixed-to-Floating Rate Depositary Shares to be redeemed will be selected by lot or *pro rata,* in WMI's sole discretion.

After the date fixed for redemption (which will be the same date as the redemption date, if any, for the Fixed-to-Floating Rate WMI Preferred Stock), the Fixed-to-Floating Rate Depositary Shares so called for redemption will no longer be deemed to be outstanding and all rights of the holders of the Fixed-to-Floating Rate Depositary Shares will cease, except the right to receive the moneys payable upon such redemption and any money or other property to which the holders of such Fixed-to-Floating Rate Depositary Shares were entitled upon such redemption upon surrender to the Depositary of the depositary receipts evidencing such Fixed-to-Floating Rate Depositary Shares.

## Amendment of Deposit Agreement

The form of depositary receipt evidencing the Fixed-to-Floating Rate Depositary Shares and any provision of the Deposit Agreement may at any time be amended by agreement between WMI and the Depositary. However, any amendment which materially and adversely alters the rights of the holders of depositary receipts will not be effective unless such amendment has been approved by the holders of at least a majority of the Fixed-to-Floating Rate Depositary Shares then outstanding. Every holder of an outstanding depositary receipt at the time any amendment becomes effective will be deemed, by continuing to hold such depositary receipt, to consent and agree to such amendment and to be bound by the Deposit Agreement as amended thereby.

## Charges of Depositary

WMI will pay the charges of the Depositary in connection with the initial deposit of the Fixed-to-Floating Rate WMI Preferred Stock and the initial issuance of the Fixed to Floating Rate Depositary Shares upon a Conditional Exchange, and any redemption of the Fixed-to-Floating Rate WMI Preferred Stock. Holders of Fixed-to-Floating Rate Depositary Shares will pay all other

transfer and other taxes and governmental charges and, in addition, such other charges as are expressly provided in the Deposit Agreement to be for their accounts. All other charges and expenses of the Depositary and of any registrar incident to the performance of their respective obligations arising from the depositary arrangements will be paid by WMI only after prior consultation and agreement between the Depositary and WMI and consent by WMI to the incurrence of such expenses, which consent will not be unreasonably withheld.

## Miscellaneous

The Depositary will forward to the holders of the Fixed-to-Floating Rate Depositary Shares all reports and communications from WMI which WMI would be required to furnish to the holders of the Fixed-to-Floating Rate WMI Preferred Stock.

Neither the Depositary nor WMI will be liable if it is prevented or delayed by law or any circumstances beyond its control in performing its obligations under the Deposit Agreement. The obligations of WMI and the Depositary under the Deposit Agreement will be limited to performance in good faith of their duties thereunder, and they will not be obligated to prosecute or defend any legal proceedings in respect of any Fixed-to-Floating Rate Depositary Shares or the Fixed-to-Floating Rate WMI Preferred Stock unless satisfactory indemnity is furnished. They may rely upon written advice of counsel or independent accountants, or information provided by persons presenting Fixed-to-Floating Rate WMI Preferred Stock for deposit, holders of Fixed-to-Floating Rate Depositary Shares or other persons believed to be competent and on documents believed to be genuine.

## Resignation and Removal of Depositary; Termination of Deposit Agreement

The Depositary may resign at any time by delivering to WMI notice of its election to do so, and WMI may at any time remove the Depositary, with any such resignation or removal taking effect upon the appointment of a successor depositary and its acceptance of such appointment. Such successor depositary will be appointed by WMI within 60 days after delivery of the notice of resignation or removal. Upon termination of the Deposit Agreement, the Depositary will discontinue the transfer of depositary receipts, will suspend the distribution of dividends to the holders thereof and will not give any further notices (other than notice of such termination) or perform any further acts under the Deposit Agreement, except that the Depositary will continue to collect dividends and other distributions pertaining to Fixed-to-Floating Rate WMI Preferred Stock and will continue to deliver Fixed-to-Floating Rate WMI Preferred Stock certificates together with such dividends and distributions and the net proceeds of any sales of rights, preferences, privileges, or other property in exchange for depositary receipts surrendered. At any time after the expiration of three years from the date of termination, the Depositary may sell the Fixed-to-Floating Rate WMI Preferred Stock and hold the proceeds of such sale, without interest, for the benefit of the holders of depositary receipts who have not then surrendered their depositary receipts. After making such sale, the Depositary will be discharged from all obligations under the Deposit Agreement except to account for such proceeds.

# DESCRIPTION OF THE OTHER WMI CAPITAL STOCK

As of the date hereof, the authorized capital stock of WMI consists of 1,600,000,000 shares of WMI common stock and 10,000,000 shares of preferred stock, no par value. As of the close of business on February 15, 2006, there were 994,380,908 shares of WMI common stock outstanding and no shares of preferred stock of WMI outstanding. As of the close of business on February 15, 2006, 700,000 shares of preferred stock of WMI were authorized, but unissued, as contemplated by WMI's Rights Agreement, dated as of December 20, 2000, entered into by and between WMI and Mellon Investor Services LLC The shares of WMI preferred stock to be issued upon the occurrence of a Conditional Exchange have been duly authorized and when and if issued will be validly issued, fully paid, nonassessable and free of preemptive rights, with no personal liability attaching to the ownership thereof.

WMI has authorized for issuance in connection with the offering of the Trust Securities and the related issuance by the Company of its Fixed-to-Floating Rate Company Preferred Securities up to 750 shares of its Series J Perpetual Non-cumulative Fixed Rate Preferred Stock, no par value, and liquidation preference of $1,000,000 per share (the *"Fixed Rate WMI Preferred Stock"*). The shares of Fixed Rate WMI Preferred Stock will be issued by WMI solely upon the occurrence of a Conditional Exchange. The shares of Fixed Rate WMI Preferred Stock, if and when issued upon the occurrence of a Conditional Exchange, will be represented by Fixed Rate Depositary Shares of WMI (the *"Fixed Rate Depositary Shares"*), each of which will represent 1/1000th of a share of Fixed Rate WMI Preferred Stock.

The Fixed Rate WMI Preferred Stock will rank *pari passu* with the Fixed-to-Floating Rate WMI Preferred Stock as to dividends and upon liquidation of WMI. The terms of the Fixed Rate WMI Preferred Stock are substantially identical to the Fixed-to-Floating Rate WMI Preferred Stock other than with respect to the rate applicable to dividends thereon. The Fixed Rate WMI Preferred Stock will, if, when and as declared by WMI's Board of Directors, pay dividends at an annual rate of 7.25%. The Fixed Rate WMI Preferred Stock will not be listed on any securities exchange or automated dealer quotation system.

## Form, Denomination, Transfer and Book-Entry Procedures

### General

The Trust Securities are being offered and sold only to persons who are both qualified institutional buyers within the meaning of Rule 144A under the Securities Act and qualified purchasers within the meaning of Section 2(a)(51) of the Investment Company Act in reliance on an exemption from registration pursuant to Rule 144A under the Securities Act.

The Trust Securities will be issued only in fully registered form. Each purchaser in the Offering and each account for which it is purchasing will hold at least $300,000 liquidation preference of Trust Securities (*i.e.*, at least three Trust Securities) and transfer at least $100,000 liquidation preference of Trust Securities (*i.e.*, at least one Trust Security) and each subsequent purchaser and each account for which it is purchasing will hold and transfer at least $100,000 liquidation preference of Trust Securities (*i.e.*, at least one Trust Security). Any transfer, sale or other disposition of Trust Securities having a liquidation preference of less than $100,000 or which result in a beneficial owner holding Trust Securities having an aggregate liquidation preference of less than $100,000, will be deemed to be null and void *ab initio* and of no legal effect whatsoever. Any such transferee will be deemed not to be the beneficial owner of such Trust Securities for any purpose, including, but not limited to, the receipt of dividends on such Trust Securities, and such transferee will be deemed to have no interest whatsoever in such Trust Securities.

Each purchaser of Trust Securities pursuant to the Offering, and each purchaser who holds a beneficial interest in the Global Security at any time, will be deemed to have represented to WaMu Delaware that it is both a qualified institutional buyer within the meaning of Rule 144A under the Securities Act and a qualified purchaser within the meaning of Section 2(a)(51) under the Investment Company Act. If a beneficial owner of Trust Securities who is required to be a qualified purchaser within the meaning of Section 2(a)(51) under the Investment Company Act is at any time not a qualified purchaser, WaMu Delaware may (i) require such beneficial owner to sell its Trust Securities to a person who is a qualified purchaser and who is otherwise qualified to purchase such Trust Securities in a transaction exempt from registration under the Securities Act or (ii) require the beneficial owner to sell such Trust Securities to WaMu Delaware or an affiliate thereof at a price equal to the least of (A) the purchase price paid by the holder for such Trust Securities, (B) 100% of the liquidation preference thereof or (C) the fair market value thereof.

### Global Security

The Trust Securities initially will be represented by one or more securities in registered, global form (the *"Global Security"*). The Global Security will be deposited upon issuance with the Registrar as Custodian for The Depository Trust Company (*"DTC"*) in New York, New York, and registered in the name of DTC or its nominee (the *"Nominee"*), in each case for credit to an account of a DTC Participant, as described below.

### Special Considerations for Global Securities

As an indirect holder, a purchaser's rights relating to a Global Security will be governed by the account rules of the purchaser's financial institution and of DTC, as well as the general laws relating to securities transfers. WaMu Delaware will not recognize the purchaser as a holder of Trust Securities and instead will deal only with DTC or its nominee. See "— The DTC System."

Purchasers should be aware that because Trust Securities are issued only in the form of a Global Security:

- they cannot get Trust Securities registered in their name;

- they cannot receive physical certificates for their interest in the Trust Securities;

- they will be "Street Name" holders and must look to their own bank or broker for payments on the Trust Securities and the protection of their legal rights relating to the Trust Securities;

- they may not be able to sell interests in the Trust Securities to some insurance companies and other institutions that are required by law to own securities in the form of physical certificates; and

- DTC's policies will govern payments, transfers, exchanges and other matters relating to the purchaser's interest in the Global Security. See "— The DTC System". WaMu Delaware, the Company and the Registrar have no responsibility for any aspect of DTC's actions or for its records of ownership interests in the Global Security. WaMu Delaware, the Company and the Registrar also do not supervise DTC in any way.

## Special Situations When the Global Security Will Be Terminated

In a few special situations, the Global Security will terminate and interests in it will be exchanged for physical certificates representing Trust Securities. After that exchange, the choice of whether to hold Trust Securities directly or in "Street Name" will be up to the beneficial owner. Purchasers must consult their own bank or broker to find out how to have their interests in Trust Securities transferred to their own name, so that they will be direct holders.

The special situations for termination of the Global Security are:

- DTC notifies WaMu Delaware that it is unwilling, unable or no longer qualified to continue as the depositary for the Trust Securities; or

- WaMu Delaware in its sole discretion determines that the Global Security will be exchangeable for certificated Trust Securities.

When the Global Security terminates, DTC (and not WaMu Delaware, the Company or the Securities Registrar) is responsible for deciding the names of the institutions that will be the initial direct holders.

If Trust Securities are issued in certificated form, dividends, if any, will be payable, and Trust Securities may be transferred or exchanged, at the corporate trust office of the Registrar in New York, New York, *provided* that payment of interest on certificated Trust Securities may be made at the option of WaMu Delaware by check mailed to the address of the persons entitled thereto.

## The DTC System

DTC is a limited-purpose trust company created to hold securities for its participating organizations (the *"DTC Participants"*). DTC also facilitates the clearance and settlement between Participants of transactions of securities deposited with DTC through changes in the account records of DTC Participants. DTC Participants include securities brokers and dealers (including the Initial Purchasers), banks, trust companies, clearing corporations and certain other organizations. Access to DTC's system is also available to other entities such as securities brokers and dealers, banks and trust companies that work through a DTC Participant (the *"Indirect Participants"*).

When the Trust Securities are purchased through the DTC system, the purchase must be made by or through a DTC Participant, who will receive credit for the Trust Securities on DTC's records. The purchaser's ownership interest will only be recorded on the DTC Participants' (or Indirect Participants') records. DTC has no knowledge of a purchaser's individual ownership of the Trust Securities. DTC's records only show the identity of the DTC Participants and the amount of the Trust Securities held by or through them. A purchaser will not receive a written confirmation of its purchase or sale or any periodic statement directly from DTC; it will receive these from the DTC Participant or Indirect Participant. Thus, the DTC Participants (or Indirect Participants) are responsible for keeping an accurate account of the holdings of their customers.

Any redemption notices with respect to the Trust Securities will be sent by the Company and WaMu Delaware directly to DTC, who will in turn inform the DTC Participants, who will then contact the beneficial owners. If less than all of the Trust Securities are being redeemed, DTC's current practice is to choose by lot the amount of the interest of each DTC Participant to be redeemed. Each DTC Participant will then use an appropriate method to allocate the redemption among its beneficial holders.

It is DTC's current practice, upon receipt of any payment to credit DTC Participants' accounts on the payment date based on their holdings of beneficial interests in the Global Securities as shown on DTC's records. In addition, it is DTC's current practice to assign any consenting or voting rights to DTC Participants whose accounts are credited with Trust Securities on a record date, by using an omnibus proxy. Payments by DTC Participants to owners of beneficial interests in the Global Security, and voting by DTC Participants, will be based on the customary practices between the DTC Participants and owners of beneficial interests, as is the case with securities held for the account of customers registered in "Street Name". However, payments will be the responsibility of the DTC Participants and not of DTC, the Securities Registrar, WaMu Delaware or the Company.

Interests in the Trust Securities will trade in DTC's same-day funds settlement system, and secondary market trading activity in such interests will therefore settle in immediately available funds, subject in all cases to the rules and procedures of DTC and its participants.

DTC has advised WaMu Delaware that it will take any action permitted to be taken by a holder of the Trust Securities only at the direction of one or more participants to whose account with DTC interests in the Global Security are credited and only in respect of such portion of the aggregate principal amount of the Trust Securities as to which such participant or participants has or have given such direction.

Although DTC has agreed to the foregoing procedures in order to facilitate transfers of beneficial ownership interests in the Global Security among participants of DTC it is under no obligation to perform or continue to perform such procedures, and such procedures may be discontinued at any time. Neither the Company, WaMu Delaware, the Securities Registrar or any of their representative agents will have any responsibility for the performance by DTC its participants or indirect participants of its obligations under the rules and procedures governing their operations, including maintaining, supervising or reviewing the records relating to, or payments made on account of, beneficial ownership interests in the Global Security.

### Euroclear and Clearstream

Clearstream Banking, société anonyme, 42 Avenue JF Kennedy, L-1855, Luxembourg *("Clearstream")*, is a subsidiary of Clearstream International *("Clearstream International")*, a Luxembourg limited liability company formed in January 2000 through the merger of Cedel International and Deutsche Boerse Clearing, a subsidiary of Deutsche Boerse AG. In July 2002, Deutsche Boerse AG acquired Cedel International and its 50% ownership of Clearstream International.

Clearstream is registered as a bank in Luxembourg, and as such is subject to supervision by the Luxembourg Financial Sector Supervisory Commission, which supervises Luxembourg banks.

Clearstream holds securities for its customers *("Clearstream Participants")* and facilitates the clearance and settlement of securities transactions by electronic book-entry transfers between their accounts. Clearstream provides various services, including safekeeping, administration, clearance and settlement of internationally traded securities and securities lending and borrowing. Clearstream also deals with domestic securities markets in several countries through established depository and custodial relationships. Clearstream has established an electronic bridge with Euroclear Bank S.A./N.V. as the Euroclear Operator in Brussels to facilitate settlement of trades between systems. Clearstream currently accepts over 200,000 securities for clearance.

Clearstream International's customers are world-wide financial institutions including underwriters, securities brokers and dealers, banks, trust companies and clearing corporations. Clearstream International's United States customers are limited to securities brokers and dealers and banks. Currently, Clearstream International has over 2,500 customers located in over 94 countries, including all major European countries, Canada and the United States. Indirect access to Clearstream is available to other institutions which clear through or maintain custodial relationship with an account holder of Clearstream.

The Euroclear System *("Euroclear")* was created in 1968 to hold securities for its participants *("Euroclear Participants")* and to clear and settle transactions between Euroclear Participants through simultaneous electronic book-entry delivery against payment, thereby eliminating the need for physical movement of certificates and any risk from lack of simultaneous transfers of securities and cash. Transactions may be settled in a variety of currencies, including United States dollars. Euroclear includes various other securities, including securities lending and borrowing and interfaces with domestic markets in several countries generally similar to the arrangements for cross-market transfers with DTC described above. Euroclear is operated by Euroclear Bank S.A./N.V. (the *"Euroclear Operator"*). All operations are conducted by the Euroclear Operator, and all Euroclear securities clearance accounts and Euroclear cash accounts are accounts with the Euroclear Operator. Euroclear plc establishes policy for Euroclear on behalf of Euroclear Participants. Euroclear Participants include banks (including central banks), securities brokers and dealers and other professional financial intermediaries. Indirect access to Euroclear is also available to other firms that clear through or maintain a custodial relationship with a Euroclear Participant, either directly or indirectly.

Securities clearance accounts and cash accounts with the Euroclear Operator are governed by the Terms and Conditions Governing Use of Euroclear and the related Operating Procedures of the Euroclear System and applicable Belgian law (collectively, the *"Euroclear Terms and Conditions"*). The Euroclear Terms and Conditions govern transfers of securities and cash within Euroclear, withdrawals of securities and cash from Euroclear, and receipts of payments with respect to securities in Euroclear. All securities in Euroclear are held on a fungible basis without attribution of specific certificates to specific securities clearance accounts. The Euroclear Operator acts under the Euroclear Terms and Conditions only on behalf of Euroclear Participants, and has no record of, or relationship with, persons holding through Euroclear Participants.

## CERTAIN U.S. FEDERAL INCOME TAX CONSIDERATIONS

*United States Internal Revenue Service Circular 230 Notice: To ensure compliance with Internal Revenue Service Circular 230, prospective investors are hereby notified that: (i) any discussion of U.S. Federal tax issues contained or referred to in this offering circular or any document referred to herein is not intended or written to be used, and cannot be used, by prospective investors for the purpose of avoiding penalties that may be imposed on them under the U.S. Internal Revenue Code; (ii) such discussion is written for use in connection with the promotion or marketing of the transactions or matters addressed herein; and (iii) prospective investors should seek advice based on their particular circumstances from an independent tax advisor.*

### General

The following discussion summarizes the principal United States Federal income tax treatment of WaMu Delaware and the Company, and the principal United States Federal income tax consequences to holders of the Trust Securities. This discussion is of a general nature and is not intended to be, nor should it be construed as, tax advice to any holder. Purchasers should consult their own tax advisor regarding the tax consequences of acquiring, owning and disposing of Trust Securities.

The discussion is addressed only to holders that beneficially own Trust Securities as capital assets and does not purport to be a comprehensive description of all the tax considerations that may be relevant to particular holders in light of their personal circumstances. The discussion also does not describe all aspects of taxation that may be relevant to certain types of holders to which special provisions of United States Federal income tax law may apply, including:

- dealers in securities and currencies;
- regulated investment companies;
- traders in securities;
- tax-exempt organizations;
- banks and insurance companies;
- persons that hold Trust Securities as part of a hedge, straddle or conversion transaction;
- persons whose functional currency is not the United States dollar; and
- U.S. expatriates.

The summary is based on United States Federal income tax law, including the Code, existing and proposed U.S. Treasury regulations, administrative rulings and judicial decisions all as currently in effect. These legal sources are subject to change or differing interpretations at any time, which change or interpretation could apply retroactively and could affect the validity of the discussion below. There can be no assurance that the Internal Revenue Service ("*IRS*") will take the same view of the United States Federal income tax consequences of an investment in the Trust Securities as described herein.

**Each purchaser is urged to consult its own tax advisor as to the tax consequences of acquiring, owning and disposing of Trust Securities, including the United States Federal, state, local and any other tax consequences of acquiring, owning and disposing of Fixed-to-Floating Rate Depository Shares.**

As used in this discussion, the term "*U.S. Holder*" means a beneficial owner of a Trust Security that is, for United States Federal income tax purposes, a citizen or resident of the United States, a corporation or partnership created or organized in or under the laws of the United States or any state, an estate the income of which is includible in gross income for United States Federal income tax purposes regardless of its source, or a trust if a court within the United States is able to exercise primary supervision over its administration and one or more

United States persons have authority to control all substantial decisions of the trust. The term *"Foreign Holder"* means a beneficial owner of Trust Securities that is not a U.S. Holder.

## United States Federal Income Tax Consequences

### Tax Treatment of WaMu Delaware and its Investment in Fixed-to-Floating Rate Company Preferred Securities

**Classification of WaMu Delaware and the Company.** WaMu Delaware intends to be treated as a grantor trust for United States Federal income tax purposes. Accordingly, each holder of a Trust Security will be treated as if it owned directly the Fixed-to-Floating Rate Company Preferred Securities allocable to such Trust Security. All of WaMu Delaware's assets are expected to consist of Fixed-to-Floating Rate Company Preferred Securities. The Company intends to be classified as a U.S. domestic partnership for United States Federal income tax purposes, and the Fixed-to-Floating Rate Company Preferred Securities acquired by WaMu Delaware are intended to constitute equity interests in such partnership.

An entity that is classified as a partnership for United States Federal income tax purposes generally is not a taxable entity and incurs no United States Federal income tax liability. Instead, each partner is required to take into account its allocable share of income, gains, losses, deductions and credits of the partnership in computing its United States Federal income tax liability, if any, even if no cash distributions are made by the partnership to the partner. An entity that is classified as a partnership for United States Federal income tax purposes nevertheless will be taxable as a corporation if it is a "publicly traded partnership" and fails to satisfy a "90% qualifying income" test, within the meaning of Code Section 7704.

On the date of the initial issuance of the Trust Securities, the Company will receive an opinion from Mayer, Brown, Rowe & Maw LLP to the effect that, for United States Federal income tax purposes, although no activities closely comparable to that contemplated by the Company have been the subject of any U.S. Treasury regulation, revenue ruling or judicial decision, the Company will not be treated as an association or publicly traded partnership taxable as a corporation. The opinions are based on certain assumptions and on certain representations and agreements regarding restrictions on the future conduct of the activities of the Company. Although the Company intends to conduct its activities in accordance with such assumptions, representations and agreements, if it were nonetheless determined that the Company was taxable as a corporation for United States Federal income tax purposes, then cash available for distribution in respect of the Company Preferred Securities would be reduced on account of taxes payable by the Company. A determination by the Company, based on receipt of an opinion of counsel, that there is a significant risk that the Company is or will be treated as an association or publicly traded partnership taxable as a corporation would constitute a Tax Event — see "Description of the Fixed-to-Floating Rate Company Preferred Securities — Redemption." The remainder of this discussion assumes that the Company is treated as a partnership, and not as an association or publicly traded partnership taxable as a corporation, for Federal income tax purposes, and that the Fixed-to-Floating Rate Company Preferred Securities will constitute equity interests in such partnership.

### Tax Consequences to U.S. Holders of Trust Securities

**Income and Deductions in General.** Each U.S. Holder of Trust Securities will be required to report on its United States Federal income tax return its share of income, gains, losses, deductions and credits of the Company that are allocable to WaMu Delaware, even if such holder has not received any cash distributions from WaMu Delaware.

**Distributions on Trust Securities.** Distributions of money by WaMu Delaware to a U.S. Holder of Trust Securities generally will not result in taxable gain to the U.S. Holder. A U.S. Holder of Trust Securities will recognize taxable gain as a result of a distribution of money

by the Company to WaMu Delaware with respect to the Fixed-to-Floating Rate Company Preferred Securities only if and to the extent that the U.S. Holder's share of such distribution exceeds the U.S. Holder's adjusted tax basis in the Fixed-to-Floating Rate Company Preferred Securities allocable to such U.S. Holder's Trust Securities immediately before the distribution. In general, each U.S. Holder of Trust Securities will have an initial basis in the Fixed-to-Floating Rate Company Preferred Securities allocable to such U.S. Holder's Trust Securities equal to the amount paid by WaMu Delaware to purchase such Fixed-to-Floating Rate Company Preferred Securities. Such U.S. Holder's basis in such Fixed-to-Floating Rate Company Preferred Securities generally will be increased by such U.S. Holder's share of the Company's taxable income and decreased, but not below zero, by such holder's share of amounts distributed with respect to the Fixed-to-Floating Rate Company Preferred Securities and Company losses, deductions and nondeductible expenditures that are not chargeable to capital allocable to WaMu Delaware.

*Allocations of Company Income, Gain, Loss and Deductions.* Each holder of Trust Securities must report its proportionate share of the Company income, gain, loss and deduction allocated to WaMu Delaware for such year. Under Section 704(b) of the Code, a partnership's allocation of any item of income, gain, loss or deduction to a partner will be given effect for United States Federal income tax purposes so long as it has "substantial economic effect," or is otherwise in accordance with the "partner's interest in the partnership." If an allocation of an item does not satisfy this standard, it will be reallocated among the partners on the basis of their respective interests in the partnership, taking into account all facts and circumstances. The Company believes that the allocations of items of income, gain, loss and deduction under the Company Operating Agreement will be considered to have substantial economic effect under the applicable Treasury regulations.

*Limitations on Use of Losses.* U.S. Holders are not expected to be allocated any losses for United States Federal income tax purposes with respect to their indirect interests in the Company. The deductibility of losses arising from a partnership such as the Company are subject to certain limitations under the Code. In the event losses are allocated to U.S. Holders of the Trust Securities, such U.S. Holders should consult their tax advisors to determine the deductibility of such losses.

*Sale, Exchange or Other Disposition of Trust Securities.* In general, a U.S. Holder will recognize gain or loss upon the sale or exchange of such U.S. Holder's Trust Securities equal to the difference between the amount realized and such U.S. Holder's adjusted tax basis in the Fixed-to-Floating Rate Company Preferred Securities allocable to such U.S. Holder's Trust Securities. Initially, the tax basis of a U.S. Holder should equal the amount paid for its Trust Securities. Such basis will be increased or decreased as described above and, as a general matter, at all times is expected to equal the face value of the U.S. Holder's Trust Securities. If a holder's Trust Securities are exchanged for Fixed-to-Floating Rate Depositary Shares, the transaction will be a fully taxable sale to the holder. The amount realized by a holder on this kind of disposition of a Trust Security will equal the fair market value of the Fixed-to-Floating Rate Depositary Shares received.

*Company Audits.* The tax treatment of Company-related items is determined at the Company level. University Street will be appointed as "tax matters partner" with the authority to determine the Company's response to an audit. The limitations period for assessment of deficiencies and claims for refunds with respect to items related to the Company is three years after the Company's return for the taxable year in question is filed, and the tax matters partner has the authority to, and may, extend such period with respect to all members of the Company. If an audit results in an adjustment, the holders of the Trust Securities, as the deemed owners of the Fixed-to-Floating Rate Company Preferred Securities, may be required to restate their taxable income which could cause holders of Trust Securities to pay additional taxes, interest and possibly penalties and such holders may themselves also be subject to audits. There can be

no assurance that the Company's or a U.S. Holder's tax return will not be audited by the IRS or that no adjustments to such returns will be made as a result of such an audit.

## Tax Treatment of Tax-Exempt U.S. Holders of Trust Securities

For purposes of this discussion, a *"Tax-Exempt U.S. Holder"* means any United States domestic organization qualified under Code Section 501(c)(3), any trust or governmental plan qualified under Code Section 401(a), any individual retirement account and any other non-governmental U.S. Holder generally exempt from United States Federal income taxation. A Tax-Exempt U.S. Holder is not expected to be subject to the tax on unrelated business taxable income *("UBTI")* with respect to its share of Company income and gain allocable to WaMu Delaware or any capital gains derived from an investment in the Trust Securities. However, notwithstanding the foregoing, a Tax-Exempt U.S. Holder which incurs "acquisition indebtedness" (as defined in Code Section 514(c)) with respect to its Trust Securities may be subject to the tax on UBTI in respect of any income or gains derived in respect of the Trust Securities to the extent that such Trust Securities constitute "debt-financed property" of the Tax-Exempt U.S. Holder within the meaning of Code Section 514(b).

Tax-Exempt U.S. Holders should consult their own tax advisors regarding the tax consequences to them of an investment in the Trust Securities.

## Tax Treatment of Foreign Holders of Trust Securities

*U.S. Trade or Business Status.* The Company intends to conduct its affairs so as to not be engaged in a trade or business in the United States. On the date of the initial issuance of the Trust Securities, the Company will receive an opinion from Mayer, Brown, Rowe & Maw LLP to the effect that, for United States Federal income tax purposes, although no activities closely comparable to that contemplated by the Company have been the subject of any U.S. Treasury regulation, revenue ruling or judicial decision, it will not be treated as engaged in the conduct of a trade or business within the United States. Mayer, Brown, Rowe & Maw LLP's opinion is not binding on the IRS or the courts, and no ruling will be sought from the IRS regarding this, or any other, aspect of the Company's United States Federal income tax treatment. Accordingly, no assurance can be given that the IRS will not assert positions contrary to those stated in Mayer, Brown, Rowe & Maw LLP's opinion or that a court would not entertain any such assertions.

Mayer, Brown, Rowe & Maw LLP's opinion is based on certain assumptions and on certain representations and agreements regarding restrictions on the future conduct of the Company's activities. Although the Company intends to conduct its activities in accordance with such assumptions, representations and agreements, if it were nonetheless determined to be engaged in a trade or business in the United States and had taxable income that was effectively connected with such United States trade or business, then each Foreign Holder would be subject to United States Federal income tax on such Foreign Holder's share of the Company's effectively connected taxable income allocable to WaMu Delaware at regular United States corporate income tax rates and possibly to a 30% United States branch profits tax as well. Moreover, in the event a Foreign Holder were to derive effectively connected income in respect of its ownership of Trust Securities the United States corporate income tax imposed thereon would be required to be collected in the first instance through a withholding by the Company of such tax at a rate of 35% on such Foreign Holder's distributive share of the income. A determination by the Company, based on receipt of an opinion of counsel, that there is a significant risk that it is or will be treated as engaged in a trade or business within the United States would constitute a Tax Event — see "Description of Fixed-to-Floating Rate Company Preferred Securities." The remainder of this discussion assumes that the Company will not be considered to be engaged in a trade or business in the United States.

***United States Withholding Tax.*** Interest that constitutes "portfolio interest" within the meaning of the Code is generally exempt from United States withholding tax. A Foreign Holder will be treated as earning directly its share of the income earned by the Company. The Company's material assets will initially consist of the "regular interest" (*i.e.*, the Class A Asset Trust Certificate) issued in registered form by the Asset Trust, which will be treated as a "real estate mortgage investment conduit" under the Code (a "*REMIC*"). REMIC regular interests are generally treated as indebtedness for United States Federal income tax purposes that qualifies for the portfolio interest exemption. In addition, during the term of the transaction, the Company expects, pursuant to its investment guidelines, to invest cash on hand from time to time in short term debt instruments and other debt securities that qualify for the portfolio interest exemption.

Accordingly, it is expected that a Foreign Holder's share of WaMu Delaware's distributive share of the Company's interest income will constitute "portfolio interest", and thus, will not be subject to U.S. withholding tax, so long as the Foreign Holder has certified its status as a Foreign Holder under penalties of perjury on an appropriate IRS Form W-8. In addition, gain realized on the sale, exchange or redemption of the Trust Securities held by a Foreign Holder generally will not be subject to United States Federal income or withholding tax, as the case may be, unless such Foreign Holder is a nonresident alien individual who holds the Trust Securities as a capital asset and who is present in the United States more than 182 days in the taxable year of the sale and certain other conditions are met.

## Information Reporting and Backup Withholding

Under certain circumstances, the Code requires "information reporting", and may require "backup withholding", with respect to certain payments made on the Trust Securities and the payment of the proceeds from the disposition of such instruments. Backup withholding generally will not apply to corporations, tax-exempt organizations, qualified pension and profit sharing trusts, and individual retirement accounts. Backup withholding will apply to a U.S. Holder if the U.S. Holder fails to provide certain identifying information (such as the U.S. Holder's taxpayer identification number) or otherwise comply with the applicable requirements of the backup withholding rules. The application for exemption from backup withholding for a U.S. Holder is available by providing a properly completed IRS Form W-9.

The payment of the proceeds from the disposition of a Trust Security by a Foreign Holder generally will not be subject to information reporting and backup withholding if the Foreign Holder certifies its status as a Foreign Holder (and, if applicable, its beneficial owners also certify their status as non-United States persons) under penalties of perjury on the appropriate IRS Form W-8, satisfies certain documentary evidence requirements for establishing that it is a Foreign Holder or otherwise establishes an exemption.

Backup withholding is not an additional tax and may be refunded (or credited against the U.S. Holder's or Foreign Holder's United States Federal income tax liability, if any), provided that certain required information is furnished. The information reporting requirements may apply regardless of whether withholding is required.

## Tax Return Disclosure Requirements

Recently issued Treasury Regulations and other administrative guidance promulgated by the IRS prescribe certain circumstances under which holders of the Trust Securities could be required to file information returns with the IRS (the *"New Reporting Rules"*).

The New Reporting Rules could apply to a U.S. Holder (and to certain Foreign Holders who hold their Trust Securities in connection with a United States trade or business) if WaMu Delaware or the Company were to enter into one or more "reportable transactions". The definition of "reportable transaction" is highly technical. It is not expected that WaMu Delaware or the Company will engage in activities that would give rise to any reportable transactions. If

WaMu Delaware or the Company were to engage in any "reportable transaction," then, subject to certain exceptions and threshold limitations, a U.S. Holder or Foreign Holder may be required to file IRS Form 8886 with such holder's United States Federal income tax return for each taxable year in which such "reportable transaction" affects such holder's taxable income, and to file a copy of such form with the IRS's Office of Tax Shelter Analysis. WaMu Delaware intends to provide to the holders of Trust Securities any information necessary to complete such form.

In addition, subject to certain significant exceptions, any holder of Trust Securities that recognizes a loss on a sale or exchange of such holder's Trust Securities may be required to file IRS Form 8886 in the manner described above if the loss exceeds certain thresholds and no exception applies.

**Prospective purchasers of Trust Securities are urged to consult their own tax advisors regarding the application to them of the New Reporting Rules with respect to an investment in the Trust Securities.**

### Foreign, State, and Local Taxes

Holders may be liable for foreign, state, and local taxes in the country, state, or locality in which they are resident or doing business or in a state or locality in which WaMu Delaware or the Company conducts or is deemed to conduct business. Because the tax laws of each country, state, and locality may differ, each prospective purchaser should consult its own tax advisors with respect to any taxes that may be payable as a result of an investment in the Trust Securities.

## ERISA CONSIDERATIONS

Section 406 of the Employee Retirement Income Security Act of 1974, as amended *("ERISA")* and Section 4975 of the Internal Revenue Code of 1986, as amended (the *"Code"*) prohibit pension, profit-sharing or other retirement plans and accounts subject to ERISA or Section 4975 of the Code and entities that are deemed to hold *"plan assets"* of any of the foregoing (each, a *"Plan"*) from engaging in certain transactions with persons that are "parties in interest" under ERISA or "disqualified persons" under the Code with respect to such Plan. A violation of these "prohibited transaction" rules may result in an excise tax or other penalties and liabilities under ERISA and the Code for such persons or the fiduciaries of the Plan. In addition, Title I of ERISA also requires fiduciaries of a Plan subject to ERISA to make investments that are prudent, diversified and in accordance with the governing plan documents.

Certain transactions involving WaMu Delaware might be deemed to constitute prohibited transactions under ERISA and the Code with respect to a Plan that purchased Trust Securities or Fixed-to-Floating Rate Company Preferred Securities if assets of WaMu Delaware were deemed to be assets of the Plan. Under a regulation issued by the United States Department of Labor (the *"Regulation"*), the assets of WaMu Delaware would be treated as plan assets of a Plan for the purposes of ERISA and the Code only if the Plan acquired an "equity interest" in WaMu Delaware and none of the exceptions to plan assets contained in the Regulation was applicable. An equity interest is defined under the Regulation as an interest other than an instrument that is treated as indebtedness under applicable local law and that has no substantial equity features. The WaMu Cayman Preferred Securities and the Fixed-to-Floating Rate Company Preferred Securities are not likely to be treated as indebtedness for purposes of the Regulation. As such, WaMu Delaware intends to prohibit the acquisition and holding of any Trust Security or Fixed-to-Floating Rate Company Preferred Security or any interest in a Trust Security or Fixed-to-Floating Rate Company Preferred Security by or on behalf of a Benefit Plan Investor (as defined below).

For the purposes of the Regulation, the term *"Benefit Plan Investor"* includes all employee benefit plans, regardless of whether or not they are subject to ERISA (such as, for example, governmental plans), individual retirement accounts, Keogh Plans and other plans subject to Section 4975 of the Code, and entities whose underlying assets are deemed to include plan assets by reason of the investment in that entity by Benefit Plan Investors, such as group trusts, bank collective investment trusts, insurance company separate accounts, and certain insurance company general accounts.

By acquiring a Trust Security or Fixed-to-Floating Rate Company Preferred Security (or any interest therein), each purchaser and transferee will be deemed to represent, warrant and covenant that, from the date of acquisition throughout the period of holding such Trust Security or Fixed-to-Floating Rate Company Preferred Security (or interest therein), it is not, and it is not acquiring such Trust Security or Fixed-to-Floating Rate Company Preferred Security (or interest therein) with the assets of a Benefit Plan Investor, except for an insurance company general account that represents, warrants and covenants that, at the time of acquisition and throughout the period it holds the securities, (i) it is eligible for and meets the requirements of the Department of Labor Prohibited Transaction Class Exemption 95-60, (ii) less than 25% of the assets of such general account are (or represent) assets of a Benefit Plan Investor and (iii) it is not a person who has discretionary authority or control with respect to the assets of WaMu Delaware or any person who provides investment advice for a fee (direct or indirect) with respect to such assets, or any affiliate of such a person and would not otherwise be excluded under 29 C.F.R. 2510.3-101(f)(1).

## RATINGS

It is expected that the Trust Securities will be rated "Baa2" by Moody's Investor Services, Inc. *("Moody's")*, "BBB" by Standard & Poors Rating Services, a division of the McGraw Hill Companies, Inc. *("S&P")* and "A−" by Fitch, Inc. *("Fitch")*. The ratings of the Trust Securities are not recommendations to purchase, hold or sell the Trust Securities, inasmuch as the ratings do not comment as to the market price or suitability for a particular purchaser. Nor do the ratings described above address the likelihood that a holder of Trust Securities will be able to sell such securities. The ratings are based on current information furnished to S&P, Moody's and Fitch by WMI, WMB, the Company and WaMu Delaware and information obtained from other sources. The ratings may be changed, suspended or withdrawn at any time as a result of changes in, or the unavailability of, such information.

## PLAN OF DISTRIBUTION

The Company, WaMu Delaware, WMI and the Initial Purchasers have entered into a purchase agreement with respect to the Trust Securities. Subject to certain conditions, each Initial Purchaser has severally agreed to purchase the amount (by liquidation preference) of Trust Securities indicated in the following table.

| Initial Purchasers | Liquidation Preference of Trust Securities |
|---|---|
| Goldman, Sachs & Co. ............................................. | $ 750,000,000 |
| Credit Suisse Securities (USA) LLC .............................. | $ 250,000,000 |
| Morgan Stanley & Co. Incorporated ............................... | $ 250,000,000 |
| Total ....................................................... | $1,250,000,000 |

The Initial Purchasers are committed to take and pay for all of the securities being offered hereby, if any are taken. The initial offering price is set forth on the cover page of this offering circular. After the securities are released for sale, the Initial Purchasers may change the offering price and other selling terms.

The securities offered hereby have not been and will not be registered under the Securities Act. The Initial Purchasers have agreed that they will only offer or sell the Trust Securities to persons who are both "qualified institutional buyers" within the meaning of Rule 144A under the Securities Act and "qualified purchasers" within the meaning of Section 2(a)(51) under the Investment Company Act in transactions meeting the requirements of Rule 144A.

In connection with the Offering, the Initial Purchasers may purchase and sell securities in the open market. These transactions may include short sales, stabilizing transactions and purchases to cover positions created by short sales. Short sales involve the sale by the Initial Purchasers of a greater number of securities than they are required to purchase in the Offering. Stabilizing transactions consist of certain bids or purchases made for the purpose of preventing or retarding a decline in the market price of the securities while the Offering is in progress.

These activities by the Initial Purchasers may stabilize, maintain or otherwise affect the market price of the securities. As a result, the price of the securities may be higher than the price that otherwise might exist in the open market. If these activities are commenced, they may be discontinued by the Initial Purchasers at any time. These transactions may be effected in the over-the-counter market or otherwise.

Each of the Initial Purchasers has represented and agreed that:

(a) It has not made or will not make an offer of the securities being offered hereby to the public in the United Kingdom within the meaning of section 102B of the Financial Services and Markets Act 2000 (as amended) ("FSMA") except to legal entities which are authorized or regulated to operate in the financial markets or, if not so authorized or regulated, whose corporate purpose is solely to invest in securities or otherwise in circumstances which do not require the publication by the company of a prospectus pursuant to the Prospectus Rules of the Financial Services Authority ("FSA");

(b) It has only communicated or caused to be communicated and will only communicate or cause to be communicated an invitation or inducement to engage in investment activity (within the meaning of section 21 of FSMA) to persons who have professional experience in matters relating to investments falling within Article 19(5) of the Financial Services and Markets Act 2000 (Financial Promotion) Order 2005 or in circumstances in which section 21 of FSMA does not apply to the company; and

(c) It has complied with, and will comply with all applicable provisions of FSMA with respect to anything done by it in relation to the Trust Securities in, from or otherwise involving the United Kingdom.

In relation to each Member State of the European Economic Area which has implemented the Prospectus Directive (each, a *"Relevant Member State"*), each Initial Purchaser has represented and agreed that with effect from and including the date on which the Prospectus Directive is implemented in that Relevant Member State (the *"Relevant Implementation Date"*) it has not made and will not make an offer of the securities being offered hereby to the public in that Relevant Member State prior to the publication of a prospectus in relation to the securities which has been approved by the competent authority in that Relevant Member State or, where appropriate, approved in another Relevant Member State and notified to the competent authority in that Relevant Member State, all in accordance with the Prospectus Directive, except that it may, with effect from and including the Relevant Implementation Date, make an offer of securities to the public in that Relevant Member State at any time:

(a) to legal entities which are authorized or regulated to operate in the financial markets or, if not so authorized or regulated, whose corporate purpose is solely to invest in securities;

(b) to any legal entity which has two or more of (i) an average of at least 250 employees during the last financial year; (ii) a total balance sheet of more than €43,000,000; and (iii) an annual net turnover of more than €50,000,000, as shown in its last annual or consolidated accounts; or

(c) in any other circumstances which do not require the publication by the Company of a prospectus pursuant to Article 3 of the Prospectus Directive.

For the purposes of this provision, the expression an "offer of securities to the public" in relation to any securities in any Relevant Member State means the communication in any form and by any means of sufficient information on the terms of the offer and the securities to be offered so as to enable an investor to decide to purchase or subscribe the securities, as the same may be varied in that Relevant Member State by any measure implementing the Prospectus Directive in that Relevant Member State and the expression Prospectus Directive means Directive 2003/71/EC and includes any relevant implementing measure in each Relevant Member State.

The securities offered hereby may not be offered or sold by means of any document other than to persons whose ordinary business is to buy or sell shares or debentures, whether as principal or agent, or in circumstances which do not constitute an offer to the public within the meaning of the Companies Ordinance (Cap. 32) of Hong Kong, and no advertisement, invitation or document relating to the shares may be issued, whether in Hong Kong or elsewhere, which is directed at, or the contents of which are likely to be accessed or read by, the public in Hong Kong (except if permitted to do so under the securities laws of Hong Kong) other than with respect to securities which are or are intended to be disposed of only to persons outside Hong Kong or only to "professional investors" within the meaning of the Securities and Futures Ordinance (Cap. 571) of Hong Kong and any rules made thereunder.

This offering circular has not been registered as a prospectus with the Monetary Authority of Singapore. Accordingly, this offering circular and any other document or material in connection with the offer or sale, or invitation for subscription or purchase of the securities may not be circulated or distributed, nor may the securities be offered or sold, or be made the subject of an invitation for subscription or purchase, whether directly or indirectly, to persons in Singapore other than (i) to an institutional investor under Section 274 of the Securities and Futures Act, Chapter 289 of Singapore (the *"SFA"*), (ii) to a relevant person, or any person pursuant to Section 275(1A), and in accordance with the conditions, specified in Section 275 of the SFA or

(iii) otherwise pursuant to, and in accordance with the conditions of, any other applicable provision of the SFA.

Where the securities offered hereby are subscribed or purchased under Section 275 by a relevant person which is: (i) a corporation (which is not an accredited investor) the sole business of which is to hold investments and the entire share capital of which is owned by one or more individuals, each of whom is an accredited investor; or (ii) a trust (where the trustee is not an accredited investor) whose sole purpose is to hold investments and each beneficiary is an accredited investor, shares, debentures and units of shares and debentures of that corporation or the beneficiaries' rights and interest in that trust will not be transferable for 6 months after that corporation or that trust has acquired the shares under Section 275 except: (A) to an institutional investor under Section 274 of the SFA or to a relevant person, or any person pursuant to Section 275(1A), and in accordance with the conditions, specified in Section 275 of the SFA; (B) where no consideration is given for the transfer; or (C) by operation of law.

The securities offered hereby have not been and will not be registered under the Securities and Exchange Law of Japan (the "*Japan Securities and Exchange Law*") and each Initial Purchaser has agreed that it will not offer or sell any securities, directly or indirectly, in Japan or to, or for the benefit of, any resident of Japan (which term as used herein means any person resident in Japan, including any corporation or other entity organized under the laws of Japan), or to others for re-offering or resale, directly or indirectly, in Japan or to a resident of Japan, except pursuant to an exemption from the registration requirements of, and otherwise in compliance with, the Securities and Exchange Law and any other applicable laws, regulations and ministerial guidelines of Japan.

WMI, the Company and WaMu Delaware have agreed in the purchase agreement, subject to certain exceptions, that for a period of 180 days after the date of this offering circular, neither they, nor any of their subsidiaries or other affiliates over which they exercise management or voting control, nor any person acting on their behalf will, without the prior written consent of Goldman, Sachs & Co., offer, sell, contract to sell or otherwise dispose of any securities that are substantially similar to the Trust Securities.

WMI and the Company have agreed to indemnify the Initial Purchasers against certain liabilities, including liabilities under the Securities Act.

Certain of the Initial Purchasers and their respective affiliates have, from time to time, performed, and may in the future perform, various financial advisory and investment banking services for the company, for which they received or will receive customary fees and expenses.

## VALIDITY OF SECURITIES

The validity of the Trust Securities will be passed upon for WMI and the Initial Purchasers by Richards, Layton & Finger, P.A., Wilmington, Delaware. The validity of the Fixed-to-Floating Rate Company Preferred Securities will be passed upon for the Company by Richards, Layton & Finger, P.A., special Delaware counsel for the Company, for WMI by Mayer, Brown, Rowe & Maw LLP, New York, New York, and for the Initial Purchasers by Sullivan & Cromwell LLP, New York, New York. The validity of the Fixed-to-Floating Rate Depositary Shares and of the Fixed-to-Floating Rate WMI Preferred Stock will be passed upon for WMI by Heller Ehrman LLP, Seattle, Washington, and by Mayer, Brown, Rowe & Maw LLP, and for the Initial Purchasers by Sullivan & Cromwell LLP. Mayer, Brown, Rowe & Maw LLP and Sullivan & Cromwell LLP will rely upon the opinion of Richards, Layton & Finger, P.A., as to matters of Delaware law, and upon the opinion of Heller Ehrman LLP as to matters of Washington law.

# ADDITIONAL INFORMATION

## Independent Accountants

The independent registered public accountants of the Company will be Deloitte & Touche LLP. Deloitte & Touche LLP are also the independent registered public accountants for WMI and WMB.

## No Material Adverse Change

Except as disclosed in this offering circular, there has been no adverse change in the financial position of the Company, WaMu Delaware, WMB or WMI since December 31, 2005, or their respective dates of establishment (which was February 3, 2006 in the case of the Company and February 23, 2006 in the case of WaMu Delaware), that would be deemed material in the context of the issue and sale of the Trust Securities in this Offering.

## Legal Proceedings

Neither the Company nor WaMu Delaware are involved in any litigation, arbitration or administrative proceeding relating to claims or amounts that are material in the context of the issue and sale of the Trust Securities or the Fixed-to-Floating Rate Company Preferred Securities to which the Company or WaMu Delaware are a party, nor to the best of the Company's or WaMu Delaware's knowledge, is there any threatened litigation, arbitration or administrative proceedings relating to claims or amounts that are material in the context of the issue and sale of the Trust Securities or the Fixed-to-Floating Rate Company Preferred Securities that would in either case jeopardize the Company's or WaMu Delaware's ability to discharge the Company's or WaMu Delaware's respective obligations in respect of the issue and sale of the Trust Securities or the Fixed-to-Floating Rate Company Preferred Securities.

Neither the Company nor the Asset Trust is the subject of any litigation. None of the Company, WMI or WMB is currently involved in or, to WMB's knowledge, currently threatened with, any material litigation with respect to the assets included in the Asset Trust's portfolio, other than routine litigation arising in the ordinary course of business. Based on information currently available, advice of counsel, available insurance coverage and established reserves, WMB believes that the eventual outcome of the actions with respect to the assets included in the Asset Trust's portfolio will not, in the aggregate, have a material adverse effect on the Company's consolidated financial position or results of operations. However, in the event of unexpected future developments, it is possible that the ultimate resolution of those matters, if unfavorable, may be material to the Company's results of operations for any particular period.

WMB, the Company, the Asset Trust, WaMu Cayman and WaMu Delaware have not been named as defendants in any of the following lawsuits and, on that basis they do not expect such lawsuits to materially affect their respective operations or financial results.

*South Ferry L.P. #2 v. Killinger et al., No. CV04-1599C (W.D. Wa., Filed Jul. 19, 2004) (the "Securities Action").* This class action lawsuit is currently pending against WMI and certain of its senior executives in the U.S. District Court, Western Division of Washington. On behalf of a putative class of purchasers of WMI securities from April 15, 2003 through June 28, 2004, lead plaintiffs allege that in various public statements the defendants purportedly made misrepresentations and failed to disclose material facts concerning, among other things, alleged internal systems problems and hedging issues.

The defendants moved to dismiss the Securities Action on May 17, 2005. After briefing, but without oral argument, the Court on November 17, 2005 denied the motion in principal part; however, the Court dismissed the claims against certain of the individual defendants, dismissed claims pleaded on behalf of sellers of put options on WMI stock, and concluded that the plaintiffs

could not rely on supposed violations of generally accepted accounting principles to support their claims. The remaining defendants subsequently moved for reconsideration or, in the alternative, certification of the opinion for interlocutory appeal to the United States Court of Appeals for the Ninth Circuit. The District Court denied the motion for reconsideration, but the motion for certification remains pending.

*Lee Family Investments, by and through its Trustee W.B. Lee, Derivatively and on behalf of Nominal Defendant Washington Mutual, Inc. v. Killinger et al, No. CV05-2121C (W.D. Wa., Filed Nov. 29, 2005) (the "Derivative Action")*. On November 29, 2005, 12 days after the Court denied the motion to dismiss the Securities Action, a separate plaintiff filed in Washington State Superior Court a derivative shareholder lawsuit purportedly asserting claims for the benefit of WMI. The defendants include those individuals remaining as defendants in the Securities Action, as well as those of WMI's current independent directors who were directors at any time from April 15, 2003 through June 2004. The allegations in the Derivative Action mirror those in the Securities Action, but seek relief based on claims that the independent director defendants failed to take action to respond to the misrepresentations alleged in the Securities Action and that the filing of that action has caused WMI to expend sums to defend itself and the individual defendants and to conduct internal investigations related to the underlying claims. The defendants have not yet responded to the complaint in the Derivative Action.

**Governing Law**

The LLC Agreement, the Trust Agreement, the Trust Securities and the Fixed-to-Floating Rate Company Preferred Securities will be governed by, and construed in accordance with, the laws of the State of Delaware. The Fixed-to-Floating Rate WMI Preferred Stock will be governed by and construed in accordance with the laws of the State of Washington. The Fixed-to-Floating Rate Depositary Shares will be governed by, and construed in accordance with, the laws of the State of New York.

# INDEX OF TERMS

| Term | Page |
|---|---|
| 3(c)(7) Representations . . . . | vii |
| 3-Month USD LIBOR . . . . . . . . | 69 |
| Additional Amounts . . . . . . . . . | 75 |
| Additional Assets . . . . . . . . . . | 38 |
| Additional Tax Event . . . . . . . . | 75 |
| Additional Taxes . . . . . . . . . . . . | 75 |
| Administrative Services Agreement . . . . . . . . . . . . . . . | 41 |
| Advanced Consumer Lending System or ACLS . . . . . . . . . . | 53 |
| alternative services . . . . . . . . . . | 50 |
| Asset Documentation . . . . . . . . | 38 |
| Asset Portfolio . . . . . . . . . . . . . . | 39 |
| Asset Subsidiary . . . . . . . . . . . . | 39 |
| Asset Tax Opinion . . . . . . . . . . | 39 |
| Asset Trust . . . . . . . . . . . . . . . . . | i, 44 |
| AVM . . . . . . . . . . . . . . . . . . . . . . | 50 |
| back-end ratio . . . . . . . . . . . . . . | 49 |
| Bankruptcy Event . . . . . . . . . . . | 42 |
| Benefit Plan Investor . . . . . . . . | iii, 99 |
| Business Combination . . . . . . . | 83 |
| Business Day . . . . . . . . . . . . . . . | 59, 68, 79 |
| CACS . . . . . . . . . . . . . . . . . . . . . | 53 |
| Class A Asset Trust Certificate . . . . . . . . . . . . . . . | 45 |
| Class R Asset Trust Certificate . . . . . . . . . . . . . . . | 45 |
| Clearstream . . . . . . . . . . . . . . . . | 91 |
| Clearstream International . . . . | 91 |
| Clearstream Participants . . . . . | 92 |
| Code . . . . . . . . . . . . . . . . . . . . . . | iii, 99 |
| Code of Ethics . . . . . . . . . . . . . . | 51 |
| Company . . . . . . . . . . . . . . . . . . . | cover, 1, 36 |
| Company Common Securities . . | 4, 36 |
| Company Preferred Securities . . . . . . . . . . . . . . . | 1 |
| Company's Portfolio . . . . . . . . . | 25 |
| Comparable Treasury Issue . . | 71 |
| Comparable Treasury Price . . | 71 |
| Conditional Exchange . . . . . . . | 63 |
| core capital . . . . . . . . . . . . . . . . | 31 |
| Covered Debt . . . . . . . . . . . . . . . | 62 |
| Credit Score . . . . . . . . . . . . . . . . | 47 |
| Custodian . . . . . . . . . . . . . . . . . . | 56 |
| Custody Agreement . . . . . . . . . | 56 |
| Cut-Off Date . . . . . . . . . . . . . . . . | 45 |
| debt-to-income ratio . . . . . . . . . | 49 |
| Delaware Trustee . . . . . . . . . . . | 35 |
| Deposit Agreement . . . . . . . . . . | 85 |
| Depositary . . . . . . . . . . . . . . . . . | 64 |
| Dividend Payment Date . . . . . . | cover, 59, 68, 79 |
| Dividend Period . . . . . . . . . . . . . | 59, 68, 79 |
| DTC . . . . . . . . . . . . . . . . . . . . . . . | 89 |
| DTC Participants . . . . . . . . . . . . | vii, 90 |
| Eligible Assets . . . . . . . . . . . . . . | 38 |
| Eligible Investments . . . . . . . . . | 39 |
| employee benefit plan . . . . . . . | iii |
| ERISA . . . . . . . . . . . . . . . . . . . . . | iii, 99 |
| Euroclear . . . . . . . . . . . . . . . . . . . | 92 |
| Euroclear Operator . . . . . . . . . . | 92 |
| Euroclear Participants . . . . . . . | 92 |
| Euroclear Terms and Conditions . . . . . . . . . . . . . . . | 92 |
| Exchange Agreement . . . . . . . . | 64 |
| Exchange Event . . . . . . . . . . . . | 11, 63 |
| FDIC . . . . . . . . . . . . . . . . . . . . . . | xii, 57 |
| Federal Reserve . . . . . . . . . . . . | 57 |
| FFO . . . . . . . . . . . . . . . . . . . . . . . | 10, 68 |
| Fitch . . . . . . . . . . . . . . . . . . . . . . | 100 |
| Fixed Rate Company Preferred Securities . . . . . . . | 1 |
| Fixed Rate Depositary Shares . . | 88 |
| Fixed Rate Substitute Preferred Stock . . . . . . . . . . . | 84 |
| Fixed Rate Successor Depositary Share . . . . . . . . . | 84 |
| Fixed Rate WMI Preferred Stock . . . . . . . . . . . . . . . . . . . | 88 |
| Fixed-to-Floating Rate Company Preferred Securities . . . . . . . . . . . . . . . | cover, 1, 67 |
| Fixed-to-Floating Rate Depositary Shares . . . . . . . . | 11, 79, 85 |
| Fixed-to-Floating Rate Substitute Preferred Stock . . | 84 |
| Fixed-to-Floating Rate Successor Depositary Share . . . . . . . . . . . . . . . . . . . | 84 |
| Fixed-to-Floating Rate WMI Preferred Stock . . . . . . . . . . . | 2, 79 |
| Foreign Holder . . . . . . . . . . . . . . | 94 |
| FSA . . . . . . . . . . . . . . . . . . . . . . . | 101 |
| FSMA . . . . . . . . . . . . . . . . . . . . . . | 101 |
| GAAP . . . . . . . . . . . . . . . . . . . . . | xii |
| Global Security . . . . . . . . . . . . . | 89 |
| HELs . . . . . . . . . . . . . . . . . . . . . . | 5 |
| Independent Investment Banker . . . . . . . . . . . . . . . . . . . | 71 |
| Independent Manager . . . . . . . | 4, 41 |
| Indirect Participants . . . . . . . . . | 90 |
| Investment Company Act . . . . | cover, ix, 1 |
| Investment Company Act Event . . . . . . . . . . . . . . . . . . . | 71 |
| IRS . . . . . . . . . . . . . . . . . . . . . . . . | 93 |
| Japan Securities and Exchange Law . . . . . . . . . . . | 103 |
| Junior Equity Securities . . . . . | 70 |
| LIBOR Business Day . . . . . . . . | 69 |

| | |
|---|---|
| LIBOR Determination Date . . . | 69 |
| like amount . . . . . . . . . . . . . . . . | 2 |
| LLC Act . . . . . . . . . . . . . . . . . . . | 36 |
| LLC Agreement . . . . . . . . . . . . . | 36 |
| Loan Documents . . . . . . . . . . . | 56 |
| Marion . . . . . . . . . . . . . . . . . . . . | 21 |
| Moody's . . . . . . . . . . . . . . . . . . | 100 |
| New Assets . . . . . . . . . . . . . . . | 67 |
| New Reporting Rules . . . . . . . . | 97 |
| Nominee . . . . . . . . . . . . . . . . . . | 65, 89 |
| Offering . . . . . . . . . . . . . . . . . . . | 2 |
| OTS . . . . . . . . . . . . . . . . . . . . . . | cover, 2, 30 |
| Parity Equity Securities . . . . . . | 67 |
| Paying Agent(s) . . . . . . . . . . . | 65 |
| Permitted Investments . . . . . . . | 39 |
| plan . . . . . . . . . . . . . . . . . . . . . . | iii |
| Plan . . . . . . . . . . . . . . . . . . . . . . | 99 |
| plan assets . . . . . . . . . . . . . . . . | iii, 99 |
| Pooling and Servicing Agreement . . . . . . . . . . . . . . . | 5 |
| Primary Treasury Dealer . . . . . | 71 |
| Property Trustee . . . . . . . . . . . | 35 |
| PSA Delaware Trustee . . . . . . | 5, 44 |
| qualified institutional buyer(s) . . . . . . . . . . . . . . . . | iii, 1 |
| qualified purchaser(s) . . . . . . | iii, 1 |
| Qualifying Interests . . . . . . . . . | 23 |
| Rating Agencies . . . . . . . . . . . . | 40 |
| Rating Agency Condition . . . . | 41 |
| Reference Treasury Dealer . . | 71 |
| Reference Treasury Dealer Quotations . . . . . . . . . . . . . . . | 71 |
| Registrar . . . . . . . . . . . . . . . . . . | 65 |
| Regulation . . . . . . . . . . . . . . . . . | 99 |
| Regulatory Capital Event . . . . | 71 |
| Relevant Implementation Date | 102 |
| Relevant Member State . . . . . . | 102 |
| REMIC . . . . . . . . . . . . . . . . . . . . | 5, 97 |
| Reminder Notice . . . . . . . . . . . . | vii |
| Replacement Capital Covenant . . . . . . . . . . . . . . . . | 9, 61 |
| Replacement Covenant Covered Securities . . . . . . . . | 61 |
| S&P . . . . . . . . . . . . . . . . . . . . . . | 100 |
| SEC . . . . . . . . . . . . . . . . . . . . . . | xi |
| Section 3(c)(7) . . . . . . . . . . . . | vi |
| Securities Act . . . . . . . . . . . . . . | cover, ix, 1 |
| Securities Action . . . . . . . . . . . | 105 |
| Senior Equity Securities . . . . . | 12 |
| Series A-1 WaMu Cayman Preferred Securities . . . . . . . | 1 |
| Series A-2 WaMu Cayman Preferred Securities . . . . . . . | 1 |
| Servicer . . . . . . . . . . . . . . . . . . . | 44 |
| Servicer Indemnified Parties | 54 |
| SFA . . . . . . . . . . . . . . . . . . . . . . . | 102 |
| SUCCESS . . . . . . . . . . . . . . . . . | 50 |
| Successor Entity . . . . . . . . . . . | 84 |
| supplementary capital . . . . . . . | 31 |
| Tax Event . . . . . . . . . . . . . . . . . | 72 |
| Tax-Exempt U.S. Holder . . . . . | 96 |
| Thrift Financial Report(s) . . . | xii |
| total capital . . . . . . . . . . . . . . . . | 31 |
| Transfer Agent . . . . . . . . . . . . . | 65 |
| Treasury Rate . . . . . . . . . . . . . . | 72 |
| Trust Act . . . . . . . . . . . . . . . . . . | 35 |
| Trust Agreement . . . . . . . . . . . . | vi, 35 |
| Trust Securities . . . . . . . . . . . . | cover, 1, 59 |
| Trustee . . . . . . . . . . . . . . . . . . . . | 44 |
| UBTI . . . . . . . . . . . . . . . . . . . . . . | 96 |
| University Street . . . . . . . . . . . . | i, 4, 36 |
| U.S. Holder . . . . . . . . . . . . . . . . | 93 |
| US LIBOR Telerate Page 3750 . . . . . . . . . . . . . . . | 69 |
| U.S. Person . . . . . . . . . . . . . . . | 62 |
| Voting Parity Stock . . . . . . . . . | 82 |
| WaMu Cayman . . . . . . . . . . . . . | i, 1 |
| WaMu Cayman Preferred Securities . . . . . . . . . . . . . . . | 1 |
| WaMu Delaware . . . . . . . . . . . . | cover, 1, 35 |
| WMB . . . . . . . . . . . . . . . . . . . . . . | i, 1, 30 |
| WMI . . . . . . . . . . . . . . . . . . . . . . | cover, 1 |
| WMI Group . . . . . . . . . . . . . . . . | 1 |
| WMI's Board of Directors . . . . | 28 |
| WMI Parity Stock . . . . . . . . . . . | 79 |
| WTC . . . . . . . . . . . . . . . . . . . . . . | 65 |

No dealer, salesperson or other person is\authorized to give any information or to represent anything not contained in this offering circular. You must not rely on any unauthorized information or representations. This offering circular is an offer to sell only the notes offered hereby, but only under circumstances and in jurisdictions where it is lawful to do so. The information contained in this offering circular is current only as of its date.

TABLE OF CONTENTS

| | Page |
|---|---|
| Notice to Investors . . . . . . . . . . . . . . . . . . | iii |
| Special Note Regarding Forward-Looking Statements . . . . . . . . . . . . . . . | x |
| Where You Can Find More Information | xi |
| Index of Terms . . . . . . . . . . . . . . . . . . . . . . . | xii |
| Offering Circular Summary . . . . . . . . . . . | 1 |
| Risk Factors . . . . . . . . . . . . . . . . . . . . . . . . | 17 |
| Certain Information Concerning WMB | 30 |
| Use of Proceeds . . . . . . . . . . . . . . . . . . . . . | 34 |
| WaMu Delaware . . . . . . . . . . . . . . . . . . . . . | 35 |
| The Company . . . . . . . . . . . . . . . . . . . . . . . | 36 |
| The Asset Trust . . . . . . . . . . . . . . . . . . . . . | 44 |
| WMI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 57 |
| Certain Relationships and Related Party Transactions . . . . . . . . . . . . . . . . | 58 |
| Description of the Trust Securities . . . . | 59 |
| Description of the Fixed-to-Floating Rate Company Preferred Securities | 67 |
| Description of Other Company Securities . . . . . . . . . . . . . . . . . . . . . . . . | 77 |
| Description of the Fixed-to-Floating Rate WMI Preferred Stock . . . . . . . . . | 79 |
| Description of the Fixed-to-Floating Rate Depositary Shares . . . . . . . . . . . . | 85 |
| Description of the Other WMI Capital Stock . . . . . . . . . . . . . . . . . . . . . . . . . . . | 88 |
| Book-Entry Issuance . . . . . . . . . . . . . . . . | 89 |
| Certain U.S. Federal Income Tax Considerations . . . . . . . . . . . . . . . . . . . . | 93 |
| ERISA Considerations . . . . . . . . . . . . . . . | 99 |
| Ratings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 100 |
| Plan of Distribution . . . . . . . . . . . . . . . . . . | 101 |
| Validity of Securities . . . . . . . . . . . . . . . . . | 104 |
| Additional Information . . . . . . . . . . . . . . . . | 105 |
| Index of Terms . . . . . . . . . . . . . . . . . . . . . . . | 107 |

$1,250,000,000

# Washington Mutual Preferred Funding Trust I

Fixed-to-Floating Rate Perpetual Non-cumulative Trust Securities Automatically Exchangeable in Specified Circumstances into Depositary Shares representing Preferred Stock of Washington Mutual, Inc.



# Washington Mutual

## Goldman, Sachs & Co.
*Sole Global Coordinator and Sole Structuring Coordinator*

## Credit Suisse

## Morgan Stanley



Perfect Information

# End of Document

Perfect Information Limited
Michael House
35 Chiswell Street
London
EC1Y 4SE
Tel: +44 (0) 20 7892 4200
www.perfectinfo.com

London o New York o Hong Kong