to state a material fact that is required to be stated or that is necessary to make any statement not misleading in light of the circumstances in which it was made.

In the event that this offering circular, together with any amendment to it, is delivered to a prospective purchaser of Trust Securities in connection with a trade made in reliance on Section 2.3 of NI 45-106, and this offering circular contains a misrepresentation which was a misrepresentation at the time of purchase of the Trust Securities, the purchaser will have a statutory right of action against the Trust for damages or, while still the owner of the Trust Securities, for rescission, in which case, if the purchaser elects to exercise the right of rescission, the purchaser will have no right of action for damages, provided that:

(a) no action shall be commenced more than, in the case of an action for rescission, 180 days after the date of the transaction that gave rise to the cause of action; or, in the case of any other action, the earlier of: (i) 180 days after the plaintiff first had knowledge of the facts giving rise to the cause of action, or (ii) three years after the date of the transaction that gave rise to the cause of action;

(b) the defendant will not be liable if it proves that the purchaser purchased the Trust Securities with knowledge of the misrepresentation;

(c) the defendant will not be liable for all or any portion of the damages that it proves do not represent the depreciation in value of the Trust Securities as a result of the misrepresentation relied upon;

(d) in no case will the amount recoverable exceed the price at which the Trust Securities were offered to the purchaser; and

(e) the statutory right of action for rescission or damages is in addition to and does not derogate from any other rights or remedies the purchaser may have at law.

This summary is subject to the express provisions of the Securities Act (Ontario) and the regulations and rules thereunder and you should refer to such acts for the complete text of those provisions.

## Enforcement of Legal Rights

All of the directors and officers of the Trust as well as any experts named in this document, may be located outside of Canada and, as a result, it may not be possible for purchasers to effect service of process within Canada upon the Trust or those persons. All or a substantial portion of the assets of the Trust and those persons may be located outside of Canada and, as a result, it may not be possible to satisfy a judgment against the Trust or those persons in Canada or to enforce a judgment obtained in Canadian courts against the Trust or those persons outside of Canada.

## Canadian Tax Considerations

This offering circular does not address the Canadian tax consequences of ownership of the Trust Securities. Prospective purchasers of Trust Securities should consult their own tax advisors with respect to the Canadian and other tax considerations applicable to them including with respect to the application of the proposed "foreign investment entity" provisions of the Income Tax Act (Canada) which, if applicable, may result in a requirement to recognize income for tax purposes even though no cash distribution or proceeds of disposition have been received.

## VALIDITY OF SECURITIES

The validity of the Trust Securities will be passed upon for WMI and the Initial Purchasers by Richards, Layton & Finger, P.A., Wilmington, Delaware. The validity of the Series 2007-B Company Preferred Securities will be passed upon for the Company by Richards, Layton & Finger, P.A., special Delaware counsel for the Company, for WMI by Mayer Brown LLP, New York, New York, and for the Initial Purchasers by Sullivan & Cromwell LLP, New York, New York. The validity of the Depositary Shares and of the Series N WMI Preferred Stock will be passed upon for WMI by Mayer Brown LLP and by Heller Ehrman LLP, Seattle, Washington, and for the Initial Purchasers by Sullivan & Cromwell LLP. Mayer Brown LLP and Sullivan & Cromwell LLP will rely upon the opinion of Richards, Layton & Finger, P.A., as to matters of Delaware law, and upon the opinion of Heller Ehrman LLP as to matters of Washington law.

# ADDITIONAL INFORMATION

## Independent Registered Public Accounting Firm

The financial statements of Washington Mutual, Inc. ("WMI") and Washington Mutual Bank ("WMB") as of and for the years ended December 31, 2006 and 2005, and management's reports on the effectiveness of internal control over financial reporting as of December 31, 2006 for both WMI and WMB, incorporated by reference in this offering circular have been audited by Deloitte & Touche LLP, an independent registered public accounting firm, as stated in their reports appearing therein.

## Independent Auditors

The statement of financial condition of Washington Mutual Preferred Funding LLC as of and for the year ended December 31, 2006, and the related statements of income, member interests, and cash flows for the period February 3, 2006 (date of inception) to December 31, 2006, included in this offering circular have been audited by Deloitte & Touche LLP, independent auditors, as stated in their report appearing herein.

## No Material Adverse Change

Except as disclosed in this offering circular and the documents incorporated by reference herein, there has been no adverse change in the financial position of the Company, the Trust, WMB or WMI since September 30, 2007 or their respective dates of establishment (which was August 9, 2007 in the case of the Trust), that would be deemed material in the context of the issue and sale of the Trust Securities in this Offering.

## Legal Proceedings

The following litigation is in relation to WMI. WMB, the Company and the Asset Trusts have not been named as defendants in any of the following lawsuits and, on that basis, they do not expect such lawsuits materially affect their respective operations or financial results.

In the ordinary course of business, WMI and its subsidiaries are routinely defendants in or parties to a number of pending and threatened legal actions and proceedings, including actions brought on behalf of various classes of claimants. In certain of these actions and proceedings, claims for substantial monetary damages are asserted against WMI and its subsidiaries. Certain of these actions and proceedings are based on alleged violations of consumer protection, banking and other laws.

In July 2004, WMI and a number of its officers were named as defendants in a series of cases alleging violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), Rule 10b-5 thereunder and Section 20(a) of the Exchange Act. By stipulation, those cases were consolidated into a single case currently pending in the U.S. District Court for the Western Division of Washington South Ferry L.P. #2 v. Killinger et al., No. CV04-1599C (W.D. Wa., Filed Jul. 19, 2004) (the "Securities Action"). In brief, the plaintiffs in the Securities Action allege, on behalf of a putative class of purchasers of Washington Mutual, Inc., securities from April 15, 2003, through June 28, 2004, that, in various public statements, the defendants purportedly made misrepresentations and failed to disclose material facts concerning, among other things, alleged internal systems problems and hedging issues.

The defendants moved to dismiss the Securities Action on May 17, 2005. After briefing, but without oral argument, the Court on November 17, 2005, denied the motion in principal part; however, the Court dismissed the claims against certain of the individual defendants, dismissed claims pleaded on behalf of sellers of put options on Washington Mutual stock, and concluded that the plaintiffs could not rely on supposed violations of accounting standards to support their claims. The remaining defendants subsequently moved for reconsideration or, in the alternative, certification of the opinion

for interlocutory appeal to the United States Court of Appeals for the Ninth Circuit. The District Court denied the motion for reconsideration, but on March 6, 2006, granted the motion for certification.

The defendants thereafter moved to have the Ninth Circuit Court of Appeals accept the case for interlocutory review of the District Court's original order denying the motion to dismiss. On June 9, 2006, the Ninth Circuit granted the defendants' motion, indicating that it will hear the merits of the defendants' appeal. The defendants filed their initial brief on September 25, 2006. Pursuant to an updated, stipulated briefing schedule, the plaintiffs filed their responsive brief on January 10, 2007, and the defendants filed their reply on March 12, 2007. Oral argument has not yet been scheduled.

On November 29, 2005, 12 days after the Court denied the motion to dismiss the Securities Action, a separate plaintiff filed in Washington State Superior Court a derivative shareholder lawsuit purportedly asserting claims for the benefit of WMI. The case was removed to federal court, where it is now pending. *Lee Family Investments, by and through its Trustee W.B. Lee, Derivatively and on behalf of Nominal Defendant Washington Mutual, Inc. v. Killinger et al.*, No. CV05-2121C (W.D. Wa., Filed Nov. 29, 2005) (the *"Derivative Action"*). The defendants in the Derivative Action include those individuals remaining as defendants in the Securities Action, as well as those of WMI's current independent directors who were directors at any time from April 15, 2003, through June 2004. The allegations in the Derivative Action mirror those in the Securities Action, but seek relief based on claims that the independent director defendants failed properly to respond to the misrepresentations alleged in the Securities Action and that the filing of that action has caused WMI to expend sums to defend itself and the individual defendants and to conduct internal investigations related to the underlying claims. At the end of February 2006, the parties submitted a stipulation to the Court that the matter be stayed pending the outcome of the Securities Action. On March 2, 2006, the Court entered an Order pursuant to that stipulation, staying the Derivative Action in its entirety.

**Governing Law**

The LLC Agreement, the Trust Agreement, the Trust Securities and the Series 2007-B Company Preferred Securities will be governed by, and construed in accordance with, the laws of the State of Delaware. The Series N WMI Preferred Stock will be governed by, and construed in accordance with, the laws of the State of Washington. The Depositary Shares will be governed by, and construed in accordance with, the laws of the State of New York.

# Deloitte®

Deloitte & Touche LLP
Suite 3300
925 Fourth Avenue
Seattle, WA 98104-1126
USA

Tel: +1 206 716 7000
Fax: +1 206 965 7000
www.deloitte.com

## INDEPENDENT AUDITORS' REPORT

To the Board of Managers of
Washington Mutual Preferred Funding LLC
Seattle, Washington

We have audited the accompanying statement of financial condition of Washington Mutual Preferred Funding LLC (the "Company") as of December 31, 2006, and the related statements of income, member interests, and cash flows for the period February 3, 2006 (date of inception) to December 31, 2006. These financial statements are the responsibility of the Company's management. Our responsibility is to express an opinion on these financial statements based on our audit.

We conducted our audit in accordance with generally accepted auditing standards as established by the Auditing Standards Board (United States) and in accordance with the auditing standards of the Public Company Accounting Oversight Board (United States). Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement. The Company is not required to have, nor were we engaged to perform, an audit of its internal control over financial reporting. Our audit included consideration of internal control over financial reporting as a basis for designing audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the Company's internal control over financial reporting. Accordingly, we express no such opinion. An audit also includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements, assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation. We believe that our audit provides a reasonable basis for our opinion.

In our opinion, such financial statements present fairly, in all material respects, the financial position of Washington Mutual Preferred Funding LLC at December 31, 2006, and the results of its operations and its cash flows for the above-stated period, in conformity with accounting principles generally accepted in the United States of America.

*Deloitte & Touche LLP*

Seattle, Washington
March 21, 2007

Member of
Deloitte Touche Tohmatsu

**Washington Mutual Preferred Funding LLC**

**STATEMENT OF INCOME**

| | From Inception (February 3, 2006) through December 31, 2006 |
|---|---:|
| **Interest Income** | |
| Interest income ............................................... | $250,796,200 |
| Recovery of reserve for loan losses ................................. | (9,460,790) |
| Interest income after recovery of reserve for loan losses............... | 260,256,990 |
| **Expense** | |
| Loan servicing fees ............................................ | 6,625,659 |
| Other expenses ............................................... | 114,889 |
| Total expense............................................. | 6,740,548 |
| **Net Income**................................................. | $253,516,442 |

**Washington Mutual Preferred Funding LLC**

**STATEMENT OF FINANCIAL CONDITION**

|  | December 31, 2006 |
|---|---|
| **ASSETS** | |
| Cash | $ 43,165,776 |
| Loans held in portfolio | 7,281,604,640 |
| Allowance for loan losses | (24,994,354) |
| Total loans held in portfolio, net of reserve for loan losses | 7,256,610,286 |
| Receivable from affiliates for collections related to the servicing of loans | 218,575,543 |
| Other assets | 27,217,293 |
| **Total assets** | **$7,545,568,898** |
| **LIABILITIES** | |
| Payable to affiliates | $ 23,545,756 |
| Other liabilities | 205,242 |
| Total liabilities | 23,750,998 |
| **Member Interests** | |
| Common securities | 5,049,306,234 |
| Preferred securities no par value: 2,500,000 securities authorized, issued and outstanding ($1,000 per security liquidation preference) | 2,446,240,411 |
| Retained earnings | 26,271,255 |
| Total member interests | 7,521,817,900 |
| **Total Liabilities and Member Interests** | **$7,545,568,898** |

See Notes to Financial Statements

**Washington Mutual Preferred Funding LLC**

**STATEMENT OF MEMBER INTERESTS**

| | Common Securities | Preferred Securities | Retained Earnings | Total |
|---|---|---|---|---|
| **BALANCE, February 3, 2006** | $ — | $ — | $ — | $ — |
| Net income | | | 253,516,442 | 253,516,442 |
| Common securities issued | 5,695,621,428 | | | 5,695,621,428 |
| Preferred securities issued net of capitalized costs | | 2,446,240,411 | | 2,446,240,411 |
| Cash dividends paid on common securities | | | (122,184,355) | (122,184,355) |
| Cash dividends paid on preferred securities | | | (105,060,832) | (105,060,832) |
| Common securities redeemed | (646,315,194) | | | (646,315,194) |
| **BALANCE, December 31, 2006** | $5,049,306,234 | $2,446,240,411 | $ 26,271,255 | $7,521,817,900 |

## Washington Mutual Preferred Funding LLC
### Statement of Cash Flows

| | From Inception (February 3, 2006) through December 31, 2006 |
|---|---:|
| Net income . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ 253,516,442 |
| Adjustments to reconcile net income to net cash provided by operating activities: | |
| Recovery of reserve for loan losses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | (9,460,790) |
| Increase in receivable from affiliates. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | (218,575,543) |
| Increase in other assets. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | (4,224,332) |
| Increase in payable to affiliates . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 23,545,756 |
| Increase in other liabilities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 205,242 |
| Net cash provided by operating activities . . . . . . . . . . . . . . . . . . . . . . . . . . | 45,006,775 |
| **CASH FLOWS FROM INVESTING ACTIVITIES** | |
| Purchase of loans . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | (33,021,548) |
| Principal payments on loans held in portfolio . . . . . . . . . . . . . . . . . . . . . . . . . | 798,467,624 |
| Net cash provided by investing activities . . . . . . . . . . . . . . . . . . . . . . . . . . . | 765,446,076 |
| **CASH FLOWS FROM FINANCING ACTIVITIES** | |
| Proceeds from the issuance of common securities . . . . . . . . . . . . . . . . . . . . . | 113,283,332 |
| Proceeds from the issuance of preferred securities . . . . . . . . . . . . . . . . . . . . . | 46,749,564 |
| Payment of capitalized costs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | (53,759,590) |
| Redemption of common securities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | (646,315,194) |
| Dividends paid . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | (227,245,187) |
| Net cash used in financing activities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | (767,287,075) |
| Increase in cash. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 43,165,776 |
| **CASH,** beginning of period . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | — |
| **CASH,** end of period. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ 43,165,776 |

**SUPPLEMENTAL SCHEDULE OF NONCASH FINANCING ACTIVITIES:**

The Company issued common and preferred securities in exchange for cash, loans and other assets as follows:

| | |
|---|---:|
| Loans received in exchange for common and preferred securities . . . . . . . . . . | $8,012,774,740 |
| Other assets received in exchange for common and preferred securities . . . . . | 22,813,792 |

See Notes to Financial Statements

A-5

## NOTE 1: DESCRIPTION OF THE COMPANY

Washington Mutual Preferred Funding LLC (the "Company") is a Delaware limited liability company formed on February 3, 2006 for the purpose of (i) issuing preferred and common securities, (ii) acquiring and holding eligible assets, and (iii) performing functions necessary or incidental to the foregoing. The Company is classified as a partnership for U.S. federal income tax purposes. No provision for income taxes is recognized in the accompanying financial statements.

The assets owned by the Company provide cash flows for payment by the Company to holders of the securities.

On March 6, 2006, a pool of closed end, first lien home equity loans ("HELs") was contributed by Washington Mutual Bank ("WMB") and University Street Inc. ("University Street"), an indirect subsidiary of WMB, to the Company in exchange for the Company's common securities and the Series 2006-A and Series 2006-B Preferred Securities. Subsequently, and on the same day, the Company transferred the HELs to Washington Mutual Home Equity Trust I (the "Asset Trust I"), a statutory trust formed under the laws of the State of Delaware, in exchange for Class A-1 Washington Mutual Home Equity Trust I Certificates.

On December 12, 2006, a pool of payment option adjustable rate mortgages ("Option ARMs") was contributed by WMB and University Street to the Company in exchange for the additional common securities and the Series 2006-C Preferred Securities. Subsequently, and on the same day, the Company transferred the Option ARMs to WAMU 2006 OA-1 (the "Asset Trust II"), a statutory trust formed under the laws of the State of Delaware, in exchange for Class A-1 WAMU 2006 OA-1 Certificates.

Asset Trust I and Asset Trust II hold only HEL and Option ARM assets, respectively. The trusts do not have any liabilities other than those incurred in connection with the Pooling and Servicing Agreements ("PSAs") and any related agreements. The trusts do not have any directors, officers or other employees. At December 31, 2006, Asset Trust I and Asset Trust II had total assets of $4.7 billion and $2.8 billion, respectively.

As the transfers of assets from the Company to the Asset Trust I and Asset Trust II did not meet the definition of a sale within the scope of Statement of Financial Accounting Standards 140, *Accounting for Transfers and Servicing of Financial Assets and Extinguishments of Liabilities,* the assets continue to be recorded as loans on the Statement of Financial Condition.

## NOTE 2: SUMMARY OF SIGNIFICANT ACCOUNTING POLICIES

### Cash

Cash includes amounts due from banks.

### Use of Estimates

The Company's reporting and accounting policies conform to accounting principles generally accepted in the United States of America ("GAAP"). The preparation of financial statements in conformity with GAAP requires management to make estimates and assumptions that affect the reported amounts of assets and liabilities and disclosure of contingent assets and liabilities at the date of the financial statements and the reported amounts of revenues and expenses during the reporting period. Management has made significant estimates in certain areas, including the allowance for loan losses. Actual results could differ from those estimates.

### Loans Held in Portfolio

Loans held in portfolio are recorded at the principal amount outstanding, net of deferred loan costs or fees and any discounts received or premiums paid on purchased loans. Deferred costs or fees, discounts and premiums are amortized over the contractual term of the loan, adjusted for actual prepayments, using the interest method. The Company uses contractual payment terms to determine the constant yield needed to apply the interest method.

### Allowance for Loan Losses

The allowance for loan losses represents management's estimate of incurred credit losses inherent in its loan portfolio as of the reporting date. The Company's estimate of the allowance is based on a variety of factors, including past loan loss experience, the current credit profile of its borrowers, adverse situations that have occurred that may affect the borrowers' ability to repay, the estimated value of underlying collateral, the impact that changes in interest rates has on a borrower's ability to repay adjustable-rate loans and general economic conditions.

The Company accounts for the allowance for loan losses on portfolios of loans that are evaluated for collective impairment in accordance with Financial Accounting Standards Board ("FASB") Statement No. 5, *Accounting for Contingencies* ("Statement No. 5") when available information indicates that it is probable that a loss has been incurred and the amount of the loss can be reasonably estimated. The allowance comprises both an allocated and an unallocated component.

The Company determines the allocated portion of the allowance based on analyses of pools of loans with similar attributes. The allocated allowance is determined using statistical forecasting models that estimate default and loss outcomes based on an evaluation of past performance of similar pools of loans in our portfolio, and other factors affecting default and loss factors, as well as industry historical loan loss data.

The unallocated portion of the allowance reflects management's assessment of various risk factors that are not fully reflected in the models used to determine the allocated component of the allowance. These factors include general economic and business conditions specific to the Company's key lending products and markets, credit quality and collateral value trends, loan concentrations, specific industry conditions within portfolio segments, recent loss experience in particular segments of the portfolio, duration of the current business cycle and the impact of other such variables for which recent historical data do not provide a high level of precision for risk evaluation.

### Nonaccrual Loans

When a loan is placed on Nonaccrual status, all interest accrued, but not collected, is reversed against interest income. Loans are placed in nonaccrual status when they are 90 days past due. The Company accounts for these loans on the cash or cost recovery method, until they qualify for return to accrual status. Loans are returned to accrual status when the borrower brings the loans to less than 30 days past due. Loans are generally written down to the fair value of the underlying collateral (less estimated costs to sell) when those loans are 180 days past due.

### Other Assets

Other assets include foreclosed assets and interest receivable on loans. Foreclosed assets are accounted for at the lower of cost or fair value (less estimated costs to sell). The amount the Company ultimately recovers from foreclosed assets may differ substantially from the net carrying value of these

assets because of future market factors beyond its control or because of changes in its strategy for sale of the property. At December 31, 2006, the Company had foreclosed assets of $179,168.

### Recently Issued Accounting Standards Not Yet Adopted

In September 2006, the FASB issued Statement No. 157, *Fair Value Measurements* ("*Statement No. 157*"). Statement No. 157 prescribes a definition of the term "fair value", establishes a framework for measuring fair value and expands disclosure about fair value measurements. Statement No. 157 is effective for fiscal years beginning after November 15, 2007, with early adoption permitted as of January 1, 2007. The Company does not expect the application of Statement No. 157 to have a material effect on the Statement of Income and the Statement of Financial Condition.

In February 2007, the FASB issued Statement No. 159, *The Fair Value Option for Financial Assets and Financial Liabilities* ("Statement No. 159"). Statement No. 159 permits an instrument by instrument election to account for selected financial assets and liabilities at fair value. Statement No. 159 is effective for fiscal years beginning after November 15, 2007, with early adoption permitted as of January 1, 2007. The Company is currently evaluating the impact Statement No. 159 will have on its Statement of Income and Statement of Financial Condition.

### NOTE 3: LOANS AND ALLOWANCE FOR LOAN LOSSES

Loans held in portfolio consisted of the following:

|  | December 31, 2006 |
|---|---|
| Loans held in portfolio: | |
| Option ARMs home loans[1] | $2,638,560,716 |
| Home equity loans | 4,643,043,924 |
| Total loans held in portfolio[2] | $7,281,604,640 |

(1) The total amount by which the unpaid principal balance of Option ARM loans exceeded their original principal amount was $6.2 million at December 31, 2006.

(2) Includes net unamortized deferred loan origination costs of $67.7 million at December 31, 2006.

### Features of Residential Loans

Certain residential loans have features that may result in increased credit risk when compared with residential loans without those features. Categories of loans within the Company's portfolio that have such features include loans with an option to defer the payment of interest (i.e., Option ARM home loans). The portfolio of Option ARM loans largely consisted of loans with properties residing in the state of California.

At December 31, 2006 all loans held in portfolio were pledged as collateral for issued securities.

### Fair Value of Loans Held in Portfolio

The following estimated fair value amount has been determined by the Company using quoted market prices, internal estimates and the pricing of similar instruments. These estimates do not reflect any premium or discount that could result from offering for sale at one time the Company's entire holdings of loans held in portfolio. Fair value estimates were based on management's judgment concerning current economic conditions, risk characteristic of the loans held in portfolio and other factors. In addition, considerable judgment was required to interpret market data to develop the

estimates of fair value. Accordingly, the estimates presented herein are not necessarily indicative of the amounts the Company could realize in a current market exchange. The use of different market assumptions and/or estimation methodologies may have a material effect on the estimated fair value amount.

The net carrying amount and the fair value of the loans held in portfolio at December 31, 2006 was $7,256,610,286 and $6,962,489,000, respectively.

Changes in the allowance for loan losses were as follows:

|  | From Inception through December 31, 2006 |
| --- | --- |
| Balance, February 3, 2006 | $ — |
| Allowance acquired from loans transferred | 34,573,575 |
| Recovery of reserve for loan losses | (9,460,790) |
|  | 25,112,785 |
| Loans charged off: |  |
| Home equity loans | (118,450) |
| Total loans charged off | (118,450) |
| Recoveries of loans previously charged off: |  |
| Home equity loans | 19 |
| Total recoveries of loans previously charged off | 19 |
| Net charge - offs | (118,431) |
| Balance, end of year | $24,994,354 |

The amount of Nonaccrual loans held in portfolio at December 31, 2006 was $3,996,795.

## NOTE 4:  COMMON SECURITIES

At December 31, 2006, the Company had $5,049,306,234 of common securities issued and outstanding. The Company, at its discretion, may pay distributions on the Company's common securities out of legally available funds.

During the year, the Company declared and paid dividends in the amount of $122,184,355 to University Street after paying dividends on the Company's preferred securities. The Company also redeemed common securities in the amount of $646,315,194 from University Street during the year.

## NOTE 5:  PREFERRED SECURITIES

At December 31, 2006, the Company had (i) 1,250,000 of Series 2006-A Company Preferred Securities, (ii) 750,000 of Series 2006-B Company Preferred Securities, and (iii) 500,000 of Series 2006-C Company Preferred Securities issued and outstanding. The preferred securities do not have any voting rights.

When and if declared, dividends on the Series 2006-A Company Preferred Securities will be payable on a non-cumulative basis at a fixed rate per annum equal to 6.534% (calculated on a 30/360 Basis), and on and after March 15, 2011 at a variable rate per annum equal to three-month LIBOR for the related dividends period plus 1.485% (calculated on an Actual/360 Basis), in each case, on the liquidation preference of $1,000 per security. If declared, dividends on the Series 2006-A

Company Preferred Securities will be payable quarterly in arrears on March 15, June 15, September 15 and December 15 of each year commencing June 15, 2006. At its discretion, the Company may redeem the Series 2006-A Company Preferred Securities on March 15, 2011 or thereafter.

When and if declared, dividends on the Series 2006-B Company Preferred Securities will be payable on a non-cumulative basis at a fixed rate per annum equal to 7.25% (calculated on a 30/360 basis) on the liquidation preference of $1,000 per security. If declared, dividends on the Series 2006-B Company Preferred Securities will be payable quarterly in arrears on March 15, June 15, September 15 and December 15 of each year commencing June 15, 2006. At its discretion, the Company may redeem the Series 2006-B Company Preferred Securities on March 15, 2011 or thereafter.

When and if declared, dividends on the Series 2006-C Company Preferred Securities will be payable on a non-cumulative basis at a fixed rate per annum equal to 6.665% (calculated on a 30/360 Basis), and on and after December 15, 2016 at a variable rate per annum equal to three-month LIBOR for the related dividends period plus 1.7925% (calculated on an Actual/360 Basis), in each case, on the liquidation preference of $1,000 per security. If declared, dividends on the Series 2006-C Company Preferred Securities will be payable quarterly in arrears on March 15, June 15, September 15 and December 15 of each year commencing March 15, 2007. At its discretion, the Company may redeem the Series 2006-C Company Preferred Securities on December 15, 2016 or thereafter.

During the year, the Company declared and paid dividends in the amounts of $63,071,250 and $41,989,582 to holders of the Series 2006-A Company Preferred Securities and Series 2006-B Company Preferred Securities, respectively.

During the year, the Company incurred and capitalized costs associated with the issuance of preferred securities. These costs, totaling $53,759,590, related to legal, underwriting and other professional fees.

## NOTE 6:  CERTAIN RELATIONSHIPS AND RELATED PARTY TRANSACTIONS

WMB is the servicer of the HELs and Option ARMs that were conveyed to the Company in exchange for Company's common securities and the Company's preferred securities. WMB is entitled to a servicing fee from the Company equal to the beginning balance of the HELs loan portfolio and Option ARMs loan portfolio for any given period multiplied by an annualized rate equal to 0.125% and 0.375%, respectively. Since its inception, the Company has paid $6,625,659 to WMB as part of the servicing agreement.

At December 31, 2006, the Company had a payable to WMB in the amount of $23,545,756, which represented costs paid by WMB on behalf of the Company as well as excess asset contributions made by WMB to the Company.

At December 31, 2006, the Company had a receivable from WMB in the amount of $218,575,543, which represented principal and interest collections by WMB as the servicer of the HELs and Option ARMs.

The Second Amended and Restated Limited Liability Company Agreement of Washington Mutual Preferred Funding LLC (the LLC Agreement) provides that the Company be managed by a Board of Managers consisting of three members (Managers), one of whom is not and has not been during the preceding five years an officer or employee of Washington Mutual Inc. ("WMI") or any affiliate of WMI, other than a financing subsidiary (the Independent Manager). The Independent Manager is paid a

nominal fee for his services which is recorded in other expenses. The remaining two managers are employees of Washington Mutual Inc. and are not directly paid compensation by the Company for services rendered.

WMI and its affiliates do not allocate overhead expenses to the Company. Such expenses are considered *de minimis* to the Company's financial statements taken as a whole. The Company reimburses WMB for costs paid on the Company's behalf.

There is no material business relationship, agreement, arrangement, transaction or understanding that is or was entered into outside the ordinary course of business or is or was on terms other than would be obtained in an arm's-length transaction with an unrelated third party, between WMB or University Street and the Company.

# Washington Mutual Preferred Funding LLC

## Consolidated Statements of Income
### (Unaudited)

| | Three Months Ended June 30, 2007 | Three Months Ended June 30, 2006 |
|---|---|---|
| **Income** | | |
| Interest income . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ 98,590,306 | $76,264,847 |
| Provision for loan losses . . . . . . . . . . . . . . . . . . . . . . . . . . . . | (1,843,690) | (9,009,543) |
| Income after provision for loan losses . . . . . . . . . . . . . . . | 100,433,996 | 85,274,390 |
| **Expense** | | |
| Loan servicing fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3,324,761 | 1,624,887 |
| Other expenses. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 118,821 | 12,491 |
| Total expense. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3,443,582 | 1,637,378 |
| **Net Income** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ 96,990,414 | $83,637,012 |

| | Six Months Ended June 30, 2007 | From Inception (February 3, 2006) Through June 30, 2006 |
|---|---|---|
| **Income** | | |
| Interest income . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $205,554,905 | $ 97,438,866 |
| Provision for loan losses . . . . . . . . . . . . . . . . . . . . . . . . . . . | (4,947,815) | (9,123,418) |
| Income after provision for loan losses. . . . . . . . . . . . . . . . . | 210,502,720 | 106,562,284 |
| **Expense** | | |
| Loan servicing fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 7,077,927 | 2,741,691 |
| Other expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 204,432 | 41,081 |
| Total expense. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 7,282,359 | 2,782,772 |
| **Net Income**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $203,220,361 | $103,779,512 |

**Washington Mutual Preferred Funding LLC**

**Consolidated Statements of Financial Condition**
**(Unaudited)**

| | June, 30 2007 | December, 31 2006 |
|---|---|---|
| **ASSETS** | | |
| Cash.......................................... | $ 527,620,640 | $ 43,165,776 |
| Loans held in portfolio............................... | 6,151,566,623 | 7,281,604,640 |
| Allowance for loan losses ........................... | (19,974,435) | (24,994,354) |
| Loans held in portfolio, net ......................... | 6,131,592,188 | 7,256,610,286 |
| Receivable from affiliates for collections related to the servicing of loans...................................... | 194,984,152 | 218,575,543 |
| Other assets..................................... | 22,293,729 | 27,217,293 |
| **Total assets** ...................................... | $6,876,490,709 | $7,545,568,898 |
| **LIABILITIES** | | |
| Payable to affiliates................................ | $ 273,196 | $ 23,545,756 |
| Other liabilities .................................. | 468,356 | 205,242 |
| Total liabilities .................................. | 741,552 | 23,750,998 |
| **Member Interests** | | |
| Common securities................................ | 3,896,229,848 | 5,049,306,234 |
| Preferred securities no par value: 3,000,000 at June 30, 2007 and 2,500,000 at December 31, 2006 securities authorized, issued and outstanding ($1,000 per security liquidation preference) ...................................... | 2,937,732,243 | 2,446,240,411 |
| Retained earnings................................. | 41,787,066 | 26,271,255 |
| Total member interests ........................... | 6,875,749,157 | 7,521,817,900 |
| **Total Liabilities and Member Interests** ................... | $6,876,490,709 | $7,545,568,898 |

See Notes to Consolidated Financial Statements

**Washington Mutual Preferred Funding LLC**

**Consolidated Statements of Member Interests**
**(Unaudited)**

| | Common Securities | Preferred Securities | Retained Earnings | Total |
|---|---|---|---|---|
| **BALANCE, February 3, 2006 (Inception)** | $ — | $ — | $ — | $ — |
| Net income | | | 103,779,512 | 103,779,512 |
| Common securities issued | 3,423,697,341 | | | 3,423,697,341 |
| Preferred securities issued | | 1,957,371,824 | | 1,957,371,824 |
| Capitalized costs | | (533,674) | | (533,674) |
| Cash dividends paid on common securities | | | (40,398,774) | (40,398,774) |
| Cash dividends paid on preferred securities | | | (37,035,833) | (37,035,833) |
| Common securities redeemed | | | | — |
| Cash dividends paid on common securities | | | — | — |
| Cash dividends paid on preferred securities | | | — | — |
| Common securities redeemed | (288,975,939) | | | (288,975,939) |
| **BALANCE, June 30, 2006** | $ 3,134,721,402 | $1,956,838,150 | $ 26,344,905 | $ 5,117,904,457 |
| **BALANCE, December 31, 2006** | $ 5,049,306,234 | $2,446,240,411 | $ 26,271,255 | $ 7,521,817,900 |
| Net income | | | 203,220,361 | 203,220,361 |
| Preferred securities issued | — | 500,000,000 | | 500,000,000 |
| Capitalized costs | | (8,508,168) | | (8,508,168) |
| Cash dividends paid on common securities | | | (102,831,913) | (102,831,913) |
| Cash dividends paid on preferred securities | | | (84,872,637) | (84,872,637) |
| Common securities redeemed | (1,153,076,386) | | | (1,153,076,386) |
| **BALANCE, June 30, 2007** | $ 3,896,229,848 | $2,937,732,243 | $ 41,787,066 | $ 6,875,749,157 |

## Washington Mutual Preferred Funding LLC

## Consolidated Statements of Cash Flows
### (Unaudited)

| | Six Months Ended June 30, 2007 | From Inception (February 3, 2006) Through June 30, 2006 |
|---|---|---|
| **CASH FLOWS FROM OPERATING ACTIVITIES** | | |
| Net income | $ 203,220,361 | $ 103,779,512 |
| Adjustments to reconcile net income to net cash provided by operating activities: | | |
| Provision for loan losses | (4,947,815) | (9,123,418) |
| Decrease (Increase) in receivable from affiliates | 23,591,391 | (81,191,698) |
| Decrease in other assets | 5,183,949 | 248,422 |
| (Decrease) increase in payable to affiliates | (23,272,560) | 723,393 |
| Increase (Decrease) in other liabilities | 263,114 | (251,178) |
| Net cash provided by operating activities | 204,038,440 | 14,185,033 |
| **CASH FLOWS FROM INVESTING ACTIVITIES** | | |
| Principal payments on loans held in portfolio | 1,129,705,528 | 295,461,167 |
| Net cash provided by investing activities | 1,129,705,528 | 295,461,167 |
| **CASH FLOWS FROM FINANCING ACTIVITIES** | | |
| Proceeds from the issuance of common securities | — | 65,715,334 |
| Proceeds from the issuance of preferred securities | 500,000,000 | 43,031,636 |
| Payment of capitalized costs | (8,508,168) | (533,674) |
| Redemption of common securities | (1,153,076,386) | (288,975,939) |
| Dividends paid | (187,704,550) | (77,434,607) |
| Net cash used in financing activities | (849,289,104) | (258,197,250) |
| Increase in cash | 484,454,864 | 51,448,950 |
| **CASH,** beginning of period | 43,165,776 | — |
| **CASH,** end of period | $ 527,620,640 | $ 51,448,950 |
| **SUPPLEMENTAL SCHEDULE OF NONCASH FINANCING ACTIVITIES:** | | |
| The Company issued common and preferred securities in exchange for loans and other assets as follows: | | |
| Loans received in exchange for common and preferred securities | — | $53,000,394,935 |
| Other assets received in exchange for common and preferred securities | — | 14,555,436 |

## NOTE 1:  DESCRIPTION OF THE COMPANY

Washington Mutual Preferred Funding LLC (the "Company") is a Delaware limited liability company formed on February 3, 2006 for the purpose of (i) issuing preferred and common securities, (ii) acquiring and holding eligible assets and (iii) performing functions necessary or incidental to the foregoing. The Company is classified as a partnership for U.S. federal income tax purposes. No provision for income taxes is recognized in the accompanying consolidated financial statements.

The assets owned by the Company provide cash flows for payment by the Company to holders of the securities.

On March 6, 2006, a pool of closed end, first lien home equity loans ("HELs") was contributed by Washington Mutual Bank ("WMB") and University Street, Inc. ("University Street"), an indirect subsidiary of WMB, to the Company in exchange for the Series 2006-A and Series 2006-B Preferred Securities, in the case of WMB, and the Company's common securities, in the case of University Street. Subsequently, and on the same day, the Company transferred the HELs to Washington Mutual Home Equity Trust I (the "Asset Trust I"), a statutory trust formed under the laws of the State of Delaware, in exchange for Class A-1 Washington Mutual Home Equity Trust I Certificates.

On December 12, 2006, a pool of payment option adjustable rate mortgages ("Option ARMs") was contributed by WMB and University Street to the Company in exchange for the Series 2006-C Preferred Securities, in the case of WMB, and additional common securities, in the case of University Street. Subsequently, and on the same day, the Company transferred the Option ARMs to WAMU 2006 OA-1 (the "Asset Trust II"), a statutory trust formed under the laws of the State of Delaware, in exchange for Class A-1 WAMU 2006 OA-1 Certificates.

Substantially all of the assets held by Asset Trust I and Asset Trust II are HEL and Option ARM assets, respectively. The trusts do not have any liabilities other than those incurred in connection with the Pooling and Servicing Agreements ("PSAs"). The trusts do not have any directors, officers or employees. At June 30, 2007, Asset Trust I and Asset Trust II had total assets of approximately $4.4 billion and $2.2 billion, respectively. These trusts are consolidated into the Company.

As the transfers of assets from the Company to Asset Trust I and Asset Trust II did not meet the definition of a sale within the scope of Statement of Financial Accounting Standards 140, *Accounting for Transfers and Servicing of Financial Assets and Extinguishments of Liabilities,* the assets continue to be recorded as loans on the Consolidated Statements of Financial Condition.

## NOTE 2:  SUMMARY OF SIGNIFICANT ACCOUNTING POLICIES

The Company's reporting and accounting policies conform to accounting principles generally accepted in the United States of America ("GAAP"). The preparation of consolidated financial statements in conformity with GAAP requires management to make estimates and assumptions that affect the reported amounts of assets and liabilities and disclosure of contingent assets and liabilities at the date of the consolidated financial statements and the reported amounts of revenues and expenses during the reporting period. Management has made significant estimates in certain areas, including the allowance for loan losses. Actual results could differ from those estimates.

The results of operations in the interim statements are not necessarily indicative of the results that may be expected for the full year. The interim financial information should be read in conjunction with Washington Mutual Preferred Funding LLC's 2006 audited financial statements.

### Recently Issued Accounting Standards Not Yet Adopted

In September 2006, the Financial Accounting Standards Board ("FASB") issued Statement No. 157, *Fair Value Measurements* ("Statement No. 157"). Statement No. 157 prescribes a definition of the term "fair value" establishes a framework for measuring fair value and expands disclosure

requirements about fair value measurements. Statement No. 157 is effective for fiscal years beginning after November 15, 2007. The Company does not expect the application of Statement No. 157 to have a material effect on the Consolidated Statements of Income and the Consolidated Statements of Financial Condition.

In February 2007, the FASB issued Statement No. 159, *The Fair Value Option for Financial Assets and Financial Liabilities* ("Statement No. 159"). Statement No. 159 permits an instrument by instrument election to account for selected financial assets and liabilities at fair value. Statement No. 159 is effective for fiscal years beginning after November 15, 2007. The Company is currently evaluating the impact Statement No. 159 will have on its Consolidated Statements of Income and Consolidated Statements of Financial Condition.

## NOTE 3: LOANS AND ALLOWANCE FOR LOAN LOSSES

Loans held in portfolio consisted of the following:

| | June 30, 2007 | December 31, 2006 |
|---|---|---|
| Loans held in portfolio: | | |
| Option ARMs home loans[1] | $1,885,525,632 | $2,638,560,716 |
| Home equity loans | 4,266,040,991 | 4,643,043,924 |
| Total loans held in portfolio[2] | $6,151,566,623 | $7,281,604,640 |

(1) The total amount by which the unpaid principal balance of Option ARM loans exceeded their original principal amount was $14.8 million and $6.2 million at June 30, 2007 and December 31, 2006, respectively.

(2) Includes net unamortized deferred loan origination costs of $53.4 million and $67.7 million at June 30, 2007 and December 31, 2006.

Changes in the allowance for loan losses were as follows:

| | Six Months Ended June 30, 2007 | From Inception (February 3, 2006) Through June 30, 2006 |
|---|---|---|
| Beginning balance | $24,994,354 | $ — |
| Allowance acquired from loans transferred | — | 27,099,065 |
| Provision for loan losses | (4,947,815) | (9,123,418) |
| | 20,046,539 | 14,975,647 |
| Loans charged off: | | |
| Home equity loans | (72,104) | — |
| Balance, end of period | $19,974,435 | $17,975,647 |

## NOTE 4: COMMON SECURITIES

At June 30, 2007, the Company had $3,896,229,848 of common securities issued and outstanding. The Company, at its discretion, may pay distributions on the Company's common securities out of legally available funds.

During the three and six months ended June 30, 2007, the Company declared and paid distributions in the amount of $65,365,602 and $102,831,913 to University Street after paying dividends on the Company's preferred securities. The Company also redeemed common securities in the amount of $611,940,660 and $1,153,076,386 from University Street during the same periods.

## NOTE 5: PREFERRED SECURITIES

The Company issued $500,000,000 of Fixed-to-Floating Rate Perpetual Non-cumulative Series 2007-A Company Preferred Securities, liquidation preference of $1,000 per security on May 21, 2007.

At June 30, 2007, the Company had (i) 1,250,000 of Series 2006-A Company Preferred Securities, (ii) 750,000 of Series 2006-B Company Preferred Securities, (iii) 500,000 of Series 2006-C Company Preferred Securities, and (iv) 500,000 of Series 2007-A Company Preferred Securities issued and outstanding, except under specified circumstances. The preferred securities do not have any voting rights.

If, when and as declared by the Company's Board of Managers out of legally available funds, dividends on the Series 2006-A Company Preferred Securities will be payable on a non-cumulative basis at a fixed rate per annum equal to 6.534% (calculated on a 30/360 basis), and on and after March 15, 2011 at a variable rate per annum equal to three-month USD LIBOR for the related dividends period plus 1.485% (calculated on an Actual/360 basis), in each case, on the liquidation preference of $1,000 per security. If declared, dividends on the Series 2006-A Company Preferred Securities will be payable quarterly in arrears on March 15, June 15, September 15 and December 15 of each year commencing on June 15, 2006. At its discretion, the Company may redeem the Series 2006-A Company Preferred Securities on March 15, 2011 or thereafter.

If, when and as declared by the Company's Board of Managers out of legally available funds, dividends on the Series 2006-B Company Preferred Securities will be payable on a non-cumulative basis at a fixed rate per annum equal to 7.25% (calculated on a 30/360 basis) on the liquidation preference of $1,000 per security. If declared, dividends on the Series 2006-B Company Preferred Securities will be payable quarterly in arrears on March 15, June 15, September 15 and December 15 of each year commencing on June 15, 2006. At its discretion, the Company may redeem the Series 2006-B Company Preferred Securities on March 15, 2011 or thereafter.

If, when and as declared by the Company's Board of Managers out of legally available funds, dividends on the Series 2006-C Company Preferred Securities will be payable on a non-cumulative basis at a fixed rate per annum equal to 6.665% (calculated on a 30/360 basis), and on and after December 15, 2016 at a variable rate per annum equal to three-month USD LIBOR for the related dividends period plus 1.7925% (calculated on an Actual/360 basis), in each case, on the liquidation preference of $1,000 per security. If declared, dividends on the Series 2006-C Company Preferred Securities will be payable quarterly in arrears on March 15, June 15, September 15 and December 15 of each year commencing on March 15, 2007. At its discretion, the Company may redeem the Series 2006-C Company Preferred Securities on December 15, 2016 or thereafter.

If, when and declared by the Company's Board of Managers out of legally available funds, dividends on the Series 2007-A Company Preferred Securities will be payable on a non-cumulative basis at a fixed rate per annum equal to 6.895% (calculated on a 30/360 basis), and on and after June 15, 2012 at a variable rate per annum equal to three-month USD LIBOR for the related dividends period plus 1.755% (calculated on an Actual/360 basis), in each case, on the liquidation preference of $1,000 per security. If declared, dividends on the Series 2007-A Company Preferred Securities will be payable quarterly in arrears on March 15, June 15, September 15 and December 15 of each year commencing on September 15, 2007. At its discretion, the Company may redeem the Series 2007-A Company Preferred Securities on May 25, 2017 or thereafter.

During the three and six months ended June 30, 2007, the Company declared and paid dividends in the amounts of $20,418,750 and $40,837,500 to the holders of the Series 2006-A; $13,593,750 and $27,187,500 to the holders of the Series 2006-B; and $8,331,249 and $16,847,637 to holders of the Series 2006-C.

During the three and six months ended June 30, 2007, the Company incurred capitalized costs associated with the issuance of preferred securities. These costs, totaling $8,372,270 and $8,508,168, related to legal, underwriting and other professional fees.

## NOTE 6:   CERTAIN RELATIONSHIPS AND RELATED PARTY TRANSACTIONS

WMB is the servicer of the HELs and Option ARMs that were conveyed to the Company in exchange for Company's common securities and the Company's preferred securities. WMB is entitled to a servicing fee from the Company equal to the beginning balance of the HELs loan portfolio and Option ARMs loan portfolio for any given period multiplied by an annualized rate equal to 0.125% and 0.375%, respectively. The Company incurred expenses of $3,324,761 and $7,077,927 to WMB under the terms of the servicing agreement during the three and six months ended June 30 2007. For the three months ended June 30, 2006, the Company incurred expenses of $1,624,887 to WMB under the terms of the servicing agreement. From inception, February 3, 2006 through June 30, 2006, the Company incurred expenses of $2,741,691 to WMB under the terms of the servicing agreement.

At June 30, 2007 and December 31, 2006, the Company had a liability to WMB in the amount of $273,196 and $23,545,756, respectively, which represented costs paid by WMB on behalf of the Company as well as excess asset contributions made by WMB to the Company.

At June 30, 2007 and December 31, 2006, the Company had a receivable from WMB in the amount of $194,984,152 and $218,575,543, which represented principal and interest collections by WMB as the servicer of the HELs and Option ARMs.

The Third Amended and Restated Limited Liability Company Agreement of Washington Mutual Preferred Funding LLC (the "LLC Agreement") provides that the Company be managed by a Board of Managers consisting of three members (Managers), one of whom is not and has not been during the preceding five years an officer or employee of Washington Mutual Inc. ("WMI") or any affiliate of WMI, other than a financing subsidiary (the "Independent Manager"). The Independent Manager is paid a nominal fee for his services which is recorded in other expenses. The remaining two managers are employees of Washington Mutual, Inc. and are not compensated directly by the Company for services rendered.

WMI and its affiliates do not allocate overhead expenses to the Company. Such expenses are considered *de minimis* to the Company's financial statements taken as a whole. The Company reimburses WMB for third-party expenses paid by WMB on the Company's behalf.

There is no material business relationship, agreement, arrangement, transaction or understanding that is or was entered into outside the ordinary course of business or is or was on terms other than would be obtained in an arm's-length transaction with an unrelated third party, between the Company and WMB or University Street, as the case may be.

## APPENDIX B

### Portfolio Data for Asset Trust I*

**Distribution by Current Principal Balance**

| Distribution by Current Principal Balance | Number of Mortgage Loans | Aggregate Unpaid Principal Balance | Percentage of Aggregate Unpaid Principal Balance as of the HELs Information Cut-Off Date |
|---|---|---|---|
| $    0.00 — $49,999 . . . . . . . . . . . . . . | 11,671 | $   414,008,163 | 10.14% |
| 50,000 — 74,999 . . . . . . . . . . . . . . | 11,546 | 722,197,499 | 17.69 |
| 75,000 — 99,999 . . . . . . . . . . . . . . | 8,701 | 754,659,189 | 18.48 |
| 100,000 — 199,999 . . . . . . . . . . . . . . | 12,332 | 1,653,310,400 | 40.49 |
| 200,000 — 299,999 . . . . . . . . . . . . . . | 1,502 | 349,160,616 | 8.55 |
| 300,000 — 499,999 . . . . . . . . . . . : . . . | 456 | 165,998,762 | 4.06 |
| Greater than or equal to $500,000 . . . . . | 40 | 24,327,041 | 0.60 |
| **Total:** . . . . . . . . . . . . . . . . . . . . . . . . . . | **46,248** | **$4,083,661,672** | **100.00%** |

**Distribution by Current Gross Rate**

| Distribution by Current Gross Rate | Number of Mortgage Loans | Aggregate Unpaid Principal Balance | Percentage of Aggregate Unpaid Principal Balance as of the HELs Information Cut-Off Date |
|---|---|---|---|
| 4.00% — 4.99% . . . . . . . . . . . . . . . . . | 16 | $     1,817,664 | 0.04% |
| 5.00    — 5.99 . . . . . . . . . . . . . . . . . . | 21,842 | 2,030,354,899 | 49.72 |
| 6.00    — 6.99 . . . . . . . . . . . . . . . . . . | 22,283 | 1,906,837,080 | 46.69 |
| 7.00    — 7.99 . . . . . . . . . . . . . . . . . . | 1,888 | 131,088,061 | 3.21 |
| Greater than 7.99% . . . . . . . . . . . . . . . | 219 | 13,563,968 | 0.33 |
| **Total:** . . . . . . . . . . . . . . . . . . . . . . . . . . | **46,248** | **$4,083,661,672** | **100.00%** |

**Distribution by Remaining Months to Maturity**

| Distribution by Remaining Months to Maturity | Number of Mortgage Loans | Aggregate Unpaid Principal Balance | Percentage of Aggregate Unpaid Principal Balance as of the HELs Information Cut-Off Date |
|---|---|---|---|
| Less than 61 . . . . . . . . . . . . . . . . . . . . | 1,240 | $   37,156,025 | 0.91% |
| 61 — 120 . . . . . . . . . . . . . . . . . . . . | 4,989 | 252,613,863 | 6.19 |
| 121 — 180 . . . . . . . . . . . . . . . . . . . . | 11,611 | 852,478,080 | 20.88 |
| 181 — 240 . . . . . . . . . . . . . . . . . . . . | 21,750 | 2,152,799,013 | 52.72 |
| 241 — 300 . . . . . . . . . . . . . . . . . . . . | 582 | 68,472,863 | 1.68 |
| 301 — 360 . . . . . . . . . . . . . . . . . . . . | 6,076 | 720,141,827 | 17.63 |
| **Total:** . . . . . . . . . . . . . . . . . . . . . . . . . . | **46,248** | **$4,083,661,672** | **100.00%** |

---

\* All information in this Appendix B is as of September 30, 2007 *(the "HELs Information Cut-Off Date")*. Due to rounding, the percentages shown may not precisely total 100.00%.

## Distribution by Year of Origination

| Distribution by Year of Origination | Number of Mortgage Loans | Aggregate Unpaid Principal Balance | Percentage of Aggregate Unpaid Principal Balance as of the HELs Information Cut-Off Date |
|---|---|---|---|
| 1998 — 2001 | 232 | $ 16,582,960 | 0.41% |
| 2002 | 4,477 | 397,196,256 | 9.73 |
| 2003 | 22,246 | 2,019,504,091 | 49.45 |
| 2004 | 13,236 | 1,184,490,298 | 29.01 |
| 2005 | 5,999 | 462,101,516 | 11.32 |
| 2006 | 58 | 3,786,552 | 0.09 |
| Total: | 46,248 | $4,083,661,672 | 100.00% |

## Distribution by FICO Score[1]

| Distribution by FICO Score | Number of Mortgage Loans | Aggregate Unpaid Principal Balance | Percentage of Aggregate Unpaid Principal Balance as of the HELs Information Cut-Off Date |
|---|---|---|---|
| Not Available | 1 | $ 82,945 | 0.00% |
| Less Than 600 | 1,105 | 91,268,311 | 2.23 |
| 600 — 649 | 1,469 | 122,057,864 | 2.99 |
| 650 — 699 | 4,463 | 398,009,724 | 9.75 |
| 700 — 749 | 8,791 | 812,828,617 | 19.90 |
| 750 — 799 | 17,379 | 1,581,160,307 | 38.72 |
| 800 — 849 | 13,040 | 1,078,253,904 | 26.40 |
| Total: | 46,248 | $4,083,661,672 | 100.00% |

(1) "FICO Score" means a statistical credit score obtained by WMB and many other mortgage lenders in connection with a loan application to help assess a borrower's creditworthiness. A FICO Score is generated by models developed by a third party, Fair, Isaac & Co., and made available to WMB through three national consumer reporting agencies. The FICO Score is based on a borrower's historical credit data, including, among other things, payment history, delinquencies on accounts, levels of outstanding indebtedness, length of credit history, types of credit and bankruptcy experience. A higher FICO Score indicates a more favorable credit rating.

## Distribution by Property Type

| Distribution by Property Type | Number of Mortgage Loans | Aggregate Unpaid Principal Balance | Percentage of Aggregate Unpaid Principal Balance as of the HELs Information Cut-Off Date |
|---|---|---|---|
| Single Family | 42,669 | $3,760,416,191 | 92.08% |
| Townhouse | 1,684 | 190,603,441 | 4.67 |
| Condo | 1,824 | 127,320,142 | 3.12 |
| Manufactured Housing | 71 | 5,321,898 | 0.13 |
| Total: | 46,248 | $4,083,661,672 | 100.00% |

**Distribution by State**

| Distribution by State | Number of Mortgage Loans | Aggregate Unpaid Principal Balance | Percentage of Aggregate Unpaid Principal Balance as of the HELs Information Cut-Off Date |
|---|---|---|---|
| Texas | 24,219 | $2,064,328,045 | 50.55% |
| California | 12,135 | 1,196,173,193 | 29.29 |
| Florida | 3,989 | 288,465,212 | 7.06 |
| New York | 2,089 | 208,702,177 | 5.11 |
| Washington | 946 | 80,979,666 | 1.98 |
| New Jersey | 582 | 58,771,679 | 1.44 |
| Oregon | 623 | 53,850,349 | 1.32 |
| Georgia | 376 | 30,083,032 | 0.74 |
| Arizona | 247 | 19,902,171 | 0.49 |
| Idaho | 264 | 19,860,534 | 0.49 |
| Other | 778 | 62,545,614 | 1.53 |
| **Total:** | **46,248** | **$4,083,661,672** | **100.00%** |

**Distribution by Current Loan-to-Value Ratio[1]**

| Distribution by Current Loan-to-Value Ratio | Number of Mortgage Loans | Aggregate Unpaid Principal Balance | Percentage of Aggregate Unpaid Principal Balance as of the HELs Information Cut-Off Date |
|---|---|---|---|
| Not Available | 3 | $ 568,236 | 0.01% |
| 0.01% — 10.00% | 1,411 | 40,820,971 | 1.00 |
| 10.01 — 20.00 | 4,096 | 202,102,400 | 4.95 |
| 20.01 — 30.00 | 5,572 | 368,835,462 | 9.03 |
| 30.01 — 40.00 | 7,110 | 565,136,390 | 13.84 |
| 40.01 — 50.00 | 7,575 | 685,429,526 | 16.78 |
| 50.01 — 60.00 | 7,821 | 795,334,495 | 19.48 |
| 60.01 — 70.00 | 7,579 | 816,316,916 | 19.99 |
| 70.01 — 80.00 | 4,806 | 578,667,603 | 14.17 |
| 80.01 — 90.00 | 274 | 30,358,214 | 0.74 |
| Greater than 90.00% | 1 | 91,459 | 0.00 |
| **Total:** | **46,248** | **$4,083,661,672** | **100.00%** |

(1) The current loan-to-value ratio of a mortgage loan is a fraction, the numerator of which is the outstanding principal balance of the mortgage loan and the denominator of which is the collateral value, generally at a time of origination of the related mortgage property, expressed as a percentage.

## APPENDIX C

### Portfolio Data for Asset Trust II*

**Distribution by Current Principal Balance**

| Distribution by Current Principal Balance | Number of Mortgage Loans | Aggregate Unpaid Principal Balance | Percentage of Aggregate Unpaid Principal Balance as of the Option ARMs Information Cut-Off Date |
|---|---|---|---|
| $    0.00 — $49,999 . . . . . . . . . . . . . | 8 | $        162,006 | 0.01% |
| 50,000 — 74,999 . . . . . . . . . . . . . . | 7 | 446,109 | 0.03 |
| 75,000 — 99,999 . . . . . . . . . . . . . . | 19 | 1,760,955 | 0.11 |
| 100,000 — 199,999 . . . . . . . . . . . . . | 952 | 142,515,262 | 8.56 |
| 200,000 — 299,999 . . . . . . . . . . . . . | 678 | 168,656,181 | 10.13 |
| 300,000 — 499,999 . . . . . . . . . . . . . | 1,020 | 410,994,113 | 24.69 |
| 500,000 — 999,999 . . . . . . . . . . . . . | 852 | 566,865,674 | 34.05 |
| Greater than or equal to $1,000,000 . . | 240 | 373,392,655 | 22.43 |
| **Total:** . . . . . . . . . . . . . . . . . . . . . . . . . | **3,776** | **$1,664,792,954** | **100.00%** |

**Distribution by Current Gross Rate**

| Distribution by Current Gross Rate | Number of Mortgage Loans | Aggregate Unpaid Principal Balance | Percentage of Aggregate Unpaid Principal Balance as of the Option ARMs Information Cut-Off Date |
|---|---|---|---|
| 6.00% — 6.99%. . . . . . . . . . . . . . . . . | 177 | $      93,927,248 | 5.64% |
| 7.00   — 7.99 . . . . . . . . . . . . . . . . . . | 2,868 | 1,256,158,059 | 75.45 |
| 8.00   — 8.99 . . . . . . . . . . . . . . . . . . | 727 | 312,453,016 | 18.77 |
| 9.00% — 9.99%. . . . . . . . . . . . . . . . . | 4 | 2,254,631 | 0.14 |
| **Total:**. . . . . . . . . . . . . . . . . . . . . . . . . | **3,776** | **$1,664,792,954** | **100.00%** |

**Distribution by Remaining Months to Maturity**

| Distribution by Remaining Months to Maturity | Number of Mortgage Loans | Aggregate Unpaid Principal Balance | Percentage of Aggregate Unpaid Principal Balance as of the Option ARMs Information Cut-Off Date |
|---|---|---|---|
| 121 — 180. . . . . . . . . . . . . . . . . . . . . | 2 | $        387,485 | 0.02% |
| 181 — 240. . . . . . . . . . . . . . . . . . . . . | 3 | 655,892 | 0.04 |
| 241 — 300. . . . . . . . . . . . . . . . . . . . . | 230 | 69,043,340 | 4.15 |
| 301 — 360. . . . . . . . . . . . . . . . . . . . . | 3,037 | 1,326,431,941 | 79.68 |
| Greater than 360 . . . . . . . . . . . . . . . . | 504 | 268,274,297 | 16.11 |
| **Total:** . . . . . . . . . . . . . . . . . . . . . . . . . | **3,776** | **$1,664,792,954** | **100.00%** |

---

\*    All information in this Appendix C is as September 30, 2007 *(the "Option ARMs Information Cut-Off Date")*. Due to rounding, the percentages shown may not precisely total 100.00%.

## Distribution by Year of Origination

| Distribution by Year of Origination | Number of Mortgage Loans | Aggregate Unpaid Principal Balance | Percentage of Aggregate Unpaid Principal Balance as of the Option ARMs Information Cut-Off Date |
|---|---|---|---|
| 1997 — 2001 | 218 | $ 62,212,171 | 3.74% |
| 2002 | 44 | 16,483,062 | 0.99 |
| 2003 | 867 | 279,286,621 | 16.78 |
| 2004 | 632 | 273,251,222 | 16.41 |
| 2005 | 1,762 | 884,047,088 | 53.10 |
| 2006 | 253 | 149,512,790 | 8.98 |
| **Total:** | **3,776** | **$1,664,792,954** | **100.00%** |

## Distribution by FICO Score[1]

| Distribution by FICO Score | Number of Mortgage Loans | Aggregate Unpaid Principal Balance | Percentage of Aggregate Unpaid Principal Balance as of the Option ARMs Information Cut-Off Date |
|---|---|---|---|
| Not Available | 17 | $ 11,146,197 | 0.67% |
| Less than 600 | 98 | 54,661,491 | 3.28 |
| 600 — 649 | 174 | 82,391,579 | 4.95 |
| 650 — 699 | 468 | 233,036,805 | 14.00 |
| 700 — 749 | 965 | 432,936,230 | 26.01 |
| 750 — 799 | 1,494 | 646,175,918 | 38.81 |
| 800 — 849 | 560 | 204,444,733 | 12.28 |
| **Total:** | **3,776** | **$1,664,792,954** | **100.00%** |

(1) "FICO Score" means a statistical credit score obtained by WMB and many other mortgage lenders in connection with a loan application to help assess a borrower's creditworthiness. A FICO Score is generated by models developed by a third party, Fair, Isaac & Co., and made available to WMB through three national consumer reporting agencies. The FICO Score is based on a borrower's historical credit data, including, among other things, payment history, delinquencies on accounts, levels of outstanding indebtedness, length of credit history, types of credit and bankruptcy experience. A higher FICO Score indicates a more favorable credit rating.

## Distribution by Property Type

| Distribution by Property Type | Number of Mortgage Loans | Aggregate Unpaid Principal Balance | Percentage of Aggregate Unpaid Principal Balance as of the Option ARMs Information Cut-Off Date |
|---|---|---|---|
| Single Family . . . . . . . . . . . . . . . . . . . . | 2,148 | $1,017,134,946 | 61.10% |
| Planned Unit Development . . . . . . . . . . | 578 | 279,279,899 | 16.78 |
| Condo . . . . . . . . . . . . . . . . . . . . . . . . | 518 | 180,032,860 | 10.81 |
| 2-4 Unit Multifamily . . . . . . . . . . . . . . . | 506 | 178,816,786 | 10.74 |
| Co-Op . . . . . . . . . . . . . . . . . . . . . . . . | 19 | 6,913,100 | 0.42 |
| Townhouse . . . . . . . . . . . . . . . . . . . . | 7 | 2,615,364 | 0.16 |
| **Total:** . . . . . . . . . . . . . . . . . . . . . . | **3,776** | **$1,664,792,954** | **100.00%** |

## Distribution by State

| Distribution by State | Number of Mortgage Loans | Aggregate Unpaid Principal Balance | Percentage of Aggregate Unpaid Principal Balance as of the Option ARMs Information Cut-Off Date |
|---|---|---|---|
| California . . . . . . . . . . . . . . . . . . . . . . | 2,321 | $1,218,409,405 | 73.19% |
| Florida . . . . . . . . . . . . . . . . . . . . . . . . | 242 | 74,680,109 | 4.49 |
| New York . . . . . . . . . . . . . . . . . . . . . . | 118 | 64,087,040 | 3.85 |
| Colorado . . . . . . . . . . . . . . . . . . . . . . | 183 | 40,576,973 | 2.44 |
| Massachusetts . . . . . . . . . . . . . . . . . . | 95 | 31,272,668 | 1.88 |
| New Jersey . . . . . . . . . . . . . . . . . . . . | 69 | 26,733,265 | 1.61 |
| Virginia . . . . . . . . . . . . . . . . . . . . . . . | 64 | 25,834,081 | 1.55 |
| Michigan . . . . . . . . . . . . . . . . . . . . . . | 81 | 19,833,535 | 1.19 |
| Illinois . . . . . . . . . . . . . . . . . . . . . . . . | 75 | 17,954,535 | 1.08 |
| Arizona . . . . . . . . . . . . . . . . . . . . . . . | 46 | 17,255,684 | 1.04 |
| Other . . . . . . . . . . . . . . . . . . . . . . . . . | 482 | 128,155,659 | 7.70 |
| **Total:** . . . . . . . . . . . . . . . . . . . . . . | **3,776** | **$1,664,792,954** | **100.00%** |

**Distribution by Current Loan-to-Value Ratio[1]**

| Distribution by Current Loan-to-Value Ratio | Number of Mortgage Loans | Aggregate Unpaid Principal Balance | Percentage of Aggregate Unpaid Principal Balance as of the Option ARMs Information Cut-Off Date |
|---|---|---|---|
| 0.01% — 10.00% | 10 | $ 319,416 | 0.02% |
| 10.01 — 20.00 | 21 | 7,093,124 | 0.43 |
| 20.01 — 30.00 | 50 | 11,810,717 | 0.71 |
| 30.01 — 40.00 | 99 | 32,060,759 | 1.93 |
| 40.01 — 50.00 | 203 | 70,030,010 | 4.21 |
| 50.01 — 60.00 | 314 | 155,793,792 | 9.36 |
| 60.01 — 70.00 | 754 | 352,071,345 | 21.15 |
| 70.01 — 80.00 | 1,789 | 821,681,578 | 49.36 |
| 80.01 — 90.00 | 530 | 211,630,269 | 12.71 |
| Greater than 90.00% | 6 | 2,301,944 | 0.14 |
| **Total:** | **3,776** | **$1,664,792,954** | **100.00%** |

(1) The current loan-to-value ratio of a mortgage loan is a fraction, the numerator of which is the outstanding principal balance of the mortgage loan and the denominator of which is the collateral value, generally at a time of origination of the related mortgage property, expressed as a percentage.

## APPENDIX D

## Portfolio Data for Asset Trust III*

### Distribution by Current Principal Balance

| Distribution by Current Principal Balance | Number of Initial Mortgage Loans | Aggregate Unpaid Principal Balance | Percentage of Aggregate Unpaid Principal Balance as of the Flex-5 ARMs Information Cut-Off Date |
|---|---|---|---|
| $ 0.00 — $ 49,999 . . . . . . . . . . . . | 732 | $ 24,443,841 | 0.47% |
| 50,000 — 74,999 . . . . . . . . . . . . | 913 | 58,037,496 | 1.12 |
| 75,000 — 99,999 . . . . . . . . . . . . | 1,203 | 106,465,049 | 2.05 |
| 100,000 — 199,999 . . . . . . . . . . . . | 4,992 | 745,281,355 | 14.33 |
| 200,000 — 299,999 . . . . . . . . . . . . | 3,252 | 804,353,527 | 15.47 |
| 300,000 — 499,999 . . . . . . . . . . . . | 3,902 | 1,514,610,817 | 29.13 |
| 500,000 — 999,999 . . . . . . . . . . . . | 2,180 | 1,445,467,643 | 27.80 |
| Greater than or equal to $1,000,000 . . . . | 331 | 500,487,958 | 9.63 |
| **Total:** . . . . . . . . . . . . . . . . . . . . . . . | **17,505** | **$5,199,147,686** | **100.00%** |

### Distribution by Current Gross Rate

| Distribution by Current Gross Rate | Number of Initial Mortgage Loans | Aggregate Unpaid Principal Balance | Percentage of Aggregate Unpaid Principal Balance as of the Flex-5 ARMs Information Cut-Off Date |
|---|---|---|---|
| 3.00% — 3.99% . . . . . . . . . . . . . . . . | 9 | $ 3,474,235 | 0.07% |
| 4.00 — 4.99 . . . . . . . . . . . . . . . . . | 3,715 | 1,260,556,535 | 24.25 |
| 5.00 — 5.99 . . . . . . . . . . . . . . . . . | 10,482 | 3,136,059,738 | 60.32 |
| 6.00 — 6.99 . . . . . . . . . . . . . . . . . | 1,781 | 491,813,775 | 9.46 |
| 7.00 — 7.99 . . . . . . . . . . . . . . . . . | 1,217 | 273,585,164 | 5.26 |
| 8.00 — 8.99 . . . . . . . . . . . . . . . . . | 300 | 33,610,405 | 0.65 |
| 9.00% — 9.99% . . . . . . . . . . . . . . . | 1 | 47,834 | 0.00 |
| **Total:** . . . . . . . . . . . . . . . . . . . . . . . | **17,505** | **$5,199,147,686** | **100.00%** |

---

\* All information in this Appendix D is presented on a *pro forma* basis as of September 30, 2007 *(the "Flex-5 ARMs Information Cut-Off Date")*. Due to rounding, the percentages shown may not precisely total 100.00%.

**Distribution by Remaining Months to Maturity**

| Distribution by Remaining Months to Maturity | Number of Initial Mortgage Loans | Aggregate Unpaid Principal Balance | Percentage of Aggregate Unpaid Principal Balance as of the Flex-5 ARMs Information Cut-Off Date |
|---|---|---|---|
| 61 — 120................... | 76 | $ 6,687,470 | 0.13% |
| 121 — 180................... | 325 | 48,119,422 | 0.93 |
| 241 — 300................... | 1,431 | 291,937,068 | 5.62 |
| 301 — 360................... | 15,355 | 4,734,092,896 | 91.06 |
| Greater than 360............. | 318 | 118,310,829 | 2.28 |
| **Total:** .................... | **17,505** | **$5,199,147,686** | **100.00%** |

**Distribution by Year of Origination**

| Distribution by Year of Origination | Number of Initial Mortgage Loans | Aggregate Unpaid Principal Balance | Percentage of Aggregate Unpaid Principal Balance as of the Flex-5 ARMs Information Cut-Off Date |
|---|---|---|---|
| 2000 — 2001................ | 636 | $ 107,421,374 | 2.07% |
| 2002 ..................... | 2,121 | 528,535,293 | 10.17 |
| 2003 ..................... | 7,462 | 2,212,819,803 | 42.56 |
| 2004 ..................... | 4,667 | 1,412,368,467 | 27.17 |
| 2005 ..................... | 1,672 | 641,870,003 | 12.35 |
| 2006 ..................... | 947 | 296,132,747 | 5.70 |
| **Total:** .................... | **17,505** | **$5,199,147,686** | **100.00%** |

## Distribution by FICO Score[1]

| Distribution by FICO Score | Number of Initial Mortgage Loans | Aggregate Unpaid Principal Balance | Percentage of Aggregate Unpaid Principal Balance as of the Flex-5 ARMs Information Cut-Off Date |
|---|---|---|---|
| Not Available | 68 | $ 18,707,377 | 0.36% |
| Less than 600 | 975 | 253,821,902 | 4.88 |
| 600 — 649 | 1,709 | 494,701,911 | 9.52 |
| 650 — 699 | 3,892 | 1,162,362,295 | 22.36 |
| 700 — 749 | 5,215 | 1,581,739,075 | 30.42 |
| 750 — 799 | 4,238 | 1,293,195,290 | 24.87 |
| 800 — 849 | 1,408 | 394,619,836 | 7.59 |
| **Total:** | **17,505** | **$5,199,147,686** | **100.00%** |

(1) "FICO Score" means a statistical credit score obtained by WMB and many other mortgage lenders in connection with a loan application to help assess a borrower's creditworthiness. A FICO Score is generated by models developed by a third party, Fair, Isaac & Co., and made available to WMB through three national consumer reporting agencies. The FICO Score is based on a borrower's historical credit data, including, among other things, payment history, delinquencies on accounts, levels of outstanding indebtedness, length of credit history, types of credit and bankruptcy experience. A higher FICO Score indicates a more favorable credit rating.

## Distribution by Property Type

| Distribution by Property Type | Number of Initial Mortgage Loans | Aggregate Unpaid Principal Balance | Percentage of Aggregate Unpaid Principal Balance as of the Flex-5 ARMs Information Cut-Off Date |
|---|---|---|---|
| Single Family | 10,047 | $3,211,079,580 | 61.76% |
| Condo | 4,144 | 940,712,567 | 18.09 |
| Planned Unit Development | 2,066 | 675,375,119 | 12.99 |
| 2-4 Unit Multifamily | 1,158 | 359,050,809 | 6.91 |
| Townhouse | 41 | 6,724,762 | 0.13 |
| Manufactured Housing | 44 | 5,638,504 | 0.11 |
| Prefabricated/Modular Home | 5 | 566,345 | 0.01 |
| **Total:** | **17,505** | **$5,199,147,686** | **100.00%** |

**Distribution by State**

| Distribution by State | Number of Initial Mortgage Loans | Aggregate Unpaid Principal Balance | Percentage of Aggregate Unpaid Principal Balance as of the Flex-5 ARMs Information Cut-Off Date |
|---|---|---|---|
| California | 6,289 | $2,355,236,149 | 45.30% |
| New York | 1,613 | 626,627,520 | 12.05 |
| Florida | 2,223 | 412,408,066 | 7.93 |
| Illinois | 1,413 | 323,815,007 | 6.23 |
| Washington | 818 | 221,049,644 | 4.25 |
| New Jersey | 681 | 197,668,971 | 3.80 |
| Massachusetts | 565 | 169,450,005 | 3.26 |
| Colorado | 617 | 136,421,576 | 2.62 |
| Connecticut | 474 | 132,207,575 | 2.54 |
| Arizona | 391 | 80,778,541 | 1.55 |
| Other | 2,421 | 543,484,632 | 10.45 |
| Total: | 17,505 | $5,199,147,686 | 100.00% |

**Distribution by Current Loan-to-Value Ratio[1]**

| Distribution by Current Loan-to-Value Ratio | Number of Initial Mortgage Loans | Aggregate Unpaid Principal Balance | Percentage of Aggregate Unpaid Principal Balance as of the Flex-5 ARMs Information Cut-Off Date |
|---|---|---|---|
| 0.01% — 10.00% | 100 | $ 5,924,070 | 0.11% |
| 10.01 — 20.00 | 206 | 26,612,238 | 0.51 |
| 20.01 — 30.00 | 438 | 92,608,068 | 1.78 |
| 30.01 — 40.00 | 929 | 234,476,015 | 4.51 |
| 40.01 — 50.00 | 1,511 | 432,552,613 | 8.32 |
| 50.01 — 60.00 | 2,548 | 800,933,710 | 15.41 |
| 60.01 — 70.00 | 5,606 | 1,815,230,382 | 34.91 |
| 70.01 — 80.00 | 5,951 | 1,750,249,646 | 33.66 |
| 80.01 — 90.00 | 177 | 30,981,323 | 0.60 |
| 90.01% — 100.00% | 39 | 9,579,621 | 0.18 |
| Total: | 17,505 | $5,199,147,686 | 100.00% |

(1) The current loan-to-value ratio of a mortgage loan is a fraction, the numerator of which is the outstanding principal balance of the mortgage loan and the denominator of which is the collateral value, generally at a time of origination of the related mortgage property, expressed as a percentage.

## APPENDIX E

### Portfolio Data for Asset Trust I, Asset Trust II And Asset Trust III, Combined*

**Distribution by Current Principal Balance**

| Distribution by Current Principal Balance | Number of Mortgage Loans | Aggregate Unpaid Principal Balance | Percentage of Aggregate Unpaid Principal Balance as of the Combined Information Cut-Off Date |
|---|---|---|---|
| $ 0.00 — $ 49,999 . . . . . . . . . . . . | 12,411 | $ 438,614,010 | 4.01% |
| 50,000 — 74,999 . . . . . . . . . . . . | 12,466 | 780,681,105 | 7.13 |
| 75,000 — 99,999 . . . . . . . . . . . . | 9,923 | 862,885,193 | 7.88 |
| 100,000 — 199,999 . . . . . . . . . . . . | 18,276 | 2,541,107,016 | 23.21 |
| 200,000 — 299,999 . . . . . . . . . . . . | 5,432 | 1,322,170,324 | 12.08 |
| 300,000 — 499,999 . . . . . . . . . . . . | 5,378 | 2,091,603,693 | 19.11 |
| 500,000 — 999,999 . . . . . . . . . . . . | 3,072 | 2,036,660,358 | 18.60 |
| Greater than or equal to $1,000,000. . . . | 571 | 873,880,612 | 7.98 |
| **Total:** . . . . . . . . . . . . . . . . . . . . . . . . | **67,529** | **$10,947,602,312** | **100.00%** |

**Distribution by Current Gross Rate**

| Distribution by Current Gross Rate | Number of Mortgage Loans | Aggregate Unpaid Principal Balance | Percentage of Aggregate Unpaid Principal Balance as of the Combined Information Cut-Off Date |
|---|---|---|---|
| 3.00% — 3.99% . . . . . . . . . . . . . . . . | 9 | $ 3,474,235 | 0.03% |
| 4.00 — 4.99 . . . . . . . . . . . . . . . . | 3,731 | 1,262,374,199 | 11.53 |
| 5.00 — 5.99 . . . . . . . . . . . . . . . . | 32,324 | 5,166,414,637 | 47.19 |
| 6.00 — 6.99 . . . . . . . . . . . . . . . . | 24,241 | 2,492,578,103 | 22.77 |
| 7.00 — 7.99 . . . . . . . . . . . . . . . . | 5,973 | 1,660,831,284 | 15.17 |
| 8.00 — 8.99 . . . . . . . . . . . . . . . . | 1,202 | 356,822,203 | 3.26 |
| Greater than 8.99% . . . . . . . . . . . . . . | 49 | 5,107,651 | 0.05 |
| **Total:** . . . . . . . . . . . . . . . . . . . . . . . . | **67,529** | **$10,947,602,312** | **100.00%** |

* All information in this Appendix E is presented on a *pro forma* basis as of September 30, 2007 with respect to portfolio data for Asset Trust I, Asset Trust II and Asset Trust III (the "*Combined Information Cut-Off Date*"). Due to rounding, the percentages shown may not precisely total 100.00%.

**Distribution by Remaining Months to Maturity**

| Distribution by Remaining Months to Maturity | Number of Mortgage Loans | Aggregate Unpaid Principal Balance | Percentage of Aggregate Unpaid Principal Balance as of the Combined Information Cut-Off Date |
|---|---|---|---|
| Less than 61 . . . . . . . . . . . . . . . . . | 1,240 | $ 37,156,025 | 0.34% |
| 61 — 120 . . . . . . . . . . . . . . . . . . . | 5,065 | 259,301,334 | 2.37 |
| 121 — 180 . . . . . . . . . . . . . . . . . . | 11,938 | 900,984,987 | 8.23 |
| 181 — 240 . . . . . . . . . . . . . . . . . . | 21,753 | 2,153,454,905 | 19.67 |
| 241 — 300 . . . . . . . . . . . . . . . . . . | 2,243 | 429,453,271 | 3.92 |
| 301 — 360 . . . . . . . . . . . . . . . . . . | 24,468 | 6,780,666,664 | 61.94 |
| Greater than 360 . . . . . . . . . . . . . | 822 | 386,585,126 | 3.53 |
| **Total:** . . . . . . . . . . . . . . . . . . . . . | **67,529** | **$10,947,602,312** | **100.00%** |

**Distribution by Year of Origination**

| Distribution by Year of Origination | Number of Mortgage Loans | Aggregate Unpaid Principal Balance | Percentage of Aggregate Unpaid Principal Balance as of the Combined Information Cut-Off Date |
|---|---|---|---|
| 1997 — 2001 . . . . . . . . . . . . . . . . | 1,086 | $ 186,216,505 | 1.70% |
| 2002 . . . . . . . . . . . . . . . . . . . . . . | 6,642 | 942,214,610 | 8.61 |
| 2003 . . . . . . . . . . . . . . . . . . . . . . | 30,575 | 4,511,610,514 | 41.21 |
| 2004 . . . . . . . . . . . . . . . . . . . . . . | 18,535 | 2,870,109,987 | 26.22 |
| 2005 . . . . . . . . . . . . . . . . . . . . . . | 9,433 | 1,988,018,607 | 18.16 |
| 2006 . . . . . . . . . . . . . . . . . . . . . . | 1,258 | 449,432,089 | 4.11 |
| **Total:** . . . . . . . . . . . . . . . . . . . . . | **67,529** | **$10,947,602,312** | **100.00%** |

## Distribution by FICO Score[1]

| Distribution by FICO Score | Number of Mortgage Loans | Aggregate Unpaid Principal Balance | Percentage of Aggregate Unpaid Principal Balance as of the Combined Information Cut-Off Date |
|---|---|---|---|
| Not Available | 86 | $ 29,936,519 | 0.27% |
| Less than 600 | 2,178 | 399,751,703 | 3.65 |
| 600 — 649 | 3,352 | 699,151,355 | 6.39 |
| 650 — 699 | 8,823 | 1,793,408,825 | 16.38 |
| 700 — 749 | 14,971 | 2,827,503,922 | 25.83 |
| 750 — 799 | 23,111 | 3,520,531,515 | 32.16 |
| 800 — 849 | 15,008 | 1,677,318,473 | 15.32 |
| **Total:** | **67,529** | **$10,947,602,312** | **100.00%** |

(1) "*FICO Score*" means a statistical credit score obtained by WMB and many other mortgage lenders in connection with a loan application to help assess a borrower's creditworthiness. A FICO Score is generated by models developed by a third party, Fair, Isaac & Co., and made available to WMB through three national consumer reporting agencies. The FICO Score is based on a borrower's historical credit data, including, among other things, payment history, delinquencies on accounts, levels of outstanding indebtedness, length of credit history, types of credit and bankruptcy experience. A higher FICO Score indicates a more favorable credit rating.

## Distribution by Property Type

| Distribution by Property Type | Number of Mortgage Loans | Aggregate Unpaid Principal Balance | Percentage of Aggregate Unpaid Principal Balance as of the Combined Information Cut-Off Date |
|---|---|---|---|
| Single Family | 54,864 | $ 7,988,630,717 | 72.97% |
| Condo | 6,486 | 1,248,065,568 | 11.4 |
| Planned Unit Development | 2,644 | 954,655,019 | 8.72 |
| 2-4 Unit Multifamily | 1,664 | 537,867,595 | 4.91 |
| Townhouse | 1,732 | 199,943,567 | 1.83 |
| Manufactured Housing | 115 | 10,960,402 | 0.10 |
| Co-op | 19 | 6,913,100 | 0.06 |
| Prefabricated/Modular Home | 5 | 566,345 | 0.01 |
| **Total:** | **67,529** | **$10,947,602,312** | **100.00%** |

## Distribution by State

| Distribution by State | Number of Mortgage Loans | Aggregate Unpaid Principal Balance | Percentage of Aggregate Unpaid Principal Balance as of the Combined Information Cut-Off Date |
|---|---|---|---|
| California | 20,745 | $ 4,769,818,747 | 43.57% |
| Texas | 24,471 | 2,114,936,135 | 19.32 |
| New York | 3,820 | 899,416,737 | 8.22 |
| Florida | 6,454 | 775,553,388 | 7.08 |
| Illinois | 1,682 | 358,975,435 | 3.28 |
| Washington | 1,819 | 317,495,059 | 2.90 |
| New Jersey | 1,332 | 283,173,915 | 2.59 |
| Massachusetts | 675 | 201,606,151 | 1.84 |
| Colorado | 872 | 183,236,864 | 1.67 |
| Connecticut | 520 | 147,225,773 | 1.34 |
| Other | 5,139 | 896,164,108 | 8.19 |
| **Total:** | **67,529** | **$10,947,602,312** | **100.00%** |

## Distribution by Current Loan-to-Value Ratio[1]

| Distribution by Current Loan-to-Value Ratio | Number of Mortgage Loans | Aggregate Unpaid Principal Balance | Percentage of Aggregate Unpaid Principal Balance as of the Combined Information Cut-Off Date |
|---|---|---|---|
| Not Available | 3 | $ 568,236 | 0.01% |
| 0.01% — 10.00% | 1,521 | 47,064,457 | 0.43 |
| 10.01 — 20.00 | 4,323 | 235,807,762 | 2.15 |
| 20.01 — 30.00 | 6,060 | 473,254,248 | 4.32 |
| 30.01 — 40.00 | 8,138 | 831,673,164 | 7.60 |
| 40.01 — 50.00 | 9,289 | 1,188,012,150 | 10.85 |
| 50.01 — 60.00 | 10,683 | 1,752,061,997 | 16.00 |
| 60.01 — 70.00 | 13,939 | 2,983,618,643 | 27.25 |
| 70.01 — 80.00 | 12,546 | 3,150,598,827 | 28.78 |
| 80.01 — 90.00 | 981 | 272,969,805 | 2.49 |
| Greater than 90.00% | 46 | 11,973,025 | 0.11 |
| **Total:** | **67,529** | **$10,947,602,312** | **100.00%** |

(1) The current loan-to-value ratio of a mortgage loan is a fraction, the numerator of which is the outstanding principal balance of the mortgage loan and the denominator of which is the collateral value, generally at a time of origination of the related mortgage property, expressed as a percentage.

# APPENDIX F

## Index of Terms

3(c)(7) Representations . . . . . . . . . . . . . . . . . . . . vii
3-Month USD LIBOR . . . . . . . . . . . . . . . . . . . . . 97
ACLS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58
Additional Amounts . . . . . . . . . . . . . . . . . . . . . . 104
Additional Assets. . . . . . . . . . . . . . . . . . . . . . . . 45
Additional Tax Event . . . . . . . . . . . . . . . . . . . . . 104
Additional Taxes . . . . . . . . . . . . . . . . . . . . . . . . 104
Administrative Services Agreement. . . . . . . . . . . 48
Advanced Consumer Lending System. . . . . . . . . 58
alternative services . . . . . . . . . . . . . . . . . . . . . . 55
Asset Contribution Agreements . . . . . . . . . . . . . 46
Asset Documentation. . . . . . . . . . . . . . . . . . . . . 46
Asset Subsidiary . . . . . . . . . . . . . . . . . . . . . . . . 46
Asset Tax Opinion . . . . . . . . . . . . . . . . . . . . . . . 47
Asset Trust I . . . . . . . . . . . . . . i, 7, 52, A-6, A-16
Asset Trust I Class A Trust Certificate . . . . 6, 43, 53
Asset Trust I Class R Trust Certificate. . . . . 6, 43, 53
Asset Trust I Custodian . . . . . . . . . . . . . . . . . . . 61
Asset Trust I Custody Agreement . . . . . . . . . . . . 61
Asset Trust I Delaware Trustee. . . . . . . . . . . . 7, 52
Asset Trust I Loan Documents . . . . . . . . . . . . . . 61
Asset Trust I Pooling and Servicing
   Agreement. . . . . . . . . . . . . . . . . . . . . . . . . 7, 52
Asset Trust I Servicer. . . . . . . . . . . . . . . . . . . . . 52
Asset Trust I Servicer Indemnified Parties. . . . . . 59
Asset Trust I Trustee . . . . . . . . . . . . . . . . . . . . . 52
Asset Trust II. . . . . . . . . . . . . . . . i, 7, 62, A-6, A-16
Asset Trust II Class A Trust Certificate . . . . 6, 43, 63
Asset Trust II Class R Trust Certificate . . . . 6, 43, 63
Asset Trust II Custodian . . . . . . . . . . . . . . . . . . . 72
Asset Trust II Custody Agreement . . . . . . . . . . . 72
Asset Trust II Delaware Trustee . . . . . . . . . . . 7, 62
Asset Trust II Loan Documents. . . . . . . . . . . . . . 72
Asset Trust II Pooling and Servicing
   Agreement. . . . . . . . . . . . . . . . . . . . . . . . . 7, 62
Asset Trust II Servicer . . . . . . . . . . . . . . . . . . . . 62
Asset Trust II Servicer Indemnified Parties . . . . . 70
Asset Trust II Trustee. . . . . . . . . . . . . . . . . . . . . 62
Asset Trust III . . . . . . . . . . . . . . . . . . . i, 6, 8, 73
Asset Trust III Class A Trust Certificate . . . . 7, 44, 74
Asset Trust III Class R Trust Certificate. . . . 7, 44, 74
Asset Trust III Custodian . . . . . . . . . . . . . . . . . . 83
Asset Trust III Custody Agreement . . . . . . . . . . . 83
Asset Trust III Cut-Off Date . . . . . . . . . . . . . . . . 73
Asset Trust III Delaware Trustee. . . . . . . . . . . 8, 73
Asset Trust III Loan Documents . . . . . . . . . . . . . 83
Asset Trust III Pooling and Servicing
   Agreement. . . . . . . . . . . . . . . . . . . . . . . . . 8, 73
Asset Trust III Servicer. . . . . . . . . . . . . . . . . . . . 73
Asset Trust III Servicer Indemnified Parties . . . . . 81
Asset Trust III Trustee . . . . . . . . . . . . . . . . . . . . 73
Asset Trusts . . . . . . . . . . . . . . . . . . . . . . . . . . i, 6
AVM. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54
back-end ratio . . . . . . . . . . . . . . . . . . . 54, 65, 76

Bankruptcy Event . . . . . . . . . . . . . . . . . . . . . . . 50
Benefit Plan Investor . . . . . . . . . . . . . . . . iii, v, 131
Business Combination . . . . . . . . . . . . . . . . . . . 114
Business Day . . . . . . . . . . . . . . . . . . . . 87, 97, 108
CACS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58
Clearstream . . . . . . . . . . . . . . . . . . . . . . . viii, 123
Clearstream International. . . . . . . . . . . . . . . . . . 123
Clearstream Participants . . . . . . . . . . . . . . . . . 123
Closing Date . . . . . . . . . . . . . . . . . . . . . . . . . . . 43
Code. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii, v
Code of Ethics. . . . . . . . . . . . . . . . . . . . . . . 56, 67
Combined Information Cut-Off Date . . . . . . . . . . E-1
Company . . . . . . . . . . . 1, 42, A-1, A-6, A-16, cover
Company Common Securities . . . . . . . . . . . . . 5, 42
Company Preferred Securities . . . . . . . . . . . . . . . 2
Company's Board of Managers. . . . . . . . . . . . . . 49
Company's Portfolio. . . . . . . . . . . . . . . . . . . . . . 32
Comparable Treasury Issue . . . . . . . . . . . . . . . 100
Comparable Treasury Price . . . . . . . . . . . . . . . 100
Conditional Exchange . . . . . . . . . . . . . . . . . . . 2, 91
core capital . . . . . . . . . . . . . . . . . . . . . . . . . 36,37
Covered Debt . . . . . . . . . . . . . . . . . . . . . . . . . . 89
Credit Score . . . . . . . . . . . . . . . . . . . . . . . . . . . 54
debt-to-income ratio. . . . . . . . . . . . . . . 54, 65, 76
Delaware Trustee. . . . . . . . . . . . . . . . . . . . . . . . 41
Deposit Agreement . . . . . . . . . . . . . . . . . . . . . 116
Depositary. . . . . . . . . . . . . . . . . . . . . . . . 92, 116
Depositary Shares. . . . . . . . . . . . 2, 15, 108, 116
Derivative Action . . . . . . . . . . . . . . . . . . . . . . . 141
dividend . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
Dividend Payment Date . . . . . . . . 87, 96, 108, cover
Dividend Period. . . . . . . . . . . . . . . . . 87, 96, 108
dividends. . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 96
DTC . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v, 121
DTC Participants . . . . . . . . . . . . . . . . . . . . vii, 122
EDE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66, 77
Eligible Assets. . . . . . . . . . . . . . . . . . . . . . . . . . 45
Eligible Investments. . . . . . . . . . . . . . . . . . . . . . 47
Eligible Purchaser . . . . . . . . . . . . . . . . . . . . . . . iv
Employee Benefit Plan. . . . . . . . . . . . . . . . . . iii,v
equivalent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
ERISA. . . . . . . . . . . . . . . . . . . . . . . . . . . iii, v, 131
Euroclear . . . . . . . . . . . . . . . . . . . . . . . . . vii, 123
Euroclear Operator . . . . . . . . . . . . . . . . . . . . . 123
Euroclear Participants . . . . . . . . . . . . . . . . . . . 123
Euroclear Terms and Conditions. . . . . . . . . . . . 124
Exchange Act . . . . . . . . . . . . . . . . . . . . . . . x, 140
Exchange Agreement . . . . . . . . . . . . . . . . . . . . 92
Exchange Event . . . . . . . . . . . . . . . . . . . . . . 15, 91
FASB . . . . . . . . . . . . . . . . . . . . . . . . . . A-7, A-16
FDIC. . . . . . . . . . . . . . . . . . . . . . . . . . . . . xii, 84
Federal Reserve . . . . . . . . . . . . . . . . . . . . . . . . 84
FFO . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 96
FFO Test. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

FICO Score . . . . . . . . . . . . . . . . . B-2, C-2, D-3, E-3
Fidelity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 69
Fidelity System . . . . . . . . . . . . . . . . . . . . . . . . . . . 69
Fitch . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 132
Fixed-to-Floating Rate Substitute Preferred Stock 115
Fixed-to-Floating Rate Successor Depositary
   Share . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 115
Flex-5 ARMs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
Flex-5 ARMs Information Cut-Off Date . . . . . . . . D-1
Foreign Holder . . . . . . . . . . . . . . . . . . . . . . . . . . . 125
FSMA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 133
GAAP . . . . . . . . . . . . . . . . . . . . . . . . . . xii, A-6, A-16
Global Security . . . . . . . . . . . . . . . . . . . . . . . . . . 121
HELs . . . . . . . . . . . . . . . . . . . . . . 6, 43, A-6, A-16
HELs Information Cut-Off Date . . . . . . . . . . . . . B-1
Independent Investment Banker . . . . . . . . . . . . 100
Independent Manager . . . . . . . . . . . . . . 6, 49, A-19
Index . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62
Indirect DTC Participants . . . . . . . . . . . . . . . . . . 122
Initial Purchasers . . . . . . . . . . . . . . . . . . . . . . . . 133
Investment Company Act . . . . . . . . . . . iv, ix, 1, cover
Investment Company Act Event . . . . . . . . . . . . . . 100
IRS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 125
Junior Equity Securities . . . . . . . . . . . . . . . . . . . . 98
Junior Securities . . . . . . . . . . . . . . . . . . . . . . . . 109
LIBOR Business Day . . . . . . . . . . . . . . . . . . . . . . 97
LIBOR Determination Date . . . . . . . . . . . . . . . . . . 97
Lifetime Rate Cap . . . . . . . . . . . . . . . . . . . . . . . . 74
like amount . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,3
LLC Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
LLC Agreement . . . . . . . . . . . . . . . . . . . . 42, A-19
Manager . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49
Margin . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63, 73
Marion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
misrepresentation . . . . . . . . . . . . . . . . . . . . . . . 137
Moody's . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 132
Mortgage Loans . . . . . . . . . . . . . . . . . . . . . . . . . . 8
Negative Amortization . . . . . . . . . . . . . . . . . 33, 63
Negative Amortization Cap . . . . . . . . . . . . . . . . . . 63
New Assets . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 95
New Reporting Rules . . . . . . . . . . . . . . . . . . . . . 130
NI 45-106 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 136
Nominee . . . . . . . . . . . . . . . . . . . . . . . . . . . . 93, 121
Offering . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
One-Year MTA . . . . . . . . . . . . . . . . . . . . . . . . . . . 62
Option ARMs . . . . . . . . . . . . . . . . 6, 43, A-6, A-16
Option ARMs Information Cut-Off Date . . . . . . . . C-1
OSC . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 137
OTS . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 36, cover
Outstanding Company Preferred Securities . . . . . . . 2
Parity Equity Securities . . . . . . . . . . . . . . . . . . 2, 95
Paying Agent . . . . . . . . . . . . . . . . . . . . . . . . . . . . 93
Paying Agents . . . . . . . . . . . . . . . . . . . . . . . . . . . 93
Permitted Investments . . . . . . . . . . . . . . . . . . . . . 47
Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 131
Plan Assets . . . . . . . . . . . . . . . . . . . . . . iii, v, 131
Pooling and Servicing Agreements . . . . . . . . . . . . 8

Primary Treasury Dealer . . . . . . . . . . . . . . . . . . . 100
Private Placement Provinces . . . . . . . . . . . . . . . . 136
Property Trustee . . . . . . . . . . . . . . . . . . . . . . . . . . 41
PSAs . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-6, A-16
Qualified Institutional Buyer . . . . . . iii, iv, viii, 1, cover
Qualified Purchaser . . . . . . . . . . . . iii, iv, viii, 1, cover
Qualifying Interests . . . . . . . . . . . . . . . . . . . . . . . . 26
Rating Agencies . . . . . . . . . . . . . . . . . . . . . . . . . . 48
Rating Agency Condition . . . . . . . . . . . . . . . . . . . . 48
Rating Agency Event . . . . . . . . . . . . . . . . . . . . . . 100
Reference Treasury Dealer . . . . . . . . . . . . . . . . . 100
Reference Treasury Dealer Quotations . . . . . . . . 100
Registrar . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 93
Regulation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 131
Regulatory Capital Event . . . . . . . . . . . . . . . . . . . 100
Relevant Implementation Date . . . . . . . . . . . . . . 133
Relevant Member State . . . . . . . . . . . . . . . . . . . 133
REMIC . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 129
Reminder Notice . . . . . . . . . . . . . . . . . . . . . . . . . . vii
Replacement Capital Covenant . . . . . . . . . . . 12, 89
Replacement Covenant Covered Securities . . . . . . 89
Reuters Screen LIBOR01 Page . . . . . . . . . . . . . . 97
S&P . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18,132
SEC . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xi
SFA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 134
Section 130.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . 137
Section 3(c)(7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi
Securities Act . . . . . . . . . . . . . . . . . iv, viii, 1, cover
Securities Action . . . . . . . . . . . . . . . . . . . . . . . . . 140
Securities and Exchange Law . . . . . . . . . . . . . . . 135
Selected Interest Rates (H.15) . . . . . . . . . . . 62, 73
Seneca . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
Senior Equity Securities . . . . . . . . . . . . . . . . . . . . 16
Series 2006-A Company Preferred Securities . . . . . 1
Series 2006-B Company Preferred Securities . . . . . 1
Series 2006-C Company Preferred Securities . . . . . 1
Series 2007-A Company Preferred Securities . . . . . 2
Series 2007-B Company Preferred
   Securities . . . . . . . . . . . . . . . . . . . . . 1, 95, cover
Series I WMI Preferred Stock . . . . . . . . . . . . . . . 119
Series J WMI Preferred Stock . . . . . . . . . . . . . . . 119
Series K WMI Preferred Stock . . . . . . . . . . . . . . . 119
Series L WMI Preferred Stock . . . . . . . . . . . . . . . 119
Series M WMI Preferred Stock . . . . . . . . . . . . . . 119
Series N WMI Preferred Stock . . . . . . . . . . . 2, 108
Similar Law . . . . . . . . . . . . . . . . . . . . . . . iii, v, 132
Statement No. 157 . . . . . . . . . . . . . . . . . . A-8, A-16
Statement No. 159 . . . . . . . . . . . . . . . . . A-8, A-17
Statement No. 5 . . . . . . . . . . . . . . . . . . . . . . . . . A-7
Successor Entity . . . . . . . . . . . . . . . . . . . . . . . . . 115
supplementary capital . . . . . . . . . . . . . . . . . . . . . . 37
tangible capital . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
Tax Event . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 100
Tax-Exempt U.S. Holder . . . . . . . . . . . . . . . . . . . 128
Ten-Year Date . . . . . . . . . . . . . . . . . . . . 12, cover
Thrift Financial Report . . . . . . . . . . . . . . . . . . . . . xii
Tier 1 capital . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

TILA . . . . . . . . . . . . . . . . . . . . . . . . . . 34
total capital . . . . . . . . . . . . . . . . . . . . . . 37
Transfer Agent . . . . . . . . . . . . . . . . . . . . . . v, 93
Treasury Rate . . . . . . . . . . . . . . . . . . . . 101
Trust . . . . . . . . . . . . . . . . . . . . iv, 1, 41, *cover*
Trust Act . . . . . . . . . . . . . . . . . . . . . . . . . 41
Trust Agreement . . . . . . . . . . . . . . . . iv, vi, 13, 41
Trust Holder . . . . . . . . . . . . . . . . . . . . . . . 16
Trust I . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Trust I Securities . . . . . . . . . . . . . . . . . . . . . . 1
Trust II . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
Trust II Securities . . . . . . . . . . . . . . . . . . . . . 2
Trust III . . . . . . . . . . . . . . . . . . . . . . . . . . 2
Trust III Securities . . . . . . . . . . . . . . . . . . . . 2
Trust Securities . . . . . . . . . . . . . . . iv, 1, 87, *cover*

Trust Security . . . . . . . . . . . . . . . . . . . . . 1, *cover*
U.S. Holder . . . . . . . . . . . . . . . . . . . . . . . 125
U.S. Person . . . . . . . . . . . . . . . . . . . . . . . . 90
UBTI . . . . . . . . . . . . . . . . . . . . . . . . . . . 128
University Street . . . . . . . . . . . . . i, 5, 42, A-6, A-16
Voting Parity Securities . . . . . . . . . . . . . . . . . 108
WaMu Cayman . . . . . . . . . . . . . . . . . . . . . . . 1
WaMu Cayman Securities . . . . . . . . . . . . . . . . . . 1
WMB . . . . . . . . . . . . . 1, 36, 140, A-6, A-16, *cover*
WMI . . . . . . . . . . . . . . . . 1, 140, A-10, A-19, *cover*
WMI Group . . . . . . . . . . . . . . . . . . . . . . . . . 1
WMI Parity Stock . . . . . . . . . . . . . . . . . . . . . 109
WMI's Board of Directors . . . . . . . . . . . . . . . . . 30
WTC . . . . . . . . . . . . . . . . . . . . . . . . . . . . 93

No dealer, salesperson or other person is authorized to give any information or to represent anything not contained in this offering circular. You must not rely on any unauthorized information or representations. This offering circular is an offer to sell only the Trust Securities offered hereby, but only under circumstances and in jurisdictions where it is lawful to do so. The information contained in this offering circular is current only as of its date.

## TABLE OF CONTENTS

| | |
|---|---|
| Index of Terms | ii |
| Notice To Investors | iii |
| Special Note Regarding Forward-Looking Statements | x |
| Where You Can Find More Information | xi |
| Offering Circular Summary | 1 |
| Risk Factors | 20 |
| Certain Information Concerning WMB | 36 |
| Use Of Proceeds | 40 |
| The Trust | 41 |
| The Company | 42 |
| Asset Trust I | 52 |
| Asset Trust II | 62 |
| Asset Trust III | 73 |
| WMI | 84 |
| Certain Relationships and Related Party Transactions | 86 |
| Description Of The Trust Securities | 87 |
| Description Of The Series 2007-B Company Preferred Securities | 95 |
| Description Of Other Company Securities | 106 |
| Description Of The Series N WMI Preferred Stock | 108 |
| Description Of The Depositary Shares | 116 |
| Description Of The Other WMI Capital Stock | 119 |
| Book-Entry Issuance | 121 |
| Certain U.S. Federal Income Tax Considerations | 125 |
| ERISA Considerations | 131 |
| Ratings | 132 |
| Plan Of Distribution | 133 |
| Notice To Canadian Residents | 136 |
| Validity Of Securities | 139 |
| Additional Information | 140 |
| APPENDIX A Washington Mutual Preferred Funding LLC Financial Statements | A-1 |
| APPENDIX B Portfolio Data for Asset Trust I | B-1 |
| APPENDIX C Portfolio Data for Asset Trust II | C-1 |
| APPENDIX D Portfolio Data for Asset Trust III | D-1 |
| APPENDIX E Portfolio Data for Asset Trust I, Asset Trust II and Asset Trust III, Combined | E-1 |
| APPENDIX F Index of Terms | F-1 |

$1,000,000,000

# Washington Mutual Preferred Funding Trust IV

### Fixed-to-Floating Rate Perpetual Non-cumulative Trust Securities Automatically Exchangeable in Specified Circumstances into Depositary Shares representing Preferred Stock of Washington Mutual, Inc.



*Sole Structuring Coordinator and Bookrunner*

## Goldman, Sachs & Co.

*Co-Managers*

### Credit Suisse

### Lehman Brothers

### Morgan Stanley

PRELIMINARY CANADIAN OFFERING MEMORANDUM

DATED OCTOBER 18, 2007 (SUBJECT TO COMPLETION)

*This Canadian Offering Memorandum constitutes an offering of the securities described herein only in those jurisdictions and to those persons where and to whom they may be lawfully offered for sale, and only by persons permitted to sell these securities. This Canadian Offering Memorandum is not, and under no circumstances is to be construed as, an advertisement or a public offering of these securities in Canada. No securities commission or similar authority in Canada has reviewed or in any way passed upon this document or the merits of these securities, and any representation to the contrary is an offence.*

# Washington Mutual Preferred Funding Trust IV

## Private Placement in Canada of
## Trust Securities

**THE OFFERING**

Washington Mutual Preferred Funding Trust IV (the "Trust") is offering Trust Securities of the Trust (the "Securities") in an international offering (the "Offering"). In Canada, the Offering is being made on a private placement basis in the provinces of British Columbia, Alberta, Manitoba, Ontario, Québec and Prince Edward Island (the "Private Placement Provinces") through some of the initial purchasers of the Offering or their affiliates who are permitted under applicable securities laws or available exemptions to offer and sell the Securities in those provinces. The Securities have not been nor will they be qualified by prospectus for sale to the public under applicable Canadian securities laws and, accordingly, any offer and sale of the Securities in Canada will be made on a basis which is exempt from the prospectus requirements of those securities laws.

Included in this Canadian Offering Memorandum and forming a part of it is the full text of the U.S. offering circular (the "U.S. Offering Circular") concerning the Offering. The definitions in the U.S. Offering Circular (except as otherwise stated) apply throughout this Canadian Offering Memorandum. Where the U.S. Offering Circular remains subject to completion or amendment, this Canadian Offering Memorandum similarly remains subject to completion or amendment. The Offering in the Private Placement Provinces is being made exclusively through this Canadian Offering Memorandum and not through any advertisement of the Securities. No person has been authorized to give any information or to make any representation other than those contained in this Canadian Offering Memorandum and any decision to purchase Securities should be based solely on the information contained in it. All dollar references in the U.S. Offering Circular are to U.S. dollars, unless otherwise indicated.

**REPRESENTATIONS AND AGREEMENT BY PURCHASERS**

Each purchaser of Securities in Canada will be deemed to have represented to the Trust and the dealer participating in the sale of the Securities that the purchaser:

(a)     is resident in one of the Private Placement Provinces and is entitled under applicable provincial securities laws to purchase the Securities without the benefit of a prospectus qualified under those securities laws and, in the case of purchasers in provinces other than Ontario without the services of a dealer registered pursuant to those securities laws;

(b)     is basing its investment decision solely on the final version of this Canadian Offering Memorandum and not on any other information concerning the Trust or the Offering;

(c)     has reviewed and acknowledges the terms referred to below under the heading "Resale Restrictions";

(d)      if in Ontario is an "accredited investor" as defined in National Instrument 45-106 ("NI 45-106"), and is not an individual unless purchasing from a fully registered dealer within the meaning of Section 204 of the Regulation to the Securities Act (Ontario), and is not a person created or being used solely to purchase or hold securities as an accredited investor;

(e)      if in Quebec, British Columbia, Alberta, Manitoba or Prince Edward Island is an "accredited investor" as defined in NI 45-106 and is not a person created or being used solely to purchase or hold securities as an accredited investor; and

(f)      is either purchasing Securities as principal for its own account, or is deemed to be purchasing Securities for its own account by virtue of being either (i) a trust company or trust corporation as further described in subsection (p) of the "accredited investor" definition of NI 45-106; or (ii) a person acting on behalf of a fully managed account managed by that person as further described in subsection (q) of the "accredited investor" definition of NI 45-106.

Each purchaser of Securities in Canada hereby agrees that it is the purchaser's express wish that all documents evidencing or relating in any way to the sale of the Securities be drafted in the English language only. *Chaque acheteur au Canada des valeurs mobilières reconnaît que c'est sa volonté expresse que tous les documents faisant foi ou se rapportant de quelque manière à la vente des valeurs mobilières soient rédigés uniquement en anglais.*

By purchasing these Securities, the purchaser acknowledges that its name and other specified information, including the number of Securities it has purchased, may be disclosed to Canadian securities regulatory authorities and become available to the public in accordance with the requirements of applicable laws. The purchaser consents to the disclosure of that information.

**INDIRECT COLLECTION OF PERSONAL INFORMATION (Ontario Purchasers)**

By purchasing these Securities, the purchaser acknowledges that personal information such as the purchaser's name will be delivered to the Ontario Securities Commission (the "OSC") and that such personal information is being collected indirectly by the OSC under the authority granted to it in securities legislation for the purposes of the administration and enforcement of the securities legislation of Ontario. By purchasing these Securities, the purchaser shall be deemed to have authorized such indirect collection of personal information by the OSC. Questions about such indirect collection of personal information should be directed to the OSC's Administrative Assistant to the Director of Corporate Finance, Suite 1903, Box 55, 20 Queen Street West, Toronto, Ontario M5H 3S8 or to the following telephone number: (416) 593-8086.

**RESALE RESTRICTIONS**

The distribution of the Securities in the Private Placement Provinces is being made on a private placement basis. Accordingly, any resale of the Securities must be made: (i) through an appropriately registered dealer or pursuant to an exemption from the dealer registration requirements of applicable provincial securities laws; and (ii) in accordance with, or pursuant to an exemption from, the prospectus requirements of applicable provincial securities laws. These resale restrictions may in some circumstances apply to resales made outside of Canada. Purchasers of Securities are advised to seek legal advice prior to any resale of Securities.

## RIGHTS OF ACTION (Ontario Purchasers)

Ontario Securities Commission Rule 45-501 provides that when an offering memorandum, such as this Canadian Offering Memorandum, is delivered to an investor to whom securities are distributed in reliance upon the "accredited investor" prospectus exemption in Section 2.3 of NI 45-106, the right of action referred to in Section 130.1 of the *Securities Act* (Ontario) ("Section 130.1") will apply in respect of such offering memorandum, unless, the prospective purchaser is:

   (a)   a Canadian financial institution, meaning either:

   (i)   an association governed by the *Cooperative Credit Associations Act* (Canada) or a central cooperative credit society for which an order has been made under section 473(1) of that Act; or

   (ii)   a bank, loan corporation, trust company, trust corporation, insurance company, treasury branch, credit union, caisse populaire, financial services corporation, or league that, in each case, is authorized by an enactment of Canada or a jurisdiction of Canada to carry on business in Canada or a jurisdiction in Canada;

   (b)   a Schedule III bank, meaning an authorized foreign bank named in Schedule III of the *Bank Act* (Canada);

   (c)   The Business Development Bank of Canada incorporated under the *Business Development Bank of Canada Act* (Canada); or

   (d)   a subsidiary of any person referred to in paragraphs (a), (b) or (c), if the person owns all of the voting securities of the subsidiary, except the voting securities required by law to be owned by the directors of the subsidiary.

Section 130.1 provides purchasers who purchase securities offered by an offering memorandum with a statutory right of action against the issuer of securities and any selling securityholder for rescission or damages in the event that the offering memorandum or any amendment to it contains a "misrepresentation". "Misrepresentation" means an untrue statement of a material fact or an omission to state a material fact that is required to be stated or that is necessary to make any statement not misleading in light of the circumstances in which it was made.

In the event that this Canadian Offering Memorandum, together with any amendment to it, is delivered to a prospective purchaser of Securities in connection with a trade made in reliance on Section 2.3 of NI 45-106, and this Canadian Offering Memorandum contains a misrepresentation which was a misrepresentation at the time of purchase of the Securities, the purchaser will have a statutory right of action against the Trust for damages or, while still the owner of the Securities, for rescission, in which case, if the purchaser elects to exercise the right of rescission, the purchaser will have no right of action for damages, provided that:

   (a)   no action shall be commenced more than, in the case of an action for rescission, 180 days after the date of the transaction that gave rise to the cause of action; or, in the case of any other action, the earlier of: (i) 180 days after the plaintiff first had knowledge of the facts giving rise to the cause of action, or (ii) three years after the date of the transaction that gave rise to the cause of action;

   (b)   the defendant will not be liable if it proves that the purchaser purchased the Securities with knowledge of the misrepresentation;

(c)     the defendant will not be liable for all or any portion of the damages that it proves do not represent the depreciation in value of the Securities as a result of the misrepresentation relied upon;

(d)     in no case will the amount recoverable exceed the price at which the Securities were offered to the purchaser; and

(e)     the statutory right of action for rescission or damages is in addition to and does not derogate from any other rights or remedies the purchaser may have at law.

This summary is subject to the express provisions of the *Securities Act* (Ontario) and the regulations and rules thereunder and you should refer to such acts for the complete text of those provisions.

## ENFORCEMENT OF LEGAL RIGHTS

All of the directors and officers of the Trust as well as any experts named in this document, may be located outside of Canada and, as a result, it may not be possible for purchasers to effect service of process within Canada upon the Trust or those persons. All or a substantial portion of the assets of the Trust and those persons may be located outside of Canada and, as a result, it may not be possible to satisfy a judgment against the Trust or those persons in Canada or to enforce a judgment obtained in Canadian courts against the Trust or those persons outside of Canada.

## CANADIAN TAX CONSIDERATIONS

This Canadian Offering Memorandum does not address the Canadian tax consequences of ownership of the Securities. Prospective purchasers of Securities should consult their own tax advisors with respect to the Canadian and other tax considerations applicable to them including with respect to the application of the proposed "foreign investment entity" provisions of the *Income Tax Act* (Canada) which, if applicable, may result in a requirement to recognize income for tax purposes even though no cash distribution or proceeds of disposition have been received.