## SCHEDULE II

(A)   Additional Documents Incorporated by Reference:

     None.

(B)   Approved Supplemental Disclosure Documents:

     Revised tax disclosure for the WaMu Delaware Offering Circular, distributed by e-mail on February 23, 2006.

**Schedule III-A**

# FINAL TERM SHEET

## $1,250,000,000
## Washington Mutual Preferred Funding Trust I

**Fixed-to-Floating Rate Perpetual Non-cumulative Trust Securities
Automatically Exchangeable in Specified Circumstances into
Depositary Shares representing Preferred Stock of Washington Mutual, Inc.**

| | |
|---|---|
| **Title of Purchased Securities:** | Fixed-to-Floating Rate Perpetual Non-cumulative Preferred Securities of Washington Mutual Preferred Funding Trust I. |
| **Size of Offering:** | 12,500 Trust Securities, liquidation preference $100,000 per security and $1,250,000,000 in the aggregate, corresponding to (i) 1,250,000 Fixed-to-Floating Rate Company Preferred Securities, liquidation preference $1,000 per security and $1,250,000,000 in the aggregate, of Washington Mutual Preferred Funding LLC, and (ii) 1,250 shares of Fixed-to-Floating Rate WMI Preferred Stock, liquidation preference $1,000,000 per share and $1,250,000,000 in the aggregate, of Washington Mutual, Inc. |
| **Distribution/Dividend Rate:** | An annual rate of 6.534% until March 15, 2011 and 3-Month LIBOR plus 1.4825% thereafter. Applies to the Trust Securities, the Fixed-to-Floating Rate Company Preferred Securities and the Fixed-to-Floating Rate WMI Preferred Stock. |
| **Price to the Public:** | $100,000 per Trust Security. |
| **Manager:** | Goldman, Sachs & Co. |
| **Initial Purchasers:** | Goldman, Sachs & Co., Credit Suisse Securities (USA) LLC, Morgan Stanley & Co. Incorporated. |
| **Purchase Price by Initial Purchasers:** | $98,000 per Trust Security. |
| **Trade Date:** | February 24, 2006. |
| **Settlement Date:** | March 7, 2006. |

| | |
|---|---|
| **Related Offering by WaMu Cayman:** | 3,023 of its 7.25% Perpetual Non-cumulative Preferred Securities, Series A-1, liquidation preference $100,000 per security and $302,300,000 in the aggregate, and 44,770 of its 7.25% Perpetual Non-cumulative Preferred Securities, Series A-2, liquidation preference $10,000 per security and $447,700,000 in the aggregate. |
| **Cash Redemption Price on the Fixed-to-Floating Rate Company Preferred Securities Redeemed Prior to the Dividend Payment Date in March 2011 after Occurrence of a Tax Event, an Investment Company Act Event or a Regulatory Capital Event:** | The sum of (i) the greater of (A) $1,000 per Fixed-to-Floating Rate company Preferred Security or (B) the sum of the present values $1,000 per Fixed-to-Floating Rate Company Preferred Security and all undeclared dividends for the Dividend Period from the redemption date to and including the Dividend Payment Date in March 2011, discounted to the redemption date on a quarterly basis (assuming a 360-day year consisting of twelve 30-day months) at the Treasury Rate, as calculated by an Independent Investment Banker, plus 0.30%, and (ii) any declared and unpaid dividends to the redemption date. |
| **Proceeds to WaMu Delaware, Net of Underwriting Discounts or Commissions:** | $1,225,000,000. |
| **Expected Capitalization of the Company as of the Closing of the Offering, After Giving Effect to the Issuance of the Company Common Securities, the Fixed-to-Floating Rate Company Preferred Securities and the Fixed Rate Company Securities on the Closing Date:** | Fixed-to-Floating Rate Company Preferred Securities – $1,250,000,000; Fixed Rate Company Securities – $750,000,000; Company Common Securities – $3,400,000,000 (approximately); total capitalization – $5,400,000,000 (approximately). |
| **CUSIP:** | 93934WAA36. |

This communication is intended for the sole use of the person to whom it is provided by us.

WMI, any initial purchaser or any dealer participating in the offering will arrange to send you the prospectus if you request it by fax or email to Goldman, Sachs & Co., Attn: Prospectus Dept. at 212-902-9316 or prospectus-ny@ny.email.gs.com.

Terms are used in this term sheet with the meanings assigned to them in the offering circular subject to completion, dated February 17, 2006, relating to the Trust Securities of Washington Mutual Preferred Funding Trust I.

NY12532:378334.6

# FINAL TERM SHEET

## $750,000,000
## Washington Mutual Preferred Funding (Cayman) I Ltd.

### 7.25% Perpetual Non-cumulative Preferred Securities
### Automatically Exchangeable in Specified Circumstances into
### Depositary Shares representing Preferred Stock of Washington Mutual, Inc.

| | |
|---|---|
| **Title of Purchased Securities:** | 7.25% Perpetual Non-cumulative Preferred Securities, Series A-1, and 7.25% Perpetual Non-cumulative Preferred Securities, Series A-2, of Washington Mutual Preferred Funding (Cayman) I Ltd. |
| **Size of Offering:** | 3,023 Series A-1 WaMu Cayman Preferred Securities, liquidation preference $100,000 per security and $302,300,000 in the aggregate, corresponding to (i) 302,300 Fixed Rate Company Preferred Securities, liquidation preference $1,000 per security and $302,300,000 in the aggregate, of Washington Mutual Preferred Funding LLC, and (ii) 302.3 shares of Fixed Rate WMI Preferred Stock, liquidation preference $1,000,000 per share and $302,300,000 in the aggregate, of Washington Mutual, Inc.<br><br>44,770 Series A-2 WaMu Cayman Preferred Securities, liquidation preference $10,000 per security and $447,700,000 in the aggregate, corresponding to (i) 7.25 Fixed Rate Company Preferred Securities, liquidation preference $1,000 per security and $447,700,000 in the aggregate, of Washington Mutual Preferred Funding LLC, and (ii) 447.7 shares of Fixed Rate WMI Preferred Stock, liquidation preference $1,000,000 per share and $447,700,000 in the aggregate, of Washington Mutual, Inc. |
| **Distribution/Dividend Rate:** | An annual rate of 7.25%. Applies to the WaMu Cayman Preferred Securities, the Fixed Rate Company Preferred Securities and the Fixed Rate WMI Preferred Stock. |
| **Price to the Public:** | $100,000 per Series A-1 WaMu Cayman Preferred Security; $10,000 per Series A-2 WaMu Cayman Preferred Security. |
| **Manager:** | Goldman, Sachs & Co. |

| | |
|---|---|
| **Purchase Price by Initial Purchasers:** | $98,000 per Series A-1 WaMu Cayman Preferred Security; $9,800 per Series A-2 WaMu Cayman Preferred Security. |
| **Trade Date:** | February 24, 2006. |
| **Settlement Date:** | March 7, 2006. |
| **Related Offering by WaMu Delaware:** | 12,500 of its Fixed-to-Floating Rate Perpetual Non-cumulative Trust Securities, liquidation preference $100,000 per security and $1,250,000,000 in the aggregate. |
| **Cash Redemption Price on the Fixed Rate Company Preferred Securities Redeemed Prior to the Dividend Payment Date in March 2011 after Occurrence of a Tax Event, an Investment Company Act Event or a Regulatory Capital Event:** | The sum of (i) the greater of (A) $1,000 per Fixed Rate Company Preferred Security or (B) the sum of the present values $1,000 per Fixed Rate Company Preferred Security and all undeclared dividends for the Dividend Period from the redemption date to and including the Dividend Payment Date in March 2011, discounted to the redemption date on a quarterly basis (assuming a 360-day year consisting of twelve 30-day months) at the Treasury Rate, as calculated by an Independent Investment Banker, plus 0.40%, and (ii) any declared and unpaid dividends to the redemption date. |
| **Proceeds to WaMu Cayman, Net of Underwriting Discounts or Commissions:** | $735,000,000. |
| **Expected Capitalization of the Company as of the Closing of the Offering, After Giving Effect to the Issuance of the Company Common Securities, the Fixed Rate Company Preferred Securities and the Fixed Rate Company Securities on the Closing Date:** | Fixed Rate Company Preferred Securities – $750,000,000; Fixed-to-Floating Rate Company Securities – $1,250,000,000; Company Common Securities – $3,400,000,000 (approximately); total capitalization – $5,400,000,000 (approximately). |
| **CUSIP:** | 93934V AA 5 (Series A-1)<br>G9463G AA 6 (Series A-2) |

This communication is intended for the sole use of the person to whom it is provided by us.

40

WMI, any initial purchaser or any dealer participating in the offering will arrange to send you the prospectus if you request it by fax or email to Goldman, Sachs & Co., Attn: Prospectus Dept. at 212-902-9316 or prospectus-ny@ny.email.gs.com.

Terms are used in this term sheet with the meanings assigned to them in the offering circular subject to completion, dated February 17, 2006, relating to the WaMu Cayman Preferred Securities of Washington Mutual Preferred Funding (Cayman) I Ltd.

1. The Series A-2 WaMu Cayman Preferred Securities have not been and will not be registered under the Act and may not be offered or sold within the United States or to, for the account or benefit of, U.S. persons in connection with their distribution at any time. After completion of their distribution, the Series A-2 WaMu Cayman Preferred Securities may be sold within the United States or to U.S. Persons:

    (a) only in accordance with Rule 144A under the Act to a person that is both a "qualified institutional buyer" within the meaning of rule 144A and a "qualified purchaser" within the meaning of Section 2(a)(51) of the United States Investment Company Act of 1940, as amended (but not (x) a broker-dealer that owns and invests on a discretionary basis less than $25 million in securities of unaffiliated issuers, (y) a participant-directed employee plan, or (z) a trust fund referred to in paragraph (a)(1)(i)(F) of Rule 144a that holds the assets of such a plan); and

    (b) only if (x) the buyer of the Series A-2 WaMu Cayman Preferred Securities, or an intermediary on its behalf, in connection with such sale exchanges its interest in the Regulation S Global Security evidencing such Securities for an interest in the Rule 144A Global Security evidencing interests in the Series A-1 WaMu Cayman Preferred Securities (which have identical terms except for the liquidation preference per security) and (y) in connection with such offer, sale and exchange the certification described in the Offering Circular, dated February 24, 2006, relating to the WaMu Cayman Preferred Securities (under the captions "Notice to Investors" and "Book-Entry Issuance— Exchanges Between Global Securities") is made. Such certification shall be made in writing by the transferor of Series A-2 WaMu Cayman Preferred Securities to WaMu Cayman's registrar and transfer agent (the "*Securities Registrar*"), in a form attached to the Agency Agreement, to be entered into at or before initial issuance of the WaMu Cayman Preferred Securities among Wilmington Trust (Cayman) Ltd., as Securities Registrar, WaMu Cayman and the Company (the "*Agency Agreement*"), to the effect that such transfer is being made to a person who the transferor reasonably believes is both a "qualified institutional buyer" within the meaning of Rule 144A under the Securities Act and a "qualified purchaser" within the meaning of Section 2(a)(51) of the Investment Company Act, purchasing for its own account or the account of a "qualified institutional buyer" who is also a "qualified purchaser" in a transaction meeting the requirements of Rule 144A under the Securities Act and in accordance with all applicable securities laws of the states of the United States and other jurisdictions.

    After completion of their distribution, the Series A-1 WaMu Cayman Preferred Securities may be transferred to a person who takes delivery in the form of an interest in the Regulation S Global Security only upon receipt by the Securities

NY12532:378334.6

Registrar of a written certificate, in a form attached to the Agency Agreement, on behalf of the transferor to the effect that the transferor reasonably believes the transferee is a non-U.S. person within the meaning of Rule 902 of Regulation S under the Securities Act and such transfer is being made in accordance with Rule 904 of Regulation S under the Securities Act.

Forms of the certificates referred to above may be obtained from the Securities Registrar, whose address at the date hereof is 1100 North Market Street, Wilmington, DE 19890-1615 (telephone number 302-651-1000).

2. Each Purchaser agrees that neither it, its affiliates nor any persons acting on its or their behalf has engaged or will engage in any directed selling efforts with respect to the Series A-2 WaMu Cayman Preferred Securities, and it and they have complied and will comply with the offering restrictions requirement of Regulation S. Each Purchaser agrees that, at or prior to confirmation of sale of Series A-2 WaMu Cayman Preferred Securities, it will have sent to each distributor, dealer or person receiving a selling concession, fee or other remuneration that purchases Securities from it a confirmation or notice to substantially the effect set forth in paragraph 1.

Terms used in this paragraph have the meanings given to them by Regulation S.

Each Purchaser further agrees that it has not entered and will not enter into any contractual arrangement with respect to the distribution or delivery of the Series A-2 WaMu Cayman Preferred Securities, except with its affiliates or with the prior written consent of WMI.

3. Each Purchaser agrees that it will not offer, sell or deliver any of the Series A-2 WaMu Cayman Preferred Securities in any jurisdiction outside the United States except under circumstances that will result in compliance with the applicable laws thereof, and that it will take at its own expense whatever action is required to permit its purchase and resale of the Series A-2 WaMu Cayman Preferred Securities in such jurisdictions. Each Purchaser understands that no action has been taken to permit a public offering in any jurisdiction outside the United States where action would be required for such purpose. Each Purchaser agrees not to cause any advertisement of the Series A-2 WaMu Cayman Preferred Securities to be published in any newspaper or periodical or posted in any public place and not to issue any circular relating to the Securities, except in any such case with Goldman, Sachs & Co.'s express written consent and then only at its own risk and expense.

**Opinion of Mayer, Brown, Rowe & Maw LLP[1]**

1.  The Fixed Rate Company Preferred Securities and the Fixed-to-Floating Rate Company Preferred Securities have been duly authorized and validly issued by the Company and are fully paid and nonassessable limited liability company interests in the Company.

2.  The shares of Fixed-to-Floating Rate WMI Preferred Stock and Fixed Rate WMI Preferred Stock initially issuable upon a Conditional Exchange of Trust Securities or WaMu Cayman Preferred Securities, as applicable, have been duly authorized and reserved for issuance upon such Conditional Exchange and, when issued upon such Conditional Exchange, will be validly issued, fully paid and nonassessable.

3.  The Fixed-to-Floating Rate Depositary Shares and the Fixed Rate Depositary Shares initially issuable upon a Conditional Exchange of Trust Securities or WaMu Cayman Preferred Securities, as applicable, when issued upon such Conditional Exchange, will be validly issued pursuant to the Deposit Agreement and the Exchange Agreement.

4.  Assuming that each of the Exchange Agreement and the Deposit Agreement has been duly authorized, executed and delivered by each party thereto, each such Agreement constitutes the valid and legally binding obligation of WMI, enforceable in accordance with its terms, subject to bankruptcy, insolvency, fraudulent transfer, reorganization, moratorium and similar laws of general applicability relating to or affecting creditors' rights and to general equity principles.

5.  The description (i) in the WaMu Delaware Offering Circular of one or more of the Securities or other securities under the captions "Description of the Trust Securities," "Description of the Fixed-to-Floating Rate Company Preferred Securities," "Description of Other Company Securities," "Description of the Fixed-to-Floating Rate WMI Preferred Stock," "Description of the Fixed-to-Floating Rate Depositary Shares" and "Description of the Other WMI Capital Stock," and (ii) in the WaMu Cayman Offering Circular of one or more of the Securities or other securities under the captions "Description of the WaMu Cayman Preferred Securities," "Description of the Fixed Rate Company Preferred Securities," "Description of Other Company Securities," "Description of the Fixed Rate WMI Preferred Stock," "Description of the Fixed Rate Depositary Shares" and "Description of the Other WMI Capital Stock," insofar as they purport to describe the provisions of the Securities and other documents referred to therein, are accurate in all material respects and provide a fair summary of such provisions in all material respects.

---

[1] Mayer, Brown, Rowe & Maw LLP will rely upon the opinions of (i) Richards, Layton & Finger, P.A. as to all matters of Delaware law and (ii) Heller Ehrman LLP as to all matters of Washington law.

6. The descriptions in (i) the WaMu Delaware Offering Circular under the captions "Certain U.S. Federal Income Tax Considerations" and "ERISA Considerations," and (ii) in the WaMu Cayman Offering Circular under the captions "Certain Tax Considerations—United States Federal Income Tax Consequences" and "ERISA Considerations," insofar as they purport to describe the provisions of the laws and regulations referred to therein are accurate in all material respects and provide a fair summary of such provisions in all material respects.

7. It is not necessary to register the Offered Securities under the Securities Act in connection with the sale and delivery of the Trust Securities to the Trust Securities Purchasers or the WaMu Cayman Preferred Securities to the WaMu Cayman Preferred Securities Purchasers, in each case in accordance with the arrangements relating to offers, sales and deliveries of the Offered Securities as contemplated in the Purchase Agreement, the WaMu Delaware Offering Circular (in the case of the Trust Securities) and the WaMu Cayman Offering Circular (in the case of the WaMu Cayman Preferred Securities). Such counsel need express no opinion, however, as to when and under what circumstances any Offered Securities sold to the Purchasers may be reoffered or resold.

8. None of the Company, WaMu Delaware, WaMu Cayman or the Asset Trust is and, after giving effect to the offering and sale of the Offered Securities and the application of the proceeds thereof as described in the Offering Circulars, will be on the date hereof an "investment company" is defined in the Investment Company Act.

9. No consent, approval, authorization or order of, or filing with, any governmental agency or body of the Federal government of the United States or the State of New York or any court located in the State of New York is required for the consummation of the transactions contemplated by the Purchase Agreement or the other Transaction Agreements or in connection with the issuance and sale of any of the Securities, except as may be required under the securities or "blue sky" laws of the State of New York.

10. The execution, delivery and performance of the Purchase Agreement by WMI, WMB, the Company, WaMu Delaware and WaMu Cayman, and the execution delivery and performance of any Transaction Agreement by WMI or any of its subsidiaries that is a party thereto, and the issuance and sale of the Securities in compliance with the terms and provisions thereof, will not result in a breach or violation of any statute, rule or regulation of any governmental agency or body of the Federal government of the United States or the State of New York.

11. No facts have come to such counsel's attention that have caused it to believe that (A) the Pricing Disclosure Package for either Pricing Circular, as of the Applicable Time (other than the financial statements and other financial data therein, as to which such counsel need express no opinion), contained any untrue statement of a material fact or omitted to state any material fact necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading; or (B) either Offering Circular and any further amendments or supplements thereto made by the Issuer/Sellers prior to the Time of Delivery (other than the financial statements and other financial data therein, as to which such counsel need express no

opinion) contained as of its date or contains as of the Time of Delivery an untrue statement of a material fact or omitted or omits, as the case may be, to state any material fact necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading.

**Annex 3**

**ANNEX 3**

## Opinion of Heller Ehrman LLP

1.  WMI has been duly incorporated and is an existing corporation under the laws of the State of Washington, with corporate power and authority to own its properties and conduct its business as described in the Pricing Circulars.

2.  WMI has been duly registered as a savings and loans holding company under the applicable provisions of the Home Owners' Loan Act.

3.  The shares of WMI Preferred Stock initially issuable upon a Conditional Exchange of Trust Securities or WaMu Cayman Preferred Securities have been duly authorized and reserved for issuance upon such Conditional Exchange and, when issued upon such Conditional Exchange, will be validly issued, fully paid and nonassessable.

4.  The descriptions (i) in the WaMu Delaware Offering Circular of the Fixed-to-Floating Rate WMI Preferred Stock under the caption "Description of the Fixed-to-Floating Rate WMI Preferred Stock," (ii) in the WaMu Cayman Offering Circular of the Fixed Rate WMI Preferred Stock under the caption "Description of the Fixed Rate WMI Preferred Stock," and (iii) in both Offering Circulars of other securities of WMI under the caption "Description of the Other WMI Capital Stock," insofar as they purport to describe the provisions of laws, securities and other documents referred to therein, are accurate in all material respects and provide a fair summary of such provisions in all material respects.

5.  The University Street Asset Transfer Agreement (i) has been duly authorized, executed and delivered by University Street and, assuming it has been duly authorized, executed and delivered by the Company, constitutes the valid and legally binding obligation of University Street, enforceable in accordance with its terms, subject to bankruptcy, insolvency, receivership, conservatorship, fraudulent transfer, reorganization, moratorium and similar laws of general applicability relating to or affecting creditors' right and to general equity principles, and (ii) assuming the transaction is a sale and not a security interest that secures an obligation, is sufficient to transfer to the Company the entire right, title and interest of University Street in the HELS identified in the University Street Transfer Agreement, subject to bankruptcy, insolvency, receivership, conservatorship, fraudulent transfer, reorganization, moratorium and similar laws.

6.  The WMB Asset Transfer Agreement (i) has been duly authorized, executed and delivered by WMB and, assuming it has been duly authorized, executed and delivered by the Company, constitutes the valid and legally binding obligation of WMB, enforceable in accordance with its terms, subject to bankruptcy, insolvency, receivership, conservatorship, fraudulent transfer, reorganization, moratorium and similar laws of general applicability relating to or affecting creditors' right and to general equity principles, and (ii) assuming the transaction is a sale and not a security interest that secures an obligation, is sufficient to transfer to the Company the entire right, title and interest of WMB in the HELS identified in the WMB Transfer Agreement, subject to

bankruptcy, insolvency, receivership, conservatorship, fraudulent transfer, reorganization, moratorium and similar laws.

7. Each of the Purchase Agreement and the other WMI Transaction Agreements (other than the University Street Transfer Agreement, which is addressed in paragraph 5) has been duly authorized, executed and delivered by WMI.

8. No consent, approval, authorization or order of, or filing with, any governmental agency or body of the State of Washington or any court located in the State of Washington is required for the consummation of the transactions contemplated by the Purchase Agreement or the other Transaction Agreements or in connection with the issuance and sale of any of the Securities, except (i) for the filing of articles of amendment relating to the Fixed Rate WMI Preferred Stock and the Fixed-to-Floating Rate WMI Preferred Stock with the Washington Secretary of State, which occurred on March •, 2006, and any UCC filings with the Washington Department of Licensing and (ii) as may be required under the securities or "blue sky" laws of the State of Washington.

9. The execution, delivery and performance of the Purchase Agreement by WMI, WMB, the Company, WaMu Delaware and WaMu Cayman, and the execution delivery and performance of any Transaction Agreement by WMI or any of its subsidiaries that is a party thereto, and the issuance and sale of the Securities in compliance with the terms and provisions thereof, will not result in a breach or violation of any statute, rule or regulation of any governmental agency or body of the State of Washington.

10. The Exchange Act Reports (other than the financial statements, related schedules therein and other financial data contained therein, as to which such counsel need express no opinion), when they were filed with the Commission or the OTS (as applicable), complied as to form in all material respects with the requirements of the Exchange Act, and the rules and regulations of the Commission thereunder; and nothing has come to the attention of such counsel to give it reason to believe that any of such documents, as of the date they were so filed, contained an untrue statement of a material fact or omitted to state a material fact necessary in order to make the statements therein, in the light of the circumstances under which they were made when such documents were so filed, not misleading.

NY12532:378334.6

<b>ANNEX 4</b>

<b>Opinion of Richards, Layton & Finger, P.A.</b>

1.    The Company has been duly formed and is validly existing and in good standing under the Delaware Limited Liability Company Act (6 Del. C. § 18-101, et seq.) (the "*Delaware LLC Act*"), and all filings required under the Delaware LLC Act with respect to the formation and valid existence of the Company as a limited liability company have been made.

2.    Under the Company LLC Agreement and the Delaware LLC Act, the Company has all necessary limited liability company power and authority to own its property and conduct its business, all as described in the Company LLC Agreement.

3.    The Company LLC Agreement constitutes a valid and legally binding agreement of University Street, WaMu Delaware and WaMu Cayman, and is enforceable against University Street, WaMu Delaware and WaMu Cayman, in accordance with its terms, subject as to enforcement to the effect upon the Company LLC Agreement of (i) bankruptcy, insolvency, moratorium, receivership, reorganization, liquidation, fraudulent conveyance or transfer and other similar laws relating to or affecting the rights and remedies of creditors generally, (ii) principles of equity, including applicable law relating to fiduciary duties (regardless of whether considered and applied in a proceeding in equity or at law), and (iii) applicable public policy on the enforceability of provisions relating to indemnification or contribution.

4.    Under the Delaware LLC Act and the Company LLC Agreement, the Company has all necessary limited liability company power and authority (i) to execute and deliver the Purchase Agreement and each of the Other Company Transaction Agreements, and to perform its obligations thereunder, and (ii) to issue, and perform its obligations under, the Company Securities.

5.    Under the Delaware LLC Act and the Company LLC Agreement, the execution and delivery by the Company of the Purchase Agreement and the Other Company Transaction Documents and the performance by the Company of its obligations thereunder, have been duly authorized by all necessary limited liability company action on the part of the Company.

6.    The Company Common Securities, the Fixed Rate Company Preferred Securities and the Fixed-to-Floating Rate Company Preferred Securities (collectively, the "*Company Securities*") have been duly authorized and validly issued by the Company and, subject to the qualifications set forth in paragraph 7 below, are fully paid and nonassessable limited liability company interests in the Company.

7.    Each of University Street, WaMu Delaware, and WaMu Cayman, as a member of the Company (each a "Member"), shall be obligated personally for any of the debts, obligations or liabilities of the Company, whether arising in contract, tort or otherwise, solely by reason of being a member of the Company, except that a Member may be obligated to make payments provided for in the Company LLC Agreement and to

NY12532:378334.6