repay any funds wrongfully distributed to it. A Member may be liable for its tortious or wrongful conduct and for its obligations as set forth in the Company LLC Agreement.

8. The provisions of the Company LLC Agreement, including the terms of the Company Securities, are permitted under the LLC Act.

9. The issuance and sale by the Company of the Company Common Securities to University Street, the Fixed-to-Floating Rate Company Preferred Securities to WaMu Delaware and the Fixed Rate Company Preferred Securities to WaMu Cayman pursuant to the Purchase Agreement and the Company LLC Agreement, and the execution, delivery and performance by the Company of the Purchase Agreement and the Other Company Transaction Agreements, do not violate (i) any Delaware law, rule or regulation, or (ii) the Certificate of Formation of the Company or the Company LLC Agreement.

10. No consent, approval, authorization, order, registration, filing or qualification of or with any Delaware court or Delaware governmental agency or body is required solely in connection with the issuance and sale by the Company of the Company Securities, or the execution, delivery and performance by the Company of the Purchase Agreement or any of the Other Company Transaction Agreements.

11. Under the Company LLC Agreement and the Delaware LLC Act, the issuance by the Company of the Company Securities is not subject to the preemptive purchase rights of any Person.

12. WaMu Delaware has been duly created and is validly existing and in good standing under the Delaware Statutory Trust Act (12 Del. C. 38 § 3801 et seq.) (the "*Delaware Statutory Trust Act*"), and all filings required under the laws of the State of Delaware with respect to the creation and valid existence of WaMu Delaware as a statutory trust have been made.

13. Under the Delaware Statutory Trust Act and the Trust Agreement, WaMu Delaware has the trust power and authority to own its property and conduct its business, all as described in the WaMu Delaware Offering Circular.

14. The provisions of the Trust Agreement, including the terms of the Trust Securities, are permitted under the Delaware Trust Act and the Trust Agreement constitutes a valid and binding obligation of the Company, as grantor, the Property Trustee and the WaMu Delaware Trustee, enforceable against each of them in accordance with its terms, subject as to enforcement to the effect upon the Trust Agreement of (i) bankruptcy, insolvency, moratorium, receivership, reorganization, liquidation, fraudulent conveyance or transfer and other similar laws relating to or affecting the rights and remedies of creditors generally, (ii) principles of equity, including applicable law relating to fiduciary duties (regardless of whether considered and applied in a proceeding in equity or at law), and (iii) applicable public policy on the enforceability of provisions relating to indemnification or contribution.

15. Under the Delaware Statutory Trust Act and the Trust Agreement, WaMu Delaware has the trust power and authority to (a) execute and deliver the

NY12532:378334.6

Purchase Agreement and the Other WaMu Delaware Transaction Agreement and to perform its obligations under the Purchase Agreement and the Other WaMu Delaware Transaction Agreements, and (b) issue and perform its obligations under the Trust Securities.

16. Under the Delaware Statutory Trust Act and the Trust Agreement, [(A)] the execution and delivery by WaMu Delaware of the Purchase Agreement and the Other WaMu Delaware Transaction Agreements and the performance by WaMu Delaware of its obligations thereunder have been duly authorized by all necessary trust action on the part of WaMu Delaware. The Purchase Agreement and each of the Other WaMu Delaware Transaction Agreements have been duly executed and delivered by WaMu Delaware.

17. Under the Delaware Statutory Trust Act, the form of certificate attached to the Trust Agreement to evidence ownership of the Trust Securities is in an appropriate form. The Trust Securities have been duly authorized by the Trust Agreement and, when executed, authenticated and delivered to and paid for by the Trust Securities Purchasers, in accordance with the Trust Agreement and this Agreement, will be validly issued and fully paid and nonassessable beneficial interests in WaMu Delaware entitled to the benefits provided by the Trust Agreement (subject to the terms of the Trust Agreement); and the holders of Trust Securities, as beneficial owners of WaMu Delaware, will be entitled to the same limitation of personal liability extended to stockholders of private corporations for profit organized under the General Corporation Law of the State of Delaware, provided that such counsel may note that the holders of Trust Securities may be obligated, pursuant to the Trust Agreement, to (a) provide indemnity and/or security in connection with and pay taxes or governmental charges arising from transfers or exchanges of Trust Securities certificates and the issuance of replacement of Trust Securities certificates, and (b) provide security and indemnity in connection with requests of or directions to the WaMu Delaware Trustee to exercise its rights and remedies under the Trust Agreement.

18. Under the Delaware Statutory Trust Act and the Trust Agreement, the issuance of the Trust Securities is not subject to preemptive rights.

19. The issuance and sale by WaMu Delaware of the Trust Securities, the execution, delivery and performance by WaMu Delaware of this Agreement and the Other WaMu Delaware Transaction Agreements, the consummation by WaMu Delaware of the transactions contemplated thereby and compliance by the Trust with its obligations thereunder do not violate (a) any of the provisions of the Certificate of Trust of WaMu Delaware or the Trust Agreement, or (b) any applicable Delaware law or administrative regulation.

20. No authorization, approval, consent or order of any Delaware court or Delaware governmental authority or Delaware agency is required to be obtained by WaMu Delaware solely in connection with the issuance and sale of the Trust Securities or the execution, delivery and performance by WaMu Delaware of this Agreement or the Other WaMu Delaware Transaction Agreements. In rendering the opinion expressed in this paragraph (20), such counsel need express no opinion concerning the securities laws of the State of Delaware.

21.     The Asset Trust has been duly created and is validly existing and in good standing under the Delaware Statutory Trust Act, and all filings required under the laws of the State of Delaware with respect to the creation and valid existence of the Trust Asset as a statutory trust have been made.

22.     Under the Delaware Statutory Trust Act and the PSA, the Asset Trust has the trust power and authority to own its property and conduct its business, all as described in the Offering Circulars.

23.     The provisions of the PSA, including the terms of the Class A Asset Trust Certificate and the Class R Asset Trust Certificate, are permitted under the Delaware Trust Act and the PSA constitutes a valid and binding obligation of the Company, as grantor, WMB, as servicer, the PSA Trustee and the Delaware Trustee, enforceable against each of them in accordance with its terms, subject as to enforcement to the effect upon the PSA of (i) bankruptcy, insolvency, moratorium, receivership, reorganization, liquidation, fraudulent conveyance or transfer and other similar laws relating to or affecting the rights and remedies of creditors generally, (ii) principles of equity, including applicable law relating to fiduciary duties (regardless of whether considered and applied in a proceeding in equity or at law), and (iii) applicable public policy on the enforceability of provisions relating to indemnification or contribution.

24.     Under the Delaware Statutory Trust Act and the PSA, the Asset Trust has the trust power and authority to (a) perform its obligations under the PSA, and (b) issue and perform its obligations under the Class A Asset Trust Certificate and the Class R Asset Trust Certificate.

25.     Under the Delaware Statutory Trust Act, the form of Class A Asset Trust Certificate and the Class R Asset Trust Certificate attached to the PSA is in an appropriate form.  The Class A Asset Trust Certificate and the Class R Asset Trust Certificate have been duly authorized by the PSA and, when delivered to the Company in exchange for HELS as contemplated by the PSA, will be validly issued and fully paid and nonassessable beneficial interests in the Asset Trust entitled to the benefits provided by the PSA (subject to the terms of the PSA); and the Company as holder of the Class A Asset Trust Certificate and Class R Asset Trust Certificate will be entitled to the same limitation of personal liability extended to stockholders of private corporations for profit organized under the General Corporation Law of the State of Delaware, provided that such counsel may note that the Company may be obligated, pursuant to the PSA, to (a) provide indemnity and/or security in connection with and pay taxes or governmental charges arising from transfers or exchanges of such certificates and the issuance of replacement of such certificates, and (b) provide security and indemnity in connection with requests of or directions to the PSA Trustee to exercise its rights and remedies under the PSA.

26.     The issuance and sale by the Asset Trust of the Class A Trust Certificates and the Class R Asset Trust Certificates and the consummation by the Asset Trust of the transactions contemplated by the PSA do not violate (a) any of the provisions of the Certificate of Trust of the Asset Trust or the PSA, or (b) any applicable Delaware law or administrative regulation.

NY12532:378334.6

27.    No authorization, approval, consent or order of any Delaware court or Delaware governmental authority or Delaware agency is required to be obtained by the Asset Trust solely in connection with the issuance of the Class A Asset Trust Certificate or the Class R Asset Trust Certificate.  In rendering the opinion expressed in this paragraph (27), such counsel need express no opinion concerning the securities laws of the State of Delaware.

28.    Assuming that none of the Company, WaMu Delaware or the Asset Trust derives income from or is connected with services provided within the State of Delaware and has no assets, activities (other than maintaining the WaMu Delaware Trustee (in the case of WaMu Delaware) and the Delaware Trustee (in the case of the Asset Trust) and the filing of documents with the Secretary of State of the State of Delaware) or employees in the State of Delaware and assuming that WaMu Delaware is treated as a grantor trust or as an association not taxable as a corporation and the Asset Trust is treated as a "real estate mortgage investment conduit" for federal income tax purposes, the holders of Trust Securities (other than those holders who reside or are domiciled in the State of Delaware) will have no liability for income taxes imposed by the State of Delaware solely as a result of their participation in WaMu Delaware, and neither WaMu Delaware nor the Asset Trust will be liable for any income tax imposed by the State of Delaware.

NY12532:378334.6

### Opinion of Charles E. Smith, Esq.

1.      WMB is a federal association duly chartered, validly existing and in good standing under the laws of the United States, and its charter is in full force and effect.  WMB has all requisite corporate or other authority to own its properties and conduct its business as described in the Pricing Circulars.

2.      University Street has been duly incorporated and is a validly existing corporation under the laws of the State of Washington.

3.      New American Capital, Inc. has been duly incorporated and is a validly existing corporation in good standing under the laws of the State of Delaware.

4.      The Purchase Agreement and each of the WMI Transaction Agreements has been duly authorized, executed and delivered by WMI.

5.      The University Street Asset Transfer Agreement has been duly authorized, executed and delivered by University Street.

6.      The Purchase Agreement, the WMB Asset Transfer Agreement, the PSA and the Administrative Services Agreement have been duly authorized, executed and delivered by WMB.

7.      The Administrative Services Agreement constitutes the valid and legally binding obligation of WMB, enforceable in accordance with its terms, subject to bankruptcy, receivership, conservatorship, insolvency, fraudulent transfer, reorganization, moratorium and similar laws of general applicability relating to or affecting creditors' rights and to general equity principles.

8.      The execution, delivery and performance of the Purchase Agreement by WMI, WMB, the Company, WaMu Delaware and WaMu Cayman, and the execution, delivery and performance of any Transaction Agreement by WMI or any of its subsidiaries that is a party thereto, and the issuance and sale of the Securities and compliance with the terms and provisions thereof, will not result in a breach or violation of any of the terms and provisions of, or constitute a default under, (i) any agreement or instrument to which WMI or any Significant Subsidiary is a party or by which WMI or any Significant Subsidiary is bound or to which any of the properties of WMI or any Significant Subsidiary is subject, except for such breach, violation or default which would not individually or in the aggregate have a Material Adverse Effect, or (ii) the charter or by-laws of WMI or any Significant Subsidiary.

9.      Except as disclosed in the Pricing Circulars, there are no actions, suits or proceedings pending against or affecting WMI, any of its Significant Subsidiaries, WaMu Delaware or WaMu Cayman or any of their respective properties that, if determined adversely to WMI or any of its Significant Subsidiaries, WaMu Delaware or WaMu Cayman, would individually or in the aggregate have a Material Adverse Effect, or would materially and adversely affect the ability of any issuer/seller to

perform its obligations under any Transaction Agreement or the Purchase Agreement, or which are otherwise material in the context of the sale of the Offered Securities; and, to the best of such counsel's knowledge, no such actions, suits or proceedings are threatened in writing.

NY12532:378334.6

## Opinion of Maples and Calder

1.      WaMu Cayman has been duly incorporated as an exempted company limited by shares and is validly existing and in good standing under the laws of the Cayman Islands and has full power and authority to enter into and perform its obligations pursuant to this Agreement and the Other WaMu Cayman Transaction Agreements and to conduct its business as described in the WaMu Cayman Offering Circular including, without limitation, the issue of the Ordinary Shares and the WaMu Cayman Preferred Securities.

2.      Maples Finance Limited ("*Maples Finance*") is an ordinary resident company duly created for an unlimited duration and validly existing and in good standing as a company limited by shares under the laws of the Cayman Islands and has full power, capacity and authority under the laws of the Cayman Islands to enter into, execute, deliver and exercise its rights and perform its obligations under the Administration Agreement.

3.      The Ordinary Shares and the WaMu Cayman Preferred Securities have been duly authorised for issue pursuant to the Articles of Association and, when issued and delivered by WaMu Cayman against payment in full of the consideration set forth in the Purchase Agreement and duly registered in WaMu Cayman's Register of Members:

(a)      such Ordinary Shares and WaMu Cayman Preferred Securities will be validly issued, fully paid and nonassessable;

(b)      no holder of any such Ordinary Shares or WaMu Cayman Preferred Securities will be subject to personal liability for any debts, obligations or liabilities of WaMu Cayman whether arising in contract, tort or otherwise by reason only of being such a holder;

(c)      the Ordinary Shares and WaMu Cayman Preferred Securities will have the rights attaching therein as provided by the Articles of Association and the WaMu Cayman Preferred Securities at the date hereof; and

(d)      the provisions of the Articles of Association, including the rights attaching to the WaMu Cayman Preferred Securities, are not prohibited by the Companies Law (2004 Revision) of the Cayman Islands.

4.      Maples Finance is at the date hereof the registered holder of all of the issued Ordinary Shares of the WaMu Cayman.

5.      The Purchase Agreement and each of the WaMu Cayman Transaction Agreements have been duly authorized by WaMu Cayman and the Administration Agreement has been duly authorized by Maples Finance; the Administration Agreement constitutes the legal, valid and binding obligations of WaMu Cayman or Maples Finance, as the case may be, enforceable in accordance with its

terms; and the WaMu Cayman Agency Agreement, assuming that it has been duly authorized, executed and delivered by Wilmington Trust (Cayman) Ltd., will constitute the legal, valid and binding obligations of WaMu Cayman and Wilmington Trust (Cayman) Ltd., enforceable in accordance with its terms. The term "enforceable" means that the obligations assumed by WaMu Trust, Maples Finance or Wilmington Trust (Cayman) Ltd., as the case may be, are of a type of which the courts of the Cayman Islands enforce. It does not mean that those obligations will necessarily be enforced in all circumstances in accordance with their terms. In particular:

(a)     enforcement may be limited by bankruptcy, insolvency, liquidation, reorganisation, readjustment of debts or moratorium or other laws of general application relating to or affecting the rights of creditors;

(b)     enforcement may be limited by general principles of equity – for example, equitable remedies may not be available, *inter alia*, where damages are considered to be an adequate remedy;

(c)     some claims may become barred under statutes of limitation or may be or become subject to defences of set-off, counterclaim, estoppel and similar defences;

(d)     where obligations are to be performed in a jurisdiction outside the Cayman Islands, they may not be enforceable in the Cayman Islands to the extent that performance would be illegal under the laws of that jurisdiction;

(e)     if any provision of any Agreement is held to be illegal, invalid or unenforceable, severance of such provisions from the remaining provisions of such Agreement will be subject to the discretion of Cayman Islands' courts, notwithstanding any express provisions in this regard;

(f)     any provisions stipulating that determinations or decisions by a party are to be regarded as conclusive may in certain circumstances be regarded as ineffective by the courts of the Cayman Islands, for example, if such determination were made on an unreasonable or arbitrary basis or in the event of manifest error;

(g)     a Cayman Islands' court has jurisdiction to give judgment in the currency of the relevant obligation and statutory rates of interest payable upon judgments will vary according to the currency of the judgment. If WaMu Cayman becomes insolvent and is made subject to a liquidation proceeding, a Cayman Islands' court will require all debts to be proved in a common currency, which is likely to be the "functional currency" of WaMu Cayman determined in accordance with applicable principles;

(h)     we have reservations as to the enforceability in all circumstances of provisions providing for waivers of counterclaims; and

NY12532:378334.6

(i)	we have reservations about the irrevocability of appointments of agents for service of process or otherwise, in particular where these are not coupled with a security interest.

6.	No authorisation, consent, order, approval, license, qualification, validation or exemption is required from any court, central bank, stock exchange, governmental authority or agency or other official body in the Cayman Islands ("*Governmental Agency*") and no notice to or other filing or registration with or action by any Governmental Agency is required in connection with:

(a)	the execution and delivery of the WaMu Cayman Transaction Agreements;

(b)	the offering, allotment, issue or sale of the Ordinary Shares or the WaMu Cayman Preferred Securities;

(c)	the performance by WaMu Cayman of any of its obligations under the Articles of Association, the Purchase Agreement or the Other WaMu Cayman Transaction Agreements or the transactions contemplated thereby or in the WaMu Cayman Offering Circular; or

(d)	the payment of the liquidation preference, dividends or any additional amount payable on the WaMu Cayman Preferred Securities.

7.	Under current laws and regulations of the Cayman Islands no exchange controls are imposed and there are currently no taxes, fees, duties or charges (other than stamp duty as referred to in paragraph (x) below) or deductions payable (by withholding or otherwise) to the Cayman Islands' Government or any political subdivision or taxing authority thereof in connection with (a) the authorisation, issuance, sale and delivery of the Ordinary Shares or the WaMu Cayman Preferred Securities, (b) on or by virtue of the execution, delivery or enforcement of the WaMu Cayman Transaction Agreements or (c) on any payment of any nature to be made by WaMu Cayman under the WaMu Cayman Transaction Agreements or on the Ordinary Shares or the WaMu Cayman Preferred Securities, as the case may be.  The Cayman Islands currently have no form of income, corporate or capital gains tax and no estate duty, inheritance tax or gift tax.  There are currently no Cayman Islands' taxes or duties of any nature on gains realised on a sale, exchange, conversion, transfer or redemption of Ordinary Shares, WaMu Cayman Preferred Securities or the Fixed Rate Company Preferred Securities.

8.	No stamp duty, capital duty, registration or other issue or document taxes are payable in the Cayman Islands on the creation, issuance or delivery by WaMu Cayman of the Ordinary Shares or the WaMu Cayman Preferred Securities or the Fixed Rate WaMu Cayman Preferred Securities, the purchase or sale of the Ordinary Shares or the WaMu Cayman Preferred Securities, the execution and delivery of the WaMu Cayman Transaction Agreements or the consummation of the transactions contemplated thereby.  Nominal Cayman Islands' stamp duty will, however, be payable in respect of the WaMu Cayman Transaction Agreements if any of them are executed or brought within the jurisdiction of the Cayman Islands in original form.

9. It is not necessary to ensure the legality, validity, enforceability or admissibility in evidence of the WaMu Cayman Transaction Agreements or the rights attaching to the WaMu Cayman Preferred Securities that any document be filed, recorded or enrolled with any Governmental Agency in the Cayman Islands other than corporate documents that have been or will be filed with the Registrar of Companies in the Cayman Islands.

10. Based solely on our inspection of the Register of Writs and Other Originating Process from the date of incorporation of WaMu Cayman, there were no actions, suits or proceedings or petitions pending against WaMu Cayman in the courts of the Cayman Islands as at the close of business in the Cayman Islands on March •, 2006.

11. The statements made in the WaMu Cayman Offering Circular under the headings "Description of the WaMu Cayman Preferred Securities" and "Certain Tax Considerations—Foreign, State and Local Taxes," insofar as such statements are summaries of Cayman Islands law, fairly summarize the matters referred to therein.

12. We confirm our opinion contained in the WaMu Cayman Offering Circular under the heading "Enforcement of Civil Liabilities."

13. The offer, issue, sale and delivery of the Ordinary Shares and the WaMu Cayman Preferred Securities, the execution and delivery of the Purchase Agreement and the Other WaMu Cayman Transaction Agreements, the performance by WaMu Cayman of its obligations in respect of the Ordinary Shares and the WaMu Cayman Preferred Securities as contemplated by the Articles of Association, the WaMu Cayman Offering Circular, the Purchase Agreement and the Other WaMu Cayman Transaction Agreements and compliance by WaMu Cayman with the terms of the Purchase Agreement and the Other WaMu Cayman Transaction Agreements and the consummation of the transactions contemplated therein and in the WaMu Cayman Offering Circular do not and will not conflict with or result in any breach or violation of the Articles of Association or of any existing applicable Cayman Islands law, rule or regulation, or any judgment, order or decree of which we are aware of the Cayman Islands or a Governmental Agency in the Cayman Islands having jurisdiction over WaMu Cayman or any of its properties.

14. The choice of the laws of New York as the governing law of the Purchase Agreement, the Deposit Agreement and the Expenses Agreement is a valid and effective choice of law and in an action brought before a court of competent jurisdiction in the Cayman Islands, the laws of New York, would, to the extent specifically pleaded and proved as fact by expert evidence, be recognized and applied by such court to all issues concerning the formal and essential validity of the relevant Agreement and the interpretation thereof, except that in any such action such court will apply those laws of the Cayman islands of New York, as such court characterizes as procedural.

15. Although there is no statutory enforcement in the Cayman Islands of judgments obtained in New York, the courts of the Cayman Islands will recognize and enforce a foreign judgment of a court of competent jurisdiction, based on the principle

A-6-4

that a judgment of a competent foreign court imposes upon the judgment debtor an obligation to pay the sum for which judgment has been given, provided such judgment is final, for a liquidated sum, not in respect of taxes or a fine or penalty, and was not obtained in a manner and is not of a kind the enforcement of which is contrary to the public policy of the Cayman Islands. A Cayman Islands' court may stay proceedings if concurrent proceedings are being brought elsewhere.

16.     The submissions to the jurisdiction of a competent New York court and the appointment of an agent to accept service of process in New York, as the case may be, contained in any of the WaMu Cayman Transaction Agreements are or will be valid and binding on WaMu Cayman under Cayman Islands' law.

17.     None of the parties to the WaMu Cayman Transaction Agreements (other than WaMu Cayman, Maples Finance or Wilmington Trust (Cayman) Ltd.) or the holders of Ordinary Shares or WaMu Cayman Preferred Securities will be deemed to be resident, domiciled or carrying on business in the Cayman Islands by reason only of the negotiation, execution, delivery, performance or enforcement of the WaMu Cayman Transaction Agreements to which any of them is a party or the holding of Ordinary Shares or WaMu Cayman Preferred Securities.

18.     None of the holders of Ordinary Shares or WaMu Cayman Preferred Securities will be required to be licensed, qualified or otherwise entitled to carry on business in the Cayman Islands in order to enforce their respective rights under, or as a consequence of the execution, delivery and performance of the WaMu Cayman Transaction Agreements or the subscription or placement of Ordinary Shares or WaMu Cayman Preferred Securities.

19.     To maintain WaMu Cayman in good standing under the laws of the Cayman Islands, annual filing fees must be paid and returns made to the registrar of Companies.

20.     The obligations of WaMu Cayman may be subject to restrictions pursuant to United Nations sanctions as implemented under the laws of the Cayman Islands.

21.     In principle, a Cayman islands court will award costs and disbursements in litigation in accordance with the relevant contractual provisions but there remains some uncertainty as to the way in which the rules of the Grand Court will be applied in practice. Whilst it is clear that costs incurred prior to judgment can be recovered in accordance with the contract, it is likely that post-judgment costs (to the extent recoverable at all) will be subject to taxation in accordance with Grand Court Rules Order 62.

22.     The WaMu Cayman Preferred Securities and the Articles of Association conform in all material respects to the description thereof in the WaMu Cayman Offering Circular under the captions "WaMu Cayman" and "Description of the WaMu Cayman Preferred Securities."

23.    Based solely on our review of the register of mortgages of WaMu Cayman, as kept at the registered office, as of the date hereof there are no entries on the register of mortgages of WaMu Cayman.

NY12532:378334.6

Pursuant to Section 8(f) of the Purchase Agreement, Deloitte & Touche LLP shall furnish letters to the Purchasers to the effect that:

(i)     They are an independent registered public accounting firm with respect to WMI and its subsidiaries within the meaning of the Securities Exchange Act of 1934 (the "Exchange Act") and the applicable published rules and regulations thereunder(6) adopted by the Securities and Exchange Commission and the Public Accounting Oversight Board (United States);

(ii)    In our opinion, the consolidated financial statements and financial statement schedules audited by us and included in the Offering Circulars comply as to form in all material respects with the applicable requirements of the Exchange Act and the related published rules and regulations;

(iii)   The unaudited selected financial information with respect to the consolidated results of operations and financial position of WMI for the five most recent fiscal years included in the Offering Circular agrees with the corresponding amounts (after restatements where applicable) in the audited consolidated financial statements for such five fiscal years;

(iv)    On the basis of limited procedures not constituting an audit in accordance with generally accepted auditing standards, consisting of a reading of the unaudited financial statements and other information referred to below, a reading of the latest available interim financial statements of WMI and its subsidiaries, inspection of the minute books of WMI and its subsidiaries since the date of the latest audited financial statements included in the Offering Circulars, inquiries of officials of WMI and its subsidiaries responsible for financial and accounting matters and such other inquiries and procedures as may be specified in such letter, nothing came to their attention that caused them to believe that:

(A)     the unaudited consolidated statements of income, consolidated balance sheets and consolidated statements of cash flows included in the Offering Circulars are not in conformity with generally accepted accounting principles applied on the basis substantially consistent with the basis for the unaudited condensed consolidated statements of income, consolidated balance sheets and consolidated statements of cash flows included in the Offering Circulars;

(B)     any other unaudited income statement data and balance sheet items included in the Offering Circulars do not agree with the corresponding items in the unaudited consolidated financial statements from which such data and items were derived, and any such unaudited data and items were not determined on a basis substantially consistent with the basis for the corresponding amounts in the audited consolidated financial statements included in the Offering Circulars;

(C)     the unaudited financial statements which were not included in the Offering Circulars but from which were derived any unaudited condensed financial statements referred to in clause (A) and any unaudited income statement data and balance sheet items included in the Offering Circulars and referred to in clause (B) were not determined on a basis substantially consistent with the basis for the audited consolidated financial statements included in the Offering Circulars;

(D)     any unaudited pro forma consolidated condensed financial statements included in the Offering Circulars do not comply as to form in all material respects with the applicable accounting requirements or the pro forma adjustments have not been properly applied to the historical amounts in the compilation of those statements;

(E)     as of a specified date not more than five days prior to the date of such letter, there have been any changes in the consolidated capital stock (other than issuances of capital stock upon exercise of options and stock appreciation rights, upon earn-outs of performance shares and upon conversions of convertible securities, in each case which were outstanding on the date of the latest financial statements included in the Offering Circulars or any increase in the consolidated long-term debt of WMI and its subsidiaries, or any decreases in consolidated net current assets or stockholders' equity or other items specified by the Representatives, or any increases in any items specified by the Representatives, in each case as compared with amounts shown in the latest balance sheet included in the Offering Circulars except in each case for changes, increases or decreases which the Offering Circulars disclose have occurred or may occur or which are described in such letter;

(F)     for the period fro the date of the latest financial statements included in the Offering Circulars to the specified date referred to in clause (E) there were any decreases in consolidated net revenues or operating profit or the total or per share amounts of consolidated net income or other items specified by the Representatives, or any increases in any items specified by the Representatives, in each case as compared with the comparable period of the preceding year and with any other period of corresponding length specified by the Representatives, except in each case for decreases or increases which the Offering Circulars disclose have occurred or may occur or which are described in such letter; and

(v)     In addition to the examination referred to in their report(s) included in the Offering Circulars and the limited procedures, inspection of minute books, inquiries and other procedures referred to in paragraphs (iii) and (iv) above, they have carried out certain specified procedures, not constituting an audit in accordance with generally accepted auditing standards, with respect to certain amounts, percentages and financial information specified by the Representatives, which are derived from the general accounting records of WMI and its subsidiaries, which appear in the Offering Circulars, and have compared certain of such

amounts, percentages and financial information with the accounting records of WMI and its subsidiaries and have found them to be in agreement.