approvals, authorizations, registrations or qualifications that have been obtained or made on or prior to the date hereof or as may be required under the securities or "blue sky" laws of the State of New York.

3.     Each of the Exchange Agreement and the Deposit Agreement constitutes a legal, valid and binding obligation of WMI, enforceable against WMI in accordance with its terms under the laws of the State of New York.

4.     No registration of the Trust Securities under the Securities Act is required in connection with the initial offer and sale and delivery of the Trust Securities by WaMu Delaware III or the initial offers and sales of the Trust Securities by the Initial Purchasers, in each case assuming that such offers and sales are conducted in the manner contemplated by the Trust Agreement, the Purchase Agreement and the Offering Circular. We express no opinion, however, as to when and under what circumstances any Trust Securities sold by the Initial Purchasers may be reoffered or resold.

5.     As of the date hereof (and after giving effect to the offering and sale of the Trust Securities and the Series 2007-A Company Preferred Securities and the application of the proceeds thereof in accordance with the terms of the Transaction Documents, in each case assuming that such offers and sales are conducted in the manner contemplated by the Purchase Agreement, the Trust Agreement and the Offering Circular), none of WaMu Delaware III, Asset Trust I, Asset Trust II or the LLC is required to be registered under the Investment Company Act of 1940, as amended.

6.     The Series 2007-A Company Preferred Securities have been duly authorized and validly issued by the Company and are fully paid and nonassessable limited liability company interests in the Company.

7.     The shares of WMI Preferred Stock initially issuable upon a Conditional Exchange of Trust Securities have been duly authorized and reserved for issuance upon such Conditional Exchange and, when issued upon such Conditional Exchange, will be validly issued, fully paid and nonassessable.

8.     The Depositary Shares initially issuable upon a Conditional Exchange of Trust Securities, when issued upon such Conditional Exchange, will be validly issued pursuant to the Deposit Agreement and the Exchange Agreement.

9.     The description in the Offering Circular of one or more of the Trust Securities or other securities under the captions "Description of the Trust Securities," "Description of the Series 2007-A Company Preferred Securities," "Description of Other Company Securities," "Description of the Series M WMI Preferred Stock," "Description of the Depositary Shares" and "Description of the Other WMI Capital Stock," insofar as they purport to describe the provisions of the securities and other documents referred to therein, are accurate in all material respects and provide a fair summary of such provisions in all material respects.

10. The descriptions in the Offering Circular under the captions "Certain U.S. Federal Income Tax Considerations" and "ERISA Considerations," insofar as they purport to describe the provisions of the laws and regulations referred to therein are accurate in all material respects and provide a fair summary of such provisions in all material respects.

## III. Assumptions

In rendering the opinions set forth herein, we have relied upon and assumed:

1. The genuineness of all signatures, the authenticity of all writings submitted to us as originals, the conformity to original writings of all copies submitted to us as certified or photostatic copies, and the legal competence and capacity of all natural persons;

2. The accuracy of all certificates and representations, writings and records reviewed by us, including the representations and warranties made in the Transaction Documents, in each case with respect to the factual matters set forth therein;

3. All parties to the Transaction Documents are validly existing, and in good standing under the laws of their respective jurisdictions of organization and have the requisite organizational power to enter into such Transaction Documents;

4. The execution and delivery of the Transaction Documents have been duly authorized by all necessary organizational proceedings on the part of all parties to each such document.

5. The Transaction Documents have been duly executed and delivered by all parties to each such document.

6. Except to the extent specifically addressed in our opinions in paragraphs II.3, II.6, II.7 and II.8, the Transaction Documents constitute the legal, valid and binding obligations of each party thereto, enforceable against each such parties in accordance with their respective terms.

7. Except as specifically addressed in II.1 and II.2, the respective terms and provisions of each of the Transaction Documents do not, and the execution, delivery and performance of its obligations thereunder by each party to any Transaction Document will not violate the constitutive or organizational documents of any such party or any law, order or decree of any court, administrative agency or other governmental authority binding on any such party.

8. There are no other agreements among any or all of the parties that would alter the agreements set forth in the Transaction Documents.

A-2-5

## IV. Limitations and Qualifications

The opinions expressed herein are subject to the following qualifications, exceptions and limitations:

1.     Members of our firm are members of the State Bar of New York. We express no opinion as to the laws of any jurisdiction other than the State of New York (excluding municipal laws) and Federal laws of the United States of America to the extent expressly provided in this letter. To the extent that matters of Delaware law are relevant to any of the opinions expressed herein, we have relied entirely on the opinion of Richards, Layton & Finger, P.A. dated as of the date hereof and our opinions herein are subject to the qualifications, exceptions and limitations in such opinion. To the extent that matters of Washington law are relevant to the opinions expressed herein, we have relied entirely on the opinion of Heller Ehrman LLP dated as of the date hereof and our opinions herein are subject to the qualifications, exceptions and limitations in such opinion. In each case we have relied on these opinions with your permission and our opinions herein are subject to the qualifications, exceptions and limitations in such opinions.

2.     Our opinions in paragraphs II.1 and 2 as to violations of law and governmental consents, filings, registrations and the like apply only to laws that a New York lawyer exercising customary professional diligence would reasonably be expected to recognize as being applicable to the Represented Parties, the Transaction Documents and the transactions contemplated by the Offering Circular and that is not applicable solely because of the specific nature or source of the assets or business of any party to the Transaction Documents or any affiliate of any such party. Without limiting the generality of the foregoing, those opinions do not address any consumer protection laws, any employee benefit, pension or tax law or related rule or regulation or state or (except to the extent specifically set forth in paragraphs II.4 and 5) federal securities laws.

3.     In rendering the opinions set forth in paragraphs II. 4 and 5, we have assumed the accuracy of the factual representations, warranties and certifications of, and compliance with the agreements by WaMu Delaware III and the Initial Purchasers of the Securities contained in the Transaction Documents and the certificates and other documents delivered at the closing of the sale of the Trust Securities and the accuracy of the representations and warranties made or deemed to be made by the holders of the Trust Securities as described in the Offering Circular and the Purchase Agreement.

4.     Our opinions as to the legal, valid and binding nature and enforceability of any agreement or instrument are subject to (i) the effect of any applicable bankruptcy, insolvency, fraudulent conveyance or similar law affecting creditors' rights generally, and (ii) to general principles of equity (regardless of whether considered in a proceeding in equity or at law), including concepts of commercial reasonableness, good faith and fair dealing and the possible unavailability of specific performance or injunctive relief.

A-2-6

5.      We also express no opinion regarding: (i) any severability provision in the Transaction Documents; (ii) the enforceability of any waiver of rights or defenses set forth in the Transaction Documents to the extent such rights or defenses may not be waived under applicable law; or (iii) any provision of any Transaction Documents that purports to (a) appoint any person as the attorney-in-fact of any other person, (b) provide that all rights or remedies of any party are cumulative and may be enforced in addition to any other right or remedy and that the election of a particular remedy does not preclude recourse to one or more remedies, (c) permit set-off in the absence of mutuality between the parties, (d) confer subject matter jurisdiction on a Federal court to adjudicate any controversy in any situation in which such court would not have subject matter jurisdiction, (e) waive the right to jury trial or any right to object to the laying of venue or any claim that an action or proceeding has been brought in an inconvenient forum.

6.      Our opinions with respect to any agreement of the Issuer to indemnify any person (including by way of contribution) are subject to the qualifications that any indemnity obligation may be limited by public policy considerations and may be subject to defenses available to sureties arising from actions of the indemnified party.

7.      We express no opinion in this letter as to the validity, perfection or priority of any security interest or on whether any purported sale of loans or other property is a true sale.

The opinions expressed herein shall be effective only as to the date of this opinion letter.  We do not assume responsibility for updating this opinion letter as of any date subsequent to the date of this opinion letter, and assume no responsibility for advising you of (i) any changes with respect to any matters described in this opinion letter or (ii) the discovery subsequent to the date of this opinion letter of factual information not previously known to us pertaining to the events occurring prior to the date of this opinion letter.

This opinion is being furnished only to you in connection with the transactions contemplated by the Transaction Documents, is solely for your benefit, and is not to be used, quoted, relied upon or otherwise referred to by any other person or for any other purposes without our prior written consent. This opinion is based on factual matters in existence as of the date hereof and laws and regulations in effect on the date hereof, and we assume no obligation to revise or supplement this opinion should such factual matters change or should such laws or regulations be changed by legislative or regulatory action, judicial decision or otherwise.

Very truly yours,


MAYER, BROWN, ROWE & MAW LLP


A-2-7

## Schedule I

Washington Mutual Preferred Funding LLC

Washington Mutual Preferred Funding Trust III

Washington Mutual Home Equity Trust I

WAMU 2006-OA1

Washington Mutual, Inc.

Washington Mutual Bank

Goldman, Sachs & Co., Lehman Brothers Inc. and UBS Securities LLC, as representatives of the Initial Purchasers

Deutsche Bank National Trust Company

Deutsche Bank Trust Company Delaware

Wilmington Trust Company

Standard & Poor's Ratings Services

Moody's Investor Services, Inc.

Fitch, Inc.

NY12532:397447.14

To Goldman, Sachs & Co., Lehman Brothers Inc. and UBS Securities LLC, as representatives of the Initial Purchasers

Re:    Negative Assurance Letter
        Washington Mutual Preferred Funding Trust III

Ladies and Gentlemen:

We have acted as special New York counsel to Washington Mutual Preferred Funding Trust III, a statutory trust formed under the laws of the State of Delaware ("WaMu Delaware III"), Washington Mutual Preferred Funding LLC, a limited liability company organized under the laws of the state of Delaware (the "LLC"), Washington Mutual, Inc. ("WMI"), and Washington Mutual Bank ("WMB") (each a "Represented Party" and collectively, the "Represented Parties"), in connection with the issuance and sale by WaMu Delaware III of 5,000 of its Fixed-to-Floating Rate Perpetual Non-cumulative Trust Securities, liquidation preference $100,000 per security and $500,000,000 in the aggregate (the "Trust Securities").

The Trust Securities are to be purchased by Goldman, Sachs & Co., Lehman Brothers Inc., UBS Securities LLC and certain other initial purchasers (the "Initial Purchasers") pursuant to the Purchase Agreement, dated May [ ], 2007, among the Represented Parties, Goldman Sachs & Co. as representative of the Initial Purchasers and certain other parties thereto, relating to the offer and sale of the Trust Securities (the "Purchase Agreement"). This opinion letter is furnished pursuant to the Purchase Agreement by request of the Initial Purchasers. Capitalized terms used herein and not otherwise defined have the meaning set forth in the Purchase Agreement.

A preliminary offering circular, dated May [ ], 2007 (the "Preliminary Offering Circular" and, as supplemented by Schedule III to the Purchase Agreement, the "Pricing Disclosure Package"), and an offering circular, dated May 21, 2007 (the "Offering Circular"), have been prepared in connection with the offering of the Trust Securities.

References herein to the Preliminary Offering Circular and the Offering Circular shall include the information which WMI filed with the Securities and Exchange Commission and which WMB filed with the Office of Thrift Supervision, in each case to the extent incorporated by reference in the Preliminary Offering Circular and the Offering Circular under the heading "Where You Can Find More Information."

In the course of representing the Represented Parties in connection with the above, we have participated in telephone conferences with officers, managers, employees and representatives of the Represented Parties and the Initial Purchasers and their respective counsel, and the independent accountants of Washington Mutual, Inc. and Washington Mutual Bank, at which conferences the contents of certain sections of the Offering Circular and the Pricing Disclosure Package and related matters were discussed.

The purpose of our professional engagement was not to establish or confirm factual matters set forth in the Pricing Disclosure Package and the Offering Circular and we have not undertaken any obligation to verify independently any of the factual matters

set forth in the Offering Circular. Moreover, many of the determinations required to be made in the preparation of the Pricing Disclosure Package and the Offering Circular involve matters of a non-legal nature.

We are not passing upon, and do not assume any responsibility for, the accuracy, completeness or fairness of the statements contained in the Offering Circular and the Pricing Disclosure Package (except to the extent that such matters are specifically addressed herein or in our separate opinion of even date herewith) and have made no independent check or verification thereof. Subject to the foregoing, we confirm that no facts have come to the attention of the attorneys who have worked on this transaction or otherwise have had principal responsibility for representing the company, WMI or WMB on other significant matters that have led us to believe that: (a) the Pricing Disclosure Package, as of [ ] am/pm (Eastern Time) on May [21], 2007, contained any untrue statement of a material fact or omitted to state any material fact necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading or (b) the Offering Circular contained, as of May [ ], 2007 or contains as of the date hereof, an untrue statement of a material fact or omitted or omits, as the case may be, to state any material fact necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading; *provided, however* that we express no opinion or belief with respect to the financial statements and other financial information included in or omitted from the Offering Circulars or the Pricing Disclosure Package.

Whenever in this letter, the existence or absence of facts is indicated to be based on our knowledge or awareness, we are referring to the actual knowledge of the Mayer, Brown, Rowe & Maw LLP attorneys who have represented the Represented Parties in connection with the transactions contemplated by the Offering Circular or who have participated in the preparation of the Pricing Disclosure Packages, the Offering Circular or the aforementioned conferences or otherwise have had principal responsibility for representing the company, WMI or WMB on other significant matters . Except as expressly set forth herein, we have not undertaken any independent investigation to determine the existence or absence of such facts and no inference as to our knowledge concerning such facts should be drawn from the fact that such representation has been undertaken by us.

Pursuant to IRS Circular 230, we hereby inform you that this letter was not intended or written by us to be used, and cannot be used by you, for the purpose of avoiding penalties that may be imposed on you under U.S. tax law.

This letter is limited to the specific issues addressed herein and is limited in all respects to laws and facts existing on the date hereof. By delivering this letter, we do not undertake to advise you with respect to any other matter or of any change in such laws or facts or in the interpretations of such laws that may occur after the date hereof.

We are furnishing this letter to you solely for your benefit in connection with the Purchase Agreement and this letter may not be relied upon by any other person including, without limitation, the holders or beneficial owners of the Offered Securities from time to time. This letter is not to be assigned, used, circulated, quoted or otherwise referred to for any other purpose without prior written consent thereto.

Very truly yours,


MAYER, BROWN, ROWE & MAW LLP

NY12532:397447.14

Washington Mutual Inc.
1301 Second Avenue
Seattle, Washington 98101

Ladies and Gentlemen;

We have acted as counsel to you, Washington Mutual, Inc., a Washington corporation (the "Company") in connection with the Replacement Capital Covenant entered into by the Company on May [ ], 2007, a copy of which is attached as Annex 1 (the "Replacement Capital Covenant"). Capitalized terms used herein and not otherwise defined are used with the meanings assigned to them in the Replacement Capital Covenant.

You have asked for our opinion as to whether the Replacement Capital Covenant will be enforceable by Covered Debtholders in the event the Company were to breach its promise and covenant in Section 2 of the Replacement Capital Covenant.

Because the class or series of the Company's long-term indebtedness for money borrowed that is the Covered Debt may change from time-to-time and the governing law of the indenture, agreement or other instrument under which the Covered Debt exists may or may not be the law of the State of New York, the Company has chosen to implement its promise and covenant set forth in Section 2 of the Replacement Capital Covenant as a promise and covenant intended to be enforceable against the Company as a promise reasonably inducing action or forbearance, commonly referred to as "promissory estoppel" (see Restatement (Second) of Contracts § 90 (1981) (the "Second Restatement")), instead of as a term of the indenture, agreement or other instrument of the applicable Covered Debt, which would require an amendment to each related indenture, agreement or other instrument. The three essential elements of a promissory estoppel claim that can be derived from the Second Restatement are that (i) there must be a clear and unambiguous promise, (ii) there must be reasonable and forseeable reliance by the promisee on the promise, and (iii) the promisee must have sustained an injury as a result of a breach of the promise on which the promisee relied. Promissory estoppel is a generally applicable doctrine and, although we are not aware of any judicial decision applying promissory estoppel specifically to undertakings for the benefit of holders of investment securities, we are aware of no decision holding that the promissory estoppel doctrine would not be applicable in such a context if the elements of a promissory estoppel claim are satisfied.

NYI2532:397447.14

Applying these elements to the Replacement Capital Covenant:

(a)  the Replacement Capital Covenant is straightforward and satisfies the requirement that there be a clear and unambiguous promise;

(b)  assuming that the Company complies with its covenant regarding public disclosure and notices set forth in Section 4 of the Replacement Capital Covenant, we believe that such disclosure and notices, together with Recitals D and E in the Replacement Capital Covenant, should enable a Covered Debtholder to demonstrate that its reliance on the Company's promise and covenant in Section 2 of the Replacement Capital Covenant was reasonable and forseeable; and

(c)  the Company has entered into the Replacement Capital Covenant with the expectation that its compliance with its promise and covenant in Section 2 will be a relevant factor in any Covered Debtholder's evaluation of whether to buy or sell the related Covered Debt and that Covered Debtholders would be damaged if the Company disregarded or breached such promise and covenant, as reflected in Recitals D and E of the Replacement Capital Covenant.

We, as your counsel, have examined such corporate records, certificates and other documents and such questions of law (including the elements of promissory estoppel, as discussed above), as we have considered it necessary or appropriate for the purposes of this opinion.

With your approval, in our examination we have further assumed, without independent investigation:

1.  that the Company is duly organized and validly existing in the State of Washington;

2.  that the Company is duly qualified to transact business as a foreign corporation or other entity and is in good standing in the jurisdictions in which it transacts business or is otherwise required to be so qualified;

3.  the due authorization of the Replacement Capital Covenant by the Company;

4.  the due execution and delivery of the Replacement Capital Covenant by the Company;

5.  the full legal power and authority of the Company to execute, deliver and perform its obligations under the Replacement Capital Covenant;

6.  the legal competence and capacity of all natural persons executing the Replacement Capital Covenant;

7.  that there has not been any fraud, duress, undue influence or material mistake of fact in connection with the execution and performance of the Replacement Capital Covenant;

8.    that there are no agreements of the Company that would alter, and no material agreements of the Company that would conflict with, the agreements set forth in the Replacement Capital Covenant.

Upon the basis of such examination and based upon the foregoing assumptions, we advise you that, in our opinion, assuming that the Company complies with its covenant in Section 4 as to public disclosure and notices, if the Company were to disregard or breach its promise and covenant set forth in Section 2 of the Replacement Capital Covenant, the Replacement Capital Covenant would be enforceable against the Company by any Covered Debtholder that bought or sold Covered Debt in reliance on the Replacement Capital Covenant and established damages from such breach, subject to bankruptcy, insolvency, fraudulent transfer, reorganization, moratorium and similar laws of general applicability relating to or affecting creditors' rights and to general equity principles.

The foregoing opinion is limited to the Federal laws of the United States and the laws of the State of New York. Moody's Investors Service Inc. may rely on this opinion as if the opinion were addressed to it.

Very truly yours,


MAYER, BROWN, ROWE & MAW LLP

## Opinion of Heller Ehrman LLP

Goldman, Sachs & Co., Lehman Brothers Inc. and UBS Securities LLC,
    as Representatives of the several
    Purchasers named in Schedule I
    to the Purchase Agreement as defined below
85 Broad Street
New York, New York 10004

    Re:    Washington Mutual, Inc. and Certain Subsidiaries

Ladies and Gentlemen:

We have acted as counsel for Washington Mutual, Inc , a Washington corporation ("*WMI*"), Washington Mutual Bank, a federal savings bank ("*WMB*") and University Street, Inc., a Washington corporation ("*University Street*") in connection with the issuance by Washington Mutual Preferred Funding LLC, a Delaware limited liability company (the "*Company*") of its Fixed-to-Floating Rate Perpetual Non-cumulative Preferred Securities, Series 2007-A, liquidation preference $1,000 per security (the "Company Preferred Securities").

Washington Mutual Preferred Funding Trust III, a Delaware statutory trust ("*WaMu Delaware*"), will issue its Fixed-to-Floating Rate Perpetual Non-cumulative Trust Securities (the "*Trust Securities*") and apply the proceeds to purchase the Company Preferred Securities. Under specified circumstances, the Trust Securities are automatically exchangeable into depositary shares representing interests in shares of Series M Perpetual Non-cumulative Fixed-to-Floating Rate Preferred Stock of WMI (the "*Series M Preferred Stock*"). Such an exchange is herein referred to as a "Conditional Exchange."

This opinion letter is being delivered pursuant to Section 8(c) of that certain Purchase Agreement dated May ●, 2007 (the "Purchase Agreement") by and among WMI, WMB, the Company, WaMu Delaware and Goldman, Sachs & Co., as representatives of the Purchasers named on Schedule I to the Purchase Agreement. Capitalized terms used and not otherwise defined in this letter have the meanings given them in the Purchase Agreement.

## I.

We have assumed the authenticity of all records, documents and instruments submitted to us as originals, the genuineness of all signatures, the legal capacity of natural persons and the conformity to the originals of all records, documents and instruments submitted to us as copies. We have based our opinion upon a review of the following records, documents, instruments and certificates and such additional certificates relating to factual matters as we have deemed appropriate:

    A.    The Purchase Agreement;

B.      The Preliminary Offering Circular dated May ●, 2007 and the Final Offering Circular dated May ●, 2007 relating to the Trust Securities (the "*Offering Circular*");

C.      The Deposit Agreement dated as of May ●, 2007 among WMI, Mellon Investor Services LLC ("*Mellon*"), as depositary and as registrar, and the holders from time to time of the Depositary Receipts;

D.      The Exchange Agreement dated as of May ●, 2007 among WMI, WaMu Delaware and Mellon;

E.      The Master Loan Contribution and Purchase Agreement dated as of March 7, 2006 and the related Loan Transfer Confirmations, dated as of March 7, 2006 and December 13, 2006, respectively (together, the "*University Street Asset Transfer Agreement*") between University Street and the Company;

F.      The Master Loan Contribution and Purchase Agreement dated as of March 7, 2006 and the related Loan Transfer Confirmations, dated as of March 7, 2006 and December 13, 2006, respectively (together, the "*WMB Asset Transfer Agreement*") between WMB and the Company;

G.      The Pooling and Servicing Agreement dated as of March 7, 2006 and the Pooling and Servicing Agreement dated as of December 13, 2006, each among the Company, WMB, Deutsche Bank Trust Company Delaware and Deutsche Bank National Trust Company;

H.      The Administrative Services Agreement dated as of March 6, 2006 among the Company, WMB and WMI;

I.      The Agency Agreement dated as of May ●, 2007 among the Company, WaMu Delaware and Wilmington Trust Company;

J.      Articles of Amendment filed by WMI on May ●, 2007 with the Secretary of State of the State of Washington relating to the Series M Preferred Stock (the "*WMI Articles of Amendment*");

K.      A Certificate of Existence/Authorization relating to WMI issued by the Washington Secretary of State, dated May ●, 2007;

L.      A Certificate of Existence/Authorization relating to University Street issued by the Washington Secretary of State, dated May ●, 2007;

M.      A certified copy of the articles of incorporation of WMI issued by the Washington Secretary of State, dated May ●, 2007;

N.      A certified copy of the articles of incorporation of University Street issued by the Washington Secretary of State, dated May ●, 2007;

O.      A letter relating to the status of WMI as a savings and loan holding company from the Office of Thrift Supervision (the "*OTS*"), dated May ●, 2007;

A-3-2

P.      The officer's certificates delivered by WMI and University Street pursuant to the Purchase Agreement;

Q.      A Secretary's Certificate of WMI;

R.      A Secretary's Certificate of University Street;

S.      Records certified to us by an officer of WMI of proceedings and actions of the board of directors and certain authorized officers relating to the issuance of the Series M Preferred Stock; and

T.      Records certified to us by an officer of University Street of proceedings and actions of the board of directors relating to the University Street Asset Transfer Agreement.

The agreements described in Paragraphs C, D and H above are sometimes referred to herein as the "WMI Transaction Agreements." The agreements described in Paragraphs C through I above are sometimes referred to herein as the "Transaction Agreements." The agreements described in Paragraphs E and F above are sometimes referred to herein as the "Asset Transfer Agreements."

Our opinion expressed in Paragraph 1 of Part IV is based solely on the certificate enumerated in Paragraph K above.  We have made no additional investigation after the date of such certificate in rendering the opinion expressed in Paragraph 1 of Part IV.

Our opinion expressed in Paragraph 3 of Part IV as to WMI's status as a unitary savings and loan holding company is based solely on the letter enumerated in Paragraph O above.  We have made no additional investigation after the date of such letter in rendering the opinion expressed in Paragraph 3 of Part IV.

## II.

We have also assumed the following, without making any inquiry into the reasonableness or validity thereof:

(a)      Each of the parties (other than WMB and University Street) to the Asset Transfer Agreements (each a "*Third Party*" and collectively the "*Third Parties*") has all necessary power and authority to execute and deliver, and to perform its obligations under, the Agreements to which it is a party;

(b)      Each of the Asset Transfer Agreements is a valid and binding obligation of each Third Party that is a party thereto, enforceable against each such Third Party in accordance with its terms;

(c)      There are no facts or circumstances relating to any Third Party (for example, regulatory prohibitions or the failure to qualify to do business) that might prevent any such Third Party from enforcing any of the rights to which our opinion relates;

A-3-3

(d)     With respect to our opinion in Paragraph 4 of Part IV, we have assumed that WMI will be a duly incorporated and existing corporation under the laws of the State of Washington at the time of the occurrence of a Conditional Exchange and that the WMI Preferred Stock will be represented by a duly issued certificate or WMI will comply with § 23B.06.260 of the Revised Code of Washington relating to shares without certificates; and

(e)     With respect to our opinion in Paragraph 7 of Part IV, we have assumed that WMB (1) is a federal savings bank duly chartered under the laws of the United States with its charter in full force and effect, (2) has corporate power and authority to execute and deliver, and to perform its obligations under, the WMB Asset Transfer Agreement and (3) has duly authorized, executed and delivered the WMB Asset Transfer Agreement, and we understand that you are relying on the opinion of Charles E. Smith, Esq. dated the date hereof with respect to such matters.

## III.

We express no opinion as to any securities laws, rules or regulations (other than as set forth in Paragraph 11 of Part IV of this letter), tax laws or any laws, rules or regulations applicable to any Third Party by virtue of its status as a financial securities institution, pension fund, insurance company or similarly regulated entity. In addition, we express no opinion as to whether any party (other than WMI and University Street) is required to qualify to do business in the State of Washington.

Our opinions in Paragraphs 1 through 10 of Part IV are limited to the internal laws of the State of Washington and our opinion in Paragraph 11 is limited to the laws of the United States. We disclaim any opinion as to the laws of any other jurisdiction. We further disclaim any opinion as to any statute, rule, regulation, ordinance, order or other promulgation of any regional or local governmental body or as to any related judicial or administrative opinion.

## IV.

Based upon the foregoing and our examination of such questions of law as we have deemed necessary or appropriate for our opinion, and subject to the limitations and qualifications expressed herein, it is our opinion that:

1.     WMI has been duly incorporated and is an existing corporation under the laws of the State of Washington.

2.     WMI has the corporate power and authority to own its properties and conduct its business as described in the Offering Circular.

3.     WMI has been duly registered as a savings and loans holding company under the applicable provisions of the Home Owners' Loan Act.

4.     The shares of the Series M Preferred Stock initially issuable upon a Conditional Exchange of the Trust Securities have been duly authorized and reserved

for issuance upon such Conditional Exchange and, when issued upon the occurrence of such Conditional Exchange, will be validly issued, fully paid and nonassessable.

5.     The descriptions (i) in the Offering Circular of the Series M Preferred Stock under the caption "Description of the Series M WMI Preferred Stock," and (ii) in the Offering Circular of other securities of WMI under the caption "Description of the Other WMI Capital Stock," insofar as they purport to describe the provisions of laws, securities and other documents referred to therein, are accurate in all material respects and provide a fair summary of such provisions in all material respects.

6.     The University Street Asset Transfer Agreement (i) has been duly authorized, executed and delivered by University Street and, assuming it has been duly authorized, executed and delivered by the Company, constitutes the valid and legally binding obligation of University Street, enforceable in accordance with its terms, subject to bankruptcy, insolvency, receivership, conservatorship, fraudulent transfer, reorganization, moratorium and similar laws of general applicability relating to or affecting creditors' rights and to general equity principles, and (ii) assuming the transaction is a sale and not a security interest that secures an obligation and assuming the proper completion of a loan transfer confirmation in the case of any transfer other than the transfers pursuant to the Loan Transfer Confirmations referred to in Paragraph E of Part I above, is sufficient to transfer to the Company the entire right, title and interest of University Street in the loans identified as being transferred in the University Street Asset Transfer Agreement, subject to bankruptcy, insolvency, receivership, conservatorship, fraudulent transfer, reorganization, moratorium and similar laws.

7.     The WMB Asset Transfer Agreement (i) assuming it has been duly authorized, executed and delivered by the Company, constitutes the valid and legally binding obligation of WMB, enforceable in accordance with its terms, subject to bankruptcy, insolvency, fraudulent transfer, reorganization, moratorium and similar laws of general applicability relating to or affecting creditors' right and to general equity principles, and (ii) assuming the transaction is a sale and not a security interest that secures an obligation and assuming the proper completion of a loan transfer confirmation in the case of any transfer other than the transfer pursuant to the Loan Transfer Confirmations referred to in Paragraph F of Part I above, is sufficient to transfer to the Company the entire right, title and interest of WMB in the loans identified as being transferred in the WMB Asset Transfer Agreement, subject to bankruptcy, insolvency, receivership, conservatorship, fraudulent transfer, reorganization, moratorium and similar laws.

8.     Each of the Purchase Agreement and the WMI Transaction Agreements has been duly authorized, executed and delivered by WMI.

9.     No consent, approval, authorization or order of, or filing with, any governmental agency or body of the State of Washington or any court located in the State of Washington is required for the consummation of the transactions contemplated by the Purchase Agreement or the Transaction Agreements or in connection with the issuance and sale of any of the Securities, except as may be required under the securities or "blue sky" laws of the State of Washington and except for the filing of the

WMI Articles of Amendment with the Washington Secretary of State (which has been made) and any UCC filings with the Washington Department of Licensing.

10.    The execution, delivery and performance of the Purchase Agreement by WMI, WMB, the Company and WaMu Delaware, and the execution, delivery and performance of any Transaction Agreement by WMI or any of its subsidiaries that is a party thereto, and the issuance and sale of the Trust Securities in compliance with the terms and provisions thereof, will not result in a breach or violation of any of the terms and provisions of any statute, any rule or any regulation of any governmental agency or body of the State of Washington.

11.    The Exchange Act Reports (other than the financial statements, the related schedules therein and other financial data contained therein, as to which we express no opinion), when they were filed with the Commission or the OTS (as applicable), complied as to form in all material respects with the applicable requirements of the Exchange Act, and the rules and regulations of the Commission or the OTS (as applicable) thereunder.

## V.

Although we have not undertaken to determine independently the accuracy, completeness or fairness of any of the statements made in the Exchange Act Reports, we have reviewed the Exchange Act Reports and participated in conferences with representatives of WMI and WMB and their accountants at which the contents of the Exchange Act Reports and related matters were discussed and reviewed.  On the basis of the information that was developed in the course of the performance of the services referred to above, we advise you that nothing has come to our attention that has led us to believe that any of such documents, at the date they were so filed, contained an untrue statement of a material fact or omitted to state a material fact necessary in order to make the statements therein, in light of the circumstances under which they were made when such documents were so filed, not misleading.  The limitations inherent in the independent verification of factual matters and the character of determinations involved in the preparation of the Exchange Act Reports are such, however, that we do not assume any responsibility for the accuracy, completeness or fairness of the statements contained in the Exchange Act Reports.  We also do not express any opinion or belief as to the financial statements or other financial data contained in the Exchange Act Reports.

## VI.

We further advise you that:

(a)    As noted, the enforceability of the Asset Transfer Agreements is subject to the effect of general principles of equity.  These principles include, without limitation, concepts of commercial reasonableness, materiality and good faith and fair dealing.  As applied to the Agreements, these principles will require the parties to the Asset Transfer Agreements other than WMB and University Street (the "Other Parties") to act reasonably, in good faith and in a manner that is not arbitrary or capricious in the administration and enforcement of the Asset

A-3-6

Transfer Agreements and will preclude the Other Parties from invoking penalties for defaults that bear no reasonable relation to the damage suffered or that would otherwise work a forfeiture.

(b)     The enforceability of the Asset Transfer Agreements is subject to the effects of (i) provisions of the Uniform Commercial Code (a) stating that obligations of good faith, diligence, reasonableness and care prescribed may not be disclaimed by agreement, although the parties may by agreement determine the standards by which the performance of such obligations is to be measured if those standards are not manifestly unreasonable, or (b) imposing an obligations of good faith in the performance or enforcement of a contract and (ii) legal principles under which a court may refuse to enforce, or may limit the enforcement of, a contract or any clause of a contract that a court finds as a matter of law to have been unconscionable at the time it was made. We express no opinion as to the attachment, validity, perfection or priority of any security interest that secures an obligation.

(c)     The effectiveness of indemnities, rights of contribution, exculpatory provisions, choice of venue provisions, waivers of jury trials and waivers of the benefits of statutory provisions may be limited on public policy grounds.

(d)     Provisions of any agreement requiring that waivers must be in writing may not be binding or enforceable if a non-executory oral agreement has been created modifying any such provision or an implied agreement by trade practice or course of conduct has given rise to a waiver.

## VII.

The foregoing opinion is being delivered solely to you in connection with the issuance of the Trust Securities and may not be relied on by you for any other purpose or by any other person for any purpose without our written consent, except that Sullivan & Cromwell LLP and Mayer, Brown, Rowe & Maw LLP may each rely on this opinion to the extent each is delivering legal opinions pursuant to the Purchase Agreement that opine as to matters covered by our opinion. We disclaim any obligation to advise you of any change of law that occurs, or any facts of which we become aware, after the date of this opinion.

Very truly yours,


HELLER EHRMAN LLP

## Opinion of Richards, Layton & Finger, P.A.

To Each of the Persons Listed
    on Schedule A Attached Hereto

Re:    <u>Washington Mutual Preferred Funding LLC</u>

Ladies and Gentlemen:

We have acted as special Delaware counsel for Washington Mutual Preferred Funding LLC, a Delaware limited liability company (the "*Company*"), in connection with the matters set forth herein. At your request, this opinion is being furnished to you.

For purposes of giving the opinions hereinafter set forth, our examination of documents has been limited to the examination of originals or copies of the following:

☐    The Certificate of Formation of the Company, dated February 3, 2005, as filed in the office of the Secretary of State of the State of Delaware (the "*Secretary of State*") on February 3, 2006 (under the name "Washington Mutual Preferred Funding, LLC"), as amended by the Certificate of Amendment thereto, dated February 6, 2004, as filed in the office of the Secretary of State on February 6, 2006 (reflecting a change in the name of the Company to "Washington Mutual Preferred Funding LLC"), as corrected by the Certificate of Correction thereto, dated as of February 23, 2006, as filed in the office of the Secretary of State on February 23, 2006 (as so amended and corrected, the "*LLC Certificate*"),

☐    The Limited Liability Company Agreement of the Company, dated as of February 23, 2006 (the "*Initial Company Agreement*"), entered into by University Street, Inc. ("*University*"), as the sole member of the Company;

☐    The Amended and Restated Limited Liability Company Agreement of the Company, dated as of March 7, 2006 (the "*Amended LLC Agreement*"), including the By-Laws of the Company attached thereto as Annex A;

☐    The Third Amended and Restated Limited Liability Company Agreement of the Company, dated as of May ●, 2007 including the By-Laws of the Company attached thereto as Annex A (the "*Company Agreement*"), among University, as initial securityholder and holder of the common securities of the Company (the "*Company Common Securities*"), Washington Mutual Preferred Funding (Cayman) I Ltd. ("*WaMu Cayman*"), as holder of the Series 2006-B Company Preferred Securities (as defined therein), Washington Mutual Preferred Funding Trust I ("*Trust I*"), as holder of the Series 2006-A Company Preferred Securities (as defined therein), Washington Mutual Preferred Funding Trust II (Trust II), as holder of the 2006-C Company Preferred Securities and Washington Mutual Bank ("*WMB*"), as initial holder of the 500,000 2007-A Company Preferred Securities (as defined therein) (the "*2007-A Company Preferred Securities*");

A-4-1

☐ The documents listed on Schedule B attached hereto (each, a "*Transaction Document*" and collectively, the "*Transaction Documents*"); and

☐ A Certificate of Good Standing for the Company, dated May •, 2007, obtained from the Secretary of State.

Initially capitalized terms used herein and not otherwise defined are used as defined in the Company Agreement. The Series 2006-A Company Preferred Securities, Series 2006-B Company Preferred Securities, Series 2006-C Company Preferred Securities and the 2007-A Company Preferred Securities are hereinafter collectively referred to as the "Company Preferred Securities." The Series 2006-A Company Preferred Securities, the Series 2006-B Company Preferred Securities and the Series 2006-C Company Preferred Securities are hereinafter collectively referred to as the "Issued Company Preferred Securities."

For purposes of this opinion, we have not reviewed any documents other than the documents listed in paragraphs (a) through (f) above. In particular, we have not reviewed any document (other than the documents listed in paragraphs (a) through (f) above) that is referred to in or incorporated by reference into the documents reviewed by us. We have assumed that there exists no provision in any document that we have not reviewed that is inconsistent with the opinions stated herein. We have conducted no independent factual investigation of our own, but rather have relied solely upon the foregoing documents, the statements and information set forth therein and the additional matters recited or assumed herein, all of which we have assumed to be true, complete and accurate in all material respects.

With respect to all documents examined by us, we have assumed (i) the authenticity of all documents submitted to us as authentic originals, (ii) the conformity with the originals of all documents submitted to us as copies or forms, and (iii) the genuineness of all signatures.

For purposes of this opinion, we have assumed (i) except to the extent provided in paragraph 1 below, that each party to the documents examined by us has been duly created, organized or formed, as the case may be, and is validly existing in good standing under the laws of the jurisdiction governing its creation, organization or formation, (ii) the legal capacity of natural persons who are signatories to the documents examined by us, (iii) except to the extent set forth in paragraphs 2 and 4 below, that each of the parties to the documents examined by us has the power and authority to execute and deliver, and to perform its obligations under, such documents, (iv) except to the extent set forth in paragraph 5 below, that all documents examined by us have been duly authorized, executed and delivered by all parties thereto, (v) that the books and records of the Company set forth all information required by the Company Agreement and the Delaware Limited Liability Company Act (6 Del. C. § 18-101, et seq.) (the "*LLC Act*"), including all information with respect to all Persons to be admitted as Securityholders and their contributions to the Company, (vi) that the Issued Company Preferred Securities have been issued and sold to WMB, and WMB has paid the full consideration due from it for the Issued Company Preferred Securities acquired by it, in accordance with the Company Agreement, (vii) that, on the date hereof, the Series 2007-A Company Preferred Securities are issued and sold to Trust III, and Trust III has

A-4-2

paid the full consideration due from it for the Series 2007-A Company Preferred Securities acquired by it, in accordance with the Company Agreement, (viii) that the Company Common Securities have been issued and sold to University, and University has paid the full consideration due from it for the Company Common Securities acquired by it, in accordance with the Company Agreement, (ix) that the transactions contemplated by the WMB Contribution Agreement and the University Street Contribution Agreement (each as defined on Schedule B attached hereto) have been consummated, (x) that the Series 2006-B Company Preferred Certificates, the Series 2006-A Company Preferred Certificates and the Series 2006-C Company Preferred Certificates have been duly executed and issued to WaMu Cayman, Trust I and Trust II respectively, in accordance with the Company Agreement, (xi) that, on the date hereof, the Series 2007-A Company Preferred Securities have been duly executed and issued to Trust III, in accordance with the Company Agreement (xii) that each of the Company, WMB and WaMu Cayman has no assets, activities (other than, in the case of the Company, the maintenance of a registered office and registered agent in the State of Delaware and the filing of documents with the Secretary of State) or employees in the State of Delaware, (xiii) that each of the Company, WMB, Trust I, Trust II, Trust III and WaMu Cayman has obtained such authorizations, consents, approvals and orders, and has made such registrations, filings and qualifications, as are customarily required in the conduct of its business, (xiv) that any amendment or restatement of any document reviewed by us (other than the Initial Company Agreement and Amended LLC Agreement) has been accomplished in accordance with, and was permitted by, the relevant provisions of said document prior to its amendment or restatement from time to time, (xv) that the Company Agreement and the LLC Certificate are in full force and effect, have not been amended and no amendment of the Company Agreement or the LLC Certificate is pending or has been proposed, (xvi) that the Initial Company Preferred Securities were transferred by WMB to Trust I, Trust II and WaMu Cayman in accordance with the Company Agreement, (xvii) that, on the date hereof, the Series 2007-A Company Preferred Securities are transferred by WMB to Trust II in accordance with the Company Agreement, (xiii) that Trust II and WaMu Cayman have paid the purchase price set forth in the Initial Purchase Agreement (as defined on Schedule B attached hereto) to WMB for the Company Preferred Securities acquired by it, (xix) that on the date hereof Trust III paid the purchase price set forth in the Purchase Agreement (as defined on Schedule B attached hereto) to WMB for the Series 2007-A Company Preferred Securities being acquired by it, (xx) that the Series 2007-A Company Preferred Securities constitute Parity Equity Securities (as defined in the Amended LLC Agreement), (xxi) that all conditions and restrictions relating to the issuance of Parity Equity Securities set forth in Section 7.10 of the Amended LLC Agreement and Section 7.13 of the Company Agreement have been satisfied, and (xxii) that all notices are promptly sent as required by Section 15.2 of the Amended LLC Agreement. We have not participated in the preparation of any offering material relating to the Company, Trust I, Trust II, Trust III or WaMu Cayman and assume no responsibility for the contents of any such material.

    This opinion is limited to the laws of the State of Delaware (excluding the securities laws and blue sky laws of the State of Delaware), and we have not considered and express no opinion on the laws of any other jurisdiction, including United States federal laws and rules and regulations relating thereto. Our opinions are rendered only with respect to Delaware laws and rules, regulations and orders thereunder that are

currently in effect. In rendering the opinions set forth herein, we express no opinion concerning (i) the creation, attachment, perfection or priority of any security interest, lien or other encumbrance, or (ii) the nature or validity of title to any property.

Based upon the foregoing, and upon our examination of such questions of law and statutes of the State of Delaware as we have considered necessary or appropriate, and subject to the assumptions, qualifications, limitations and exceptions set forth herein, we are of the opinion that:

☐ The Company has been duly formed and is validly existing in good standing as a limited liability company under the LLC Act, and all filings required under the LLC Act with respect to the formation and valid existence of the Company as a limited liability company in the State of Delaware have been made.

☐ Under the Company Agreement and the LLC Act, the Company has all necessary limited liability company power and authority to own its property and conduct its business, all as described in the Company Agreement.

☐ The Company Agreement constitutes a legal, valid and binding agreement of University, Trust I, Trust II, Trust III and WaMu Cayman, and is enforceable against University, Trust I, Trust II, Trust III and WaMu Cayman, in accordance with its terms. Prior to WMB ceasing to be a Company Preferred Securityholder pursuant to Section 2.2(f) of the Company Agreement, the Company Agreement constituted a legal, valid and binding agreement of WMB, and was enforceable against WMB, in accordance with its terms.

☐ Under the Company Agreement and the LLC Act, the Company has all necessary limited liability company power and authority (i) to execute and deliver each of the Transaction Documents, and to perform its obligations thereunder, and (ii) to accept a capital contribution from University in respect of the Company Common Securities held by University, (iii) to issue the Series 2007-A Company Preferred Securities to Trust III, and to perform its obligations under the Company Common Securities and the Company Preferred Securities.

☐ Under the Company Agreement and the LLC Act, the execution and delivery by the Company of each of the Transaction Documents, and the performance by the Company of its obligations thereunder, have been duly authorized by all necessary limited liability company action on the part of the Company.

☐ The Series 2007-A Company Preferred Securities have been duly authorized and validly issued by the Company to WMB and, subject to the qualifications set forth in paragraph 7 below, are fully paid and nonassessable limited liability company interests in the Company. The Company Common Securities have been duly authorized and validly issued by the Company to University and, subject to the qualifications set forth in paragraph 7 below, are fully paid and nonassessable limited liability company interests in the Company.

☐ Each of University, Trust I, Trust II, Trust III and WaMu Cayman, as a member of the Company (each, a "*Member*"), shall not be obligated personally for

A-4-4

any of the debts, obligations or liabilities of the Company, whether arising in contract, tort or otherwise solely by reason of being a member of the Company, except that a Member may be obligated to make payments provided for in the Company Agreement and to repay any funds wrongfully distributed to it.  A Member may be liable for its tortious or wrongful conduct and for its obligations as set forth in the Company Agreement.  We note that, under Section 12.1(a) of the Company Agreement, University has certain unqualified payment obligations.

☐     The provisions of the Company Agreement, including the terms of the Series 2007-A Company Preferred Securities, are permitted under the LLC Act.

☐     The issuance and sale by the Company of the Company Common Securities to University and the Series 2007-A Company Preferred Securities to WMB pursuant to the Company Agreement, and the sale by WMB of the Series 2007-A Company Preferred Securities to Trust III pursuant to the Purchase Agreement and the Company Agreement, and the performance by the Company of its obligations under each of the Transaction Documents, do not violate (i) any Delaware statute, rule or regulation, or (ii) the LLC Certificate or the Company Agreement.

☐     No consent, approval, authorization, order, registration, filing or qualification of or with any Delaware court or Delaware governmental agency or body is required to be obtained or made by the Company solely in connection with (i) the acceptance by the Company of a capital contribution from University in respect of the Company Common Securities held by University as contemplated by the Company Agreement, (ii) the issuance and sale by the Company of the Series 2007-A Company Preferred Securities to Trust III as contemplated by the Company Agreement, or (iii) the execution, delivery and performance by the Company of any of the Transaction Documents.

☐     Under the Company Agreement and the LLC Act, the issuance by the Company of the Company Common Securities to University and the Series 2007-A Company Preferred Securities to Trust III is not subject to the preemptive purchase rights of any Person.

☐     Trust III has been duly admitted to the Company as a Fixed-to-Floating Rate Company Preferred Securityholder.

The opinions expressed in paragraph 3 above are subject to the effect upon the Company Agreement of (i) bankruptcy, insolvency, moratorium, receivership, reorganization, liquidation, fraudulent transfer and conveyance and other similar laws relating to or affecting the rights and remedies of creditors generally, (ii) principles of equity, including applicable law relating to fiduciary duties (regardless of whether considered and applied in a proceeding in equity or at law), and (iii) the effect of applicable public policy on the enforceability of provisions relating to indemnification or contribution.

In rendering the opinions expressed above, we express no opinion with respect to (i) provisions of a document reviewed by us to the extent that such provisions purport to bind a Person that is not a party to such document, (ii) transfer restrictions in a

document reviewed by us to the extent that a transfer occurs by operation of law, and (iii) the right or power of a member of the Company to apply to or petition a court to decree dissolution of the Company pursuant to Section 18-802 of the LLC Act.

We understand that you will rely as to matters of Delaware law upon this opinion in connection with the transactions contemplated by the Purchase Agreement. In connection with the foregoing, we hereby consent to your relying as to matters of Delaware law upon this opinion. We also consent to Mayer, Brown, Rowe & Maw LLP and Sullivan and Cromwell LLP's relying as to matters of Delaware law upon this opinion in connection with opinions to be rendered by them on the date hereof pursuant to the Purchase Agreement. Except as stated above, without our prior written consent, this opinion may not be furnished or quoted to, or relied upon by, any other Person for any purpose.

Very truly yours,

RICHARDS, LAYTON & FINGER, P.A.

NY12532:397447.14

## SCHEDULE A

Washington Mutual Preferred Funding LLC

Washington Mutual Preferred Funding (Cayman) I Ltd.

Washington Mutual Preferred Funding Trust I

Washington Mutual Preferred Funding Trust II

Washington Mutual Preferred Funding Trust III

Washington Mutual Home Equity Trust I

WaMu 2006-OA1

Washington Mutual, Inc.

Washington Mutual Bank

Goldman, Sachs & Co., Lehman Brothers Inc. and UBS Securities LLC, as representatives of the several purchasers

Deutsche Bank National Trust Company

Deutsche Bank Trust Company Delaware

Wilmington Trust (Cayman) Ltd.

Wilmington Trust Company

## SCHEDULE B

1. The Purchase Agreement, dated as of February 24, 2006 (the *"Initial Purchase Agreement"*), among Trust I, the Company, Washington Mutual, Inc., WMB, and Goldman, Sachs & Co., on behalf of each of the Purchasers (as defined therein).

2. The Purchase Agreement, dated as of December 6, 2006 (the *"Purchase Agreement"*), among Trust II, the Company, Washington Mutual, Inc., WMB and Goldman, Sachs & Co., on behalf of each of the Purchasers (as defined therein).

3. The Purchase Agreement, dated as of May ●, 2007 among Trust III, the Company, Washington Mutual Inc., WMB and Goldman, Sachs & Co., on behalf of each of the Purchasers (as defined therein).

4. The Pooling and Servicing Agreement, dated as of December 13, 2006, among WMB, as servicer, the Company, as depositor, Deutsche Bank Trust Company Delaware (*"Deutsche Delaware"*), as Delaware trustee, and Deutsche Bank National Trust Company (*"Deutsche"*), as trustee.

5. The Master Loan Contribution and Purchase Agreement, dated as of March 7, 2006, between the Company, as contributee and purchaser, and WMB, as contributor and seller, as supplemented by the Loan Transfer Confirmations, dated as of December 13, 2006 and March 7, 2006 between the Company and WMB (as supplemented, the *"WMB Contribution Agreement"*).

6. The Master Loan Contribution and Purchase Agreement, dated as of March 7, 2006, between the Company, as contributee and purchaser, and University, as contributor and seller, as supplemented by the Loan Transfer Confirmations, dated as of December 13, 2006 and March 7, 2006, between the Company and University (as supplemented, the *"University Contribution Agreement"*).

7. The Agency Agreement, dated as of May ●, 2007, among Trust II, the Company and Wilmington Trust Company.

8. The Amended and Restated Trust Agreement of Trust III, dated as of May ●, 2007, among the Company, as grantor, and Wilmington Trust Company, as Delaware trustee and property trustee.

9. The Pooling and Servicing Agreement, dated as of March 7, 2006, among WMB, as servicer, the Company, as depositor, Deutsche Bank Trust Company Delaware, as Delaware trustee, and Deutsche Bank National Trust Company, as trustee.

NY12532:397447.14

To The Persons Listed On
Schedule A Attached Hereto

Re:    Washington Mutual Home Equity Trust I
           WAMU 2006-OA1
           <u>Washington Mutual Preferred Funding Trust III</u>

Ladies and Gentlemen:

We have acted as special Delaware counsel to (i) Washington Mutual Preferred Funding Trust III, a Delaware statutory trust ("*Funding Trust III*"), in connection with the transactions contemplated by the Amended and Restated Trust Agreement, dated as of May ●, 2007 (the "*Trust Agreement*"), between Wilmington Trust Company, a Delaware banking corporation, as property trustee (in such capacity, the "*Property Trustee*") and as Delaware trustee (in such capacity, the "*Delaware Trustee*"), and Washington Mutual Preferred Funding LLC, a Delaware limited liability company (the "*Company*"), as grantor, (ii) Washington Mutual Home Equity Trust I, a Delaware statutory trust ("*Asset Trust I*"), in connection with the transactions contemplated by the Pooling and Servicing Agreement, dated as of March 7, 2006 (the "*Asset Trust I Pooling Agreement*"), between Deutsche Bank National Trust Company, a national banking association ("*Deutsche Bank*"), as trustee (the "*Asset Trust I Trustee*"), Deutsche Bank Trust Company Delaware, a Delaware banking corporation ("*DB Delaware*"), as Delaware trustee (the "*Asset Trust I Delaware Trustee*"), Washington Mutual Bank ("*WMB*"), as servicer, and the Company, as depositor, and (iii) WAMU 2006-OA1, a Delaware statutory trust ("*Asset Trust II*"), in connection with the transactions contemplated by the Pooling and Servicing Agreement, dated as of December 13, 2006 (the "*Asset Trust II Pooling Agreement*," and together with the Asset Trust I Pooling Agreement, the "*Pooling Agreements*"), between Deutsche Bank, as trustee (the "*Asset Trust II Trustee*" and together with the Asset Trust I Trustee, the "*Asset Trust Trustees*"), DB Delaware, as Delaware trustee (the "*Asset Trust II Delaware Trustee*" and together with the Asset Trust I Delaware Trustee, the "*Asset Trust Delaware Trustees*"), WMB, as servicer, and the Company, as depositor. This opinion is being delivered pursuant to your request. Capitalized terms used herein and not otherwise defined shall have the respective meanings set forth in the Trust Agreement, except that reference herein to any document shall mean such document as in effect on the date hereof.

We have examined originals or copies of the following documents:

    (a)    The Trust Agreement;

    (b)    The Original Trust Agreement;

    (c)    The Grantor LLC Agreement;

    (d)    The Exchange Agreement;

    (e)    The Trust Agency Agreement;

NY12532:397447.14

(f)     The Purchase Agreement (together with the agreements listed in (c) through (e) above, the "*Funding Trust III Transaction Agreements*");

(g)     Forms of the Trust Securities;

(h)     The Asset I Pooling Agreement;

(i)     The Trust Agreement, dated as of March 1, 2006, between the Company and the Asset Trust Delaware Trustee, providing for the creation of the Asset Trust I;

(j)     The Asset II Pooling Agreement;

(k)     The Trust Agreement, dated as of December 5, 2006, between the Company and the Asset Trust II Delaware Trustee, providing for the creation of Asset Trust II;

(l)     A form of the Class A Certificate (as defined in the Asset I Pooling Agreement) (the "*Asset Trust I Certificate*")

(m)     A form of the Class A Certificate (as defined in the Asset II Pooling Agreement) (the "*Asset Trust II Class A Certificate*");

(n)     A form of the Class R Certificate (as defined in the Asset II Pooling Agreement) (the "*Asset Trust II Class R Certificate*," and together with the Asset Trust II Class A Certificate, the "*Asset Trust II Certificates*");

(o)     A certified copy of the certificate of trust (the "*Funding Trust III Certificate of Trust*") of Funding Trust III which was filed with the Secretary of State of the State of Delaware (the "*Secretary of State*") on May ●, 2007;

(p)     A certified copy of the certificate of trust (the "*Asset Trust I Certificate of Trust*") of the Asset Trust which was filed with the Secretary of State on March 1, 2006;

(q)     A certified copy of the certificate of trust (the "*Asset Trust II Certificate of Trust*") of the Asset Trust II which was filed with the Secretary of State on December 5, 2006;

(r)     A Certificate of Good Standing for Funding Trust III, dated May ●, 2007, obtained from the Secretary of State;

(s)     A Certificate of Good Standing for Asset Trust I, dated May ●, 2007, obtained from the Secretary of State; and

(t)     A Certificate of Good Standing for Asset Trust II, dated May ●, 2007, obtained from the Secretary of State.

We have not reviewed any documents other than the foregoing documents for purposes of rendering our opinions as expressed herein, and we have assumed that there exists

no provision of any such other document that bears upon or is inconsistent with our opinions as expressed herein. We have conducted no independent factual investigation of our own but have relied solely upon the foregoing documents, the statements and information set forth therein and the additional matters recited or assumed herein, all of which we have assumed to be true, complete and accurate in all material respects.

Based upon the foregoing and upon an examination of such questions of law as we have deemed necessary or appropriate, and subject to the assumptions, exceptions and qualifications set forth herein, we advise you that, in our opinion:

1.      Funding Trust III has been duly created and is validly existing in good standing as a statutory trust under the Delaware Statutory Trust Act, 12 Del. C. § 3801, et seq. (the "Act"), and all filings required under the laws of Delaware with respect to the creation and valid existence of Funding Trust III as a statutory trust have been made.

2.      Under the Act and the Trust Agreement, Funding Trust III has the trust power and authority to own its property and conduct its business, all as described in the Trust Agreement.

3.      The provisions of the Trust Agreement, including the terms of the Trust Securities, are permitted under the Act and the Trust Agreement constitutes a legal, valid and binding obligation of the Company, the Property Trustee and the Delaware Trustee, enforceable against each of them in accordance with its terms.

4.      Under the Act and the Trust Agreement, Funding Trust III has the power and authority to (a) execute and deliver the Funding Trust III Transaction Agreements and to perform its obligations under the Funding Trust III Transaction Agreements and (b) issue and perform its obligations under the Trust Securities.

5.      Under the Act and the Trust Agreement, the execution and delivery by Funding Trust III of the Funding Trust III Transaction Agreements and the performance by Funding Trust III of its obligations thereunder have been duly authorized by all necessary trust action on the part of Funding Trust III. The Funding Trust III Transaction Agreements have been duly executed and delivered by Funding Trust III.

6.      Under the Act, the form of certificate attached to the Trust Agreement to evidence ownership of the Trust Securities is in an appropriate form. The Trust Securities have been duly authorized by the Trust Agreement and, when executed and delivered to and paid for by the purchasers thereof, in accordance with the Trust Agreement and the Purchase Agreement, will be validly issued and (subject to the qualifications set forth in this paragraph) fully paid and nonassessable beneficial interests in Funding Trust III entitled to the benefits provided by the Trust Agreement (subject to the terms of the Trust Agreement); and the holders of Trust Securities, as beneficial owners of Funding Trust III, will be entitled to the same limitation of personal liability extended to stockholders of private corporations for profit organized under the General Corporation Law of the State of Delaware. The holders of Trust Securities may be obligated, pursuant to the Trust Agreement, to (a) provide indemnity and/or security in connection with and pay taxes or governmental charges arising from transfers or

A-4-11

exchanges of Trust Securities certificates and the issuance of replacement of Trust Securities certificates, and (b) provide security and indemnity in connection with requests of or directions to the Property Trustee to exercise its rights and remedies under the Trust Agreement.

7.     Under the Act and the Trust Agreement, the issuance of the Trust Securities is not subject to preemptive rights.

8.     The issuance and sale by Funding Trust III of the Trust Securities, the execution, delivery and performance by Funding Trust III of the Funding Trust III Transaction Agreements, the consummation by Funding Trust III of the transactions contemplated thereby and compliance by Funding Trust III with its obligations thereunder do not violate (a) any of the provisions of the Funding Trust III Certificate of Trust or the Trust Agreement, or (b) any applicable Delaware law, rule or regulation.

9.     No authorization, approval, consent or order of any Delaware court or Delaware governmental authority or Delaware agency is required to be obtained by Funding Trust III solely in connection with the issuance and sale of the Trust Securities or the execution, delivery and performance by Funding Trust III of the Funding Trust III Transaction Agreements.

10.     Each of Asset Trust I and Asset Trust II has been duly created and is validly existing in good standing under the Act, and all filings required under the laws of the State of Delaware with respect to the creation and valid existence of Asset Trust I and Asset Trust II as statutory trusts have been made.

11.     Under the Act and the applicable Pooling Agreement, each Asset Trust has the trust power and authority to own its property and conduct its business, all as described in the Asset Trust I Pooling Agreement or the Asset Trust II Pooling Agreement, as applicable.

12.     The provisions of the Asset I Pooling Agreement, including the terms of the Asset Trust I Certificate, and the provisions of the Asset II Pooling Agreement, including the terms of the Asset Trust II Certificates, are permitted under the Act, and the Pooling Agreements constitute legal, valid and binding obligations of the Company, WMB, the Asset Trust Trustees and the Asset Trust Delaware Trustees, enforceable against each of them in accordance with their respective terms.

13.     Under the Act and the Asset I Pooling Agreement and Asset Trust II Pooling Agreement, as applicable, each Asset Trust has the trust power and authority to (a) perform its obligations under the applicable Pooling Agreement, and (b) issue and perform its obligations under the Asset Trust I Certificate or the Asset Trust II Certificates, as applicable.

14.     Under the Act, the form of each of the Asset Trust I Certificate attached to the Asset Trust I Pooling Agreement and the Asset Trust III Class A Certificate and the Asset Trust II Class R Certificate attached to the Asset Trust II Pooling Agreement are in an appropriate form. Each of the Asset Trust I Certificate and the Asset Trust II Certificates have been duly authorized by the applicable Pooling

Agreement, and, when delivered to the Company in exchange for the assets as contemplated by the Asset I Pooling Agreement and the Asset II Pooling Agreement, respectively, will be validly issued and (subject to the qualifications set forth in this paragraph) fully paid and nonassessable beneficial interests in the applicable Asset Trust entitled to the benefits provided by the applicable Pooling Agreement (subject to the terms of such Pooling Agreement); and the Company as holder of the Asset Trust I Certificate and the Asset Trust II Certificates will be entitled to the same limitation of personal liability extended to stockholders of private corporations for profit organized under the General Corporation Law of the State of Delaware. The Company may be obligated, pursuant to each Pooling Agreement, to (a) provide indemnity and/or security in connection with and pay taxes or governmental charges arising from transfers or exchanges of such certificates and the issuance of replacement of such certificates, and (b) provide security and indemnity in connection with requests of or directions to the applicable Asset Trustee to exercise its rights and remedies under such Pooling Agreement.

15.    The issuance and sale by Asset Trust I of the Asset Trust I Certificate and by Asset Trust II of the Asset Trust II Certificates and the consummation by each Asset Trust of the transactions contemplated by the applicable Pooling Agreement did not and do not violate (a) any of the provisions of the Asset Trust I Certificate of Trust, the Asset Trust II Certificate of Trust, the Asset Trust I Pooling Agreement or the Asset Trust II Pooling Agreement, as applicable, or (b) any applicable Delaware law, rule or regulation.

16.    No authorization, approval, consent or order of any Delaware court or Delaware governmental authority or Delaware agency is required to be obtained by Asset Trust I or Asset Trust II solely in connection with the issuance of the Asset Trust I Certificate or the Asset Trust II Certificates, as applicable.

17.    Assuming that neither Funding Trust III nor either of the Asset Trusts derives income from or is connected with services provided within the State of Delaware and has no assets, activities (other than maintaining the Delaware Trustee (in the case of Funding Trust III) and the applicable Asset Trust Delaware Trustee (in the case of the Asset Trusts) and the filing of documents with the Secretary of State of the State of Delaware) or employees in the State of Delaware and assuming that Funding Trust III is treated as a grantor trust or as an association not taxable as a corporation for U.S. federal income tax purposes and Asset Trust I and Asset Trust III are treated as "real estate mortgage investment conduits" for federal income tax purposes, the holders of Trust Securities (other than those holders who reside or are domiciled in the State of Delaware) will have no liability for income taxes imposed by the State of Delaware solely as a result of their participation in Funding Trust III, and neither Funding Trust III nor either of the Asset Trusts will be liable for any income tax imposed by the State of Delaware.

The foregoing opinions are subject to the following exceptions, qualifications and assumptions:

A.    We are admitted to practice law in the State of Delaware (excluding the securities laws of the State of Delaware) and we do not hold ourselves out as being

A-4-13

experts on the law of any other jurisdiction. The foregoing opinions are limited to the laws of the State of Delaware currently in effect. We express no opinion with respect to (i) federal laws, including without limitation, tax laws, the Securities Act of 1933, as amended, the Securities Exchange Act of 1934, as amended, the Trust Indenture Act of 1939, as amended, and the Investment Company Act of 1940, as amended, (ii) state securities or blue sky laws or (iii) laws relating to the particular nature of the Trust assets.

B.     We have assumed (i) except to the extent provided in paragraphs 1 and 10 above, the valid existence of each party to the documents examined by us under the laws of the jurisdiction governing its organization, (ii) except to the extent provided in paragraphs 4 and 13 above, that each party has the power and authority to execute and deliver, and to perform its obligations under, the documents examined by us, (iii) the legal capacity of natural persons who are signatories to the documents examined by us, (iv) except to the extent provided in paragraph 5 above, that each party has duly authorized, executed and delivered the documents examined by us, (v) that each party has complied with all of the obligations and satisfied all of the conditions on its part to be performed or satisfied pursuant to the documents examined by us, (vi) that the Trust Agreement constitutes the entire agreement among the parties thereto with respect to the subject matter thereof, including, without limitation, the creation, operation and termination of Funding Trust III, and that the Trust Agreement and the Funding Trust III Certificate of Trust are in full force and effect and have not been amended, (vii) that the Asset Trust I Pooling Agreement constitutes the entire agreement among the parties thereto with respect to the subject matter thereof, including, without limitation, the creation, operation and termination of Asset Trust I, and that the Asset Trust I Pooling Agreement and the Asset Trust I Certificate of Trust are in full force and effect and have not been amended, (viii) that the Asset Trust II Pooling Agreement constitutes the entire agreement among the parties thereto with respect to the subject matter thereof, including, without limitation, the creation, operation and termination of Asset Trust II, and that the Asset Trust II Pooling Agreement and the Asset Trust II Certificate of Trust are in full force and effect and have not been amended, and (ix) except to the extent provided in paragraphs 9 and 16 above, that the execution, delivery and performance of the documents examined by us by each of the parties thereto does not and will not violate or require any consent or approval of, the withholding of objection on the part of, the giving of notice to, the filing, registration or qualification with, or the taking of any other action under, any agreement, indenture or instrument to which it is a party or by which it is bound or any provision of any law, rule, regulation, judgment, order, writ, injunction or decree of any court or governmental authority applicable to it or any of its property.

C.     The foregoing opinions regarding enforceability are subject to (i) applicable bankruptcy, insolvency, moratorium, receivership, reorganization, fraudulent transfer and similar laws relating to and affecting the rights and remedies of creditors generally, (ii) principles of equity, including applicable law relating to fiduciary duties (regardless of whether considered and applied in a proceeding in equity or at law), and (iii) applicable public policy with respect to the enforceability of provisions relating to indemnification or contribution.

D.    We have assumed that all signatures on documents examined by us are genuine, that all documents submitted to us as originals are authentic, and that all documents submitted to us as copies conform with the originals, which facts we have not independently verified.

E.    We express no opinion as to the creation, attachment, perfection or priority of any mortgage or security interest or the nature or validity of title to any property.

F.    We have not participated in the preparation of any offering materials with respect to the Trust Securities or the Asset Trust I Certificate or the Asset Trust II Certificates and assume no responsibility for their contents.

**Circular 230 Notice**.  Any advice contained in this communication with respect to any federal tax matter was not intended or written to be used, and it cannot be used by any taxpayer, for the purpose of avoiding penalties that the Internal Revenue Service may impose on the taxpayer.  If any such advice is made to any person other than to our client for whom the advice was prepared, the advice expressed above is being delivered to support the promotion or marketing (by a person other than Richards, Layton & Finger) of the transaction or matter discussed or referenced, and such taxpayer should seek advice based on the taxpayer's particular circumstances from an independent tax advisor.

This opinion may be relied upon by you in connection with the matters set forth herein.  We consent to Mayer, Brown, Rowe & Maw LLP and Sullivan and Cromwell LLP's relying as to matters of Delaware law upon this opinion in connection with opinions to be rendered by them on the date hereof pursuant to the Purchase Agreement.  Except as stated in the previous sentence, without our prior written consent, this opinion may not be relied upon by or furnished to any other person or entity for any purpose.

Very truly yours,


RICHARDS, LAYTON & FINGER, P.A.

A-4-15

## SCHEDULE A

Washington Mutual Preferred Funding LLC

Washington Mutual Preferred Funding (Cayman) I Ltd.

Washington Mutual Preferred Funding Trust I

Washington Mutual Preferred Funding Trust II

Washington Mutual Preferred Funding Trust III

Washington Mutual Home Equity Trust I

WaMu 2006-OA1

Washington Mutual, Inc.

Washington Mutual Bank

Goldman, Sachs & Co., Lehman Brothers Inc. and UBS Securities LLC, as representatives of the several purchasers

Deutsche Bank National Trust Company

Deutsche Bank Trust Company Delaware

Wilmington Trust (Cayman) Ltd.

Wilmington Trust Company

Goldman, Sachs & Co., Lehman Brothers Inc. and UBS Securities LLC
  As representatives of the several
  Purchasers named in Schedule I
  attached to the Purchase Agreement
85 Broad Street
New York, New York 10004

   Re: Washington Mutual Preferred Funding Trust III
     Fixed-to-Floating Rate Perpetual Non-cumulative Trust Securities

Ladies and Gentlemen:

  I am a First Vice President and Assistant General Counsel of, and have acted as internal counsel for, Washington Mutual, Inc., a Washington corporation, ("WMI"); Washington Mutual Bank, a federal savings association ("WMB"); University Street, Inc., a Washington corporation ("University Street"); New American Capital, Inc., a Delaware corporation ("New American Capital, Inc."); and Washington Mutual Preferred Funding LLC, a Delaware limited liability company (the "Company"). Unless otherwise indicated, WMI, WMB, University Street and the Company are referred to in this opinion as the "Opinion Parties". I am qualified to practice law in the State of Washington. Capitalized terms used and not otherwise defined herein shall have the meanings given to such terms in the Purchase Agreement (defined below).

**I.**

  I have based my opinion upon my review of the following agreements, documents and instruments:

   1) an executed copy of the Purchase Agreement, dated May [_], 2007 (the "Purchase Agreement"), entered into by and among WMI, WMB, the Company, Washington Mutual Preferred Funding Trust III, a Delaware statutory trust ("WaMu Delaware III") and Goldman Sachs & Co., Lehman Brothers Inc. and UBS Securities LLC, as representatives of the Purchasers named on <u>Schedule I</u> attached to the Purchase Agreement;

   2) an executed copy of the Exchange Agreement, dated as of the date hereof (the "Exchange Agreement"), among WaMu Delaware III, WMI and Mellon Investor Services LLC, as depositary;

   3) an executed copy of the Deposit Agreement, dated as of the date hereof (the "Deposit Agreement", and together with the Purchase Agreement and the Exchange Agreement, the "WMI Transaction Agreements"), among WMI, Mellon Investor Services LLC, as depositary and registrar, and the holders from time to time of the receipts evidencing the Depositary Shares described therein;

   4) an executed copy of the Master Loan Contribution and Purchase Agreement, dated as of March 7, 2006, between the Company and WMB and the

A-5-2

related Loan Transfer Confirmations, dated as of March 7, 2006 and December 13, 2006 (the "WMB Asset Transfer Agreement");

5)     an executed copy of the Master Loan Contribution and Purchase Agreement, dated as of March 7, 2006, between University Street and the Company and the related Loan Transfer Confirmations, dated as of March 7, 2006 and December 13, 2006 (the "University Street Asset Transfer Agreement");

6)     an executed copy of the Pooling and Servicing Agreement (the "Asset Trust I PSA"), dated as of March 7, 2006 by and among, WMB, as servicer (in such capacity, the "Servicer"), the Company, as depositor, Deutsche Bank National Trust Company, as trustee (the "Trustee") and Deutsche Bank Trust Company Delaware, as Delaware trustee ("the "Delaware Trustee");

7)     an executed copy of the Pooling and Servicing Agreement (the "Asset Trust II PSA"), dated as of December 13, 2006 by and among, WMB, as servicer (in such capacity, the "Servicer"), the Company, as depositor, the Trustee and the Delaware Trustee;

8)     an executed copy of the Custody Agreement, dated as of the date hereof (the "Custody Agreement"), by and among the Servicer, the Trustee and WMB, as custodian (in such capacity, the "Custodian");

9)     an executed copy of the Administrative Services Agreement, dated as of March 6, 2006 (the "Administrative Services Agreement"), by and among the Company, WMI and WMB;

10)     a final offering circular dated May [  ], 2007 (the "WaMu Delaware Offering Circular"), with respect to the offering and sale by WaMu Delaware III of $500,000,000 Fixed-to-Floating Rate Perpetual Non-cumulative Trust Securities, liquidation preference $100,000 per security (the "Trust Securities");

11)     a certified copy of the amended and restated articles of incorporation of WMI issued by the Washington Secretary of State, dated May [  ], 2007;

12)     a copy of the Amended and Restated Bylaws of WMI;

13)     a Certificate of Existence/Authorization relating to University Street issued by the. Washington Secretary of State dated May [  ], 2007;

14)     a certified copy of the articles of incorporation of University Street issued by the Washington Secretary of State, dated May [  ], 2007;

15)     a copy of the Bylaws of University Street;

16)     a certified copy of the certificate of incorporation of New American Capital, Inc. issued by the Delaware Secretary of State dated May [  ], 2007;

17)     a copy of the Bylaws of New American Capital, Inc.;

A-5-3

18)     a Certificate of Good Standing relating to New American Capital, Inc. issued by the Delaware Secretary of State dated May [  ], 2007;

19)     a certified copy of the Charter of WMB issued by the U.S. Office of Thrift Supervision (the "OTS"), dated May [  ], 2007;

20)     a copy of the Amended and Restated Bylaws of WMB;

21)     a Certificate of Corporate Existence relating to WMB issued by the OTS dated May [  ], 2007;

22)     resolutions adopted by the Board of Directors of WMI on each of [January 17, 2006, February 21, 2006 and October 17, 2006 and [       ]], relating to the WMI Transaction Agreements;

23)     resolutions adopted by the Board of Directors of University Street relating to the University Street Asset Transfer Agreement; and

24)     resolutions adopted by the Board of Directors of WMB relating to the Purchase Agreement, the WMB Asset Transfer Agreement, the Asset Trust I PSA, the Asset Trust II PSA and the Administrative Services Agreement.

The documents described in items (1) through (24) above are herein collectively called the "Opinion Documents". For purposes of my opinion set forth in paragraph 8 below, the Opinion Documents in items (1) through (10) above are referred to as "Transaction Agreements". Also for purposes of my opinion set forth in paragraphs 8 and 9 below, each of New American Capital, Inc. and WMB constitutes a "Significant Subsidiary".

As to factual matters, I have relied upon (a) representations made by the Opinion Parties in the Opinion Documents delivered at closing, (b) certificates of, and/or representations by, officers and employees of the Opinion Parties having knowledge of relevant facts, and (c) an examination of records of the Opinion Parties and upon certificates of public officials. This opinion also is based on personal knowledge acquired in the course of acting as internal counsel to the Opinion Parties.

Notwithstanding any provisions of the Opinion Documents or any other agreements or instruments examined for purposes of these opinions to the effect that such agreement or instrument reflects the entire understanding of the parties with respect to the matters described therein, the courts of the State of Washington may consider extrinsic evidence of the circumstances surrounding the entering, into of such agreement to ascertain the intent of the parties in using the language employed in such agreement, regardless of whether or not the meaning of the language used in such agreement is plain and unambiguous on its face, and may determine that additional or supplementary terms can be incorporated into such agreement. I have not considered parol evidence in connection with any of the opinions set forth below.

I have not examined any records of any court, administrative tribunal or other similar entity in connection with my opinion.

A-5-4

## II.

I also have assumed, without making any inquiry into the reasonableness or validity thereof, that the Company has all necessary power and authority to (i) execute and deliver the Administrative Services Agreement and (ii) perform its obligations thereunder. I also have assumed the authenticity of all writings submitted to me as originals, the conformity to original writings of all copies submitted to me as certified or photostatic copies and the legal competence and capacity of all natural persons.

I express no opinion as to any securities, tax, anti-trust, land use, safety, environmental, hazardous materials, insurance company or consumer protection laws, rules or regulations, or any laws, rules or regulations applicable to any party to a Transaction Agreement (other than the Opinion Parties) by virtue of its status as a regulated entity, or whether governmental consents, approvals, authorizations, registrations, declarations or filings are required to be obtained or made by any party to a Transaction Agreement (other than the Opinion Parties) in connection with the performance of the Transaction Agreements, or, if required, whether they have been or will be applied for, received or made.

This opinion is limited to the Federal laws of the United States of America, the corporate and limited liability company laws of the State of Delaware, and the laws of the State of Washington, and I disclaim any opinion as to the laws of any other jurisdiction. I further disclaim any opinion as to any statute, rule, regulation, ordinance, order or other promulgation of any regional or local governmental body or as to any related judicial or administrative opinion.

## III.

Based upon the foregoing and my examination of such questions of law as I have deemed necessary or appropriate for my opinion, and subject to the limitations and qualifications expressed above and below, it is my opinion that:

1.      WMB was chartered under the laws of the United States to transact the business of a Federal savings bank and its charter is in full force and effect. WMB has all requisite corporate authority to own its properties and conduct its business as described in the WaMu Delaware Offering Circular.

2.      University Street has been duly incorporated and is a validly existing corporation under the laws of the State of Washington.

3.      New American Capital, Inc. has been duly incorporated and is a validly existing corporation in good standing under the laws of the State of Delaware.

4.      Each of the WMI Transaction Agreements and the Administrative Services Agreement has been duly authorized, executed and delivered by WMI.

5.      The University Street Asset Transfer Agreement has been duly authorized, executed and delivered by University Street.

6.    The Purchase Agreement, the WMB Asset Transfer Agreement, the Asset Trust I PSA, the Asset Trust II PSA, the Custody Agreement and the Administrative Services Agreement have been duly authorized, executed and delivered by WMB.

7.    The Administrative Services Agreement constitutes the valid and legally binding obligation of WMB and WMI, respectively, enforceable against each of them in accordance with its terms, subject to bankruptcy, receivership, conservatorship, insolvency, fraudulent transfer, reorganization, moratorium and similar laws of general applicability relating to or affecting creditors' rights and to general equity principles.

8.    The execution, delivery and performance of the Purchase Agreement by WMI, WMB, the Company and WaMu Delaware III, and the execution, delivery and performance of any Transaction Agreement by WMI or any of its subsidiaries that is a party thereto, and the issuance of the sale of the Securities and compliance with the terms and provisions thereof, will not result in a breach or violation of any of the terms and provisions of, or constitute a default under, (i) any agreement or instrument to which WMI or any Significant Subsidiary is a party to or by which WMI or any Significant Subsidiary is bound or to which any of the properties of WMI or any Significant Subsidiary is subject, except for such breach, violation or default which would not individually or in the aggregate have a Material Adverse Effect, or (ii)(A) WMI's articles of incorporation, WMB's charter, or New American Capital, Inc.'s certificate of incorporation or (B) the bylaws of WMI or any Significant Subsidiary.

9.    Except as disclosed in the WaMu Delaware Offering Circular, there are no actions, suits or proceedings pending against or affecting WMI, any of its Significant Subsidiaries, WaMu Delaware III or any of their respective properties that, if determined adversely to WMI or any of its Significant Subsidiaries, or WaMu Delaware III, would individually or in the aggregate have a Material Adverse Effect, or would materially and adversely affect the ability of any issuer/seller to perform its obligations under any Transaction Agreement or the Purchase Agreement, or which are otherwise material in the context of the sale of the Offered Securities; and, to the best of my knowledge, no such actions, suits or proceedings are threatened in writing.

The foregoing opinion is being delivered solely to you in connection with the execution and delivery of the Opinion Documents and may not be relied on by you for any other purpose or by any other person for any purpose without my written consent. I disclaim any obligation to advise you of any change of law that occurs, or any facts of which I become aware, after the date of this opinion.

Very truly yours,

_____
Charles Edward Smith IIII

A-5-6

Goldman Sachs & Co., Lehman Brothers Inc. and UBS Securities LLC,
     As representatives of the several
     initial purchasers under the Purchase Agreement
     dated as of the date hereof
85 Broad Street
New York, New York 10004

Ladies and Gentlemen:

     I am a First Vice President and Assistant General Counsel of, and have acted as internal counsel for Washington Mutual, Inc., a Washington corporation (the "Company") in connection with the Replacement Capital Covenant entered into by the Company on May [ ], 2007 a copy of which is attached as Annex 1 (the "Replacement Capital Covenant"). I am qualified to practice law in the State of Washington. Capitalized terms used herein and not otherwise defined are used with the meanings assigned to them in the Replacement Capital Covenant.

     I have examined such corporate records, certificates and other documents and such questions of law, as I have considered it necessary or appropriate for the purposes of this opinion.

     Based upon the foregoing and my examination of such questions of law as I have deemed necessary or appropriate for my opinion, and subject to the limitation and qualifications expressed above and below, it is my opinion that:

1.    the Company has been duly organized and is a validly existing corporation in the State of Washington;

2.    the Company is duly qualified to transact business as a foreign corporation or other entity and is in good standing in the jurisdictions in which it transacts business or is otherwise required to be so qualified, unless and except to the extent that the Company's failure to be so qualified would not have a material adverse effect on its ability to transact business in any such jurisdiction;

3.    the Company has full legal power and authority to execute, deliver and perform its obligations under the Replacement Capital Covenant;

4.    the Replacement Capital Covenant has been duly authorized, executed and delivered by the Company;

5.    there has not been any fraud, duress, undue influence or material mistake of fact in connection with the execution and performance of the Replacement Capital Covenant;

6.    there are no agreements of the Company that would alter, and no material agreements of the Company that would conflict with, the agreements set forth in the Replacement Capital Covenant.

The foregoing opinion is limited to the Federal laws of the United States and the laws of the State of Washington. Moody's Investors Service Inc. and Mayer, Brown, Rowe & Maw LLP may rely on this opinion as if the opinion were addressed to it.

Very truly yours,

Charles Edward Smith III

NY12532:397447.14

Pursuant to Section 8(f) of the Purchase Agreement, Deloitte & Touche LLP shall furnish letters to the Purchasers to the effect that:

(i)     They are an independent registered public accounting firm with respect to WMI and WMB within the meaning of the Securities Act of 1933 (the "*Securities Act*") and the applicable published rules and regulations thereunder adopted by the Securities and Exchange Commission and the Public Accounting Oversight Board (United States);

(ii)    In our opinion, the consolidated financial statements and financial statement schedules audited by us and included in the Offering Circular comply as to form in all material respects with the applicable requirements of the Securities Exchange Act of 1934 (the "*Exchange Act*") and the related published rules and regulations;

(iii)   With respect to the three-month periods ended March 31, 2007 and 2006, we have performed the procedures specified by the PCAOB for a review of interim financial information as described in Statement on Auditing Standards No. 100, *Interim Financial Information*, on WMI's and WMB's unaudited interim consolidated financial statements included in WMI's and WMB's quarterly reports on Form 10-Q for the quarter ended March 31, 2007, incorporated by reference in the Offering Circular.

(iv)    On the basis of limited procedures not constituting an audit in accordance with generally accepted auditing standards, consisting of a reading of the unaudited financial statements and other information referred to below, a reading of the latest available interim financial statements of WMI and WMB, inspection of the minute books of WMI and WMB since the date of the latest audited financial statements included in the Offering Circular, inquiries of officials of WMI and WMB responsible for financial and accounting matters and such other inquiries and procedures as may be specified in such letter, nothing came to their attention that caused them to believe that:

(A)     the unaudited consolidated statements of income, consolidated balance sheets and consolidated statements of cash flows included in the Offering Circular are not in conformity with generally accepted accounting principles applied on the basis substantially consistent with the basis for the unaudited condensed consolidated statements of income, consolidated balance sheets and consolidated statements of cash flows included in the Offering Circular;

(B)     any other unaudited income statement data and balance sheet items included in the Offering Circular do not agree with the corresponding items in the unaudited consolidated financial statements from which such data and items were derived except as noted in paragraphs 6.10), 6.11), and 6.12) in such letters delivered by Deloitte & Touche LLP, and any such unaudited data and items were not determined on a basis substantially consistent with the basis for the corresponding amounts in

the audited consolidated financial statements included in the Offering Circular except as noted in paragraph 3.b.ii. in such letters;

(C) the unaudited financial statements which were not included in the Offering Circular but from which were derived any unaudited condensed financial statements referred to in clause (A) and any unaudited income statement data and balance sheet items included in the Offering Circular and referred to in clause (B) were not determined on a basis substantially consistent with the basis for the audited consolidated financial statements included in the Offering Circular except as noted in paragraph 3.b.ii. in such letters;

(D) as of a specified date not more than five days prior to the date of such letter, there have been any changes in the number of common shares outstanding, increase in other borrowings, or any decrease in stockholders' equity or the combined balance of cash and cash equivalents, federal funds sold and securities purchased under agreements to resell, trading assets, and available-for-sale securities as compared with amounts shown in the latest financial statements included in the Offering Circular except in each case for changes, increases or decreases which the Offering Circular discloses have occurred or may occur or which are described in such letter;

(E) for the period from the date of the latest financial statements included in the Offering Circular to the specified date referred to in clause (E) there were any decreases, as compared with the corresponding period in the preceding year, in net interest income, or the combined balance of income from continuing operations before income taxes and total interest expense except in each case for decreases or increases which the Offering Circular discloses have occurred or may occur or which are described in such letter; and

(v) In addition to the examination referred to in their report(s) included in the Offering Circular and the limited procedures, inspection of minute books, inquiries and other procedures referred to in paragraphs (iii) and (iv) above, they have carried out certain specified procedures, not constituting an audit in accordance with generally accepted auditing standards, with respect to certain amounts, percentages and financial information specified by the Representatives, which are derived from the general accounting records of WMI and WMB, which appear in the Offering Circular, and have compared certain of such amounts, percentages and financial information with the accounting records of WMI and WMB and have found them to be in agreement except those noted in paragraphs 6.10), 6.11), and 6.12) in such letters delivered by Deloitte & Touche LLP.

A-6-2