## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ x

In re

WASHINGTON MUTUAL, INC., *et al.*,

Debtors

------------------------------------------------------------ x

Black Horse Capital LP, Black Horse Capital Master
Fund Ltd., Black Horse Capital (QP) LP, Greywolf
Capital Partners II, Greywolf Overseas Fund,
Guggenheim Portfolio Company VII, LLC, HFR RVA
Combined Master Trust, IAM Mini-Fund 14 Limited,
LMA SPC for and on behalf of the MAP 89 Segregated
Portfolio, Lonestar Partners LP, Mariner LDC, Nisswa
Convertibles Master Fund Ltd., Nisswa Fixed Income
Master Fund Ltd., Nisswa Master Fund Ltd., Paige
Opportunity Partners LP, Paige Opportunity Partners
Master Fund, Pandora Select Partners, LP, Pines Edge
Value Investors Ltd, Riva Ridge Capital Management
LP, Riva Ridge Master Fund, Ltd., Scoggin Capital
Management II LLC, Scoggin International Fund Ltd.,
Scoggin Worldwide Fund Ltd., Visium Global Fund,
Ltd., VR Global Partners, L.P. Whitebox Asymmetric
Partners LP, Whitebox Combined Partners, LP,
Whitebox Convertible Arbitrage Partners, LP,
Whitebox Hedged High Yield Partners, LP and
Whitebox Special Opportunities LP, Series B,

     Plaintiffs

v.

JPMorgan Chase Bank, N.A., Washington Mutual, Inc.,
Washington Mutual Preferred Funding, LLC,
Washington Mutual Preferred Funding (Cayman) I
Ltd., Washington Mutual Preferred Funding Trust I,
Washington Mutual Preferred Funding Trust II,
Washington Mutual Preferred Funding Trust III, and
Washington Mutual Preferred Funding Trust IV,

    Defendants.

------------------------------------------------------------ x

Chapter 11

Case No. 08-12229 (MFW)

Jointly Administered

Adversary Proceeding
No. 10-51387 (MFW)

**LOCAL RULE 7026-1 CERTIFICATION OF COUNSEL AND DECLARATION
IN SUPPORT OF DEFENDANTS WASHINGTON MUTUAL, INC. AND
JPMORGAN CHASE BANK, N.A.'S JOINT MOTION TO COMPEL
PRODUCTION OF DOCUMENTS AND ANSWERS TO INTERROGATORIES**

1.  I, Brent J. McIntosh, counsel for Defendant JPMorgan Chase Bank, N.A. ("JPMC"),

hereby certify that on the afternoon of September 29, 2010, my colleague Brian D. Glueckstein

and I, as counsel for JPMC, and David Hird, as counsel for Defendant Washington Mutual, Inc.

("WMI"), conducted a teleconference with Daniel J. Brown, as counsel for the Plaintiffs, to meet

and confer with respect to potential discovery disputes. The parties were unable to resolve their

differences with respect to the issues raised in the Defendants' Motion to Compel.

2.  On this teleconference, Plaintiffs' counsel represented that Plaintiffs would produce

documents in response to certain of Defendants' Requests. However, Plaintiffs' counsel

categorically refused to produce any documents relevant to Plaintiffs' own conduct or knowledge

in purchasing their purported interests in the securities at issue, stating that "reliance isn't even a

key issue" in this action.

3.  Attached hereto as Exhibit A is a true and correct copy of the Defendants' First Sets of

Requests for the Production of Documents and Interrogatories, dated August 27, 2010, which

Defendants served on Plaintiffs.

4.  Attached hereto as Exhibit B is a true and correct copy of the Responses and Objections

of Plaintiffs Black Horse Capital L.P., Black Horse Capital Master Fund Ltd., and Black Horse

Capital (QP) LP to Defendants' Combined First Sets of Requests for the Production of

Documents and Interrogatories, dated September 27, 2010. It is substantially representative of

the other Plaintiffs' Responses and Objections in terms of the scope and extent of its responses.

5.     Attached hereto as Exhibit C is a true and correct copy of the Verified Second Amended Statement of Brown Rudnick LLP and Campbell Levine LLC Pursuant to Rule 2019 of the Federal Rules of Bankruptcy Procedure, dated July 22, 2010.

Dated: Washington, DC
      October 1, 2010

 

Brent J. McIntosh
SULLIVAN & CROMWELL LLP
1701 Pennsylvania Avenue, N.W.
Washington, D.C. 20006-5805
Tel: (202) 956-7500
Fax: (202) 956-7571

# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

-------------------------------------------------------- x

In re                           :

WASHINGTON MUTUAL, INC., *et al.*,[1]   :

      Debtors            :

-------------------------------------------------------- x

Black Horse Capital LP, Black Horse Capital  :
Master Fund Ltd., Black Horse Capital (QP) LP,  :
Greywolf Capital Partners II, Greywolf Overseas  :
Fund, Guggenheim Portfolio Company VII, LLC,  :
HFR RVA Combined Master Trust, IAM Mini-  :
Fund 14 Limited, LMA SPC for and on behalf of  :
the MAP 89 Segregated Portfolio, Lonestar  :
Partners LP, Mariner LDC, Nisswa Convertibles  :
Master Fund Ltd., Nisswa Fixed Income Master  :
Fund Ltd., Nisswa Master Fund Ltd., Paige  :
Opportunity Partners LP, Paige Opportunity  :
Partners Master Fund, Pandora Select Partners,  :
LP, Pines Edge Value Investors Ltd, Riva Ridge  :
Capital Management LP, Riva Ridge Master  :
Fund, Ltd., Scoggin Capital Management II LLC,  :
Scoggin International Fund Ltd., Scoggin  :
Worldwide Fund Ltd., Visium Global Fund, Ltd.,  :
VR Global Partners, L.P. Whitebox Asymmetric  :
Partners LP, Whitebox Combined Partners, LP,  :
Whitebox Convertible Arbitrage Partners, LP,  :
Whitebox Hedged High Yield Partners, LP and  :
Whitebox Special Opportunities LP, Series B,  :

      Plaintiffs           :

v.                          :

JPMorgan Chase Bank, N.A., JPMorgan Chase &  :
Co., Washington Mutual, Inc., Washington  :
Mutual Preferred Funding, LLC, Washington  :
Mutual Preferred Funding (Cayman) I Ltd.,  :

Chapter 11

Case No. 08-12229 (MFW)

Jointly Administered

Adv. Pro.
No. 10-51387 (MFW)

---

[1]    The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax
identification numbers are (i) Washington Mutual, Inc. (3725) and (ii) WMI Investment Corp.
(5395).

Washington Mutual Preferred Funding Trust I,          :
Washington Mutual Preferred Funding Trust II,         :
Washington Mutual Preferred Funding Trust III,        :
Washington Mutual Preferred Funding Trust IV          :
                                                      :
         Defendants.                                  x

---------------------------------------------------------

## DEFENDANTS WASHINGTON MUTUAL, INC., JPMORGAN CHASE & CO. AND JPMORGAN CHASE BANK, NATIONAL ASSOCIATION'S COMBINED FIRST SETS OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND INTERROGATORIES DIRECTED TO PLAINTIFFS

Pursuant to Federal Rules 26, 33 and 34 of the Federal Rules of Civil Procedure, as incorporated by reference in Rules 7026, 7033, 7034 and 9014 of the Federal Rules of Bankruptcy Procedure, Washington Mutual, Inc. ("WMI") as a Debtor in these jointly administered cases and a defendant in this adversary proceeding, and JPMorgan Chase Bank, N.A. and JPMorgan Chase & Co., as defendants in this adversary proceeding (collectively with WMI, the "Requesting Parties"), serve their Combined First Sets of Requests for the Production of Documents and Interrogatories Directed to each of the above-captioned Plaintiffs ("First Requests"). The Requesting Parties request that each Plaintiff produce for inspection and copying the documents described herein by September 27, 2010 at the offices of Weil, Gotshal & Manges LLP, 1300 Eye Street, N.W., Washington, D.C. 20005. If copies of the documents are provided, they shall be provided by September 27, 2010 to (a) Adam Strochak, Weil, Gotshal & Manges LLP, 1300 Eye Street, N.W., Washington, D.C. 20005 and (b) Stacey Friedman, Sullivan & Cromwell LLP, 125 Broad Street, New York, New York 10004. The Requesting Parties further request that each Plaintiff separately and fully answer in writing and under oath each of the following interrogatories. A true copy of the answers and any objections the Plaintiffs may have to these interrogatories must be served on the undersigned attorneys by

September 27, 2010. Each of the following document requests and interrogatories is to be read in accordance with the definitions and respective instructions that follow.

## DEFINITIONS

1.      The term "Action" refers to the lawsuit docketed under the caption <u>In re Washington Mutual, Inc., et al.</u>, Case No. 08-12229 (MFW) (Bankr. D. Del.) as Adversary Proceeding No. 10-51387.

2.      "Communication" is used in its broadest sense and means any transmission or exchange of thoughts, ideas, data, messages, inquires or information of any kind between or among any two or more persons, including, without limitation, between or among employees or agents of a person other than a natural person, whether such transmissions or exchanges are oral or written and whether they are personally, electronically or otherwise generated, transcribed, transmitted or recorded.

3.      "Complaint" shall refer to the Complaint for Declaratory and Other Relief, filed on or about July 6, 2010 in the Action.

4.      "Concerning" means directly or indirectly mentioning, referring to, relating to, pertaining to, regarding, describing, evidencing, constituting, reflecting, embodying, discussing or having any logical or factual connection whatsoever with regard to the subject matter in question.

5.      "Defendants" means JPMorgan Chase Bank, N.A., JPMorgan Chase & Co., WMI, Washington Mutual Preferred Funding, LLC, Washington Mutual Preferred Funding (Cayman) I Ltd., Washington Mutual Preferred Funding Trust I, Washington Mutual Preferred Funding Trust II, Washington Mutual Preferred Funding Trust III, and Washington Mutual Preferred Funding Trust IV.

6.    "Document" shall mean any information or thing within the scope of Rule 34(a) of the Federal Rules and includes, without limitation, each and every written, recorded, or graphic matter of any kind, type, nature or description that is or has been in your possession, custody, or control, as defined below, including all printed and electronic copies of electronic mail, computer files maintained in electronic form, correspondence, memoranda, tapes, stenographic or handwritten notes, written forms of any kind, charts, blueprints, drawings, sketches, graphs, plans, articles, specifications, diaries, letters, telegrams, photographs, minutes, contracts, agreements, surveys, computer printouts, data compilations of any kind, teletypes, facsimiles, text messages, instant messages, invoices, order forms, checks, drafts, statements, credit memos, reports, position reports, summaries, indices, books, ledgers, notebooks, schedules, transparencies, recordings, catalogs, advertisements, promotional materials, films, video tapes, audio tapes, CDs, computer disks, brochures, pamphlets, punch-cards, time-slips, or any written or recorded materials of any other kind, however stored (whether in tangible or electronic form), record, produced, or reproduced.  A draft or non-identical copy is a separate document within the meaning of this term.

7.    "Identify" means:

(a)    as applied to a natural person, to state the person's full name, title, present or last known address and telephone number, present or last known employer, and present or last known business address and telephone number;

(b)    as applied to a business entity, to state the entity's full name and present or last known business address and telephone number;

(c)    as applied to an oral communication, to state the time, date and place of such communication, whether it was in person or by some other means, the identity of

each person who was present or who participated in such communication, and the substance of the communication; and

(d)     as applied to a document, to state the type of document, the date of the document, the names of the individuals who drafted, authored or signed the document, the names of the individuals to whom the document or a copy thereof was addressed or sent, the substance of the document, the present whereabouts of the document, and the name and address of the custodian of the document.

8.     "Person" means all entities of every description and includes any natural person, partnership, corporation, proprietorship, unincorporated association, governmental agency, limited liability company, hedge fund or other fund-type entity, or other form of legal entity.

9.     The terms "Plaintiff", "Plaintiffs", "you" or "your" refer to plaintiffs in this Action as listed in the caption above and in the Complaint.

10.     "Possession, custody or control" means in physical custody of any Plaintiff, or if it is in the physical custody of any other person and a Plaintiff: (a) owns such document in whole or part; (b) has a right by contract, statute or otherwise to use, inspect, examine or copy such document on any terms; (c) has an understanding, express or implied, that the Plaintiff may use, inspect, examine or copy such document on any terms; or (d) has, as a practical matter, been able to use, inspect, examine or copy such document when the Plaintiff has sought to do so. Such documents shall include, without limitation, documents that are in the custody of the Plaintiffs' attorney(s), other representatives or other agents.

11.     The terms "refer" or "relate" or "referring" or "relating" mean all documents and information that comprise, reflect, record, memorialize embody, discuss,

evaluate, consider, review or report on the subject matter of the request, or were reviewed in conjunction with, or were created, generated or maintained as a result of the subject matter of the request.

12.     "Rule 2019 Statement" refers to the Verified Second Amended Statement of Brown Rudnick LLP and Campbell & Levine LLC Pursuant to Rule 2019 of the Federal Rules of Bankruptcy Procedure, filed on or about July 26, 2010 in In re Washington Mutual, Inc. et al., Case No. 08-12229 (MFW) (Bankr. D. Del.).

13.     "Trust Preferred Securities" refers to: (a) Washington Mutual Preferred Funding (Cayman) I Ltd. 7.25% Perpetual Non-Cumulative Preferred Securities, Series A-1 and Series A-2, as described in an offering circular dated February 24, 2006 (the "WaMu Cayman TPS"); (b) Washington Mutual Preferred Funding Trust I Fixed-to-Floating Rate Perpetual Non-Cumulative Trust Securities, as described in an offering circular dated February 24, 2006 (the "WaMu Delaware I TPS"); (c) Washington Mutual Preferred Funding Trust II Fixed-to-Floating Rate Perpetual Non-Cumulative Trust Securities, as described in an offering circular dated December 6, 2006 (the "WaMu Delaware II TPS"); (d) Washington Mutual Preferred Funding Trust III Fixed-to-Floating Rate Perpetual Non-Cumulative Trust Securities, as described in an offering circular dated May 21, 2007 (the "WaMu Delaware III TPS"); and (e) Washington Mutual Preferred Funding Trust IV Fixed-to-Floating Rate Perpetual Non-Cumulative Trust Securities, as described in an offering circular dated October 18, 2007 (the "WaMu Delaware IV TPS").

14.     "WMB" refers to Washington Mutual Bank, N.A.

15.     "WMB or WMI-Related Securities, Investments or Contracts" refers to all securities, investments, financial contracts, stocks, options, bonds, convertibles, derivatives,

private securities, direct investments and notes (including but not limited to the notes, securities and warrants referred to in Paragraphs 6 and 7 of the Rule 2019 Statement) with or in WMB, WMI, or entities affiliated with WMB or WMI, excluding Trust Preferred Securities.

16. "WMPF" refers to Washington Mutual Preferred Funding, LLC.

## INSTRUCTIONS FOR DOCUMENT REQUESTS

1. Each request is to be responded to by each Plaintiff separately.

2. Documents should be produced as they are kept in the files of Plaintiffs or shall be organized and labeled to correspond with the requests below. If documents are produced as they are kept in the files of Plaintiffs, sufficient information should be provided to permit the Requesting Parties to identify the source of particular documents from within the files of Plaintiffs.

3. In order to bring within the scope of these document requests all information that might otherwise be construed to be outside of their scope, the following rules of construction apply: (a) the singular shall include the plural and vice versa; (b) the masculine, feminine or neuter pronoun shall not exclude other genders or entities; (c) the connectives "and" and "or" shall be read either disjunctively or conjunctively as necessary to bring within the scope of the document requests all responses that might otherwise be construed to be outside their scope; (d) the terms "any," "all" and "each" shall be read to mean any, all, each and every; (e) the word "including" shall be read to mean including without limitation; and (f) the present tense shall be construed to include the past tense and vice versa.

4. These document requests call for the production of documents that are in the possession, custody or control of any Plaintiff. In addition to documents currently in your possession, custody or control, you are to produce all documents within the scope of these

requests that are not currently in your possession, custody or control, but can be obtained through reasonable effort. If any of the documents requested were formerly in your possession, custody or control, but are no longer in your possession, custody or control, state when and what disposition was made of the document and what efforts, if any, you made to obtain each such document in response hereto. Further, if any such document is not in your possession, custody or control, but you know the identity of the entity or person currently in possession, custody or control of such document, state the identity of the entity or person who has the documents, including the address and telephone number of the entity or person. In the event that a copy of a requested document is not identical to any other copy of the same document, by reason of alterations, notes in the margins, comments, etc., all non-identical copies shall be produced separately. All documents that are physically attached to each other when located for production shall be left so attached.

5. If you object to any portion or aspect of a request, produce all documents responsive to the remainder of the request.

6. Unless otherwise indicated, these document requests pertain to the period January 1, 2006 to the present.

7. If information is redacted from a document produced pursuant to any of the document requests herein, identify the redaction by stamping the word "Redacted" on the document at the place where information has been redacted and separately log each redaction on the privilege log described in the above paragraph.

8.      Each paragraph and subparagraph herein should be construed independently and not by reference to any other paragraph or subparagraph of these document requests for purposes of limitation.

9.      If you object to the production of any of the documents or any portion of the documents requested on the grounds of privilege or any other grounds, for each document, state: (a) the nature of the privilege which is being claimed and, if the privilege is governed by state law, indicate the state's privilege rule being invoked; (b) the type of document; (c) the general subject matter of the document; (d); the date of the document; and (e) such other information as is sufficient to identify the document for a subpoena *duces tecum*, including, where appropriate, the author of the document, the addressees of the document, and any other recipients of the document (including each person who was carbon or blind copied the document), and where not apparent, the relationship of the author, addressees, and recipients to each other.

10.     If there are no documents responsive to any of the following document requests, please provide a written response stating so.

11.     These document requests shall be deemed continuing as provided in Fed. R. Civ. P. Rule 26(e) so as to require further, amended, or supplemental production if additional documents called for by the First Requests are obtained by Plaintiffs between the time of the initial production and the time of trial.

12.     Nothing herein shall prejudice or be deemed a waiver by the Defendants of any claims or defenses to the Complaint (including, without limitation, as to jurisdiction) or to concede or otherwise suggest that any Plaintiff in fact owns or has owned Trust Preferred Securities.

## INSTRUCTIONS FOR INTERROGATORIES

1.     Each Interrogatory is to be responded to separately under oath by each Plaintiff.

2.     Each interrogatory shall be construed independently and not with reference to any other interrogatory for the purpose of limitation or exclusion.

3.     If you object to any interrogatory, please state with specificity the grounds for such an objection.

4.     If an interrogatory cannot be answered in full, answer to the extent possible, specifying the reason why the remainder cannot be answered and the efforts made to supply a complete answer.

5.     Separate and complete responses (or, as the case may be, separate objections) are required for each interrogatory or subpart thereof.

6.     These interrogatories extend to any information in your possession, custody or control, including but not limited to any of your respective employees, agents, attorneys, or other persons acting or purporting to act on your behalf.

7.     In the event any information responsive to any interrogatory is withheld based upon a claim of attorney-client, work-product or any other privilege or immunity, explain the basis of the privilege or other protection you are claiming and provide a general description of the nature of the information you are withholding.

8.     These interrogatories shall be deemed continuing so as to require prompt supplemental responses if you learn additional information responsive to these interrogatories

between the time of the initial response to these interrogatories and the time of the final judgment in this action.

## DOCUMENTS REQUESTED

1.    All documents concerning the allegations of the Complaint, including: (a) all documents concerning any source of the allegations in the Complaint; (b) all documents that support, refute, or otherwise relate to any allegation in the Complaint; and (c) all documents used or relied upon in preparing the Complaint.

2.    All documents received from any state or federal governmental or regulatory agency or any self-regulatory organization, including the Office of Thrift Supervision, the Federal Deposit Insurance Corporation, the New York Stock Exchange, the Securities and Exchange Commission, the Attorney General of the State of New York or his office, or any other person concerning the allegations in the Complaint, including any documents received pursuant to any request made under the federal Freedom of Information Act, the Delaware Freedom of Information Act, New York's Freedom of Information Law, Washington's Public Disclosure Act, and similar regulatory or statutory provisions.

3.    All documents concerning any purchase, sale, acquisition or other transfer of Trust Preferred Securities by or on behalf of any Plaintiff including, but not limited to, trading records, receipts, brokerage account statements, confirmations of such transactions and certificates purportedly evidencing ownership of Trust Preferred Securities.

4.    All documents concerning any due diligence, investigation, assessment or evaluation performed by or on behalf of any of Plaintiffs in connection with any decision to purchase, sell or otherwise acquire or transfer Trust Preferred Securities up to the the present, including, but not limited to: (a) diaries, calendars and time entries concerning such activities;

and (b) all documents concerning the risks actually or potentially involved in investing in any Trust Preferred Securities.

5.     All documents created, considered, collected, reviewed, obtained or otherwise received by any Plaintiff in connection with any analysis, assessment or consideration of the value of Trust Preferred Securities at any time up to the present.

6.     All investment advisory agreements to which any of the Plaintiffs are or were a party that relate to or affect the decision to purchase, sell or otherwise acquire Trust Preferred Securities.

7.     All documents concerning any purchase, sale, acquisition or other transfer of WMB or WMI-Related Securities, Investments or Contracts by or on behalf of any Plaintiff, including but not limited to, trading records, receipts, brokerage account statements, confirmations of such transactions and stock certificates evidencing current ownership of WMB or WMI-Related Securities, Investments or Contracts.

8.     All documents concerning any due diligence, investigation, assessment or evaluation performed by or on behalf of Plaintiffs in connection with any decision to purchase, sell or otherwise acquire or transfer WMB or WMI-Related Securities, Investments or Contracts between February 24, 2006 and the present including, but not limited to: (a) diaries, calendars and time entries concerning such activities; and (b) all documents concerning the risks actually or potentially involved in investing in any WMB or WMI-Related Securities, Investments or Contracts.

9.     All documents created, considered, collected, reviewed, obtained or otherwise received by any Plaintiff in connection with any analysis, assessment or consideration of the value of WMB or WMI-Related Securities, Investments or Contracts.

10. All investment advisory agreements to which Plaintiffs are or were a party that relate to or affect the decision to purchase, sell or otherwise acquire WMB or WMI-Related Securities, Investments or Contracts.

11. All Communications between Plaintiffs and WMI, WMB, WMPF, Washington Mutual Preferred Funding (Cayman) I, Ltd., Washington Mutual Preferred Funding Trust I, Washington Mutual Preferred Funding Trust II, Washington Mutual Preferred Funding Trust III and Washington Mutual Preferred Funding Trust IV, and all documents concerning such communications.

12. All documents concerning your communications about the Trust Preferred Securities with any person, including any communications with your financial representatives, securities dealers or brokers, financial or investment advisors, research analysts, or investors.

13. All documents concerning any communications between you and any other Plaintiff in the Action or any plaintiff or potential plaintiff in any other actual or potential litigation involving the Trust Preferred Securities.

14. All documents concerning your communications with any person about WMI, WMB, the Office of Thrift Supervision, the Conditional Exchange feature described in ¶ 60 of the Complaint, or the treatment of the Trust Preferred Securities as "Tier 1 capital" or "core capital" by any federal regulator or WMI.

15. All documents concerning the investment policies, procedures, practices, guidelines or criteria governing investments or investment decision made by or on behalf of any of the Plaintiffs including, but not limited to all documents concerning: (a) investment objectives of Plaintiffs; (b) permissible investments by or on behalf of Plaintiffs; (c) risk analysis or risk evaluation with respect to the purchase, holding or sale of securities by or on behalf of Plaintiffs;

(d) Plaintiffs' risk tolerance with respect to the purchase, holding or sale of securities; and (e) the use of risk consultants with respect to the purchase, holding or sale of securities by or on behalf of Plaintiffs.

16.     All documents concerning the investment policies, procedures, practices, guidelines or criteria governing investments or investment decisions made by or on behalf of any of the Plaintiffs related to (a) any security containing an exchange provision by which the security is to be exchanged with another if certain events occur; and (b) any security that directly or indirectly draws value from the assets of a federally regulated bank or thrift and that is treated as "Tier 1 capital" or "core capital."

17.     For each Plaintiff, documents sufficient to show:

(a)     quarter-end portfolio holdings for all Trust Preferred Securities from February 24, 2006 until the present;

(b)     all trading activity for all Trust Preferred Securities purportedly owned by the Plaintiff from February 24, 2006 until the present, including (i) the purchase price Plaintiff actually paid for each and any of the Trust Preferred Securities purportedly owned; (ii) the identity of the person or entity from which Plaintiff purportedly purchased each and any of the Trust Preferred Securities; (iii) the date of each and any purported purchase of the Trust Preferred Securities;

(c)     all hedging activity for all Trust Preferred Securities purportedly owned by the Plaintiff from February 24, 2006 until the present; and

(d)     all trading activity for all positions in WMB or WMI-Related Securities, Investments or Contracts, including (i) the purchase price Plaintiff actually paid for each and any of the WMB or WMI-Related Securities, Investments or Contracts; (ii) the identity of the person

or entity from which Plaintiff purchased each and any of the WMB or WMI-Related Securities, Investments or Contracts; (iii) the date of each and any purchase of the WMB or WMI-Related Securities, Investments or Contracts.

18. All documents concerning any agreements, contracts or understandings between and/or among any of the Plaintiffs and any person concerning any Trust Preferred Securities or WMB or WMI-Related Securities, Investments or Contracts at any time.

19. All documents concerning the amount of loss or damage allegedly suffered by you, by reason of any matter or allegation set forth in the Complaint, or concerning the method of calculating that alleged loss or damage.

20. All documents concerning any action brought against you, or against any entity of which you are or were an owner, director, officer, employee, or agent, at any time, in a federal or state court, and any other arbitrations, claims, or complaints in any forum, brought against you or against any entity of which you are or were an owner, director, officer, employee, or agent.

21. Documents sufficient to show all email accounts, email addresses, and domain names, used by you or on your behalf, and web sites created, hosted, operated, or maintained by you or on your behalf, whether for personal use or for business, as well as the names and addresses of all Internet Service Providers or other providers of servers or other information management hardware, software, or services relating to those email accounts, email addresses, domain names, and web sites.

22. All documents upon which any Plaintiff relies in answering the interrogatories below.

## INTERROGATORIES

1.    Describe each Plaintiff by setting forth:

(a)    its name (including any name under which it has done business since February 24, 2006);

(b)    its address and/or the address of each of its offices;

(c)    the date and location of its organization, incorporation and/or commencement of business;

(d)    the business in which it is engaged; and

(e)    the identity of each of its subsidiaries or affiliates.

2.    Identify any person or entity (including, but not limited to, any person or entity affiliated with, employed by or associated with Plaintiffs) who considered, evaluated and/or made a decision to purchase or sell or otherwise acquire or transfer Trust Preferred Securities, and for each such person or entity, provide a description of what he, she, or it did with respect to the decision to purportedly purchase or sell or otherwise acquire or transfer the Trust Preferred Securities.

3.    For each sale, purchase, other acquisition or transfer of Trust Preferred Securities made by Plaintiffs between February 24, 2006 and the present, identify:

(a)    the person or entity (including, but not limited to any corporation, employee benefit plan, investment fund, mutual fund, private investor, endowment or foundation) on whose behalf Trust Preferred Securities were purportedly purchased or sold or otherwise acquired or transferred;

(b)    the specific type and number of Trust Preferred Securities purportedly purchased, sold or otherwise acquired or transferred;

(c)     the date on which the Trust Preferred Securities were purportedly purchased, sold or otherwise acquired or transferred;

(d)     the price of the Trust Preferred Securities at the time of the purported purchase, sale or other acquisition or transfer in the native currency of the market on which the Trust Preferred Securities were purchased sold or otherwise acquired or transferred;

(e)     your accounting treatment of the Trust Preferred Securities purportedly purchased, sold or otherwise acquired or transferred;

(f)     the reason(s) for which the Trust Preferred Securities were purportedly purchased, sold or otherwise acquired or transferred, including, but not limited to the identification of any research materials and/or other documents (whether prepared by the Plaintiff or others) upon which the Plaintiff relied in making those transactions; and

(g)     the persons with knowledge about the information provided in response to subparagraphs (a) – (f) above.

4.     Identify any person or entity (including, but not limited to, any person or entity affiliated with, employed by or associated with any of the Plaintiffs), brokerage firm, stockbroker, investment committee, or other investment advisor involved in the purchase, sale or other acquisition or transfer of Trust Preferred Securities by or on behalf of any of the Plaintiffs, and for each such person or entity, provide a description of what he, she, or it did with respect to the decision to purportedly purchase, sell, acquire or transfer the Trust Preferred Securities.

5.     Identify any person or entity (including, but not limited to, any person or entity affiliated with, employed by or associated with any of the Plaintiffs) that considered, evaluated and/or made a decision to purchase or sell or otherwise acquire or transfer WMB or WMI-Related Securities, Investments or Contracts, and for each such person or entity, provide a

description of what he, she, or it did with respect to the decision to purchase or sell or otherwise acquire or transfer the Trust Preferred Securities.

6.     For each sale, purchase, other acquisition or transfer of WMB or WMI-Related Securities, Investments or Contracts, identify:

(a)     the person or entity (including, but not limited to any corporation, employee benefit plan, investment fund, mutual fund, private investor, endowment or foundation) on whose behalf WMB or WMI-Related Securities, Investments or Contracts were purchased or sold or otherwise acquired or transferred;

(b)     the specific type and number of WMB or WMI-Related Securities, Investments or Contracts purchased, sold or otherwise acquired or transferred;

(c)     the date on which the WMB or WMI-Related Securities, Investments or Contracts were purchased, sold or otherwise acquired or transferred;

(d)     the specific market on which the WMB or WMI-Related Securities, Investments or Contracts were purchased, sold or otherwise acquired or transferred;

(e)     the price of the WMB or WMI-Related Securities, Investments or Contracts at the time of the purchase, sale or other acquisition or transfer in the native currency of the market on which the Trust Preferred Securities were purchased sold or otherwise acquired or transferred;

(f)     your accounting treatment of the WMB or WMI-Related Securities, Investments or Contracts purchased, sold or otherwise acquired or transferred; and

(g)     the reason(s) for which the WMB or WMI-Related Securities, Investments or Contracts were purchased, sold or otherwise acquired or transferred, including, but not limited

to the identification of any research materials and/or other documents (whether prepared by the Plaintiff or others) upon which the Plaintiff relied in making those transactions.

7.      Identify each individual who supplied information for and/or participated in the preparation of Plaintiffs' answers to these interrogatories.

Dated: August 27, 2010
       Wilmington, Delaware


| _Marcos A. Ramos_ | /s/ Adam G. Landis |
|---|---|
| Mark D. Collins (No. 2981) | Adam G. Landis (No. 3407) |
| Marcos A. Ramos (No. 4450) | Matthew B. McGuire (No. 4366) |
| Chun I. Jang (No. 4790) | LANDIS RATH & COBB LLP |
| RICHARDS, LAYTON & FINGER, P.A. | 919 Market Street Suite 1800 |
| One Rodney Square | Wilmington, Delaware 19899 |
| 920 North King Street | Tel: (302) 467-4400 |
| Wilmington, Delaware 19801 | Fax: (302) 467-4450 |
| Telephone: (302) 651-7700 | |
| Facsimile: (302) 651-7701 | |

– and –

Marcia L. Goldstein, Esq.
Brian S. Rosen, Esq.
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Debtors*
*and Debtors in Possession*

– and –

Robert A. Sacks
Stacey R. Friedman
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Tel: (212) 558-4000
Fax: (212) 558-3588

*Attorneys for JPMorgan Chase & Co.*
*and JPMorgan Chase Bank, N.A.*

US_ACTIVE:\43484722\02\79831.0003
RLF1 3603763v. 1

# EXHIBIT B

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

---

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| WASHINGTON MUTUAL, INC., et al., | : | Case No. 08-12229 (MFW) |
| | : | |
| Debtors | : | Jointly Administered |

---

Black Horse Capital LP, Black Horse Capital Master Fund Ltd., Black Horse Capital (QP) LP, Greywolf Capital Partners II, Greywolf Capital Overseas Master Fund, Guggenheim Portfolio Company VII, LLC, HFR RVA Combined Master Trust, IAM Mini-Fund 14 Limited, LMA SPC for and on behalf of the MAP 89 Segregated Portfolio, Lonestar Partners LP, Mariner LDC, Nisswa Convertibles Master Fund Ltd., Nisswa Fixed Income Master Fund Ltd., Nisswa Master Fund Ltd., Paige Opportunity Partners LP, Paige Opportunity Partners Master Fund, Pandora Select Partners, LP, Pines Edge Value Investors Ltd, Riva Ridge Capital Management LP, Riva Ridge Master Fund, Ltd., Scoggin Capital Management II LLC, Scoggin International Fund Ltd., Scoggin Worldwide Fund Ltd., Visium Global Fund, Ltd., VR Global Partners, L.P., Whitebox Asymmetric Partners LP, Whitebox Combined Partners, LP, Whitebox Convertible Arbitrage Partners, LP, Whitebox Hedged High Yield Partners, LP and Whitebox Special Opportunities LP, Series B,

     Plaintiffs

v.

JPMorgan Chase Bank, N.A., JPMorgan Chase & Co., Washington Mutual, Inc., Washington Mutual Preferred Funding, LLC, Washington Mutual Preferred Funding (Cayman) I Ltd., Washington Mutual Preferred Funding Trust I, Washington Mutual Preferred Funding Trust II, Washington Mutual Preferred Funding Trust III, Washington Mutual Preferred Funding Trust IV

     Defendants.

Adversary Proceeding
No. 10-51387 (MFW)

**RESPONSES AND OBJECTIONS OF PLAINTIFFS BLACK HORSE CAPITAL LP,
BLACK HORSE CAPITAL MASTER FUND LTD., AND BLACK HORSE CAPITAL
(QP) LP TO WASHINGTON MUTUAL, INC., JPMORGAN CHASE & CO. AND
JPMORGAN CHASE BANK, NATIONAL ASSOCIATION'S COMBINED FIRST SETS
OF REQUESTS FOR THE PRODUCTION OF
DOCUMENTS AND INTERROGATORIES**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure ("FRCP"), made

applicable to these proceedings by Rules 7026 and 7034 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), plaintiffs Black Horse Capital LP, Black Horse Capital

Master Fund Ltd., and Black Horse Capital (QP) LP (together, "Black Horse"), by and through

its undersigned counsel, hereby responds and objects to Washington Mutual, Inc., JPMorgan

Chase & Co. and JPMorgan Chase Bank, National Association's Combined First Sets of

Requests for Production of Documents and Interrogatories dated August 27, 2010 (the

"Requests," and, individually, each enumerated document request a "Request" and

"Interrogatories") as set forth below on the on the grounds specified herein.

### PRELIMINARY STATEMENT

Black Horse's production of confidential information shall be subject to entering into a

mutually agreeable confidentiality agreement.

Black Horse's discovery and investigation of the subject matter of this litigation is

presently ongoing and is not yet complete. Black Horse's present responses are based on

information and documents currently known to the individuals responding to discovery at this

time. Black Horse reserves the right to supplement, modify, or amend these responses and to

introduce at trial additional responsive information.

## GENERAL OBJECTIONS

1.      Black Horse objects to the Requests to the extent that they purport to impose an obligation on Black Horse to conduct anything beyond a reasonable search for responsive documents, particularly given the expedited nature of this litigation. Black Horse is willing to undertake a reasonable search of the files of a specified number of custodians, and is willing to perform reasonable searches of the electronic files (including electronic mail) of such custodians using a reasonable number of search terms and covering a reasonable period of time.

2.      Black Horse objects to the Requests to the extent they seek to impose obligations that are inconsistent with or greater than those imposed by the FRCP, the Bankruptcy Rules, the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), any other applicable law, or any court order that has been or may be entered governing discovery in this case.

3.      Black Horse objects to the Requests to the extent that they are vague, ambiguous, overbroad, unduly burdensome, vexatious, oppressive, do not specify the information sought with sufficient particularity, and/or are not reasonably calculated to lead the discovery of admissible evidence.

4.      Black Horse objects to the Requests to the extent they request "all" documents relating to broad topics, such that those requests are overbroad and unduly burdensome and impose an excessive discovery burden on Black Horse, particularly given the expedited nature of this litigation.

5.      Black Horse objects to the Requests to the extent that they call for the production of documents not relevant to the subject matter of this action, not relevant to a claim or defense of any party to this action and/or not reasonably calculated to lead to the discovery of admissible evidence.

6.      Black Horse objects to the Requests to the extent they purport to require Black Horse to create or generate documents and/or to produce documents in a form, manner, or location that is unduly burdensome.

7.      Black Horse objects to the Requests to the extent they seek documents reflecting and containing sensitive, confidential, and/or proprietary information of Black Horse or third parties, or seek information that contravenes any confidentiality agreement or court order, or that would violate the privacy interests of others. Any documents produced by Black Horse will be produced subject to the entry of a confidentiality order to be agreed upon by the parties.

8.      Black Horse objects to the Requests to the extent they seek information that is protected by the attorney-client privilege or any other privilege; constitutes attorney work product or documents prepared in anticipation of litigation; or is otherwise protected from disclosure ("Privileged Materials"). The inadvertent production of any Privileged Materials shall not constitute a waiver of any privilege associated therewith or of Black Horse's right to object to the use of such material in any proceeding. Black Horse reserves the right to demand that any receiving party return any Privileged Materials inadvertently produced by Black Horse.

9.      Black Horse objects to each and every Request to the extent it is duplicative or cumulative of any other Request, or of material already produced in this litigation, including in connection with Rule 2004 discovery. Subject to the objections and responses set forth herein, Black Horse will produce information only once.

10.     Black Horse objects to the Requests to the extent they seek documents already in the possession of the Defendants or otherwise available from public sources.

11.     Black Horse objects to the Requests to the extent they purport to require Black Horse to provide documents not within their possession, custody or control.

12.     Black Horse objects to the Requests to the extent they contain erroneous or argumentative factual or legal allegations, conclusions, characterizations and/or assumptions and insofar as they purport to require Black Horse to reach legal conclusions.  Nothing contained herein is intended as, or shall be deemed to be, an admission or acceptance of, or agreement to, any factual or legal allegation, conclusion, characterization, and/or assumption in the Requests or any other document filed or served in the course of this action.

13.     The failure of Black Horse to make a specific objection to a particular individual Request is not, and shall not be construed as, an admission that responsive information exists.

14.     Black Horse objects to the Requests to the extent they seek discovery from subsidiaries and affiliates located outside the United States, on the grounds that such discovery would constitute a violation of the secrecy and privacy laws, or other statutes and regulations, of foreign countries, could subject the employees of the subsidiary to civil and/or criminal penalties and violates principles of international comity.  Black Horse further objects to the Requests to the extent they seek to circumvent the provisions of the Hague Convention on the Taking of Evidence Abroad in Civil and Commercial Matters and any other applicable convention or treaty.

15.     Black Horse objects to each and every Definition to the extent that it purports to define words in a way inconsistent with their generally understood meanings.

16.     Black Horse objects to the Definition of "You" or "Your" as overbroad and unduly burdensome, vague and ambiguous, not reasonably calculated to lead to the discovery of admissible evidence, and as requiring production from parties that are not parties to this action.

17.     Black Horse objects to the Definition of "WMB or WMI-Related Securities, Investments or Contracts" as overbroad and unduly burdensome, vague and ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence.

18.     Black Horse objects to the Definition of the term "Communication" as overbroad and unduly burdensome, vague and ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Black Horse further objects to this Definition to the extent that it seeks to impose obligations that are inconsistent with or greater than the obligations imposed by the FRCP, the Bankruptcy Rules, the Local Rules, or any other applicable law.

19.     Black Horse objects to the Definition of the term "Document" to the extent that it seeks to impose obligations that are inconsistent with or greater than the obligations imposed by the FRCP, the Bankruptcy Rules, the Local Rules, or any other applicable law.

20.     Black Horse objects to Instruction No. 2 as overbroad and unduly burdensome and seeks to impose an obligation on the respondent, greater than that imposed on the requesting parties in these cases. Black Horse further objects to Instruction No. 2 to the extent that it seeks to impose obligations that are inconsistent with or greater than the obligations imposed by the FRCP, the Bankruptcy Rules, the Local Rules, any other applicable law, or any court order that has been or may be entered governing discovery in this case. Black Horse also objects to Instruction No. 2 to the extent that it calls for documents to be produced in a manner or form that is unduly burdensome.

21.     Black Horse objects to Instruction No. 4 as overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Black Horse further objects to Instruction No. 4 to the extent that it seeks to impose obligations that are inconsistent with or greater than the obligations imposed by the FRCP, the Bankruptcy Rules, the Local

Rules, any other applicable law, or any court order that has been or may be entered governing discovery in this case. Black Horse also objects to Instruction No. 4 to the extent that it calls for documents to be produced in a manner or form that is unduly burdensome.

22. Black Horse objects to Instruction No. 6, which sets forth the time period covered by the requests, as overbroad, unduly burdensome, calling for the production of documents not relevant to the subject matter of this action, and not reasonably calculated to lead to the production of admissible evidence.

23. Black Horse objects to Instruction No. 7 to the extent that it seeks to impose obligations that are inconsistent with or greater than the obligations imposed by the FRCP, the Bankruptcy Rules, the Local Rules, any other applicable law, or any court order that has been or may be entered governing discovery in this case. Black Horse also objects to Instruction No. 7 to the extent that it calls for documents to be produced in a manner or form that is unduly burdensome.

24. Black Horse objects to Instruction No. 8 as vague, overbroad, unduly burdensome, in that it seeks to impose an inappropriate obligation of interpretation on the respondent. Black Horse further objects to Instruction No. 8 to the extent that it seeks to impose obligations that are inconsistent with or greater than the obligations imposed by the FRCP, the Bankruptcy Rules, the Local Rules, any other applicable law, or any court order that has been or may be entered governing discovery in this case.

25. Black Horse objects to Instruction No. 9 to the extent that it seeks to impose obligations that are inconsistent with or greater than the obligations imposed by the FRCP, the Bankruptcy Rules, the Local Rules, any other applicable law, or any court order that has been or may be entered governing discovery in this case.

26. Black Horse objects to Instruction No. 2 for Interrogatories as vague, overbroad, unduly burdensome, in that it seeks to impose an inappropriate obligation of interpretation on the respondent. Black Horse further objects to Instruction No. 2 for Interrogatories to the extent that it seeks to impose obligations that are inconsistent with or greater than the obligations imposed by the FRCP, the Bankruptcy Rules, the Local Rules, any other applicable law, or any court order that has been or may be entered governing discovery in this case.

27. These General Objections apply to each Request propounded by the Defendants, and unless otherwise stated, shall have the same force and effect as if set forth in full in response to each of the separate numerated Requests. The assertion of the same, similar, or additional objections in response to a specific Request does not waive any of these General Objections. Likewise, any statement herein that Black Horse will provide documents in response to a Request reflects the intention of Black Horse to produce such documents subject to these General Objections.

## SPECIFIC OBJECTIONS AND RESPONSES TO REQUESTS FOR PRODUCTION DOCUMENTS

**REQUEST NO. 1**    All documents concerning the allegations of the Complaint, including: (a) all documents concerning any source of the allegations in the Complaint; (b) all documents that support, refute, or otherwise relate to any allegation in the Complaint; and (c) all documents used or relied upon in preparing the Complaint.

**RESPONSE NO. 1**

Black Horse objects to this requests on the grounds that it is overly broad and unduly burdensome. Black Horse further objects to this request in that it seeks to discover documents constituting attorney work product and documents protected by the attorney-client privilege. Subject to, and without waiving, these objections and the foregoing General Objections, Black

Horse directs the Defendants to the documents referenced in the Complaint, including documents that were produced by other parties in these chapter 11 cases and/or are publicly available. Further responding, Black Horse refers Defendants to:

(1)     The five prospectuses issued in connection with the Trust Preferred Securities, all the side letters with the Office of Thrift Supervision, and the other transactional documents;

(2)     The various pleadings, motions, exhibits and other documents filed in the chapter 11 cases, associated adversary proceedings and other actions related to Washington Mutual involving the parties to the Global Settlement Agreement referenced in the Debtors' Fifth Amended Joint Plan of Reorganization;

(3)     Documents previously produced in connection with the chapter 11 cases, including but not limited to documents produced by Debtors and documents produced to the Debtors in connection with Rule 2004 discovery;

(4)     Documents publicly available in the Washington Mutual, Inc. Securities, Derivative & ERISA Litigation pending in the United States District Court for the Western District of Washington; and

(5)     Documents publicly available from the United States Senate, including at:

> http://levin.senate.gov/senate/investigations/index.html
>
> http://hsgac.senate.gov/public/index.cfm?FuseAction=Hearings.Hearing&Hearing_ID=d16e2709-2e60-4b1e-9255-37a40aefdc13
>
> http://hsgac.senate.gov/public/index.cfm?FuseAction=Hearings.Hearing&Hearing_ID=455470c7-f48b-422c-a416-e210f3619633
>
> http://hsgac.senate.gov/public/index.cfm?FuseAction=Hearings.Hearing&Hearing_ID=5f127126-608a-4802-ba77-d1bdffdfbe9b
>
> http://hsgac.senate.gov/public/index.cfm?FuseAction=Hearings.Hearing&Hearing_ID=f07ef2bf-914c-494c-aa66-27129f8e6282

As discovery is still ongoing, Black Horse reserves the right to supplement this response to this request.

**REQUEST NO. 2**    All documents received from any state or federal governmental or regulatory agency or any self-regulatory organization, including the Office of Thrift Supervision, the Federal Deposit Insurance Corporation, the New York Stock Exchange, the Securities and Exchange Commission, the Attorney General of the State of New York or his office, or any other person concerning the allegations in the Complaint, including any documents received pursuant to any request made under the federal Freedom of Information Act, the Delaware Freedom of Information Act, New York's Freedom of Information Law, Washington's Public Disclosure Act, and similar regulatory or statutory provisions.

**RESPONSE NO. 2**

Black Horse objects to this requests on the grounds that it is overly broad and unduly burdensome to the extent that it is not limited to issues relevant to this case. Subject to, and without waiving, this objection and the foregoing General Objections, Black Horse states that, aside from documents produced in the chapter 11 and/or related cases, it has no documents responsive to this request in its possession, custody or control.

**REQUEST NO. 3**    All documents concerning any purchase, sale, acquisition or other transfer of Trust Preferred Securities by or on behalf of any Plaintiff including, but not limited to, trading records, receipts, brokerage account statements, confirmations of such transactions and certificates purportedly evidencing ownership of Trust Preferred Securities.

**RESPONSE NO. 3**

Black Horse objects to this requests on the grounds that it is overly broad and unduly burdensome. Subject to, and without waiving, these objections and the foregoing General

Objections, Black Horse will produce documents sufficient to evidence the purchase, sale, acquisition or transfer of Trust Preferred Securities.

**REQUEST NO. 4**    All documents concerning any due diligence, investigation, assessment or evaluation performed by or on behalf of any of Plaintiffs in connection with any decision to purchase, sell or otherwise acquire or transfer Trust Preferred Securities up to the present, including, but not limited to: (a) diaries, calendars and time entries concerning such activities; and (b) all documents concerning the risks actually or potentially involved in investing in any Trust Preferred Securities.

**RESPONSE NO. 4**

Black Horse objects to this request on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. In particular, the claims raised in this Adversary Proceeding relate to the title and/or transfer of title to one particular class of securities, the Trust Preferred Securities, and the conduct of certain of the Defendants and the Office of Thrift Supervision in connection with the issuance of those securities and the purported transfer of those securities in 2008. As such, the due diligence efforts, assessment and/or evaluation of the securities by the Plaintiffs in purchasing and/or selling such securities is entirely irrelevant to the claims being litigated.

**REQUEST NO. 5**    All documents created, considered, collected, reviewed, obtained or otherwise received by any Plaintiff in connection with any analysis, assessment or consideration of the value of Trust Preferred Securities at any time up to the present.

**RESPONSE NO. 5**

Black Horse objects to this request on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. In

particular, the claims raised in this Adversary Proceeding relate to the title and/or transfer of title to one particular class of securities, the Trust Preferred Securities, and the conduct of certain of the Defendants and the Office of Thrift Supervision in connection with the issuance of those securities and the purported transfer of those securities in 2008. As such, the analysis, assessment or consideration of the value of the Trust Preferred Securities is entirely irrelevant to the claims being litigated. Further, all claims for damages have been stayed by agreement and court order, and therefore, any requests seeking to obtain information related to potential damages are improper at this time.

**REQUEST NO. 6**   All investment advisory agreements to which any of the Plaintiffs are or were a party that relate to or affect the decision to purchase, sell or otherwise acquire Trust Preferred Securities.

### **RESPONSE NO. 6**

Black Horse objects to this request on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. In particular, the claims raised in this Adversary Proceeding relate to the title and/or transfer of title to one particular class of securities, the Trust Preferred Securities, and the conduct of certain of the Defendants and the Office of Thrift Supervision in connection with the issuance of those securities and the purported transfer of those securities in 2008. General investment advisory agreements, in addition to being confidential, are entirely irrelevant to questions of title to the Trust Preferred Securities, which is at issue in this Adversary Proceeding.

**REQUEST NO. 7**   All documents concerning any purchase, sale, acquisition or other transfer of WMB or WMI-Related Securities, Investments or Contracts by or on behalf of any Plaintiff, including but not limited to, trading records, receipts, brokerage account statements,

confirmations of such transactions and stock certificates evidencing current ownership of WMB or WMI-Related Securities, Investments or Contracts.

**RESPONSE NO. 7**

Black Horse objects to this request on the grounds that it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and only meant to annoy and oppress Black Horse. In particular, the claims raised in this Adversary Proceeding relate to the title and/or transfer of title to one particular class of securities, the Trust Preferred Securities, and the conduct of certain of the Defendants and the Office of Thrift Supervision in connection with the issuance of those securities and the purported transfer of those securities in 2008. The ownership of any other securities, investments or contracts by Plaintiffs is entirely irrelevant to the questions of title to the Trust Preferred Securities that are at issue in the Adversary Proceeding.

**REQUEST NO. 8**   All documents concerning any due diligence, investigation, assessment or evaluation performed by or on behalf of Plaintiffs in connection with any decision to purchase, sell or otherwise acquire or transfer WMB or WMI-Related Securities, Investments or Contracts between February 24, 2006 and the present including, but not limited to:  (a) diaries, calendars and time entries concerning such activities; and (b) all documents concerning the risks actually or potentially involved in investing in any WMB or WMI-Related Securities, Investments or Contracts.

**RESPONSE NO. 8**

Black Horse objects to this request on the grounds that it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and only meant to annoy and oppress Black Horse. In particular, the claims raised in this Adversary

Proceeding relate to the title and/or transfer of title to one particular class of securities, the Trust Preferred Securities, and the conduct of certain of the Defendants and the Office of Thrift Supervision in connection with the issuance of those securities and the purported transfer of those securities in 2008. The ownership of any other securities, investments or contracts by Plaintiffs is entirely irrelevant to the questions of title to the Trust Preferred Securities that are at issue in the Adversary Proceeding. Any due diligence, investigation, assessment or evaluation of unrelated securities is even further removed, and not reasonably calculated to lead to the discovery of admissible evidence in the Adversary Proceeding.

**REQUEST NO. 9** All documents created, considered, collected, reviewed, obtained or otherwise received by any Plaintiff in connection with any analysis, assessment or consideration of the value of WMB or WMI-Related Securities, Investments or Contracts.

**RESPONSE NO. 9**

Black Horse objects to this request on the grounds that it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and only meant to annoy and oppress Black Horse. In particular, the claims raised in this Adversary Proceeding relate to the title and/or transfer of title to one particular class of securities, the Trust Preferred Securities, and the conduct of certain of the Defendants and the Office of Thrift Supervision in connection with the issuance of those securities and the purported transfer of those securities in 2008. The ownership of any other securities, investments or contracts by Plaintiffs is entirely irrelevant to the questions of title to the Trust Preferred Securities that are at issue in the Adversary Proceeding. Any due diligence, investigation, assessment or evaluation of unrelated securities is even further removed, and not reasonably calculated to lead to the discovery of admissible evidence in the Adversary Proceeding.

**REQUEST NO. 10**  All investment advisory agreements to which Plaintiffs are or were a party that relate to or affect the decision to purchase, sell or otherwise acquire WMB or WMI-Related Securities, Investments or Contracts.

**RESPONSE NO. 10**

Black Horse objects to this request on the grounds that it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and only meant to annoy and oppress Black Horse.  In particular, the claims raised in this Adversary Proceeding relate to the title and/or transfer of title to one particular class of securities, the Trust Preferred Securities, and the conduct of certain of the Defendants and the Office of Thrift Supervision in connection with the issuance of those securities and the purported transfer of those securities in 2008.  The ownership of any other securities, investments or contracts by Plaintiffs is entirely irrelevant to the questions of title to the Trust Preferred Securities that are at issue in the Adversary Proceeding.  General investment advisory agreements, in addition to being confidential, related to other securities is even further removed, and not reasonably calculated to lead to the discovery of admissible evidence in the Adversary Proceeding.

**REQUEST NO. 11**  All Communications between Plaintiffs and WMI, WMB, WMPF, Washington Mutual Preferred Funding (Cayman) I, Ltd., Washington Mutual Preferred Funding Trust I, Washington Mutual Preferred Funding Trust II, Washington Mutual Preferred Funding Trust III and Washington Mutual Preferred Funding Trust IV, and all documents concerning such communications.

**RESPONSE NO. 11**

Black Horse objects to this request on the grounds that it is overly broad and unduly burdensome.  Subject to, and without waiving, these objections and the foregoing General

Objections, Black Horse will produce any documents responsive to this request that are in its possession, custody or control.

**REQUEST NO. 12**   All documents concerning your communications about the Trust Preferred Securities with any person, including any communications with your financial representatives, securities dealers or brokers, financial or investment advisors, research analysts, or investors.

**RESPONSE NO. 12**

Black Horse objects to this request on the grounds that it is overly broad and unduly burdensome. Subject to, and without waiving, these objections and the foregoing General Objections, Black Horse will agree to conduct a reasonable search for non-privileged documents responsive to this request that are in its possession, custody or control.

**REQUEST NO. 13**   All documents concerning any communications between you and any other Plaintiff in the Action or any plaintiff or potential plaintiff in any other actual or potential litigation involving the Trust Preferred Securities.

**RESPONSE NO. 13**

Black Horse objects to this request on the grounds that it is overly broad and unduly burdensome. Black Horse further objects to this request on the grounds that it calls for the production of documents subject to the attorney-client privilege, the common interest privilege, and to the work product protection.

**REQUEST NO. 14**   All documents concerning your communications with any person about WMI, WMB, the Office of Thrift Supervision, the Conditional Exchange feature described in ¶ 60 of the Complaint, or the treatment of the Trust Preferred Securities as "Tier 1 capital" or "core capital" by any federal regulator or WMI.

**RESPONSE NO. 14**

Black Horse objects to this request on the grounds that it is overly broad and unduly burdensome. Black Horse further objects to this request on the grounds that it calls for the production of documents subject to the attorney-client, privilege, the common interest privilege, and to the work product protection. Subject to, and without waiving, these objections and the foregoing General Objections, Black Horse will produce any non-privileged documents responsive to this request that are in its possession, custody or control.

**REQUEST NO. 15**  All documents concerning the investment policies, procedures, practices, guidelines or criteria governing investments or investment decision made by or on behalf of any of the Plaintiffs including, but not limited to all documents concerning:  (a) investment objectives of Plaintiffs; (b) permissible investments by or on behalf of Plaintiffs; (c) risk analysis or risk evaluation with respect to the purchase, holding or sale of securities by or on behalf of Plaintiffs; (d) Plaintiffs' risk tolerance with respect to the purchase, holding or sale of securities; and (e) the use of risk consultants with respect to the purchase, holding or sale of securities by or on behalf of Plaintiffs.

**RESPONSE NO. 15**

Black Horse objects to this request on the grounds that it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and only meant to annoy and oppress Black Horse. In particular, the claims raised in this Adversary Proceeding relate to the title and/or transfer of title to one particular class of securities, the Trust Preferred Securities, and the conduct of certain of the Defendants and the Office of Thrift Supervision in connection with the issuance of those securities and the purported transfer of those securities in 2008. The investment policies, procedures, practices, guidelines or criteria

governing investments, in addition to being confidential, are entirely irrelevant to the questions of title to the Trust Preferred Securities that are at issue in the Adversary Proceeding.

**REQUEST NO. 16** All documents concerning the investment policies, procedures, practices, guidelines or criteria governing investments or investment decisions made by or on behalf of any of the Plaintiffs related to (a) any security containing an exchange provision by which the security is to be exchanged with another if certain events occur; and (b) any security that directly or indirectly draws value from the assets of a federally regulated bank or thrift and that is treated as "Tier 1 capital" or "core capital."

**RESPONSE NO. 16**

Black Horse objects to this request on the grounds that it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and only meant to annoy and oppress Black Horse. In particular, the claims raised in this Adversary Proceeding relate to the title and/or transfer of title to one particular class of securities, the Trust Preferred Securities, and the conduct of certain of the Defendants and the Office of Thrift Supervision in connection with the issuance of those securities and the purported transfer of those securities in 2008. The investment policies, procedures, practices, guidelines or criteria governing investments or investment decisions, in addition to being confidential, are entirely irrelevant to the questions of title to the Trust Preferred Securities that are at issue in the Adversary Proceeding. Such policies, to the extent they relate to other securities or investments are even further removed, and not reasonably calculated to lead to the discovery of admissible evidence in the Adversary Proceeding.

**REQUEST NO. 17** For each Plaintiff; documents sufficient to show:

(a)     quarter-end portfolio holdings for all Trust Preferred Securities from February 24, 2006 until the present;

(b)     all trading activity for all Trust Preferred Securities purportedly owned by the Plaintiff from February 24, 2006 until the present, including (i) the purchase price Plaintiff actually paid for each and any of the Trust Preferred Securities purportedly owned; (ii) the identity of the person or entity from which Plaintiff purportedly purchased each and any of the Trust Preferred Securities; (iii) the date of each and any purported purchase of the Trust Preferred Securities;

(c)     all hedging activity for all Trust Preferred Securities purportedly owned by the Plaintiff from February 24, 2006 until the present; and

(d)     all trading activity for all positions in WMB or WMI-Related Securities, Investments or Contracts, including (i) the purchase price Plaintiff actually paid for each and any of the WMB or WMI-Related Securities, Investments or Contracts; (ii) the identity of the person or entity from which Plaintiff purchased each and any of the WMB or WMI-Related Securities, Investments or Contracts; (iii) the date of each and any purchase of the WMB or WMI-Related Securities, Investments or Contracts.

**RESPONSE NO. 17**

Black Horse objects to this request on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Black Horse objects to subsection (a) because it is duplicative of Request No. 3, and to the extent it seeks portfolio information related to securities and/or investments other than the Trust Preferred Securities, it is overly broad and not reasonably calculated to lead to the discovery of

19

admissible evidence. Black Horse further objects to this request on the grounds that subsection (b) is duplicative of Request No. 3. Black Horse also objects to this request on the grounds that the phrase "hedging activity" in subsection (c) is vague, and on the grounds that the documents requested in subsection (d) are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 18**   All documents concerning any agreements, contracts or understandings between and/or among any of the Plaintiffs and any person concerning any Trust Preferred Securities or WMB or WMI-Related Securities, Investments or Contracts at any time.

**RESPONSE NO. 18**

Black Horse objects to this request on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. In particular, the claims raised in this Adversary Proceeding relate to the title and/or transfer of title to one particular class of securities, the Trust Preferred Securities, and the conduct of certain of the Defendants and the Office of Thrift Supervision in connection with the issuance of those securities and the purported transfer of those securities in 2008. The ownership of any other securities, investments or contracts by Plaintiffs is entirely irrelevant to the questions of title to the Trust Preferred Securities that are at issue in the Adversary Proceeding. Black Horse further objects to this request on the grounds that the phrase "any agreements, contracts or understandings between and/or among any of the Plaintiffs and any person" is vague.

**REQUEST NO. 19**   All documents concerning the amount of loss or damage allegedly suffered by you, by reason of any matter or allegation set forth in the Complaint, or concerning the method of calculating that alleged loss or damage.

**RESPONSE NO. 19**

Black Horse objects to this request on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence. Counts VII-IX of the Adversary Complaint are the Plaintiffs' only claims for damages, and those claims have been stayed by agreement and court order.

**REQUEST NO. 20**   All documents concerning any action brought against you, or against any entity of which you are or were an owner, director, officer, employee, or agent, at any time, in a federal or state court, and any other arbitrations, claims, or complaints in any forum, brought against you or against any entity of which you are or were an owner, director, officer, employee, or agent.

**RESPONSE NO. 20**

Black Horse objects to this request on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. The existence or non-existence of any other action is entirely irrelevant to the questions of title to the Trust Preferred Securities, and this request is only intended to annoy and harass the respondents.

**REQUEST NO. 21**   Documents sufficient to show all email accounts, email addresses, and domain names, used by you or on your behalf, and web sites created, hosted, operated, or maintained by you or on your behalf, whether for personal use or for business, as well as the names and addresses of all Internet Service Providers or other providers of servers or other information management hardware, software, or services relating to those email accounts, email addresses, domain names, and web sites.

**RESPONSE NO. 21**

Black Horse objects to this request on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. In

particular, this request seeks documents from the personal email accounts of seemingly all employees of the respondent, which is incredibly overbroad and would only serve to harass and annoy the respondents and their employees. Additionally, the names and address of all Internet Service Providers or other providers of servers, hardware, software or services apparently relating to all email and other accounts of all employees, including personal accounts and web sites, are entirely irrelevant, and such information is only requested to harass and/or annoy the respondents.

**REQUEST NO. 22**  All documents upon which any Plaintiff relies in answering the interrogatories below.

**RESPONSE NO. 22**

Black Horse will produce any non-privileged, responsive documents that are within its possession custody or control.

## SPECIFIC OBJECTIONS AND RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1**  Describe each Plaintiff by setting forth:

(a)    its name (including any name under which it has done business since February 24, 2006);

(b)    its address and/or the address of each of its offices;

(c)    the date and location of its organization, incorporation and/or commencement of business;

(d)    the business in which it is engaged; and

(e)    the identity of each of its subsidiaries or affiliates.

## ANSWER NO. 1

Black Horse objects to this interrogatory on the grounds that it is overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Black Horse objects to this interrogatory on the grounds that the information requested in subsections (c)–(e) is not reasonably calculated to lead to the discovery of admissible evidence. The claims raised in this Adversary Proceeding relate to the title and/or transfer of title to one particular class of securities, the Trust Preferred Securities, and the conduct of certain of the Defendants and the Office of Thrift Supervision in connection with the issuance of those securities and the purported transfer of those securities in 2008. Information related to the respondent's business and/or the identity of any subsidiaries or affiliates who are not parties to this action is entirely irrelevant to the questions of title raised in the Adversary Proceeding. Subject to, and without waiving, these objections and the foregoing General Objections, Black Horse states that its principal places of business are as follows:

Black Horse Capital LP and Black Horse Capital (QP) LP
383 S. Sharon Amity Rd., #202
Charlotte, NC 28211

Black Horse Capital Master Fund Ltd.
c/o Maples Corporate Services Limited
P.O. Box 309GT
Ugland House, South Church Street
George Town, Grand Cayman
Cayman Islands

**INTERROGATORY NO. 2**   Identify any person or entity (including, but not limited to, any person or entity affiliated with, employed by or associated with Plaintiffs) who considered, evaluated and/or made a decision to purchase or sell or otherwise acquire or transfer Trust Preferred Securities, and for each such person or entity, provide a description of what he, she, or it did with respect to the decision to purportedly purchase or sell or otherwise acquire or transfer the Trust Preferred Securities.

**ANSWER NO. 2**

Black Horse objects to this interrogatory on the grounds that it is overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Subject to, and without waiving, these objections and the foregoing General Objections, Black Horse states that Dale B. Chappell of Black Horse advisors considered, evaluated and/or made a decision to purchase or sell or otherwise acquire or transfer the Trust Preferred Securities.

**INTERROGATORY NO. 3**   For each sale, purchase, other acquisition or transfer of Trust Preferred Securities made by Plaintiffs between February 24, 2006 and the present, identify:

(f)   the person or entity (including, but not limited to any corporation, employee benefit plan, investment fund, mutual fund, private investor, endowment or foundation) on whose behalf Trust Preferred Securities were purportedly purchased or sold or otherwise acquired or transferred;

24

(g)    the specific type and number of Trust Preferred Securities purportedly purchased, sold or otherwise acquired or transferred;

(h)    the date on which the Trust Preferred Securities were purportedly purchased, sold or otherwise acquired or transferred;

(i)    the price of the Trust Preferred Securities at the time of the purported purchase, sale or other acquisition or transfer in the native currency of the market on which the Trust Preferred Securities were purchased sold or otherwise acquired or transferred;

(j)    your accounting treatment of the Trust Preferred Securities purportedly purchased, sold or otherwise acquired or transferred;

(k)    the reason(s) for which the Trust Preferred Securities were purportedly purchased, sold or otherwise acquired or transferred, including, but not limited to the identification of any research materials and/or other documents (whether prepared by the Plaintiff or others) upon which the Plaintiff relied in making those transactions; and

(l)    the persons with knowledge about the information provided in response to subparagraphs (a) — (f) above.

## ANSWER NO. 3

Black Horse objects to this interrogatory on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Black Horse objects to this interrogatory on the grounds that the information requested in subsections (e)-(f) is not reasonably calculated to lead to the discovery of admissible evidence. The claims raised in this Adversary Proceeding relate to the title and/or transfer of title to one particular class of securities, the Trust Preferred Securities, and the conduct of certain of the Defendants and the Office of Thrift Supervision in connection with the issuance of those

securities and the purported transfer of those securities in 2008. Any questions related to the accounting treatment and/or reasons for purchasing the Trust Preferred Securities are entirely irrelevant to the questions of title raised in the Adversary Proceeding. Subject to, and without waiving, these objections and the foregoing General Objections, and pursuant to Fed. R. Civ. P. 33(d), Black Horse refers to the documents to be produced in response to Document Request No. 3.

**INTERROGATORY NO. 4**  Identify any person or entity (including, but not limited to, any person or entity affiliated with, employed by or associated with any of the Plaintiffs), brokerage firm, stockbroker, investment committee, or other investment advisor involved in the purchase, sale or other acquisition or transfer of Trust Preferred Securities by or on behalf of any of the Plaintiffs, and for each such person or entity, provide a description of what he, she, or it did with respect to the decision to purportedly purchase, sell, acquire or transfer the Trust Preferred Securities.

### ANSWER NO. 4

Black Horse objects to this interrogatory on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. The claims raised in this Adversary Proceeding relate to the title and/or transfer of title to one particular class of securities, the Trust Preferred Securities, and the conduct of certain of the Defendants and the Office of Thrift Supervision in connection with the issuance of those securities and the purported transfer of those securities in 2008. The identity of third parties involved in the purchase and/or sale of the securities, aside from Defendants, is entirely irrelevant to the conduct of the Defendants in the issuance, and the subsequent conduct of the Defendants in connection with the subsequent purported transfer of the Trust Preferred Securities

in 2008. Subject to, and without waiving, these objections and the foregoing General Objections, Black Horse refers to its Answer to Interrogatory No.2.

**INTERROGATORY NO. 5**   Identify any person or entity (including, but not limited to, any person or entity affiliated with, employed by or associated with any of the Plaintiffs) that considered, evaluated and/or made a decision to purchase or sell or otherwise acquire or transfer WMB or WMI-Related Securities, Investments or Contracts, and for each such person or entity, provide a description of what he, she, or it did with respect to the decision to purchase or sell or otherwise acquire or transfer the Trust Preferred Securities.

### ANSWER NO. 5

Black Horse objects to this interrogatory on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. In particular, the claims raised in this Adversary Proceeding relate to the title and/or transfer of title to one particular class of securities, the Trust Preferred Securities, and the conduct of certain of the Defendants and the Office of Thrift Supervision in connection with the issuance of those securities and the purported transfer of those securities in 2008. The ownership of any other securities, investments or contracts by Plaintiffs, and the identity of all persons involved in any such investment are entirely irrelevant to the questions of title to the Trust Preferred Securities that are at issue in the Adversary Proceeding.

**INTERROGATORY NO. 6**   For each sale, purchase, other acquisition or transfer of WMB or WMI-Related Securities, Investments or Contracts, identify:

(m)   the person or entity (including, but not limited to any corporation, employee benefit plan, investment fund, mutual fund, private investor, endowment or foundation) on

whose behalf WMB or WMI-Related Securities, Investments or Contracts were purchased or sold or otherwise acquired or transferred;

(n)     the specific type and number of WMB or WMI-Related Securities, Investments or Contracts purchased, sold or otherwise acquired or transferred;

(o)     the date on which the WMB or WMI-Related Securities, Investments or Contracts were purchased, sold or otherwise acquired or transferred;

(p)     the specific market on which the WMB or WMI-Related Securities, Investments or Contracts were purchased, sold or otherwise acquired or transferred;

(q)     the price of the WMB or WMI-Related Securities, Investments or Contracts at the time of the purchase, sale or other acquisition or transfer in the native currency of the market on which the Trust Preferred Securities were purchased sold or otherwise acquired or transferred;

(r)     your accounting treatment of the WMB or WMI-Related Securities, Investments or Contracts purchased, sold or otherwise acquired or transferred; and

(s)     the reason(s) for which the WMB or WMI-Related Securities, Investments or Contracts were purchased, sold or otherwise acquired or transferred, including, but not limited to the identification of any research materials and/or other documents (whether prepared by the Plaintiff or others) upon which the Plaintiff relied in making those transactions.

**ANSWER NO. 6**

Black Horse objects to this interrogatory on the grounds that it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and only intended to annoy and oppress Black Horse. In particular, the claims raised in this Adversary Proceeding relate to the title and/or transfer of title to one particular class of securities, the Trust

28

Preferred Securities, and the conduct of certain of the Defendants and the Office of Thrift Supervision in connection with the issuance of those securities and the purported transfer of those securities in 2008. The ownership, accounting treatment, decisions, policies and persons involved in any investment in other securities, investments or contracts, are facts entirely irrelevant to the questions of title to the Trust Preferred Securities that are at issue in the Adversary Proceeding.

**INTERROGATORY NO. 7**  Identify each individual who supplied information for and/or participated in the preparation of Plaintiffs' answers to these interrogatories.

**ANSWER NO. 7**

In addition to legal counsel, the following person(s) participated in the preparation of these answers:

Dale B. Chappell
Black Horse Capital Advisors

Respectfully Submitted,

As to the Answers to Interrogatories:

_Dale Chappell_
Dale B. Chappell

As to the General Objections, the Specific Objections and Responses to Document Requests, and the Specific Objections to the Interrogatories,

BROWN RUDNICK LLP
Robert J. Stark, Esq.
Sigmund Wissner-Gross, Esq.
Seven Times Square
New York, NY 10036
(212) 209-4800
(212) 209-4801 (fax)

– and –

James W. Stoll, Esq.
Jeremy B. Coffey, Esq.
Daniel J. Brown, Esq.
One Financial Center
Boston, MA 02111
(617) 856-8200
(617) 856-8201 (fax)

– and –

**CAMPBELL & LEVINE LLC**
Marla Rosoff Eskin, Esq. (DE 2989)
Bernard G. Conaway, Esq. (DE 2856)
Kathleen Campbell Davis, Esq. (DE 4229)
800 North King Street, Suite 300
Wilmington, DE 19809
(302) 426-1900
(302) 426-9947 (fax)

Dated: September 27, 2010

*Counsel for Black Horse Capital LP and Black Horse Capital (QP) LP, and Black Horse Capital Master Fund Ltd.*

# 1773078

# EXHIBIT C

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| WASHINGTON MUTUAL, INC., *et al.*, | Case No. 08-12229 (MFW) |
| Debtors | Jointly Administered |

## VERIFIED SECOND AMENDED STATEMENT OF BROWN RUDNICK LLP AND CAMPBELL & LEVINE LLC PURSUANT TO RULE 2019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE

1.      Brown Rudnick LLP ("Brown Rudnick") and Campbell & Levine LLC ("Campbell & Levine", and together with Brown Rudnick, "Counsel"), in connection with their representation of the Trust Preferred Holders (as defined below), hereby submit this amended statement in accordance with Rule 2019 of the Federal Rules of Bankruptcy Procedure ("Rule 2019").

2.      Brown Rudnick, as lead counsel, and Campbell & Levine, as Delaware counsel, currently represent the below-listed parties (together, the "Trust Preferred Holders"): (a) who have been classified for treatment under Class 19 of the Debtors' currently-proposed plan of reorganization (the "Plan") [D.I. 4850]; and (b) who each hold interests in securities described by the Debtors as constituting the "REIT Series" under the Plan.

**683 Capital Partners, LP**
595 Madison Ave., 17th Floor
New York, New York, 10022

**Black Horse Capital LP**
338 S. Sharon Amity Rd. #202
Charlotte, NC 28211

**Black Horse Capital Master Fund Ltd**
c/o M&C Corporate Services Limited
P.O. Box 309GT
Ugland House, South Church Street
George Town, Grand Cayman
Cayman Islands

**Black Horse Capital (QP) LP**
338 S. Sharon Amity Rd. #202
Charlotte, NC 28211

{D0184010.1 }

1

**Greywolf Capital Partners II**
4 Manhattanville Road, Suite 201
Purchase, NY, 10577

**Greywolf Overseas Fund**
c/o Greywolf Capital Management LP
4 Manhattanville Road, Suite 201
Purchase, NY, 10577

**Guggenheim Portfolio Company VII, LLC**
660 Madison Avenue 20th Floor
New York, NY 10021

**HFR RVA Combined Master Trust**
3033 Excelsior Boulevard, Suite 300
Minneapolis, MN 55416

**IAM Mini-Fund 14 Limited**
3033 Excelsior Boulevard, Suite 300
Minneapolis, MN 55416

**LMA SPC for and on behalf of the MAP 89 Segregated Portfolio**
c/o Pine River Capital Management L.P.
601 Carlson Parkway, Suite 330
Minnetonka, MN 55305

**Lonestar Partners, LP**
One Maritime Plaza
Suite 1105
San Francisco, CA 94111

**Mariner LDC**
c/o Riva Ridge Capital Management LP
55 5th Ave, 18th Floor
New York, NY 10003

**Nisswa Convertibles Master Fund Ltd.**
c/o Pine River Capital Management L.P.
601 Carlson Parkway, Suite 330
Minnetonka, MN 55305

**Nisswa Fixed Income Master Fund Ltd.**
c/o Pine River Capital Management L.P.
601 Carlson Parkway, Suite 330
Minnetonka, MN 55305

**Nisswa Master Fund Ltd.**
c/o Pine River Capital Management L.P.
601 Carlson Parkway, Suite 330
Minnetonka, MN 55305

**Paige Opportunity Partners LP**
630 3rd Avenue, 6th Floor
New York, NY 10017

**Paige Opportunity Partners Master Fund**
630 3rd Avenue, 6th Floor
New York, NY 10017

**Pandora Select Partners, LP**
3033 Excelsior Boulevard, Suite 300
Minneapolis, MN 55416

**Pines Edge Value Investors Ltd.**
c/o Pine River Capital Management L.P.
601 Carlson Parkway, Suite 330
Minnetonka, MN 55305

**Riva Ridge Master Fund, Ltd.**
c/o Riva Ridge Capital Management LP
55 5th Ave, 18th Floor
New York, NY 10003

**Scoggin Capital Management II LLC**
660 Madison Avenue 20th Floor
New York, NY 10021

**Scoggin International Fund Ltd**
660 Madison Avenue 20th Floor
New York, NY 10021

**Scoggin Worldwide Fund Ltd**
660 Madison Avenue 20th Floor
New York, NY 10021

**Visium Global Master Fund, Ltd.**
950 Third Avenue, 29th Floor
New York, NY 10022

**VR Global Partners, L.P.**
c/o Admiral Administration Ltd
Admiral Financial Center
5th Floor, 90 Fort Street
P.O. Box 32021 SMB
George Town, Grand Cayman, KY1-1208
Cayman Islands

**Whitebox Asymmetric Partners LP**
3033 Excelsior Boulevard, Suite 300
Minneapolis, MN 55416

**Whitebox Combined Partners, LP**
3033 Excelsior Boulevard, Suite 300
Minneapolis, MN 55416

**Whitebox Convertible Arbitrage Partners, LP**
3033 Excelsior Boulevard, Suite 300
Minneapolis, MN 55416

**Whitebox Hedged High Yield Partners, LP**
3033 Excelsior Boulevard, Suite 300
Minneapolis, MN 55416

**Whitebox Special Opportunities Fund LP, Series B**
3033 Excelsior Boulevard, Suite 300
Minneapolis, MN 55416

3.       Although each individual Trust Preferred Holder has hired Counsel to represent its interests and to enable the individual parties to be heard in a more efficient and cost-effective manner in these cases, each Trust Preferred Holders makes its own decisions as to how it wishes to proceed and does not act for, or purport to represent or speak on behalf of, any other Trust Preferred Holder or any other holder of the REIT Series.  It is anticipated that the identities and/or holdings of the Trust Preferred Holders may change from time to time.

4.       Counsel has been advised by the Trust Preferred Holders that, as of the date hereof, they hold, in the aggregate, $1,102,637,000.00 in face amount of securities (based on stated liquidation preference) described in the Plan as the REIT Series.

5.       The Trust Preferred Holders include both holders that acquired their interests before Washington Mutual Bank, Henderson, Nevada ("WMB") was put into receivership and the Debtors filed for bankruptcy, and holders that acquired their interests after WMB was put into receivership and the Debtors filed for bankruptcy.  The Trust Preferred Holders acquired their respective interests in the securities described by the Debtors as constituting the REIT

Series during the time period between November 26, 2007 and July 22, 2010 at the price ranges set forth below:

| Security Description | Purchase Price Range[1] |
|---|---|
| WASHINGTON MUTUAL PFD 6.534% | 1.00 – 60.25 |
| WASHINGTON MUTUAL 6.665% | 1.00 – 59.00 |
| WASHINGTON MUTUAL PFD 6.895% | 1.00 – 67.50 |
| WASHINGTON MUTUAL PFD 7.25% | 2.9375 – 5.00 |
| WASHINGTON MUTUAL PFD 9.75% | 1.00 – 6.25 |

6.      Additionally, Counsel has been advised by the Trust Preferred Holders that, as of the date hereof, they hold, in the aggregate: (i) $92,750,000.00 in total face amount of other notes issued by Washington Mutual, Inc. ("WMI") and WMB denominated in U.S. Dollars, which the respective holders acquired during the time period between September 11, 2008 and June 2, 2010; and (ii) €7,000,000 in total face amount of other notes issued by WMI and WMB denominated in Euros, which the respective holders acquired during the time period between January 22, 2009 and April 9, 2010.  The Trust Preferred Holders acquired their respective interests in these securities at the price ranges set forth below:

| CUSIP or Symbol | Description | Purchase Price Range[2] |
|---|---|---|
| EF9328248 | WMB 5.50% SR. SUBS. (GBP) | .0625 USD |
| 93933VBC1 | WMB SUBORDINATED NOTES 6.75% 5/20/2036 | 40 – 42 USD |
| 93933VAZ1 | WMB L+9.0 bps FRN 2010 | 41.50 – 50.625 USD |
| 939322AE3 | WASHINGTON MUTUAL, INC. 8.25% SR. SUB. NOTES | 98 USD |
| 93933VAS7 | WM 5 ½ 01/15/13 | 0.350 USD |
| 93933WAC0 | WM 5 1/8 01/15/15 | 0.350 USD |
| 93933VBC1 | WM 6 ¾ 05/20/36 | 0.350 USD |
| XS0266770840 | WASHINGTON MUTUAL 3M EURIBOR+20 08-SEP-2011 (EUR) | 24.5 – 47.75 EUR |

---

[1]     In cents paid on the dollar based on the stated liquidation preference of the particular securities.
[2]     In cents paid on the dollar or Euro, as applicable, based on the face amount of the particular securities.

7. Further, Counsel has been advised by the Trust Preferred Holders that, as of the date hereof, they hold, in the aggregate: (i) 770,339 shares of securities referred to in the Plan as the "PIERS," which the respective holders acquired during the time period between December 17, 2009 and July 7, 2010 at prices ranging from approximately $22.00 to $27.925 per share; and (ii) 4,730,315 warrants referred to in the Plan as the "Dime Warrants," which the respective holders acquired during the time period between April 26, 2010 and July 20, 2010 at prices ranging from $0.315 – $0.5032 per warrant.

8. Counsel does not presently own, nor has it previously owned, any claims against, or interests in, the Debtors.

9. The undersigned declares under penalty of perjury that the foregoing is true and correct.

Dated: July 26, 2010

**CAMPBELL & LEVINE LLC**

/s/ Kathleen Campbell Davis
Marla Rosoff Eskin, Esq. (DE 2989)
Bernard G. Conaway, Esq. (DE 2856)
Kathleen Campbell Davis, Esq. (DE 4229)
800 North King Street, Suite 300
Wilmington, DE 19809
(302) 426-1900
(302) 426-9947 (fax)

- and -

**BROWN RUDNICK LLP**
Sigmund S. Wissner-Gross
Robert J. Stark
Seven Times Square
New York, New York 10036
(212) 209-4800

- and -

Jeremy B. Coffey
James W. Stoll
Daniel J. Brown
One Financial Center
Boston, MA 02111
(617) 856-8200

*Counsel to Trust Preferred Holders*