# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

_____ x

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
|  | : | Case No. 08-12229 (MFW) |
| WASHINGTON MUTUAL, INC., et al., | : |  |
|  | : |  |
| Debtors | : | Jointly Administered |

_____ x

Black Horse Capital LP, Black Horse Capital Master : 
Fund Ltd., Black Horse Capital (QP) LP, Greywolf :
Capital Partners II, Greywolf Overseas Fund, :
Guggenheim Portfolio Company VII, LLC, HFR RVA :
Combined Master Trust, IAM Mini-Fund 14 Limited, :   Adversary Proceeding
LMA SPC for and on behalf of the MAP 89 Segregated :   No. 10-51387 (MFW)
Portfolio, Lonestar Partners LP, Mariner LDC, Nisswa :
Convertibles Master Fund Ltd., Nisswa Fixed Income :
Master Fund Ltd., Nisswa Master Fund Ltd., Paige :
Opportunity Partners LP, Paige Opportunity Partners :
Master Fund, Pandora Select Partners, LP, Pines Edge :
Value Investors Ltd, Riva Ridge Capital Management :
LP, Riva Ridge Master Fund, Ltd., Scoggin Capital :
Management II LLC, Scoggin International Fund Ltd., :
Scoggin Worldwide Fund Ltd., Visium Global Fund, :
Ltd., VR Global Partners, L.P. Whitebox Asymmetric :
Partners LP, Whitebox Combined Partners, LP, :
Whitebox Convertible Arbitrage Partners, LP, Whitebox :
Hedged High Yield Partners, LP and Whitebox Special :
Opportunities LP, Series B, :

     Plaintiffs :

v. :

JPMorgan Chase Bank, N.A., Washington Mutual, Inc., :
Washington Mutual Preferred Funding, LLC, :
Washington Mutual Preferred Funding (Cayman) I Ltd., :
Washington Mutual Preferred Funding Trust I, :
Washington Mutual Preferred Funding Trust II, :
Washington Mutual Preferred Funding Trust III, :
Washington Mutual Preferred Funding Trust IV :

     Defendants. :

_____ x

**NOTICE OF DEPOSITION OF WILMINGTON TRUST COMPANY**
**<u>BY RULE 30(b)(6) REPRESENTATIVE</u>**

TO:    Wilmington Trust Company
       Attn: Allison Berl
       One Rodney Square North
       1100 North Market Street
       0500-WTC-3
       Wilmington, Delaware 19890-1615

PLEASE TAKE NOTICE that, pursuant to Rule 30 of the Federal Rules of Civil Procedure and Rules 7030 and 9014 of the Federal Rules of Bankruptcy Procedure, the Plaintiffs in the above-captioned adversary proceeding, by and through their undersigned attorneys, will take the deposition of a designated representative of Wilmington Trust Company pursuant to Fed. R. Civ. P. 30(b)(6). Fed. R. Civ. P. 30(b)(6) requires the deponent to designate one or more officers, directors, managing agents or other persons with the most particularized knowledge as to the matters listed on <u>Schedule A</u>, Documents To Be Produced, and <u>Schedule B</u>, Topics Of Inquiry. The deposition will take place on **November 16, 2010, at 10 a.m.** at the offices of **Campbell & Levine LLC, 800 North King Street, Suite 300, Wilmington, DE 19801** and will continue from day to day thereafter until complete. The deposition will be taken before an authorized court reporter or other officer authorized by law to administer oaths and will be recorded by stenographic means. The deposition will be taken according to the Federal Rules of Bankruptcy Procedure for the purpose of discovery, use as evidence at any hearing or trial, or any other purpose allowed by law.

Dated: Wilmington, Delaware
October 12, 2010

**CAMPBELL & LEVINE LLC**

_____

Marla Rosoff Eskin, Esq. (DE 2989)
Bernard G. Conaway, Esq. (DE 2856)
Kathleen Campbell Davis, Esq. (DE 4229)
800 North King Street, Suite 300
Wilmington, DE 19809
(302) 426-1900
(302) 426-9947 (fax)

– and –

**BROWN RUDNICK LLP**
Robert J. Stark, Esq.
Sigmund Wissner-Gross, Esq.
Seven Times Square
New York, NY 10036
(212) 209-4800
(212) 209-4801 (fax)

– and –

Jeremy B. Coffey, Esq.
James W. Stoll, Esq.
Daniel J. Brown, Esq.
One Financial Center
Boston, MA 02111
(617) 856-8200
(617) 856-8201 (fax)

_Counsel to Plaintiffs_

# SCHEDULE A—DOCUMENTS TO BE PRODUCED

## I.    DEFINITIONS

1.    "<u>Communication</u>" means any oral or written utterance, notation, or statement of any nature whatsoever between or among two or more persons, by or to whomsoever made, and including, without limitation, correspondence, documents, conversations, dialogues, discussions, e-mails, interviews, consultations, agreements, and other understandings.

2.    "<u>Document</u>" means any printed, written, typed, recorded, transcribed, taped, photographic, or graphic matter, however produced or reproduced, including but not limited to: any letter, correspondence, or communication of any sort; film, print or negative of photograph; sound recording, video recording; note, notebook, diary, calendar, minutes, memorandum, contract, agreement, or any amendment thereto; telex, telegram, cable; summary, report or record of telephone conversation, voice mail or voice mail back-up, personal conversation, discussion, interview, meeting, conference, investigation, negotiation, act or activity; projection, work paper, or draft; computer or computer network output or input, hard or floppy disc, electronic mail, magnetic and/or optical medias, archived or back up data on any of these medias, and documents that have been deleted but are recoverable from any of these medias; opinion or report of consultant; request, order, invoice or bill of lading; analysis, diagram, map, index, sketch, drawing, plan, chart, manual, brochure, pamphlet, advertisement, circular, newspaper or magazine clipping, press release; receipt, journal, ledger, schedule, bill, or voucher; financial statement, statement of account, bank statement, checkbook, stubs, or register, canceled check, deposit slip, charge slip, tax return (income or other), requisition; file, study, graph, tabulation, and any and all other writings and recordings of whatever nature, whether signed or unsigned or transcribed, and any other data compilation from which information can be obtained, translated, if necessary, by the respondent through detection devices into reasonably usable form.

3.    "<u>Referring to, relating to, evidencing or constituting</u>" means containing, comprising, embodying, mentioning, indicating, supporting, proving, showing, relating, or referring in any way, in whole or in part, including, but not limited to documents underlying, supporting, currently or previously attached or appended to, or used in the preparation of any document called for by the request.

4.    "<u>You</u>" and "<u>Your</u>" mean and refer to the Wilmington Trust Company and any current or former affiliates or subsidiaries, or any of their members, officers, directors, representatives, employees, agents, consultants, accountants, attorneys, financial advisors, predecessors, successors, assigns and any other person currently or formerly acting or purporting to act on behalf of Wilmington Trust Company for any purpose whatsoever.

# II.   <u>INSTRUCTIONS</u>

5.     The words "and" and "or" are to be construed both conjunctively and disjunctively. The singular form of a noun or pronoun includes the plural form and vice versa. The word "all" shall also include "each of," and vice versa.

6.     To the extent that You have not already produced the documents requested below, You are requested to produce all responsive documents in Your possession, custody or control, wherever located, including, without limitation, those in the custody of Your representatives and affiliates.

7.     Unless otherwise stated in a specific request herein, the time period covered by the following requests is the period between September 1, 2008, through and including the present.

8.     If any part of the following requests cannot be responded to in full, please respond to the extent possible, specifying the reason(s) for Your inability to respond to the remainder and stating whatever information or knowledge You have concerning the portion to which You do not respond.

9.     If there are no documents responsive to any particular request, please state so in writing.

10.    Where any copy of any document whose production is sought herein, whether a draft or final version, is not identical to any copy thereof, by reason of alterations, notes, comments, initials, underscoring, indication of routing, or other material contained thereon or attached thereto, all such non-identical copies are to be produced separately.

11.    If any document requested herein was formerly in Your possession, custody or control (or that of Your representative) and has been lost or destroyed or otherwise disposed of, You are requested to submit in lieu of any such document a written statement (a) describing in detail the nature of the document and its contents, (b) identifying the person(s) who prepared or authored the document and, if applicable, the person(s) to whom the document was sent, (c) specifying the date on which the document was prepared or transmitted, and (d) specifying the date on which the document was lost or destroyed and, if destroyed, the conditions of and reasons for such destruction and the person(s) requesting and performing the destruction.

12.    Hard copies of all documents should be produced; in addition, copies of all documents available electronically – except for spreadsheets, presentations, and audio or video files – shall be produced as black and white, single-page TIFF image files, with accompanying Concordance/Opticon load files that shall preserve any parent-child relationships between or among electronic documents (including attachment ranges of email files).  All electronically stored information associated with each responsive electronic document shall be produced in

files corresponding to the images for those documents and shall contain any custodial information associated with the documents, and shall further contain all metadata and electronic components of the information relating to or comprising such documents, including all information concerning the date(s) the document was created, modified, or distributed, the author(s) and recipient(s) (including each person copied or blind copied on any email or correspondence), any text associated with the document (provided in individual text files on a document level, *i.e.*, multi-page format), the subject or title of the document, and any other available metadata fields. Spreadsheets (including "Excel" or "XLS" files), presentations (including " PowerPoint" or "PPT" files), and audio or video files (including "MPG," "MPEG," "MP3" or "AVI" files) shall be produced in their native format.

13. A request for any document shall be deemed to include a request for any and all transmittal sheets, cover letters, exhibits, enclosures, or attachments to such document, in addition to the document in its full and unexpurgated form.

14. Documents should be segregated according to the number of the request to which You are responding or produced in the manner they are kept in the ordinary course of business. Documents attached to each other should not be separated.

15. Each request for documents herein includes a request for exact copies of all disks, CDs, DVDs and other removable media containing any information responsive to such request. Electronic records and computerized information should be produced in an intelligible format or together with a sufficient description of the system or program from which each was derived to permit rendering the material legible.

14. If You claim any form of privilege or immunity, whether based on statute or otherwise, as a ground for not responding to a request contained in this Schedule A:

      a. State the nature of the privilege or immunity claimed (i.e., attorney/client, work product, etc.);

      b. State the basis for claiming the privilege or immunity as to the specific information or documents; and

      c. State the date of such document; identify the type of document (i.e., letter, memo, etc.); set forth the subject matter thereof, identify each person who prepared it and each person (if any) who signed it; identify each person to whom it was directed, circulated or shown; and identify each person now in possession of the document.

15. In the event that any document requested herein was formerly in Your possession, custody or control, and has been lost, destroyed or otherwise disposed of, You are requested to

furnish a list identifying each such document and stating the following information with respect to each such document:

    a.    The document's title, if any, and the nature and subject matter of its contents;

    b.    The identity of the person(s) who prepared or authored the document, and, if applicable, the persons to whom the document was sent or was intended to be sent;

    c.    The date on which the document was prepared or transmitted; and

    d.    The date on which the document was lost, destroyed or otherwise disposed of, the manner and conditions of and reasons for such destruction or other disposition and the persons requesting and performing the destruction or other disposition.

16.    The following document requests are to be deemed continuing in nature. In the event You become aware of or acquire additional information relating or referring to any of the following document requests, such additional information is to be promptly produced.

### III.    <u>DOCUMENTS REQUESTS</u>

1.    Any and all documents relating to the current ownership of the following securities (collectively, the "Trust Preferred Securities"):

    a.    Washington Mutual Preferred Funding (Cayman) I Ltd. 7.25% Perpetual Non-Cumulative Preferred Securities, Series A-1 and Series A-2, as described in an offering circular dated February 24, 2006 (the "WaMu Cayman TPS");

    b.    Washington Mutual Preferred Funding Trust I Fixed-to-Floating Rate Perpetual Non-Cumulative Trust Securities, as described in an offering circular dated February 24, 2006 (the "WaMu Delaware I TPS");

    c.    Washington Mutual Preferred Funding Trust II Fixed-to-Floating Rate Perpetual Non-Cumulative Trust Securities, as described in an offering circular dated December 6, 2006 (the "WaMu Delaware II TPS");

    d.    Washington Mutual Preferred Funding Trust III Fixed-to-Floating Rate Perpetual Non-Cumulative Trust Securities, as described in an offering circular dated May 21, 2007 (the "WaMu Delaware III TPS"); and

     e.     Washington Mutual Preferred Funding Trust IV Fixed-to-Floating Rate Perpetual Non-Cumulative Trust Securities, as described in an offering circular dated October 18, 2007 (the "WaMu Delaware IV TPS").

2.     Any and all security position reports evidencing the current ownership of the Trust Preferred Securities.

3.     Any and all non-objecting beneficial owner list evidencing the current ownership of the Trust Preferred Securities.

4.     Copies of the front and back of any and all certificates representing the Trust Preferred Securities.

5.     Any and all documents regarding the ownership of the Trust Preferred Securities as of September 24, 2008, including but not limited to: (a) a security position report; and/or (b) a list of non-objecting beneficial owners.

6.     Any and all documents regarding the ownership of the Trust Preferred Securities as of September 25, 2008, including but not limited to: (a) a security position report; and/or (b) a list of non-objecting beneficial owners.

7.     Any and all documents and/or electronically stored information relating to and/or evidencing any purported exchange, transfer or other disposition of the Trust Preferred Securities, including any applicable trust register.

8.     Any and all documents related to any purported "Conditional Exchange" of the Trust Preferred Securities, including but not limited to, all communications with Washington Mutual, Inc. or any other party regarding the purported occurrence of a "Conditional Exchange."

9.     Any and all documents related to any purported transfer of the Trust Preferred Securities to Washington Mutual, Inc.

10.     Any and all documents related to any purported transfer of the Trust Preferred Securities from Washington Mutual, Inc. to Washington Mutual Bank.

11.     Any and all documents related to any purported transfer of the Trust Preferred Securities from Washington Mutual Bank to JPMorgan Chase.

12.     Any and all documents relating to the purported issuance of, or ownership of, the Series I, J, L, M and N preferred shares in Washington Mutual, Inc.

13.     Any and all documents relating to the current ownership, control and/or status of the following entities:

a. Washington Mutual Preferred Funding (Cayman) I Ltd. ("WaMu Cayman");

b. Washington Mutual Preferred Funding Trust I ("WaMu Delaware I");

c. Washington Mutual Preferred Funding Trust II ("WaMu Delaware II");

d. Washington Mutual Preferred Funding Trust III ("WaMu Delaware III");

e. Washington Mutual Preferred Funding Trust IV ("WaMu Delaware IV"); and/or

f. Washington Mutual Home Equity Trust I.

14.     Any and all documents regarding the current administration and/or servicing of the collateral pool underlying the Trust Preferred Securities.

<u>**SCHEDULE B—TOPICS OF INQUIRY**</u>

1.      The current ownership of the following securities (collectively, the "Trust Preferred Securities"):

     a.  Washington Mutual Preferred Funding (Cayman) I Ltd. 7.25% Perpetual Non-Cumulative Preferred Securities, Series A-1 and Series A-2, as described in an offering circular dated February 24, 2006 (the "WaMu Cayman TPS");

     b.  Washington Mutual Preferred Funding Trust I Fixed-to-Floating Rate Perpetual Non-Cumulative Trust Securities, as described in an offering circular dated February 24, 2006 (the "WaMu Delaware I TPS");

     c.  Washington Mutual Preferred Funding Trust II Fixed-to-Floating Rate Perpetual Non-Cumulative Trust Securities, as described in an offering circular dated December 6, 2006 (the "WaMu Delaware II TPS");

     d.  Washington Mutual Preferred Funding Trust III Fixed-to-Floating Rate Perpetual Non-Cumulative Trust Securities, as described in an offering circular dated May 21, 2007 (the "WaMu Delaware III TPS"); and

     e.  Washington Mutual Preferred Funding Trust IV Fixed-to-Floating Rate Perpetual Non-Cumulative Trust Securities, as described in an offering circular dated October 18, 2007 (the "WaMu Delaware IV TPS").

2.      Maintenance of records related to the ownership of the Trust Preferred Securities.

3.      Maintenance of any and all certificates representing the Trust Preferred Securities.

4.      The creation and maintenance of documents related to the ownership of the Trust Preferred Securities.

5.      The current administration and/or servicing of the collateral pool underlying the Trust Preferred Securities.

6.      Any purported "Conditional Exchange" of the Trust Preferred Securities, including but not limited to, all communications with Washington Mutual, Inc. or any other party regarding the purported occurrence of a "Conditional Exchange."

7.      The creation and maintenance of documents and/or electronically stored information relating to and/or evidencing any purported exchange, transfer or other disposition of the Trust Preferred Securities, including any applicable trust register.

8.  The purported issuance of, and ownership of, the Series I, J, L, M and N preferred shares in Washington Mutual, Inc.

9.  The current ownership, control and/or status of the following entities:

   a.  Washington Mutual Preferred Funding (Cayman) I Ltd. ("WaMu Cayman");

   b.  Washington Mutual Preferred Funding Trust I ("WaMu Delaware I");

   c.  Washington Mutual Preferred Funding Trust II ("WaMu Delaware II");

   d.  Washington Mutual Preferred Funding Trust III ("WaMu Delaware III");

   e.  Washington Mutual Preferred Funding Trust IV ("WaMu Delaware IV"); and/or

   f.   Washington Mutual Home Equity Trust I.

10.  Any purported transfer of the Trust Preferred Securities to Washington Mutual, Inc., including but not limited to, any recordkeeping reflecting such transfer.

11.  Any purported transfer of the Trust Preferred Securities from Washington Mutual, Inc. to Washington Mutual Bank, including but not limited to, any recordkeeping reflecting such transfer.

12.  Any purported transfer of the Trust Preferred Securities from Washington Mutual Bank to JPMorgan Chase, including but not limited to, any recordkeeping reflecting such transfer.