# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

―――――――――――――――――――――――――――――――― x
                                                             :

|  | |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
|  | : | Case No. 08-12229 (MFW) |
| WASHINGTON MUTUAL, INC., et al., | : |  |
|  | : |  |
| Debtors | : | Jointly Administered |

―――――――――――――――――――――――――――――――― x
                                                             :

Black Horse Capital LP, Black Horse Capital Master Fund Ltd., Black Horse Capital (QP) LP, Greywolf Capital Partners II, Greywolf Overseas Fund, Guggenheim Portfolio Company VII, LLC, HFR RVA Combined Master Trust, IAM Mini-Fund 14 Limited, LMA SPC for and on behalf of the MAP 89 Segregated Portfolio, Lonestar Partners LP, Mariner LDC, Nisswa Convertibles Master Fund Ltd., Nisswa Fixed Income Master Fund Ltd., Nisswa Master Fund Ltd., Paige Opportunity Partners LP, Paige Opportunity Partners Master Fund, Pandora Select Partners, LP, Pines Edge Value Investors Ltd, Riva Ridge Capital Management LP, Riva Ridge Master Fund, Ltd., Scoggin Capital Management II LLC, Scoggin International Fund Ltd., Scoggin Worldwide Fund Ltd., Visium Global Fund, Ltd., VR Global Partners, L.P. Whitebox Asymmetric Partners LP, Whitebox Combined Partners, LP, Whitebox Convertible Arbitrage Partners, LP, Whitebox Hedged High Yield Partners, LP and Whitebox Special Opportunities LP, Series B,

       Plaintiffs

v.

JPMorgan Chase Bank, N.A., Washington Mutual, Inc., Washington Mutual Preferred Funding, LLC, Washington Mutual Preferred Funding (Cayman) I Ltd., Washington Mutual Preferred Funding Trust I, Washington Mutual Preferred Funding Trust II, Washington Mutual Preferred Funding Trust III, Washington Mutual Preferred Funding Trust IV

      Defendants.

Adversary Proceeding
No. 10-51387 (MFW)

―――――――――――――――――――――――――――――――― x

## NOTICE OF DEPOSITION OF JPMORGAN CHASE BANK, N.A.
## BY RULE 30(b)(6) REPRESENTATIVE

TO: JPMorgan Chase Bank, N.A.
c/o Stacey Friedman, Esq.
Sullivan & Cromwell LLP
125 Broad Street
New York, New York 10004-2498

PLEASE TAKE NOTICE that, pursuant to Rule 30 of the Federal Rules of Civil Procedure and Rules 7030 and 9014 of the Federal Rules of Bankruptcy Procedure, the Plaintiffs in the above-captioned adversary proceeding, by and through their undersigned attorneys, will take the deposition of a designated representative of JPMorgan Chase Bank, N.A. pursuant to Fed. R. Civ. P. 30(b)(6). Fed. R. Civ. P. 30(b)(6) requires the deponent to designate one or more officers, directors, managing agents or other persons with the most particularized knowledge as to the matters listed on Schedule A, Topics Of Inquiry. **November 12, 2010, at 10 a.m. at the offices of Campbell & Levine LLC, 800 North King Street, Suite 300, Wilmington, DE 19801** and will continue from day to day thereafter until complete. The deposition will be taken before an authorized court reporter or other officer authorized by law to administer oaths and will be recorded by stenographic means. The deposition will be taken according to the Federal Rules of Bankruptcy Procedure for the purpose of discovery, use as evidence at any hearing or trial, or any other purpose allowed by law.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

Dated: Wilmington, Delaware
October 12, 2010

**CAMPBELL & LEVINE LLC**

*/s/ Kathleen Campbell Davis*
Marla Rosoff Eskin, Esq. (DE 2989)
Bernard G. Conaway, Esq. (DE 2856)
Kathleen Campbell Davis, Esq. (DE 4229)
800 North King Street, Suite 300
Wilmington, DE 19809
(302) 426-1900
(302) 426-9947 (fax)

– and –

**BROWN RUDNICK LLP**
Robert J. Stark, Esq.
Sigmund Wissner-Gross, Esq.
Seven Times Square
New York, NY 10036
(212) 209-4800
(212) 209-4801 (fax)

– and –

Jeremy B. Coffey, Esq.
James W. Stoll, Esq.
Daniel J. Brown, Esq.
One Financial Center
Boston, MA 02111
(617) 856-8200
(617) 856-8201 (fax)

*Counsel to Plaintiffs*

# SCHEDULE A – TOPICS OF INQUIRY

## I. DEFINITIONS

1. The words "and" and "or" are to be construed both conjunctively and disjunctively. The singular form of a noun or pronoun includes the plural form and vice versa. The word "all" shall also include "each of," and vice versa.

2. "Communication" means any oral or written utterance, notation, or statement of any nature whatsoever between or among two or more persons, by or to whomsoever made, and including, without limitation, correspondence, documents, conversations, dialogues, discussions, e-mails, interviews, consultations, agreements, and other understandings.

3. As used herein, the term "Disclosure Statement" shall mean the Disclosure Statement for the Fifth Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code, filed on or about July 1, 2010 in the Debtors' Chapter 11 cases, and any prior or subsequent versions of the Disclosure Statement.

4. "Document" means any printed, written, typed, recorded, transcribed, taped, photographic, or graphic matter, however produced or reproduced, including but not limited to: any letter, correspondence, or communication of any sort; film, print or negative of photograph; sound recording, video recording; note, notebook, diary, calendar, minutes, memorandum, contract, agreement, or any amendment thereto; telex, telegram, cable; summary, report or record of telephone conversation, voice mail or voice mail back-up, personal conversation, discussion, interview, meeting, conference, investigation, negotiation, act or activity; projection, work paper, or draft; computer or computer network output or input, hard or floppy disc, electronic mail, magnetic and/or optical medias, archived or back up data on any of these medias, and documents that have been deleted but are recoverable from any of these medias; opinion or report of consultant; request, order, invoice or bill of lading; analysis, diagram, map, index, sketch, drawing, plan, chart, manual, brochure, pamphlet, advertisement, circular, newspaper or magazine clipping, press release; receipt, journal, ledger, schedule, bill, or voucher; financial statement, statement of account, bank statement, checkbook, stubs, or register, canceled check, deposit slip, charge slip, tax return (income or other), requisition; file, study, graph, tabulation, and any and all other writings and recordings of whatever nature, whether signed or unsigned or transcribed, and any other data compilation from which information can be obtained, translated, if necessary, by the respondent through detection devices into reasonably usable form.

5. As used herein, the term "Global Settlement Agreement" shall mean the Proposed Global Settlement Agreement or the Global Settlement Agreement, each as defined in any version of the Disclosure Statement and/or Plan.

6. As used herein, the term "Person" means any natural person or any business, legal, or governmental entity or association.

7. As used herein, the term "Plan" means the Fifth Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code, filed on or about July 1, 2010 in the Debtors' Chapter 11 cases, and any prior or subsequent versions of the Plan.

8. "Referring to," "relating to," "evidencing" or "constituting" mean containing, comprising, embodying, mentioning, indicating, supporting, proving, showing, relating, or referring in any way, in whole or in part, including, but not limited to documents underlying, supporting, currently or previously attached or appended to, or used in the preparation of any document called for by the request.

9. As used herein, the term "Settlement Parties" means those signatories to the Global Settlement Agreement.

10. As used herein, the term "Trust Preferred Securities" shall mean and refer to the following securities:

   a. Washington Mutual Preferred Funding (Cayman) I Ltd. 7.25% Perpetual Non-Cumulative Preferred Securities, Series A-1 and Series A-2, as described in an offering circular dated February 24, 2006 (the "WaMu Cayman TPS");

   b. Washington Mutual Preferred Funding Trust I Fixed-to-Floating Rate Perpetual Non-Cumulative Trust Securities, as described in an offering circular dated February 24, 2006 (the "WaMu Delaware I TPS");

   c. Washington Mutual Preferred Funding Trust II Fixed-to-Floating Rate Perpetual Non-Cumulative Trust Securities, as described in an offering circular dated December 6, 2006 (the "WaMu Delaware II TPS");

   d. Washington Mutual Preferred Funding Trust III Fixed-to-Floating Rate Perpetual Non-Cumulative Trust Securities, as described in an offering circular dated May 21, 2007 (the "WaMu Delaware III TPS"); and

   e. Washington Mutual Preferred Funding Trust IV Fixed-to-Floating Rate Perpetual Non-Cumulative Trust Securities, as described in an offering circular dated October 18, 2007 (the "WaMu Delaware IV TPS").

11. As used herein, the terms "You," "Your" or "JPMC" mean and refer to the JPMorgan Chase Bank, N.A. and any current or former parent, affiliates or subsidiaries, or any of their members, officers, directors, representatives, employees, agents, consultants, accountants, attorneys, financial advisors, predecessors, successors, assigns and any other person currently or formerly acting or purporting to act on behalf of JPMC for any purpose whatsoever.

12. Unless otherwise defined herein, capitalized terms shall bear the meanings ascribed thereto in the Disclosure Statement and/or Plan, as applicable.

## II. TOPICS OF INQUIRY

1. The current ownership of the following securities (collectively, the "Trust Preferred Securities"):

    a. Washington Mutual Preferred Funding (Cayman) I Ltd. 7.25% Perpetual Non-Cumulative Preferred Securities, Series A-1 and Series A-2, as described in an offering circular dated February 24, 2006 (the "WaMu Cayman TPS");

    b. Washington Mutual Preferred Funding Trust I Fixed-to-Floating Rate Perpetual Non-Cumulative Trust Securities, as described in an offering circular dated February 24, 2006 (the "WaMu Delaware I TPS");

    c. Washington Mutual Preferred Funding Trust II Fixed-to-Floating Rate Perpetual Non-Cumulative Trust Securities, as described in an offering circular dated December 6, 2006 (the "WaMu Delaware II TPS");

    d. Washington Mutual Preferred Funding Trust III Fixed-to-Floating Rate Perpetual Non-Cumulative Trust Securities, as described in an offering circular dated May 21, 2007 (the "WaMu Delaware III TPS"); and

    e. Washington Mutual Preferred Funding Trust IV Fixed-to-Floating Rate Perpetual Non-Cumulative Trust Securities, as described in an offering circular dated October 18, 2007 (the "WaMu Delaware IV TPS").

2. Any purported "Conditional Exchange" of the Trust Preferred Securities.

3. The Downstream Undertaking.

4. Any and all communications between JPMC, the OTS and/or the FDIC regarding the Trust Preferred Securities and/or any assets associated with the Trust Preferred Securities.

5. Communications between JPMC and any other party regarding the purported occurrence of a "Conditional Exchange."

6. Any purported transfer of the Trust Preferred Securities from Washington Mutual, Inc. to Washington Mutual Bank.

7. Any purported transfer of the Trust Preferred Securities to JPMC.

8. The underwriting, offering and/or issuance of the Trust Preferred Securities.

9. Preparation of the offering circulars prepared in connection with the offering of each of the Trust Preferred Securities.

10. The current administration and/or servicing of the collateral pool underlying the Trust Preferred Securities.

11. Communications between JPMC and investors in the Trust Preferred Securities.

12. The due diligence performed by JPMC regarding any attempt to acquire, merge with, or invest in WMI or WMB during 2008.

13. The practices and procedures of JPMorgan Securities, Inc. ("JPMS") in the underwriting, offering and/or issuance of WaMu Delaware III TPS.

14. The relationship between JPMS and JPMC, including, but not limited to, any reporting or other relationship between JPMS and JPMC related to the underwriting, offering and/or issuance of WaMu Delaware III TPS.

15. Any due diligence performed by JPMC or JPMS in connection with the underwriting, offering and/or issuance of any of the Trust Preferred Securities.

16. The assets of WMB purportedly acquired by JPMC on or after September 25, 2008.

17. The determination of the amount of the bid submitted by JPMC to the FDIC for the purchase of WMB assets.

18. Any and all notifications/bid requests received by JPMC and/or bids submitted by JPMC pursuant to Section 3.2(b)(ii) of the Purchase and Assumption Agreement.

19. JPMS's role in connection with the purchase of the assets of WMB or WMI by JPMC in 2008 or thereafter.

20. Any due diligence and efforts by JPMS in 2008 related to the acquisition of the operations and assets of Washington Mutual Bank by JPMC.

21. JPMS's business relationship with JPMC.

22. Any communications with JPMS and JPMC related to any of the Trust Preferred Securities.

23. Any reporting relationship between JPMS and JPMC.

24. The directors and officers of JPMS and JPMC.

25. The corporate structure of JPMS and JPMC.

26. The calculation of the after-tax gain from the purchase of Washington Mutual Bank assets as reflected in JPMorgan Chase, Inc.'s September 30, 2008 Form 10-Q.

27. The calculation of the after-tax gain from the purchase of Washington Mutual Bank assets as reflected in JPMorgan Chase, Inc.'s 2008 Form 10-K.

28. Negotiation of the Global Settlement Agreement and/or the Plan.

29. The purported "Settlement with the REIT Series Holders" referenced in Section I.C.8 of the Debtors' Disclosure Statement, including but not limited to the negotiation of that "settlement" and the identity(ies) of the party(ies) claimed to have negotiated that "settlement."

30. The treatment of the Trust Preferred Securities under the Global Settlement Agreement and/or the Plan.

31. The releases, exculpations and/or injunctions proposed to be granted or issued under the Global Settlement Agreement and/or the Plan, including but not limited to the negotiation of such releases, exculpations and/or injunctions and the identity(ies) of the party(ies) claimed to have negotiated those releases, exculpations and/or injunctions.

32. The allocation of the Tax Refunds under the Global Settlement Agreement.

33. Any conflicts of interest of Weil Gotshal & Manges LLP in these chapter 11 cases and: (a) the participation of Weil Gotshal & Manges LLP in negotiating the Settlement Agreement and/or the Plan; and (b) the participation of Quinn Emanuel Urquhart & Sullivan, LLP (or any other party claimed to have acted on behalf of the Debtors) in such negotiations.