IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| ─────────────────────────────────────── x | | |
| | : | Chapter 11 |
| In re | : | |
| | : | Case No. 08-12229 (MFW) |
| WASHINGTON MUTUAL, INC., et al., | : | |
| | : | |
| Debtors | : | Jointly Administered |
| ─────────────────────────────────────── x | | |
| | : | |
| Black Horse Capital LP, Black Horse Capital Master Fund Ltd., Black Horse Capital (QP) LP, Greywolf Capital Partners II, Greywolf Overseas Fund, Guggenheim Portfolio Company VII, LLC, HFR RVA Combined Master Trust, IAM Mini-Fund 14 Limited, LMA SPC for and on behalf of the MAP 89 Segregated Portfolio, Lonestar Partners LP, Mariner LDC, Nisswa Convertibles Master Fund Ltd., Nisswa Fixed Income Master Fund Ltd., Nisswa Master Fund Ltd., Paige Opportunity Partners LP, Paige Opportunity Partners Master Fund, Pandora Select Partners, LP, Pines Edge Value Investors Ltd, Riva Ridge Capital Management LP, Riva Ridge Master Fund, Ltd., Scoggin Capital Management II LLC, Scoggin International Fund Ltd., Scoggin Worldwide Fund Ltd., Visium Global Fund, Ltd., VR Global Partners, L.P. Whitebox Asymmetric Partners LP, Whitebox Combined Partners, LP, Whitebox Convertible Arbitrage Partners, LP, Whitebox Hedged High Yield Partners, LP and Whitebox Special Opportunities LP, Series B, | : | Adversary Proceeding No. 10-51387 (MFW) |
| | : | |
| Plaintiffs | : | |
| v. | : | |
| | : | |
| JPMorgan Chase Bank, N.A., Washington Mutual, Inc., Washington Mutual Preferred Funding, LLC, Washington Mutual Preferred Funding (Cayman) I Ltd., Washington Mutual Preferred Funding Trust I, Washington Mutual Preferred Funding Trust II, Washington Mutual Preferred Funding Trust III, Washington Mutual Preferred Funding Trust IV | : | |
| | : | |
| Defendants. | : | |
| ─────────────────────────────────────── x | | |

## NOTICE OF DEPOSITION OF JP MORGAN SECURITIES INC. BY RULE 30(b)(6) REPRESENTATIVE

TO: JP Morgan Securities Inc.
270 Park Avenue, 12th Floor
New York, NY 10017-2014

PLEASE TAKE NOTICE that, pursuant to Rule 30 of the Federal Rules of Civil Procedure and Rules 7030 and 9014 of the Federal Rules of Bankruptcy Procedure, the Plaintiffs in the above-captioned adversary proceeding, by and through their undersigned attorneys, will take the deposition of a designated representative of J.P. Morgan Securities, Inc pursuant to Fed. R. Civ. P. 30(b)(6). Fed. R. Civ. P. 30(b)(6) requires the deponent to designate one or more officers, directors, managing agents or other persons with the most particularized knowledge as to the matters listed on Schedule A, Documents To Be Produced, and Schedule B, Topics Of Inquiry. The deposition will take place on **November 2, 2010 at 10 a.m. at the offices of Brown Rudnick, LLP, Seven Times Square New York, NY 10036** and will continue from day to day thereafter until complete. The deposition will be taken before an authorized court reporter or other officer authorized by law to administer oaths and will be recorded by stenographic means. The deposition will be taken according to the Federal Rules of Bankruptcy Procedure for the purpose of discovery, use as evidence at any hearing or trial, or any other purpose allowed by law.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

Dated: Wilmington, Delaware
October 12, 2010

                              **CAMPBELL & LEVINE LLC**

                              */s/ Kathleen Campbell Davis*
Marla Rosoff Eskin, Esq. (DE 2989)
Bernard G. Conaway, Esq. (DE 2856)
Kathleen Campbell Davis, Esq. (DE 4229)
800 North King Street, Suite 300
Wilmington, DE 19809
(302) 426-1900
(302) 426-9947 (fax)

             – and –

**BROWN RUDNICK LLP**
Robert J. Stark, Esq.
Sigmund Wissner-Gross, Esq.
Seven Times Square
New York, NY 10036
(212) 209-4800
(212) 209-4801 (fax)

             – and –

Jeremy B. Coffey, Esq.
James W. Stoll, Esq.
Daniel J. Brown, Esq.
One Financial Center
Boston, MA 02111
(617) 856-8200
(617) 856-8201 (fax)

*Counsel to Plaintiffs*

# SCHEDULE A – DOCUMENTS TO BE PRODUCED

## I. DEFINITIONS

1. "<u>Communication</u>" means any oral or written utterance, notation, or statement of any nature whatsoever between or among two or more persons, by or to whomsoever made, and including, without limitation, correspondence, documents, conversations, dialogues, discussions, e-mails, interviews, consultations, agreements, and other understandings.

2. As used herein, the term "<u>Disclosure Statement</u>" shall mean the Disclosure Statement for the Fifth Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code, filed on or about July 1, 2010 in the Debtors' Chapter 11 cases, including any prior or subsequent versions and/or any drafts of the Disclosure Statement.

3. "<u>Document</u>" means any printed, written, typed, recorded, transcribed, taped, photographic, or graphic matter, however produced or reproduced, including but not limited to: any letter, correspondence, or communication of any sort; film, print or negative of photograph; sound recording, video recording; note, notebook, diary, calendar, minutes, memorandum, contract, agreement, or any amendment thereto; telex, telegram, cable; summary, report or record of telephone conversation, voice mail or voice mail back-up, personal conversation, discussion, interview, meeting, conference, investigation, negotiation, act or activity; projection, work paper, or draft; computer or computer network output or input, hard or floppy disc, electronic mail, magnetic and/or optical medias, archived or back up data on any of these medias, and documents that have been deleted but are recoverable from any of these medias; opinion or report of consultant; request, order, invoice or bill of lading; analysis, diagram, map, index, sketch, drawing, plan, chart, manual, brochure, pamphlet, advertisement, circular, newspaper or magazine clipping, press release; receipt, journal, ledger, schedule, bill, or voucher; financial statement, statement of account, bank statement, checkbook, stubs, or register, canceled check, deposit slip, charge slip, tax return (income or other), requisition; file, study, graph, tabulation, and any and all other writings and recordings of whatever nature, whether signed or unsigned or transcribed, and any other data compilation from which information can be obtained, translated, if necessary, by the respondent through detection devices into reasonably usable form.

4. <u>JPMC</u> means JP Morgan Chase Bank, N.A. and any current or former parent, affiliates or subsidiaries, or any of their members, officers, directors, representatives, employees, agents, and any other person currently or formerly acting or purporting to act on JPMC's behalf for any purpose whatsoever.

5. As used herein, the term "<u>Plan</u>" means the Fifth Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code, filed on or about July 1, 2010 in the Debtors' Chapter 11 cases, including any prior or subsequent versions and/or any drafts of the Plan.

6. "<u>Referring to, relating to, evidencing or constituting</u>" means containing, comprising, embodying, mentioning, indicating, supporting, proving, showing, relating, or referring in any way, in whole or in part, including, but not limited to documents underlying,

supporting, currently or previously attached or appended to, or used in the preparation of any document called for by the request.

7.  "You", "Your", or "JPMS" mean and refer to JP Morgan Securities Inc.'s any current or former parent, affiliates or subsidiaries, or any of their members, officers, directors, representatives, employees, agents, consultants, accountants, attorneys, financial advisors, predecessors, successors, assigns and any other person currently or formerly acting or purporting to act on JPMS's behalf for any purpose whatsoever.

8.  Unless otherwise defined herein, capitalized terms shall bear the meanings ascribed thereto in the Disclosure Statement and/or Plan, as applicable.

## II. INSTRUCTIONS

1.  The words "and" and "or" are to be construed both conjunctively and disjunctively. The singular form of a noun or pronoun includes the plural form and vice versa. The word "all" shall also include "each of," and vice versa.

2.  To the extent that You have not already produced the documents requested below, You are requested to produce all responsive documents in Your possession, custody or control, wherever located, including, without limitation, those in the custody of Your representatives and affiliates.

3.  Unless otherwise stated in a specific request herein, the time period covered by the following requests is the period between September 1, 2008, through and including the present.

4.  If any part of the following requests cannot be responded to in full, please respond to the extent possible, specifying the reason(s) for Your inability to respond to the remainder and stating whatever information or knowledge You have concerning the portion to which You do not respond.

5.  If there are no documents responsive to any particular request, please state so in writing.

6.  Where any copy of any document whose production is sought herein, whether a draft or final version, is not identical to any copy thereof, by reason of alterations, notes, comments, initials, underscoring, indication of routing, or other material contained thereon or attached thereto, all such non-identical copies are to be produced separately.

7.  If any document requested herein was formerly in Your possession, custody or control (or that of Your representative) and has been lost or destroyed or otherwise disposed of, You are requested to submit in lieu of any such document a written statement (a) describing in detail the nature of the document and its contents, (b) identifying the person(s) who prepared or authored the document and, if applicable, the person(s) to whom the document was sent, (c) specifying the date on which the document was prepared or transmitted, and (d) specifying the date on which the document was lost or destroyed and, if destroyed, the conditions of and reasons for such destruction and the person(s) requesting and performing the destruction.

8. Hard copies of all documents should be produced; in addition, copies of all documents available electronically – except for spreadsheets, presentations, and audio or video files – shall be produced as black and white, single-page TIFF image files, with accompanying Summation load files that shall preserve any parent-child relationships between or among electronic documents (including attachment ranges of email files). All electronically stored information associated with each responsive electronic document shall be produced in files corresponding to the images for those documents and shall contain any custodial information associated with the documents, and shall further contain all metadata and electronic components of the information relating to or comprising such documents, including all information concerning the date(s) the document was created, modified, or distributed, the author(s) and recipient(s) (including each person copied or blind copied on any email or correspondence), any text associated with the document (provided in individual text files on a document level, *i.e.*, multi-page format), the subject or title of the document, and any other available metadata fields. Spreadsheets (including "Excel" or "XLS" files), presentations (including " PowerPoint" or "PPT" files), and audio or video files (including "MPG," "MPEG," "MP3" or "AVI" files) shall be produced in their native format..

9. A request for any document shall be deemed to include a request for any and all transmittal sheets, cover letters, exhibits, enclosures, or attachments to such document, in addition to the document in its full and unexpurgated form.

10. Documents should be segregated according to the number of the request to which You are responding or produced in the manner they are kept in the ordinary course of business. Documents attached to each other should not be separated.

11. Each request for documents herein includes a request for exact copies of all disks, CDs, DVDs and other removable media containing any information responsive to such request. Electronic records and computerized information should be produced in an intelligible format or together with a sufficient description of the system or program from which each was derived to permit rendering the material legible.

12. If You claim any form of privilege or immunity, whether based on statute or otherwise, as a ground for not responding to a request contained in this Schedule A:

    a. State the nature of the privilege or immunity claimed (i.e., attorney/client, work product, etc.);

    b. State the basis for claiming the privilege or immunity as to the specific information or documents; and

    c. State the date of such document; identify the type of document (i.e., letter, memo, etc.); set forth the subject matter thereof, identify each person who prepared it and each person (if any) who signed it; identify each person to whom it was directed, circulated or shown; and identify each person now in possession of the document.

13. In the event that any document requested herein was formerly in Your possession, custody or control, and has been lost, destroyed or otherwise disposed of, You are requested to

furnish a list identifying each such document and stating the following information with respect to each such document:

    a.    The document's title, if any, and the nature and subject matter of its contents;

    b.    The identity of the person(s) who prepared or authored the document, and, if applicable, the persons to whom the document was sent or was intended to be sent;

    c.    The date on which the document was prepared or transmitted; and

    d.    The date on which the document was lost, destroyed or otherwise disposed of, the manner and conditions of and reasons for such destruction or other disposition and the persons requesting and performing the destruction or other disposition.

14. The following document requests are to be deemed continuing in nature. In the event You become aware of or acquire additional information relating or referring to any of the following document requests, such additional information is to be promptly produced.

### III. DOCUMENTS TO BE PRODUCED

1. Any and all documents relating to the current ownership of the following securities (collectively, the "Trust Preferred Securities"):

    a.    Washington Mutual Preferred Funding (Cayman) I Ltd. 7.25% Perpetual Non-Cumulative Preferred Securities, Series A-1 and Series A-2, as described in an offering circular dated February 24, 2006 (the "WaMu Cayman TPS");

    b.    Washington Mutual Preferred Funding Trust I Fixed-to-Floating Rate Perpetual Non-Cumulative Trust Securities, as described in an offering circular dated February 24, 2006 (the "WaMu Delaware I TPS");

    c.    Washington Mutual Preferred Funding Trust II Fixed-to-Floating Rate Perpetual Non-Cumulative Trust Securities, as described in an offering circular dated December 6, 2006 (the "WaMu Delaware II TPS");

    d.    Washington Mutual Preferred Funding Trust III Fixed-to-Floating Rate Perpetual Non-Cumulative Trust Securities, as described in an offering circular dated May 21, 2007 (the "WaMu Delaware III TPS"); and

    e.    Washington Mutual Preferred Funding Trust IV Fixed-to-Floating Rate Perpetual Non-Cumulative Trust Securities, as described in an offering circular dated October 18, 2007 (the "WaMu Delaware IV TPS").

2. Any and all documents related to any purported "Conditional Exchange" or transfer of the Trust Preferred Securities, including but not limited to, all communications with Washington Mutual, Inc. or any other party regarding the purported occurrence of a "Conditional Exchange."

3. Any and all documents related to any purported transfer of the Trust Preferred Securities from Washington Mutual, Inc. to Washington Mutual Bank.

4. Any and all documents related to any purported transfer of the Trust Preferred Securities to JPMC.

5. Any and all documents related to the practices and procedures of JPMS in underwriting, offering and/or the issuance of any of the Trust Preferred Securities.

6. Any and all documents relating to the underwriting, offering and/or the issuance of WaMu Delaware III TPS, including, but not limited to, any research, memoranda, analyses, spreadsheets, or email communications drafted in preparation of the underwriting of WaMu Delaware III TPS.

7. Any and all internal documents regarding any of the Trust Preferred Securities, including, but not limited to, any submissions seeking internal approval to underwrite, offer and/or participate in the issuance of the WaMu Delaware III TPS.

8. Any and all documents regarding the retention of JPMS to underwrite and/or assist in the issuance of WaMu Delaware III TPS.

9. Any and all documents related to communications between JPMS and Washington Mutual, Inc. ("WMI") and/or Washington Mutual Bank ("WMB") regarding the Office of Thrift Supervision (the "OTS").

10. Any communications between JPMS and WMI or WMB regarding the issuance, underwriting and/or offering of any of the Trust Preferred Securities.

11. Any communications between JPMS and Goldman Sachs & Co., Lehman Brothers, Inc., UBS Investment Bank, Credit Suisse, Morgan Stanley, Keefe, Bruyette & Woods, and/or Wachovia Securities regarding the Trust Preferred Securities and/or the WaMu Delaware III TPS.

12. Any correspondence between JPMS and investors or potential investors in the Trust Preferred Securities, including but not limited to sales materials, PowerPoint presentations, or other documents related to the offering of the Trust Preferred Securities.

13. All documents evidencing common directors, officers and/or employees of JPMS and JPMC.

14. Any and all documents identifying the corporate structure of JPMC and JPMS, and any of their affiliates or subsidiaries.

15. Any and all documents relating to procedures for the sharing of information between JPMS and JPMC.

# SCHEDULE B – TOPICS OF INQUIRY

1. Any purported "Conditional Exchange" or transfer of the Trust Preferred Securities, including, but not limited to, all communications with Washington Mutual, Inc. or any other party regarding the purported occurrence of a "Conditional Exchange."

2. The underwriting, offering and/or issuance of WaMu Delaware III TPS.

3. Preparation of the offering circular dated May 21, 2007, prepared in connection with the offering of WaMu Delaware III TPS.

4. The practices and procedures of JPMS in the underwriting, offering and/or issuance of WaMu Delaware III TPS.

5. Any due diligence performed in connection with the underwriting, offering and/or issuance of any of the Trust Preferred Securities.

6. Communications between JPMS and Goldman Sachs & Co., Lehman Brothers, Inc., UBS Investment Bank, Credit Suisse, Morgan Stanley, Keefe, Bruyette & Woods, and/or Wachovia Securities regarding the Trust Preferred Securities and/or the WaMu Delaware III TPS.

7. The relationship between JPMS and JPMC, including, but not limited to, any reporting or other relationship between JPMS and JPMC related to the underwriting, offering and/or issuance of WaMu Delaware III TPS.

8. Any proposed acquisition of, merger with, investment in, or other transaction involving, Washington Mutual, Inc. ("WMI") and/or Washington Mutual Bank ("WMB"), during 2008.

9. JPMS's role in connection with the purchase of the assets of WMB or WMI by JPMC in 2008 or thereafter.

10. Any due diligence and efforts by JPMS in 2008 related to the acquisition of the operations and assets of Washington Mutual Bank by JPMC.

11. The determination of the amount of the bid submitted by JPMC to the FDIC for the purchase of WMB assets.

12. The assets of WMB and/or WMI purportedly purchased by JPMC in September 2008 or thereafter.

13. Any purported transfer of the Trust Preferred Securities from Washington Mutual, Inc. to Washington Mutual Bank.

14. Any purported transfer of the Trust Preferred Securities to JPMC.

15. Communications between WMB or WMI and the OTS.

16. JPMS's business relationship with JPMC.

17. Any communications with JPMS and JPMC related to any of the Trust Preferred Securities.

18. Any reporting relationship between JPMS and JPMC.

19. The directors and officers of JPMS and JPMC.

20. The corporate structure of JPMS and JPMC.

21. Correspondence between JPMS and investors in the Trust Preferred Securities.

# 1770522 v2 - 028943/0001